MATTHEW KANNY (SBN 167118)
MKanny@Manatt.com
ADRIANNE MARSHACK (SBN 253682)
AMarshack@Manatt.com
SIRENA CASTILLO (SBN 260565)
SCastillo@Manatt.com
MANATT, PHELPS & PHILLIPS, LLP
11355 West Olympic Boulevard
Los Angeles, CA  90064-1614
Telephone:    (310) 312-4000
Facsimile:    (310) 312-4224

JUDY LONDON (SBN 149431)
jlondon@publiccounsel.org
SARA VAN HOFWEGEN (SBN 266985)
svanhofwegen@ publiccounsel.org
MARY TANAGHO ROSS (SBN 280657)
mross@publiccounsel.org
PUBLIC COUNSEL
610 South Ardmore Avenue
Los Angeles, CA  90005
Telephone:    (213) 385-2977
Facsimile:    (213) 385-9089

KEITH WURSTER (SBN 198918)
kwurster@lccr.com
LAWYERS' COMMITTEE FOR CIVIL
RIGHTS OF THE SAN FRANCISCO BAY
AREA
131 Steuart Street, Suite 400
San Francisco, CA 94105
Telephone:    (415) 543-9444
Facsimile:    (415) 543-0296

Attorneys for *Plaintiffs*
J.L., M.V.B., M.D.G.B., and J.B.A., on behalf
of themselves and all others similarly situated

# UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| J.L., M.V.B., M.D.G.B., and J.B.A., on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>LEE FRANCIS CISSNA, Director, U.S. Citizenship and Immigration Services, KIRSTJEN M. NIELSEN, Secretary, U.S. Department of Homeland Security, ROBERT COWAN, Director, National Benefits Center, U.S. Citizenship and Immigration Services, UNITED STATES DEPARTMENT OF HOMELAND SECURITY, and UNITED STATES CITIZENSHIP AND IMMIGRATION SERVICES.<br><br>Defendants. | Case No.  CV<br><br>**CLASS ACTION COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**<br><br>**CLASS ACTION**<br><br>**ADMINISTRATIVE PROCEDURE ACT CASE** |

**INTRODUCTION**

1.      This class action seeks to challenge the federal government's sudden refusal to provide humanitarian relief in the form of Special Immigrant Juvenile Status ("SIJS") to abandoned, abused, or neglected immigrant children between the ages of 18 and 20.  Congress created SIJS to protect vulnerable immigrant children by allowing them to remain lawfully in the United States in loving and stable homes after one or more of their parents proved unwilling or unable to care for them.  The government's refusal to adjudicate SIJS petitions in accordance with 8 U.S.C. § 1101(a)(27)(J) (the "SIJS Statute") and regulations punishes already traumatized children who, in reliance on the SIJS Statute, brought themselves to the attention of the federal government and petitioned for relief.  Instead of granting them SIJS, the government imposed a new requirement for eligibility, resulting in the denial of hundreds of meritorious petitions for relief and placing them in jeopardy of deportation from the United States.

2.      The SIJS Statute delineates roles for the state courts and the federal agency in the SIJS petition process:  The state courts place the child in a custodial relationship and issue predicate orders ("SIJ Findings") with specified findings grounded in state child welfare laws because Congress recognized that state courts are best equipped to make such determinations, and U.S. Citizenship and Immigration Services ("USCIS") grants the SIJS petition, which must include the state court SIJ Findings, to confer immigration benefits on the child.  *See* 8 U.S.C. § 1101(a)(27)(J); *see also* 8 C.F.R. § 204.11(c)(3)-(6).  Accordingly, USCIS takes SIJ Findings from state courts, which themselves determine whether they have the authority under state law to issue such orders.  The SIJS statute makes SIJS available to any child who submits an SIJS petition to USCIS before turning 21 and extends authority to issue predicate orders to any state "juvenile court."

3.      Here, USCIS has acted outside its authority and usurped state authority by denying SIJS petitions to children who were between the ages of 18 and 20 when they received SIJ Findings from California probate courts.  Specifically, in February 2018, USCIS inexplicably and unlawfully began imposing a new requirement for SIJS eligibility:  that the state court have jurisdiction to return children to their *parent's* custody.  The agency's denials pursuant to this

new requirement cause immediate, life-threatening consequences to hundreds of vulnerable children and violate both the Administrative Procedure Act ("APA"), 5 U.S.C. § 706(2), and the Due Process Clause of the United States Constitution.

4.     Plaintiffs J.L., M.V.B., M.D.G.B., and J.B.A. ("Plaintiffs"), on behalf of themselves and all other similarly situated individuals (the "Proposed Class"), bring this action to protect immigrant children from the wrongful denial of their SIJS petitions and the lasting harm – including deportation and risk of death – that follows.  The wrongful denials have been accompanied by a USCIS Policy Memorandum announcing the agency's intent to issue a Notice to Appear ("NTA") and to initiate immigration removal proceedings against all individuals (including SIJS petitioners) whose applications for immigration benefits are denied and who do not otherwise have lawful status in the United States.  As a result, children who are wrongfully denied SIJS will now be placed in removal proceedings and potentially deported, forever losing the loving care and stability they have found in the United States.  Children who already are in removal proceedings when USCIS wrongfully denies their applications are at risk of imminent deportation.

5.     Until USCIS's unlawful imposition of a new requirement for SIJS eligibility, each of the Plaintiffs would have been found eligible for SIJS relief and protected from deportation.  In reliance on USCIS's previous petition grants and the clear language of the SIJS Statute, Plaintiffs petitioned USCIS for SIJS, seeking permanent protection in the United States.  As a result of USCIS's unlawful imposition of additional requirements for SIJS eligibility, Plaintiffs now risk deportation in spite of findings by state juvenile courts that removal from the United States is not in their best interests.  Thus, many Plaintiffs and Proposed Class members are in a worse position than if they had never applied for SIJS.

6.     Congress enacted the SIJS Statute to provide a path to long-term, legal immigration status for immigrant children in the United States, and such children are eligible for SIJS if they are under 21 years of age; unmarried; declared dependent on a state juvenile court, or placed in the custody of a state agency or individual appointed by such a court (such as being appointed a guardian); the subject of specific findings that reunification with one or both parents

1  is not viable due to abuse, abandonment, or neglect, and that it is not in the child's best interest to

2  return to his or her home country (SIJ Findings, specifically); and subject to the Department of

3  Homeland Security's ("DHS's") consent to the granting of SIJS, which is generally given when

4  the order includes a reasonable factual basis for all the required findings.  *See* 8 U.S.C.

5  §§ 1101(b)(1), 1101(a)(27)(J), and 1232(d)(6);  United States Citizenship and Immigration

6  Services Policy Manual ("USCIS Policy Manual"), Volume 6, Part J, Chapter 2(D)(5).  Each of

7  the Plaintiffs meets the SIJS eligibility requirements.

8     7. Each of these Plaintiffs and the class members they represent were placed in the

9  custody of guardians by the Probate Division of the California Superior Court ("Probate Court")

10  pursuant to California Probate Code ("Probate Code") § 1510.1(a), which specifically authorizes

11  guardianships for children ages 18 to 20 in California.  After receiving the Probate Court's orders,

12  each of the Plaintiffs submitted an application for SIJS to USCIS, believing that USCIS would

13  recognize the state court's findings, as the SIJS statute requires it to do, and would grant each of

14  them SIJS in conformation with the agency's previous practice.

15     8. The California legislature enacted Probate Code § 1510.1(a) in 2016 to allow

16  particularly vulnerable immigrant children ages 18 to 20 to obtain the custody orders they

17  desperately need to transition successfully into adulthood and receive the state court findings

18  necessary to petition for SIJS.  Until recently, USCIS consistently recognized the validity of SIJS

19  orders issued pursuant to Probate Code § 1510.1(a) for the purpose of adjudicating SIJS petitions.

20  The SIJS Statute requires that USCIS do so; in California, a "juvenile court" includes the

21  juvenile, probate, and family divisions of the Superior Court.  CAL. CODE CIV. PROC. § 155(a)(1).

22  California law is explicit that the Probate Court has jurisdiction to make determinations regarding

23  the custody and care of juveniles, and such jurisdiction extends to Plaintiffs and the class they

24  represent.  *See* Probate Code § 1510.1 (providing guardianships for 18-to-20-year-olds and

25  defining "minor," "child," and "ward" to include juveniles ages 18 to 20).  Until recently, USCIS

26  thereby correctly treated California's Probate Courts as juvenile courts and courts of competent

27  jurisdiction to make the requisite SIJ Findings.

28     9. However, as evidenced by USCIS's own statement and by the SIJS petition denials

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

3

COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF

and Notices of Intent to Deny ("NOIDs") USCIS issued to Plaintiffs, USCIS has imposed a new ultra vires requirement on SIJS petitioners and now unlawfully refuses to accept the Probate Court's jurisdiction and findings, depriving Plaintiffs of SIJS relief that they otherwise would have received.

10.     In denying Plaintiffs' and class members' applications, USCIS has for the first time asserted that California state courts lack the authority to make SIJ Findings in accordance with California law, contravening both the SIJS statute and state law.  This sudden and unjustifiable change in USCIS's practice underscores the arbitrary and capricious nature of these denials.

11.     Defendants (defined below) – who are charged with adjudicating SIJS petitions – issued a statement on April 24, 2018, admitting that they had recently begun to deny SIJS applications for children, like Plaintiffs, who cannot be reunified with their parents by the state court.  This admission came only after USCIS issued multiple denials or NOIDs in states such as California and New York – states that allow children between the ages of 18 and 20 to obtain custody or dependency orders and the SIJ Findings necessary to apply for SIJS.  By issuing this statement, Defendants effectively admitted that they were imposing additional requirements on SIJS eligibility that have no basis under federal law, undermine the Probate Court's findings, and impermissibly deny Plaintiffs and class members access to the protections mandated by Congress.

12.     USCIS's imposition of arbitrary requirements for SIJS eligibility violates the law, irreparably harms hundreds of vulnerable children who would otherwise have qualified for SIJS, and deprives these children of the protections they desperately need and deserve.  Obtaining SIJS relief allows children to remain safely in the United States with their legal guardians and provides a path to legal permanent residence and citizenship.  For countless children like Plaintiffs, a denial of SIJS will deprive them of loving guardians who can best protect their welfare.

13.     Plaintiffs therefore seek equitable and injunctive relief to enjoin this unlawful implementation of the law and unconstitutional action.  Plaintiffs respectfully request that this Court compel the government to rescind the improper SIJS denials already issued, reopen the SIJS petitions, and enjoin any future denials of SIJS petitions on the basis that the Probate Court

Manatt, Phelps &
Phillips, LLP
Attorneys At Law
Los Angeles

4                           COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF

1   lacked the authority to reunify children with their parents.

2                    **JURISDICTION, VENUE, AND INTRADISTRICT ASSIGNMENT**

3          14.     This Court has jurisdiction under 28 U.S.C. § 1331 because this action arises under

4   the Constitution and the laws of the United States.  This case arises under the Immigration and

5   Nationality Act ("INA"), 8 U.S.C. §§ 1101 *et seq*., the regulations implementing the INA, and the

6   APA, 5 U.S.C. §§ 701 *et seq*.  The United States has waived its sovereign immunity pursuant to 5

7   U.S.C. § 702.

8          15.     This Court has additional remedial authority under 28 U.S.C. § 1331 (federal

9   question), 28 U.S.C. §§ 2201 *et seq*. (declaratory relief), 5 U.S.C. §§ 701-706 (APA), and Federal

10  Rule of Civil Procedure 65 (injunctive relief).

11         16.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(2) and

12  (e)(1) because Defendants are officers or employees of the United States, or agencies thereof,

13  acting in their official capacities; because a substantial part of the events or omissions giving rise

14  to the claims occurred in this district; and because Plaintiff J.B.A. resides in this district, as do

15  many putative class members.

16         17.     Pursuant to Local Rules 3-2(c) and (d), assignment to the Northern District of

17  California, San Jose Division, is appropriate because Plaintiff J.B.A. resides in this division and

18  district, and because a substantial part of the events or omissions giving rise to this action

19  occurred in this division.

20                                              **PARTIES**

21     A.     **Plaintiffs**

22         18.     J.L. is a 19-year-old citizen of New Zealand who was abandoned by both her

23  parents and left in the care of relatives when she was four months old.  J.L. is a high school

24  graduate who lives in Compton, California, with her two aunts, who were declared her guardians

25  by the Los Angeles County Probate Court on January 20, 2017.  J.L. also received SIJ Findings

26  from the Probate Court on January 20, 2017.  She submitted her I-360 petition for SIJS to USCIS

27  on March 15, 2017, and expected that it would be approved within 180 days, which is the time

28  limit for adjudication under the SIJS statute.  *See* 8 U.S.C. § 1232(d)(2).  However, on April 17,

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

5                            COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF

1    2018, 13 months later, USCIS denied her petition.  USCIS's only grounds for denial was the

2    unlawful assertion that, when appointing guardians for 18-to-20-year-olds like J.L. pursuant to

3    California law, the Probate Court did not qualify as a "juvenile court" under the SIJS Statute

4    because it lacked legal authority to reunify such children with their parents.

5       19. M.V.B. is a 19-year-old Honduran boy who was abandoned by both his parents

6    shortly after birth.  On August 2, 2017, the Los Angeles County Probate Court appointed

7    M.V.B.'s cousin as his legal guardian and issued SIJ Findings on his behalf.  On August 14,

8    2017, M.V.B. submitted an SIJS application, which now has been pending for more than 11

9    months, despite USCIS's obligation to adjudicate the petition within 180 days of receipt.

10      20. M.D.G.B. is a 22-year-old Mexican girl who was abandoned by her father at birth

11   and abused and neglected by her mother throughout her childhood.  On February 1, 2017, the San

12   Diego County Probate Court appointed M.D.G.B.'s grandmother as her guardian and issued SIJ

13   Findings.  On February 2, 2017, M.D.G.B. submitted an SIJS application and expected that it

14   would be approved within 180 days.  However, 14 months later, on April 24, 2018, M.D.G.B.

15   received a NOID based on USCIS's new and unlawful requirement.

16      21. J.B.A. is a 22-year-old Mexican girl who left a difficult life in Mexico at the age of

17   seven, and then suffered years of traumatic and violent physical abuse at the hands of her father.

18   On January 20, 2017, the Alameda County Probate Court appointed J.B.A.'s former computer

19   science teacher, who had taken J.B.A. in when she was on the run from her father's abuse, as her

20   legal guardian and issued SIJ Findings on her behalf.  J.B.A. submitted her SIJS petition on

21   February 6, 2017, and expected that her petition would be approved within 180 days.  However,

22   17 months later, on July 20, 2017, J.B.A. received a NOID based on USCIS's new and unlawful

23   requirement.

24     **B.** **Defendants**

25      22. Defendants Lee Francis Cissna, Director, USCIS; Kirstjen Nielsen, Secretary,

26   DHS; and Robert M. Cowan, Director, USCIS National Benefits Center, are sued in their official

27   capacity and charged by law with the statutory and regulatory obligation to determine eligibility

28   for SIJS, pursuant to INA §§ 101(a)(27)(J), 103, and 245(h);  8 U.S.C. §§ 1101, 1103, and 1255;

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

6

COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF

and 8 C.F.R. § 204.11.

23. Defendant Lee Francis Cissna is the Director of USCIS, an "agency" within the meaning of the APA, 5 U.S.C. § 551(1). In this capacity, he oversees the adjudication of immigration benefits and establishes and implements governing policies. 6 U.S.C. § 271(a)(3), (b). He has ultimate responsibility for the adjudication of SIJS applications under the immigration laws, including the SIJS petitions submitted by Plaintiffs. Defendant Cissna is sued in his official capacity.

24. Defendant Kirstjen Nielsen is the Secretary of the DHS, an "agency" within the meaning of the APA, 5 U.S.C. § 551(1). In this capacity, she is responsible for the administration of the INA and for overseeing, directing, and supervising all DHS component agencies, including USCIS. Defendant Nielsen supervises Defendant Cissna. Defendant Nielsen is sued in her official capacity.

25. Defendant Robert M. Cowan is the Director of the USCIS National Benefits Center, which directly adjudicates SIJS applications and which issued the Proposed Class members' SIJS denials. Defendant Cowan is sued in his official capacity.

26. Defendant DHS is an executive agency of the United States and an "agency" within the meaning of the APA, 5 U.S.C. § 551(1). It is the department within which Defendant USCIS adjudicates SIJS petitions. USCIS reviews the petitions and the Secretary of Homeland Security determines whether or not to grant the petitions. 8 U.S.C. § 1101(a)(27)(J)(iii). DHS and USCIS operate within this district, with headquarters in Washington, D.C.

**BACKGROUND**

I. **THE SIJS STATUTE GRANTS HUMANITARIAN RELIEF TO VULNERABLE IMMIGRANT CHILDREN UNDER THE AGE OF 21 WHO HAVE BEEN PLACED IN THE CUSTODY OF AN INDIVIDUAL APPOINTED BY A JUVENILE COURT**

A. **The History and Expansion of the SIJS Statute**

27. In 1990, Congress created Special Immigrant Juvenile Status to protect abused, abandoned, and neglected immigrant children in foster care and to provide them a pathway to permanent residence. Immigrant Act of 1990, Pub. L. No. 101-649 § 153, 104 Stat. 4978 (1990).

The statute originally defined a special immigrant juvenile as:

> an immigrant (i) who has been declared a dependent on a juvenile court located in the United States and has been deemed eligible by that court for long-term foster care, and (ii) for whom it has been determined in administrative or judicial proceedings that it would not be in the alien's best interest to be returned to the alien's or parent's previous country of nationality or country of last habitual residence …

*Id.*

28.     Congress has since twice expanded the SIJS Statute's reach.  In 1994, Congress expanded the definition to include individuals who had been "*legally committed to, or placed under the custody of, a[] [state] agency or department.*"  Immigration and Technical Corrections Act of 1994, Pub. L. No. 103-416, § 219, 108 Stat. 4316 (1994) (emphasis added).  This amendment greatly increased the class of children eligible under the statute because children placed in the custody of the state include children placed in, for example, juvenile detention centers or other custodial arrangements, and not just children placed in the foster system.  Further, the amendment expanded the types of proceedings through which SIJS orders were now available for vulnerable immigrant children.  The statute did not specify the relevant age, but it was interpreted by the Immigration and Naturalization Service (the predecessor agency to USCIS) to apply to any individual under the age of 21 who otherwise met the SIJS criteria to conform to the INA's definition of a "child."[1]  *See* Special Immigrant Status, 58 Fed. Reg. 42843, 42850 (August 12, 1993) (codified at 8 C.F.R. 204.11).  This amendment allowed children who were placed in the custody of an individual through guardianship orders in California Probate Court – and who were thereby eligible for long-term foster care – to apply for and receive SIJS.

29.     In 2008, Congress once again significantly expanded SIJS eligibility.  The Trafficking Victims Protection Reauthorization Act of 2008 ("TVPRA") was passed with broad bipartisan support and removed the requirement that the child be eligible for foster care, replacing it with the more expansive requirement that a state juvenile court find that "reunification with 1 or

---

[1] "Child" is defined by the INA and California law as a person under 21 years of age.  *See* 8 U.S.C. § 1101(b)(1) (defining a child, in part, as an unmarried individual under the age of 21); Probate Code § 1510(a)-(d) (defining a "child" to include juveniles at the ages of 18-20).

Manatt, Phelps &
Phillips, LLP
Attorneys At Law
Los Angeles

8

COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF

both of the immigrant's parents is not viable due to abuse, neglect, or abandonment, or a similar basis under State law." Pub. L. No. 110-457, § 235, 122 Sat. 5080 (2008).[2]  In addition, consistent with the INA's definition of a "child," the amendments under the TVPRA provided age-out protections so that the SIJS classification would not be denied to anyone on the basis of age so long as the child was under 21 at the time of filing the SIJS petition (even if she turned 21 while the SIJS petition was pending).  *Id.*  By both eliminating the requirement that a child must be found eligible for long-term foster care in order to receive SIJS and creating age-out protections, Congress confirmed that SIJ Findings can be made in a wide range of state court proceedings, such as guardianship proceedings, and that children up to the age of 21 may apply for SIJS.

30.     Under the current SIJS Statute, petitioners must only be (i) under 21 years of age; (ii) unmarried; (iii) declared dependent on a state juvenile court,[3] or placed in the custody of a state agency or individual appointed by such a court (such as being appointed a guardian); (iv) the subject of specific findings that reunification with one or both parents is not viable due to abuse, abandonment, or neglect, and that it is not in the child's best interest to return to his or her home country (SIJ Findings); and (v) subject to DHS's consent to the SIJ classification.  *See* 8 U.S.C. §§ 1101(b)(1), 1101(a)(27)(J), and 1232(d)(6).[4]

**B.     The History of USCIS Deference to State Courts**

31.     Congress reserved a critical role for state courts in the SIJS framework because state courts are the experts on making child welfare determinations, including whether a child has been abused, abandoned, or neglected and what is in his or her best interest.  8 U.S.C. § 1101(a)(27)(J)(i)-(ii).  The SIJS Statute accordingly explicitly holds for the state court any determination about the child's welfare, custody, and best interest.  *Id.* (requiring state juvenile

---

[2] The regulations have not been updated to reflect this change.  *See* 8 C.F.R. § 204.11.

[3] "Juvenile court" as used in the federal SIJS statute is defined as "a court located in the United States having jurisdiction *under state law* to make judicial determinations about the custody and care of juveniles."  8 C.F.R. § 204.11(a) (emphasis added).

[4] SIJS is available without regard to how the child arrived in the United States.  The bars to permanent residence based on unlawful entry, which apply to most other categories of petitioners, are statutorily inapplicable to children granted SIJS.  *See* 8 U.S.C. § 1255(h).

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

9                    COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF

1  courts to make certain child welfare determinations); *see also* 8 C.F.R. § 204.11(c)(3)-(6) (same).

2      32.    In adjudicating the SIJS petition, USCIS must defer to the state court's findings.

3  USCIS is not authorized to second-guess a state court's decision that it has jurisdiction to make

4  findings under *state law* or the court's application of state law.  USCIS Policy Manual, vol. 6,

5  pt. J, ch. 2(D)(4) [attached hereto as Ex. 1] ("There is nothing in USCIS guidance that should be

6  construed as instructing juvenile courts on *how to apply their own state law*.") (emphasis added).

7      33.    Through its own policies and regulations, USCIS itself has continually reaffirmed

8  the statute's requirement that it give broad deference to state courts' determinations of their own

9  jurisdiction and power to issue the findings laid out in the SIJS Statute.  *See* 58 Fed. Reg. at

10  42848;  Interoffice Memorandum from Michael Aytes, U.S. Citizenship & Immigration Servs.,

11  AFM Update: Chapter 22: Employment-based Petitions (AD03-01), at 82 (Sept. 12, 2006)

12  (hereinafter "Aytes Memo") ("a juvenile court . . . could include any court whose jurisdiction

13  includes determinations as to juvenile dependency") [attached hereto as Ex. 2].  USCIS also has

14  reaffirmed that it is not permitted to conduct its own analysis of the SIJ Findings issued by the

15  state court.  *See* Aytes Memo at 82 ("The task of the adjudicator is not to determine whether the

16  [SIJ Finding] was properly issued.").  USCIS relies on the expertise of the juvenile courts in

17  making these determinations, never reweighing[5] the evidence to independently determine whether

18  the child was subjected to abuse, neglect, abandonment, or a similar basis under state law.

19      34.    Consistent with Congress's intent to rely on the state court's expertise in juvenile

20  welfare matters, the TVPRA simplified the requirement that DHS consent to the SIJS

21  classification, and DHS has interpreted this function to require deference to the state court's

22  findings.  USCIS Policy Manual, vol. 6, pt. J, ch. 2(D).  Recognizing the statute's mandate to

23  defer to state court determinations as to child welfare, "USCIS generally consents to the grant of

24  SIJ[S] classification when the order includes or is supplemented by a reasonable factual basis for

25  all of the required findings."  *Id.*[6]

26  ___

27  [5] USCIS does determine whether the state juvenile court, when issuing the SIJ Findings, relied on a factual record and applied state law.  *See* USCIS Policy Manual, vol. 6, pt. J, ch. 2(D)(5).

28  [6] USCIS utilizes the consent function only to review the juvenile court order solely to determine that the SIJ request is "bona fide," i.e., that it is "sought to obtain relief from abuse, neglect,

C.     **The Relevant California Legal Framework**

35.     California Probate Courts are specialized courts that make care and custody determinations about California's children through guardianship proceedings.

36.     The California Probate Code has long established that a guardian has "the care, custody, and control" of the ward.  Probate Code § 2351(a).  The guardian is responsible for providing a child with food, clothing, shelter, education, medical and dental needs, safety, protection, and physical and emotional growth, among other things.  *See* Probate Code §§ 1820 *et seq*.

1.     California Passed AB 900 to Provide Children Ages 18 to 20 Needed Protections

37.     In 2015, in an effort to provide protections to abused and vulnerable children over the age of 18, the California legislature passed Assembly Bill 900, which gave California Probate Courts jurisdiction to appoint legal guardians for children ages 18 to 20; further, the bill aligned the state law with federal law to allow children to seek SIJ Findings in Probate Courts until their 21st birthday.  *See* Assem. Bill No. 900 (2015-2016 Reg Sess.) § 1(a)(6) (hereinafter "AB 900").  This bill, codified in Probate Code Section 1510.1, allowed guardianships for certain vulnerable immigrant children older than 18 and expanded the definition of "child" and "minor" to include these children under age 21 seeking a guardianship order and SIJ Findings.[7]  *Id.*  The bill did not reflect an intent to create a new, separate type of guardianship, but rather was intended to authorize courts to apply existing guardianship laws to these older children who share the same vulnerabilities of those age 18 and under.  *See id.*

---

abandonment, or a similar basis under law."  *See* USCIS Policy Manual, vol. 6, pt. J, ch. 2(D)(5). In order to make this determination, "USCIS requires that the juvenile court order or other supporting evidence contain or provide a reasonable factual basis for each of the findings necessary for classification as a SIJ."  *Id.*

[7] "AB 900 also made conforming amendments to exclude section 1510.1 from section 1490's direction to construe the term 'guardian' to mean 'conservator' when used to refer to an adult ward, as well as to sections 1600 and 1601 to provide for termination of a guardianship on the ward's 21st birthday or on petition by the ward."  Memo.  From Judicial Council of Cal., New Rules and Forms Implementing AB 900 in Guardianship Proceedings at 3, fn. 6 (June 30, 2016) ("Judicial Counsel Memo") (citing Stats. 2015, ch. 694, §§ 2, 4-5.).

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

11

COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF

38.     The California legislature passed AB 900 to provide immigrant children with the custodial relationship they need for their long-term well-being, and to provide them with the opportunity to apply for SIJS.  Cal. Assem. Judiciary Comm., AB 900, (2015-2016 Reg. Sess.) comments, p. 3-4.

> 2.     Through AB 900, the California Legislature Expanded the Existing Guardianship Framework to 18-to-20-Year-Olds and Made a Path for SIJS for 18-to-20-Year-Olds in Accordance with the Federal SIJS Statute

39.     Although AB 900 allowed 18-to-20 year-olds to access guardianships, the bill did not change the process for appointing a guardian or the powers and duties afforded to a guardian.[8] Judicial Council of Cal., *New Rules and Forms Implementing AB 900 in Guardianship Proceedings* (June 30, 2016), p. 2 (The statute "does not reflect any intent to create a new, separate type of guardianship, but rather to authorize the court to apply existing guardianship law to these older youth").  *Cf.*  AB 900.  Nothing in AB 900 or its amendments to the Probate Code directs the court to apply a different standard in appointing a guardian or affords separate powers and duties to a guardian of an 18-to-20-year-old child.  Instead, the plain language of the amended Probate Code refers to a "guardian of the person" and a "guardianship of the person" without qualification, signaling the legislature's intent that the court appoint guardians as directed by the rest of the Probate Code.  Probate Code § 1510.1(a)–(b).  Subdivision (d) reinforces this interpretation by specifically defining "child," "minor," and "ward" to include 18-to-20-year-olds. By authorizing courts to apply the existing guardianship statutes without amendment, rather than enacting a separate statutory scheme, the legislature indicated its intent that existing processes would continue to apply.

40.     Given that under the amendment, guardians of 18-to-20-year-old children play the *same* role as a guardian of a child under 18, California's Probate Court judges can rely on their decades of experience and expertise in determining whether a guardian is suitable.  *See* Cal.

---

[8] A guardian's powers and duties are the same. The only difference between a guardianship for an 18-to-20-year-old is that the child must consent to the custodial relationship and may petition the court for termination of the guardianship.  *See* Probate Code §§ 1510.1(a), 1601.

1   Senate Judiciary Comm., AB 900, (2015-2016 Reg. Sess.) comment, § 2.

2        41.      The California Probate Court appoints a guardian for an 18-to-20-year-old if "it

3   appears necessary or convenient."  Probate Code § 1514(a).  In reaching this determination, the

4   best interest of the child is the primary concern.  *See* CAL. FAM. CODE § 3020(a).  Once

5   appointed, the guardian has "care, custody, and control of, and has charge of the education of, the

6   child."  Probate Code § 2351(a).  And through the guardianship, the child can access other

7   important benefits, including medical insurance, housing discrimination protections, and financial

8   aid.  *See* National Conference of State Legislatures, Dependent Health Coverage and Age for

9   Healthcare, http://www.ncsl.org/research/health/dependent-health-coverage-state-

10  implementation.aspx (as of August 13, 2018) (noting that the Patient Protection and Affordable

11  Care Act mandates that all health insurance carriers allow dependents to remain on their parents'

12  or guardians' family plans until the age of 26);  42 U.S.C. §§ 3602(k), 3604 (wards and their legal

13  guardians are protected from housing discrimination because they achieve familial status);

14  Federal Student Aid, Legal Guardianship,

15  https://studentaid.ed.gov/sa/glossary#Legal_Guardianship (as of August 13, 2018) (student in a

16  legal guardianship is considered an independent student for financial aid purposes).

17      **D.      The Probate Division of the California Superior Court is a "Juvenile Court"
          with Jurisdiction to Issue SIJ Findings for Children Over 18 Years of Age**

18

19       42.      In amending the TVPRA in 1994 and 2008, Congress expanded the types of courts

20  that can make a qualifying custody order and can issue SIJ Findings.  TVPRA of 2008, Pub. L.

21  No. 110-457, § 235(d)(i) (2008).  SIJ Findings can be made in a wide range of courts across

22  states.  By expanding SIJS eligibility to include not only children who are declared dependent on

23  the court but also children "legally committed to" or "placed in the custody of" individuals and

24  entities, the TVPRA made clear that Congress intended that USCIS recognize SIJ Findings issued

25  by any state court that had the power to place a child in any custodial relationship.  *See* 8 U.S.C. §

26  1101(a)(27)(J)(i); USCIS Policy Manual, vol. 6, pt. J, ch. 3(A)(1).  The USCIS Policy Manual

27  explicitly lists a probate court as a court that may be competent to issue an SIJ Finding.  *Id.*

28       43.      "Juvenile court" as used in the federal SIJS Statute is "a court located in the United

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

13                                    COMPLAINT FOR DECLARATORY AND
                                              INJUNCTIVE RELIEF

States having jurisdiction under state law to make judicial determinations about the custody and care of juveniles." 8 C.F.R. § 204.11(a). In California, a "juvenile court" includes the juvenile, probate, and family divisions of the Superior Court. CAL. CIV. PROC. CODE § 155(a)(1). California law is explicit that the Probate Court has jurisdiction to make determinations regarding the custody and care of juveniles. *Id.* The Probate Court makes custody determinations in the form of guardianships for children, and so falls squarely into the federal statute definition of a juvenile court. *See* Probate Code §§ 1514(a), 2351(a). California law is equally clear that this jurisdiction extends to Plaintiffs and the class they represent. *See* Probate Code § 1510.1 (providing for guardianships for 18-to-20-year-olds and defining the terms "minor" and "child" and "ward" to include juveniles ages 18 to 20).

44.     California courts have long recognized that the Probate Court is a juvenile court with the authority to make SIJ Findings. The California legislature adopted Code of Civil Procedure Section 155 in 2014, confirming that any division of the Superior Court presented with a case involving child welfare (including, but not limited to, juvenile, probate, and family law divisions of the Superior Court) is a juvenile court and may make SIJ Findings. *See* CAL. CIV. PROC. CODE § 155(a).

## II.   USCIS HAS IMPERMISSIBLY DENIED SIJS PETITIONS BASED ON THE IMPOSITION OF REQUIREMENTS THAT ARE CONTRARY TO THE SIJS STATUTE

### A.   USCIS'S Unlawful Imposition of New SIJS Eligibility Requirements and Its Life-Altering Impact on SIJS Petitioners Ages 18 to 20

45.     As detailed above, USCIS routinely approved SIJS petitions for children ages 18 to 20 who had received guardianships from state juvenile courts pursuant to Probate Code § 1510.1(a) and similar laws in other states. Upon information and belief, prior to 2017, USCIS had also not denied a *single* SIJS petition from a petitioner between ages 18 and 20 on the grounds that a state juvenile court of any state lacked authority to reunify the child with his or her parent.

46.     In the summer of 2017, USCIS drastically changed its SIJS adjudication policies. Instead of adjudicating SIJS petitions filed by children who obtained SIJS predicate orders after

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

14

COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF

turning 18, USCIS postponed such adjudications, leaving vulnerable children in limbo.[9]

47.    In February 2018, USCIS's legal counsel purportedly issued "new guidance" to USCIS, which was never published on USCIS's website and was not provided to the media until months later, stating that the SIJS Statute requires that a state court have the authority to return a child to the custody of her parent in order for that court to find that reunification is not viable. *See* Ted Hesson, *USCIS Explains Juvenile Visa Denials*, POLITICO (Apr. 25, 2018) and April 24, 2018, statement from USCIS spokesperson Jonathan Withington to Politico appended thereto (the "Withington Statement") [attached hereto as Ex. 3].

48.    Thereafter, USCIS began to issue denials to these children in New York and Texas, conveying its novel position that the state court that issued SIJ Findings – such as the New York Family Court, a state court with jurisdiction over "abuse and neglect proceedings," among other matters related to the care and custody of minors, N.Y. FAM. CT. ACT § 115 – was not a "juvenile court" under the SIJS statute when it issued guardianship orders for children ages 18 to 20.

49.    In or about March 2018, USCIS started imposing this new requirement (which again, had not yet been made public) in California by issuing NOIDs and denials to petitions filed for children with guardianship orders issued pursuant to Probate Code § 1510.1(a).  USCIS issued a NOID to J.L. on March 2, 2018, stating, "There is no indication that this procedural statute gives the court the authority to reunify a person over the age of 18 with a parent."  J.L. then received a denial of her petition on April 17, 2018.  The denial stated that "in order for a court order to be valid for the purpose of establishing SIJ eligibility, the court must have competent jurisdiction to . . . order reunification, if warranted."  The denial claimed that J.L. did not provide an order from a juvenile court of competent jurisdiction determining that reunification was not viable because "California law does not appear to allow a parent to be reunified with a child who

---

[9] USCIS has not timely adjudicated any of Plaintiffs' SIJS petitions.  For example, USCIS received J.L.'s application on March 21, 2017, but took no action to adjudicate it for nearly one year.  It acted only after J.L. filed a mandamus complaint nine months later (on December 28, 2017) in the United States District Court for the Central District of California, asking the court to order USCIS to adjudicate her petition and issue a declaratory judgment against USCIS.

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

15

COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF

has turned 18 because the parent cannot have custody of an adult."

50.     Soon after the first denial in the state of California on this novel basis, the New York Times contacted USCIS to investigate a purported change in how USCIS adjudicates SIJS applications of children who applied after their 18th birthdays.  Withington denied that any change had occurred.  *See* Liz Robbins, *A Rule Is Changed for Young Immigrants, and Green Card Hopes Fade*, N.Y. TIMES (Apr. 18, 2018) (quoting Withington's statement that "USCIS has not issued any new guidance or policy directives regarding the adjudication of SIJS petitions.  We remain committed to adjudicating each petition individually based on the merits of the case and safeguarding the integrity of our lawful immigration system.") [attached hereto as Ex. 4].

51.     Yet on April 24, 2018, USCIS reversed course and Withington issued a statement to a single media outlet, which has never been posted to USCIS's website or otherwise made publicly available, explaining an entirely different position for the denials and the reasoning behind future denials.  [Ex. 3 the Withington Statement].  In a reversal of his previous statements, Withington explained that USCIS decided to centralize adjudication of SIJ cases to the National Benefits Center and asked its Office of the Chief Counsel for legal guidance in late summer 2017 on pending cases filed by individuals over age 18.  *Id.*  Withington then noted that for the purposes of establishing eligibility for SIJS, USCIS had begun to impose a new requirement that a state court have the authority to force the return of a child to the custody of his or her parent in order for that court to find that reunification is not viable.  *Id.*  He concluded, "Since most courts cannot place a child back in the custody of their parent once the child reaches the age of majority . . . , those state courts do not have power and authority to make the reunification finding for purposes of SIJ eligibility."  *Id.*

52.     In the NOIDs and denials it has issued to Plaintiffs and children like them, USCIS has made clear how it applies this new requirement to California:  In USCIS's view, the Probate Court now no longer qualifies as a "juvenile court" when it appoints guardians to children and issues SIJ orders pursuant to Probate Code § 1510.1(a).[10]  According to USCIS, because the

---

[10] For instance, USCIS issued a NOID to Plaintiff M.D.G.B. on April 24, 2018, which stated that "because you had already reached the age of majority in California, there is no evidence that the

MANATT, PHELPS & PHILLIPS, LLP ATTORNEYS AT LAW LOS ANGELES

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

Probate Court (in its view) lacks the authority to order the physical reunification of children over 18 years of age with their parents, it also lacks the authority to determine that such reunification was "not viable" due to abandonment, abuse, neglect, or a similar basis found in state law. USCIS thus has signaled its intent to deny the SIJS petitions of all children who, like Plaintiffs, received guardianships under California Probate Code § 1510.1(a).

**B.**     **USCIS Has Unlawfully Denied SIJS Applications for Children Who Received Guardianships Pursuant to Probate Code Section 1510.1(a)**

      1.     <u>USCIS's Conclusion That the Probate Court Must Have the Ability to Reunify the Petitioners with Their Parents Is Contrary to the Requirements in the Federal Law</u>

53.     Defendants' denial or intent to deny SIJS to Plaintiffs on the grounds that the state court lacks authority to reunify Plaintiffs with their parents violates the SIJS statute because it imposes an extra-statutory eligibility requirement on SIJS petitions that does not exist anywhere in the law. Defendants' actions are arbitrary, capricious, and contrary to the plain text of the statutes, regulations, and agency guidance.

54.     USCIS's own Policy Manual makes no such suggestion that state juvenile courts must have the legal authority to reunify children with their parents in order to find that reunification is not viable. Additionally, Section 101(a)(27)(J)(i) of the INA contains no such suggestion, providing only that the state court determine that "reunification with 1 or both of the immigrant's parents is not viable due to abuse, neglect, abandonment, or a similar basis found under State law." INA § 101(a)(27)(J)(i). Not even the outdated SIJS Regulation suggests that a "juvenile court" must have such authority; indeed, the definition of a "juvenile court" makes no reference whatsoever to reunifying petitioners with their parents. *See generally* 8 C.F.R. § 204.11(a). Simply nothing in the SIJS Statute indicates that a juvenile court must possess authority to order SIJS petitioners back into the control of their parents.

---

state court had jurisdiction under California state law to make a legal conclusion about returning you to your parents' custody."

2. <u>USCIS's Conclusion That the State Court Must Have the Ability to Reunify the Petitioners with Their Parents Is Not A Permissible Construction of Any Federal Law</u>

55. Defendants' unilateral and unsupported imposition of this additional legal requirement also directly contravenes Congress's expansion of SIJS eligibility beyond foster-care youth. Allowing USCIS to implement this requirement would nullify TVPRA of 2008 and the 1994 amendments to the statute.

56. In each of the denials or NOIDs, USCIS has relied on 8 CFR § 204.11 to argue that a juvenile court can make SIJ Findings only if it has the authority to actually reunify petitioners with their natural parents. But those regulations were issued before the TVPRA, were never updated, and do not conform with the current law. The definition of a youth eligible for long-term foster care under that regulation is *no longer relevant* to SIJS eligibility because the TVPRA eliminated the requirement that a youth be found eligible for long-term foster care in order to be eligible for SIJS. Pub. L. No. 110-457, § 235(d)(i) (2008).

57. In addition to reliance on an outdated regulation, the agency's denials are inconsistent with the plain language of the statute regarding age limits. As noted above in section I. A. 3., the TVPRA provided age-out protections so that the SIJS classification would not be denied to anyone on the basis of age so long as they are under 21 years old on the date they file an SIJS petition (even if they turn 21 while the petition is pending). *Id.* Through this change, Congress reaffirmed and signaled its clear intent for children to access SIJS until the age of 21. USCIS spokesman Withington acknowledged that USCIS's new requirement would prevent most children 18 and older from receiving SIJS.

58. Accordingly, USCIS's recent NOIDs, revocations, and denials with respect to petitions filed under Probate Code § 1510.1(a) ignore the TVPRA of 2008 by denying SIJS to children based on their age at the time the guardianship order was made. Similarly, construing the SIJS statute to preclude 18-to-20-year-olds is not a permissible construction of the statute because it is contrary to the plain language of the INA, which includes people who have not yet reached their 21st birthday as "children" and thus eligible for SIJS.

3.   USCIS Fails to Defer to State Courts' Child Welfare Determinations as Required Under Federal Law

59.   In denying SIJS to Plaintiffs, USCIS fails to defer to the state court's findings as clearly mandated by the SIJS Statute.  As discussed in Section I. B. above, Congress vested in the state courts the power to make SIJ Findings.  The SIJS Statute specifically reserves for the juvenile court the ability to make the required custody, dependency, or legal commitment determination; to find that the child cannot reunify with one or both parents due to abuse, abandonment, or neglect; and to make the best-interest determination.  *See* 8 U.S.C. § 1101(a)(27)(J).  USCIS must defer to the state court's expertise in child welfare matters and to the state court's interpretations of its own laws when the state court makes SIJ Findings.  *See* USCIS Policy Manual, vol. 6, pt. J, ch. 3(A)(2) ("There is nothing in USCIS guidance that should be construed as instructing juvenile courts on *how to apply their own state law*.") (emphasis added).  However, Defendants have refused to defer to the state court and have begun to impermissibly challenge the state court's exercise of jurisdiction over Plaintiffs and other children like them, as well as the state court's finding that reunification is not viable under California law.  Defendants also refuse to recognize California law defining a child age 18-20 who consents to guardianship under Probate Code § 1510.1(a) as a "child" and a "minor," and incorrectly assert that these children have reached the "age of majority in California."  *See* Probate Code § 1510.1(d).

60.   The NOIDs, revocations, and denials issued to Plaintiffs and the Proposed Class impermissibly disregard the state courts' findings.  Instead, USCIS deliberately refuses to defer to state court determinations with respect to the welfare of children applying for SIJS under Probate Code Section 1510.1(a) and accordingly contravenes the law.

C.   **USCIS Has Improperly Issued NOIDS, Revocations, and Denials to the Names Plaintiffs and Putative Class Members in This Case**

61.   In this case, the Probate Court has found that the named Plaintiffs' and the putative class members' reunification with their parents would not be viable due to abandonment, abuse, neglect, or a similar basis under California law; however, Defendants refuse to recognize these

findings based on their newly established and unlawful requirement that the court be able to reunify Plaintiffs with their parents at the moment it makes the SIJ Findings.  As a direct consequence of Defendants' actions, the SIJS applications of all Plaintiffs and the Proposed Class, who otherwise qualify for SIJS, have been or will be denied.

<u>**SEVERE HARM TO PLAINTIFFS**</u>

62.  USCIS's arbitrary imposition of a new SIJS requirement and unlawful refusal to defer to state court SIJ Findings doom Plaintiffs' meritorious SIJS applications, jeopardize the stability Plaintiffs have been striving for in the care of their guardians, and render them vulnerable to deportations that a state court judge *already* determined to be against their best interests.

63.  The United States is the only home J.L. has ever known.  Her parents abandoned and neglected her, and then sent her to the United States when she was just four months old. J.L.'s guardians, F.T. and N.T., took her in and have provided a loving home where she has thrived – for instance, by graduating from high school.  When USCIS wrongfully denied J.L.'s SIJS petition based on its new, unlawful requirement, it threw into upheaval the stability J.L. and her guardians have worked hard to achieve.  J.L. was accepted to New Mexico Highlands University to pursue her ambition of becoming a doctor, but could not attend because her undocumented immigration status prevented her from securing student loans.[11]  The denial of her application has had a dramatic impact on J.L.'s emotional well-being.  Once excited to attend college and build a career, J.L. has felt like "giving up" because she feels as though she is stuck and her life is on hold.  Without status, she has been unable work, attend school, or build a life. Moreover, J.L. now finds herself vulnerable to removal from the only home she has ever known to a country to which she has no ties, about which she has no memories, and that she has not seen since infancy.

64.  M.V.B. is in removal proceedings, and denial of his SIJS petition will render him

---

[11]  Upon the approval of her SIJS petition, J.L. would have been eligible to immediately adjust her status to permanent residency in the United States because visa petitions for SIJ adjustment of status petitioners were available at the time when J.L.'s application was adjudicated and remain available today.  *See* 8 U.S.C. § 1255(a).

1    vulnerable to deportation to Honduras, where he has no family to care for him and where he faces

2    death at the hands of gang members who murdered his uncle and other family members and

3    threatened to kill him.  Violent gang members murdered his uncle before M.V.B.'s eyes, and then

4    attempted to kill M.V.B. too.  Now under the care of his guardian, N.V.D., for the first time in his

5    life M.V.B. is safe and well cared for.  With the support of his guardian, M.V.B. attended school

6    for the first time since he was a young child.  He relies on N.V.D. to overcome the trauma of

7    abandonment by his parents and the violence he witnessed in Honduras.  M.V.B. was diagnosed

8    with post-traumatic stress disorder and, thanks to his guardian's advocacy, has been able to access

9    critical therapy and other supportive services.  M.V.B.'s mental health is already declining

10   because of USCIS's unlawful actions.  M.V.B. describes that he cannot live in peace with the

11   apprehension over the potential that his SIJS petition will be denied, and that he will be deported

12   to a country where his life is in danger, he will lack the services he needs, and there will be no

13   one to care for him.  Like all Plaintiffs, he submitted his application with the expectation that

14   USCIS would follow the SIJS Statute, its own policies, and its decade of practice in adjudicating

15   SIJS petitions.  Because USCIS's new interpretation of the SIJS statute is an unlawful divergence

16   on all fronts, M.V.B., like all Plaintiffs, will unexpectedly be uprooted from the life he has built in

17   the United States and will face removal from the United States.

18         65.    M.D.G.B. is a hardworking college student who, without SIJS, will lose the life

19   she has worked to build.  If USCIS denies M.D.G.B.'s case based on its unlawful new

20   interpretation of the SIJS statute, as it has stated it intends to do, she will be torn from the

21   community in California that has embraced her, and will be sent back to family in Mexico who

22   beat her mercilessly and emotionally abused her.  Because her grandmother was appointed

23   M.D.G.B.'s guardian pursuant to AB 900, M.D.G.B. has been able to secure financial aid and

24   continue to pursue her studies full-time at California State University, Fullerton, where she is

25   studying animatronics.  Relying on the SIJS statute and USCIS's prior practice, M.D.G.B. applied

26   for SIJS to secure permanent stability in the United States.  After learning that USCIS intends to

27   deny her SIJS petition, M.D.G.B. has been left scared and devastated.  She is terrified to be

28   deported to Mexico, where she faces violence, where her limited Spanish would prevent her from

continuing in her studies or finding work, and where she would be removed from the custody of the only caregiver who has ever shown her love.

66.     When J.B.A. received her NOID, she felt as if her life was being sucked out of her. J.B.A. not only fears deportation back to Mexico because of the violence she faced there, but also seriously fears for her chances of survival because she would not receive the needed medical care that has helped her survive thyroid cancer in the United States.  J.B.A. is on her guardian's insurance, so she would not have access to the needed healthcare to combat her cancer and depression if deported back to Mexico.  She would not only lose her guardian, the one person who has helped her through tremendous physical and emotional pain related both to her illnesses and to past trauma, but would also lose her access to the very doctors who have likely kept her alive the past several years.

67.     Moreover, Plaintiffs are aware of at least one case in which an SIJS application was initially approved, but soon thereafter USCIS issued both a Reopen Notice to reconsider the decision and a NOID that same day, on the same grounds.

68.     The harms Plaintiffs are already enduring will extend to the Proposed Class they seek to represent.  USCIS's June 28, 2018, policy memorandum provides that, upon denial of Plaintiffs' and other members of the Proposed Class's SIJS petitions, USCIS *will* place these children into removal proceedings if they do not have other lawful status in the United States. *See* Office of the Director, U.S. Citizenship & Immigration Services, *Updated Guidance for the Referral of Cases and Issuance of Notices to Appear (NTAs) in Cases Involving Inadmissible Deportable Aliens,* p. 7 (June 28, 2018) [attached hereto as Ex. 5].[12]  Proposed Class members who, like M.V.B., are already in removal proceedings face a heightened likelihood of deportation as a result of the denial of their SIJS petitions.  USCIS thereby increases the risk of these children's deportations, thus ignoring the state courts' determinations that it is in these children's

---

[12] Moreover, beginning September 11, 2018, USCIS adjudicators can deny SIJS petitions for lack of initial evidence *without* first giving children an opportunity to respond to Requests for Evidence or NOIDs.  *See generally* USCIS Policy Memorandum, *Issuance of Certain RFEs and NOIDs; Revisions to* Adjudicator's Field Manual (AFM) *Chapter 10.5(a), Chapter 10.5(b)* (July 13, 2018) [attached hereto as Ex. 6].

1  best interests to remain in the custody of their caregivers in the United States.

2       69.    Plaintiffs, already traumatized children, reasonably relied on the requirements in

3  the SIJS Statute in petitioning the federal government for humanitarian relief.  In return,

4  Defendants' unlawful and arbitrary imposition of a new SIJS requirement punishes Plaintiffs for

5  their petitions and leaves them in far worse situations than if they had never petitioned for relief.

6  Plaintiffs brought themselves to the attention of the federal government.  Indeed, the information

7  provided in the SIJS petitions is the very information the government needs to initiate removal

8  proceedings against Plaintiffs – proceedings which belie state court findings, subject these

9  children to further emotional trauma, and deny them the opportunity to remain in the custody of

10  loving caregivers and to apply for lawful permanent residency.

11                         **CLASS ACTION ALLEGATIONS**

12       70.    Plaintiffs bring this action on behalf of themselves and all others who are similarly

13  situated pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(2).  A class action is proper

14  because this action involves questions of law and facts common to the classes, the class is so

15  numerous pursuant to Federal Rule of Civil Procedure 23(a)(1) that joinder of all members is

16  impractical, Plaintiffs' claims are typical of the claims of the class, Plaintiffs will fairly and

17  adequately protect the interests of the respective class, and Defendants have acted on grounds that

18  apply generally to the class, so that final injunctive relief or corresponding declaratory relief is

19  appropriate with respect to the class as a whole.  Like all class members, the class representatives

20  of the Proposed Class received guardianship orders and the accompanying SIJ Findings pursuant

21  to Probate Code § 1510.1(a), and have been denied or will be denied SIJS based on USCIS's

22  erroneous requirements that a state court have the authority to return a child to the custody of her

23  parent in order for that court to make the requisite SIJ Finding that reunification is not viable.

24       71.    Plaintiffs seek to represent the following class:  Children who have received

25  guardianship orders pursuant to Probate Code § 1510.1(a) and who have or will receive denials of

26  their SIJS petitions on the grounds that the state court cannot reunify them with their parents.

27       72.    The class meets the commonality requirements of Federal Rule of Civil Procedure

28  23(a)(2).  The members of the class are subject to denial or revocation of SIJS relief based on the

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

23

COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF

government's arbitrary and ad hoc imposition of additional requirements not supported by law on all SIJS applicants who received guardianships pursuant to Probate Code § 1510.1(a).  The lawsuit raises numerous questions of law common to members of the Proposed Class, including whether the government's action in imposing an additional requirement for SIJS relief and denying SIJS based on the new requirement violates class members' due process rights, whether the practice violates the INA or the Constitution, whether the government's action is arbitrary and capricious under the APA, and whether the action violated the APA's rulemaking requirements.

73.     The proposed class meets the typicality requirements of Federal Rule of Civil Procedure 23(a)(3) because the claims of the representative Plaintiffs are typical of the class.  Each of the class members has been denied or will be denied SIJS despite having met the requirements under the law for relief.  Plaintiffs and the proposed class also share the same legal claims, which assert the same substantive and procedural rights under the Due Process Clause, the INA, and the APA.

74.     The Proposed Class meets the adequacy requirements of Federal Rule of Civil Procedure 23(a)(4).  The representative Plaintiffs seek the same relief as the other members of the class – namely, an order that the government cannot deny SIJS to children who received guardianship orders pursuant to Probate Code § 1510.1(a) and the accompanying SIJ Findings, and approval of any wrongfully denied SIJS applications.

75.     The members of the class are readily ascertainable through Defendants' records.  The proposed class also satisfies Federal Rule of Civil Procedure 23(b)(2).  Defendants have acted on grounds generally applicable to the Proposed Class by denying class relief, or by indicating that they will deny relief, based on USCIS's new extra-statutory requirements.  Injunctive and declaratory relief is thus appropriate with respect to the class as a whole.

76.     The Proposed Class is represented by counsel from Public Counsel, Manatt, Phelps & Phillips, LLP, and the Lawyers' Committee for Civil Rights of the San Francisco Bay Area.  Counsel have extensive experience litigating class action lawsuits and other complex cases in federal court, including civil rights lawsuits.

**CLAIMS FOR RELIEF**

**COUNT ONE**

**FIFTH AMENDMENT – DUE PROCESS**

77.     Plaintiffs repeat and incorporate by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

78.     Immigrants who are physically present in the United States are guaranteed the protections of the Due Process Clause.  *See Zadvydas v. Davis*, 533 U.S. 678, 693 (2001).

79.     The Constitution "imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment." *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976).  A threshold inquiry in any case involving a violation of due process "is whether the plaintiffs have a protected property or liberty interest and, if so, the extent or scope of that interest." *Nozzi v. Hous. Auth. of L.A.*, 806 F.3d 1178, 1190–91 (9th Cir. 2015) (citing *Bd. of Regents of State Colls. v. Roth,* 408 U.S. 564, 569–70 (1972)).

80.     The property interests protected by the Due Process Clause "extend beyond tangible property and include anything to which a plaintiff has a 'legitimate claim of entitlement.'" *Nozzi*, 806 F.3d at 1191 (quoting *Roth*, 408 U.S. at 576–77).  "A legitimate claim of entitlement is created [by] . . . 'rules or understandings that secure certain benefits and that support claims of entitlement to those benefits.'" *Id*. (quoting *Roth*, 408 U.S. at 577).

81.     In addition to freedom from detention, *Zadvydas*, 533 U.S. at 690, the term "liberty" also encompasses the ability to work, raise a family, and "form the other enduring attachments of normal life." *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972).

82.     Plaintiffs' and class members' compliance with the statutory and regulatory requirements established in 8 U.S.C. §§ 1101(b)(1), 1101(a)(27)(J), and 1232(d)(6) and in 8 C.F.R. § 204.11 vests in them a constitutionally protected property and liberty interest in obtaining SIJS relief and the numerous benefits that follow, including adjustment of status to lawful permanent resident.  These protected interests exist as a result of the eligibility requirement in the SIJS Statute and the government's repeated granting of petitions under Probate Code

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

25

COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF

Section § 1510.1(a) until February 2018.  *See Goldberg v. Kelly*, 397 U.S. 254, 262 (1970);

*Perry v. Sindermann*, 408 U.S. 593, 601 (1972) ("A person's interest in a benefit is a 'property'

interest for due process purposes if there are such rules or mutually explicit understandings that

support his claim of entitlement to the benefit and that he may invoke at a hearing.")

83.     As set forth above, Plaintiffs and children like them had a reasonable expectation

of receiving SIJS once they met its well-defined and highly specific eligibility requirements,

based on the language of the SIJS statute and the government's implementation of the statute until

February 2018.

84.     Defendants' failure to evaluate Plaintiffs' and class members' petitions in

accordance with the SIJS statute and regulations violates the Due Process Clause.

85.     Moreover, Defendants' unlawful and arbitrary imposition of a new SIJS

requirement punishes Plaintiffs for their petitions and leaves already traumatized children in far

worse situations than if they had never petitioned for relief.  Plaintiffs brought themselves to the

attention of the federal government.  Indeed, the information provided in the SIJS petition is the

very information the government needs to initiate removal proceedings against Plaintiffs and

meet its burden of establishing their removability from the United States, returning them to

conditions of violence and neglect.  In fact, USCIS has recently issued a Memorandum indicating

that it will initiate removal proceedings against all individuals denied an affirmative immigration

benefit.

86.     Indeed, the government induced children to petition for SIJS relief only to change

the requirements once they had already applied and made themselves known to the federal

government.  The consequences to Plaintiffs and children like them are disastrous and life-

threatening.  The government's arbitrary imposition of a new requirement to SIJS eligibility

violates the due process rights of Plaintiffs and other otherwise-eligible SIJS applicants.

87.     The Due Process Clause also requires that the federal government's immigration

enforcement actions be fundamentally fair.  Here, the government's arbitrary decision to add

further requirements and deny SIJS petitions for children who received guardianships after their

18th birthday, without proper notice and justification after years of deferring to juvenile courts'

Manatt, Phelps &
Phillips, LLP
Attorneys At Law
Los Angeles

26

COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF

assessment of their own jurisdiction, is fundamentally unfair to petitioners and in contravention of the law.

88.     Defendants' due process violations have harmed Plaintiffs and will cause ongoing harm to Plaintiffs.

<strong>COUNT TWO</strong>

<strong>VIOLATION OF THE IMMIGRATION AND NATIONALITY ACT AND THE</strong>

<strong>ADMINISTRATIVE PROCEDURE ACT, 5 U.S.C. § 701 ET SEQ.</strong>

89.     Plaintiffs repeat and incorporate by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

90.     Defendants are subject to the Administrative Procedure Act.  *See* 5 U.S.C. § 703.

91.     The imposition of new SIJS requirements is final agency action subject to judicial review because it marks the "consummation of the . . . decisionmaking [sic] process" and is one "from which legal consequences will flow."  *Bennett v. Spear*, 520 U.S. 154, 178 (1997) (internal quotation marks omitted).

92.     The APA requires that courts "shall . . . hold unlawful and set aside agency action, findings, and conclusions found to be . . . not in accordance with law . . . [or] contrary to constitutional right, power, privilege, or immunity."  5 U.S.C. § 706(2)(A), (B).

93.     The INA deems a child eligible for SIJS if he or she is (i) under 21 years of age; (ii) unmarried; (iii) declared dependent on a state juvenile court, or placed in the custody of a state agency or individual appointed by such a court (such as being appointed a guardian); (iv) the subject of specific findings that reunification with one or both parents is not viable due to abuse, abandonment, or neglect, and that it is not in the child's best interest to return to his or her home country; and (v) the beneficiary of DHS consent to the granting of SIJS.  *See* 8 U.S.C. §§ 1101(b)(1), 1101(a)(27)(J), and 1232(d)(6).

94.     Defendants violate INA § 101(a)(27)(J) by arbitrarily imposing requirements not found in the SIJS Statute and denying SIJS petitions for children who have received guardianship orders pursuant to California Probate Code § 1510.1(a).

95.     As set forth above, Defendants' unlawful imposition of extra-statutory

MANATT, PHELPS & PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

1    requirements far exceeds their authority.  In the SIJS Statute, Congress recognized state courts'

2    exclusive authority to make determinations about child welfare pursuant to state law.  By denying

3    SIJS applications on the basis of a new requirement not contemplated by the SIJS Statute or prior

4    regulations, and by substituting their own decision-making for that of the California Probate

5    Court, Defendants have acted in contravention of the plain language of the SIJS Statute and

6    violated the APA.

7        96.     Defendants' imposition of a new requirement harms Plaintiffs and class members.

8        97.     There are no other adequate available remedies.

9                              **COUNT THREE**

10    **ADMINISTRATIVE PROCEDURE ACT – ARBITRARY AND CAPRICIOUS ACTION**

11        98.     Plaintiffs repeat and incorporate by reference each and every allegation contained

12    in the preceding paragraphs as if fully set forth herein.

13        99.     Defendants are subject to the Administrative Procedure Act.  *See* 5 U.S.C. § 703.

14    Defendants further violate the APA by their arbitrary and capricious actions.  The official act of

15    imposing requirements for SIJS eligibility is a final agency action subject to judicial review

16    because it marks the "consummation of the . . . decisionmaking [sic] process" and is one "from

17    which legal consequences will flow."  *Bennett*, 520 U.S. at 178 (internal quotation marks

18    omitted).

19        100.    The "comprehensive" scope of the APA provides a "default" "remed[y] for all

20    interactions between individuals and all federal agencies."  *W. Radio Servs. Co. v. U.S. Forest*

21    *Serv.*, 578 F.3d 1116, 1123 (9th Cir. 2009).

22        101.    The APA requires that courts "shall . . . hold unlawful and set aside agency action,

23    findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or

24    otherwise not in accordance with law" or "without observance of procedure required by law."  5

25    U.S.C. § 706(2)(A), (D).

26        102.    The government's decision to break from years of consistent practice and change

27    the eligibility requirements for SIJS relief for children who otherwise meet the statutory

28    requirements violates the APA's prohibition against "arbitrary and capricious" agency action

1    because it is contrary to federal law, fails to defer to the state court's interpretation of its own

2    laws, exceeds the authority delegated to the agency by Congress, and imposes requirements not

3    contemplated by Congress.

4         103.    Moreover, the decision to impose additional requirements for a state court to issue

5    SIJ Findings is also arbitrary and capricious because the government previously determined that

6    state courts can issue the predicate findings for those over 18 years of age, and Defendants have

7    not provided a reasoned analysis for their departure from this determination.

8         104.    The agency's decision to impose insurmountable requirements for children seeking

9    SIJS who otherwise qualify for such relief under the clear language of the statute and its refusal

10   (for the first time) to defer to the California Probate Court's determination and exercise of its own

11   jurisdiction also violate the APA.  A decision based on a misinterpretation of clearly established

12   law is necessarily arbitrary and capricious, and it is particularly so here, where USCIS

13   circumvents the authority that Congress reserved for the state courts.

14        105.    Defendants' actions must also be set aside as arbitrary and capricious because

15   Defendants have not provided adequate reasons for the imposition of requirements outside the

16   statute.  This failure is unsurprising given that USCIS's actions clearly circumvent the SIJS

17   statute and cannot be adequately explained.

18        106.    Plaintiffs and hundreds of vulnerable children reasonably relied on the plain text of

19   the SIJS Statute and on Defendants' past adjudication of SIJS petitions by acknowledging that

20   they have been abused, abandoned, or neglected, and by bringing themselves into the purview of

21   the federal government.

22        107.    The government's blatant disregard for the reasonable reliance of Plaintiffs and

23   hundreds of other vulnerable children is the hallmark of arbitrary and capricious action and an

24   abuse of discretion, and the imposition of a new requirement for SIJS eligibility is in violation of

25   the APA and must be vacated.  *See Perez v. Mortg. Bankers Ass'n*, 135 S. Ct. 1199, 1209 (2015).

26        108.    Defendants' violation has caused Plaintiffs irreparable harm.

27

28

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF

**COUNT FOUR**

**ADMINISTRATIVE PROCEDURE ACT – NOTICE-AND-COMMENT RULEMAKING**

109.    Plaintiffs repeat and incorporate by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

110.    Defendants are subject to the Administrative Procedure Act.  *See* 5 U.S.C. § 703. Defendants further violate the APA because the APA and 5 U.S.C. §§ 553 and 706(2)(D) require that federal agencies conduct rulemaking before engaging in action that impacts substantive rights.

111.    USCIS is an "agency" under the APA, and the implementation of new legal guidance and resulting imposition of a new SIJS requirement and the actions that USCIS has taken are "rules" under the APA.  *See* 5 U.S.C. § 551(1), (4).

112.    In implementing the new USCIS policy, the agency has changed the substantive criteria necessary for obtaining SIJS relief.  Defendants did not follow the procedures required by the APA before taking action impacting these substantive rights.

113.    With exceptions that are not applicable here, agency rules must go through notice-and-comment rulemaking.  *See* 5 U.S.C. § 553.

114.    Defendants promulgated and implemented these rules without authority and without notice-and-comment rulemaking, in violation of the APA.  Plaintiffs are impacted because they have not had the opportunity to comment on the imposition of a new SIJS eligibility requirement.

115.    Defendants' violation has caused ongoing harm to Plaintiffs and other vulnerable children.

**COUNT FIVE**

**ADMINISTRATIVE PROCEDURE ACT – CONSTITUTIONAL VIOLATION**

116.    Plaintiffs repeat and incorporate by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

117.    Defendants are subject to the Administrative Procedure Act.  *See* 5 U.S.C. § 703. The imposition of new SIJS requirements is final agency action subject to judicial review because

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

30

COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF

it marks the "consummation of the . . . decisionmaking [sic] process" and is one "from which

legal consequences will flow." *Bennett*, 520 U.S. at 178 (internal quotation marks omitted).

118.    The "comprehensive" scope of the APA provides a "default" "remed[y] for all

interactions between individuals and all federal agencies." *W. Radio Servs.*, 578 F.3d at 1123.

119.    The APA requires that courts "shall . . . hold unlawful and set aside agency action,

findings, and conclusions found to be . . . not in accordance with law . . . [or] contrary to

constitutional right, power, privilege, or immunity." 5 U.S.C. § 706(2)(A), (B).

120.    For the reasons set forth above, the government's fundamentally unfair and

arbitrary decision to add requirements to the SIJS statute and deny SIJS petitions for children who

received guardianships after their 18th birthday, without proper notice and justification after years

of deferring to juvenile courts' assessments of their own jurisdictions, violates the Due Process

Clause and is unconstitutional, and therefore must be vacated.

121.    Defendants' constitutional violation has caused Plaintiffs irreparable harm.

## COUNT SIX

## DECLARATORY JUDGMENT THAT THE IMPOSITION OF A NEW SIJS REQUIREMENT IS UNLAWFUL

122.    Plaintiffs repeat and incorporate by reference each and every allegation contained

in the preceding paragraphs as if fully set forth herein.

123.    As set forth above, pursuant to the SIJS Statute and the intent of Congress, state

courts issue predicate orders with specified findings related to child welfare and USCIS grants

SIJS petitions based on the underlying state court determinations. In February 2018, USCIS

inexplicably began denying SIJS petitions for children between the ages of 18 and 20 who

obtained SIJS orders from California Probate Courts, finding that the state courts must have

jurisdiction over the care and custody of the juvenile under state law and the authority and power

to place the petitioner under the custody of a parent. Until this change, each of the Plaintiffs

would have been found eligible for SIJS relief and protected from deportation.

124.    The Declaratory Judgment Act, 28 U.S.C. § 2201, allows this court, "[i]n a case of

actual controversy within its jurisdiction," to "declare the rights and other legal relations of any

1    interested party seeking such declaration, whether or not further relief is or could be sought."  28

2    U.S.C. § 2201(a).

3        125.    As SIJS-eligible children, Plaintiffs have an interest in the lawful adjudication of

4    SIJS petitions.  The government's arbitrary decision to impose a new requirement for SIJS

5    eligibility harmed Plaintiffs and continues to cause ongoing harm to Plaintiffs.

6        126.    There is an actual controversy regarding whether Defendants' imposition of a new

7    requirement for SIJS eligibility and denial of SIJS petitions was lawful and is lawful today.

8        127.    Plaintiffs are entitled to a declaratory judgment pursuant to 28 U.S.C. § 2201(a)

9    that the imposition of a new requirement for SIJS relief for children with a guardianship order

10   pursuant to California Probate Code § 1510.1(a) is unlawful.

11                              **PRAYER FOR RELIEF**

12       WHEREFORE, Plaintiffs pray that this Court grant the following relief:

13       1.    Permit this case to proceed as a class action and certify a class as defined when

14   requested by Plaintiffs in a motion for class certification;

15       2.    Declare that Defendants' denial of SIJS and imposition of a new requirement for

16   SIJS relief, which is contrary to state and federal law, violates the Administrative Procedure Act,

17   Immigration and Nationality Act, and/or the Due Process Clause of the Fifth Amendment;

18       3.    Declare that the imposition of a new requirement for SIJS eligibility and resulting

19   denials of Plaintiffs' and the putative class members' SIJS petitions by USCIS were arbitrary,

20   capricious, and contrary to state and federal law;

21       4.    Declare that a Probate Court appointing a guardian under Probate Code

22   § 1510.1(a) is a juvenile court under INA § 101(a)(27)(J);

23       5.    Enjoin Defendants from, permanently and preliminarily:

24           a.    Denying SIJS petitions on the grounds that a California Probate Court does

25   not have jurisdiction or authority to "reunify" an 18 to 20 year old with her parents;

26           b.    Initiating removal proceedings against or removing any SIJS petitioner

27   who was appointed a guardian pursuant to Section 1510.1(a) of the California Probate Code and

28   whose SIJS petition has been denied on the grounds that the California Probate Court did not

Manatt, Phelps &
Phillips, LLP
Attorneys At Law
Los Angeles

32

COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF

1  have jurisdiction or authority to "reunify" an 18 to 20 year old petitioner with her parents.

2  Plaintiffs further request the Court; and

3          c.      Providing less than 14 days' notice to Plaintiffs' counsel before Defendants

4  take any adverse adjudicatory or enforcement action against any of the Plaintiffs or members of

5  the Proposed Class during the pendency of this litigation;

6      6.      Rescind the improper denials of Plaintiffs' and class members' SIJS petitions, and

7  order USCIS to reopen their petitions;

8      7.      Grant Plaintiffs reasonable attorneys' fees, costs, and other disbursements pursuant

9  to the Equal Access to Justice Act, 28 U.S.C. § 2412; and

10     8.      Grant any other and further relief that this Court may deem just and proper.

11

12 Dated:  August 14, 2018                MANATT, PHELPS & PHILLIPS, LLP

13                                        MATTHEW KANNY
                                          ADRIENNE MARSHACK
14                                        SIRENA CASTILLO

15                                        PUBLIC COUNSEL
                                          JUDY LONDON
16                                        SARA VAN HOFWEGEN
                                          MARY TANAGHO ROSS
17
                                          LAWYERS' COMMITTEE FOR CIVIL RIGHTS
18                                        OF THE SAN FRANCISCO BAY AREA
                                          KEITH WURSTER
19

20                                        By: **/s/**_____
                                              Sirena Castillo
21                                            Attorneys for *Plaintiffs*
                                              J.L., M.V.B., M.D.G.B., and J.B.A., on behalf
22                                            of themselves and all others similarly situated

23

24
   204577938.5
25

26

27

28