MATTHEW KANNY (SBN 167118)
MKanny@Manatt.com
ADRIANNE MARSHACK (SBN 253682)
AMarshack@Manatt.com
SIRENA CASTILLO (SBN 260565)
SCastillo@Manatt.com
MANATT, PHELPS & PHILLIPS, LLP
11355 West Olympic Boulevard
Los Angeles, CA 90064-1614
Telephone:    (310) 312-4000
Facsimile:    (310) 312-4224

KEITH WURSTER (SBN 198918)
kwurster@lccr.com
LAWYERS' COMMITTEE FOR CIVIL
RIGHTS OF THE SAN FRANCISCO BAY
AREA
131 Steuart Street, Suite 400
San Francisco, CA 94105
Telephone:    (415) 543-9444
Facsimile:    (415) 543-0296

JUDY LONDON (SBN 149431)
jlondon@publiccounsel.org
SARA VAN HOFWEGEN (SBN 266985)
svanhofwegen@ publiccounsel.org
MARY TANAGHO ROSS (SBN 280657)
mross@publiccounsel.org
PUBLIC COUNSEL
610 South Ardmore Avenue
Los Angeles, CA 90005
Telephone:    (213) 385-2977
Facsimile:    (213) 385-9089

Attorneys for *Plaintiffs*
J.L., M.V.B., M.D.G.B., and J.B.A., on behalf
of themselves and all others similarly situated

# UNITED STATES DISTRICT COURT

# FOR THE NORTHERN DISTRICT OF CALIFORNIA

| J.L., M.V.B., M.D.G.B., and J.B.A., on behalf of themselves and all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> LEE FRANCIS CISSNA, Director, U.S. Citizenship and Immigration Services, KIRSTJEN M. NIELSEN, Secretary, U.S. Department of Homeland Security, ROBERT COWAN, Director, National Benefits Center, U.S. Citizenship and Immigration Services, UNITED STATES DEPARTMENT OF HOMELAND SECURITY, and UNITED STATES CITIZENSHIP AND IMMIGRATION SERVICES, <br><br> Defendants. | Case No. CV 18-4914 <br><br> **PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PRELIMINARY INJUNCTION** <br><br> Filed Concurrently Herewith: <br><br> (1) Plaintiffs' Appendix of Evidence; and <br><br> (2) Motion to Proceed With Pseudonyms. <br><br> Date: TBD <br> Time: TBD <br> Ctrm: TBD <br><br> Action Filed:  August 14, 2018 |
|---|---|

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ................................................................................................. 2

II.   RELEVANT BACKGROUND ............................................................................ 4

    A.    The SIJS Statute and Deference To State Courts. ................................... 4

    B.    The Relevant California Legal Framework. ............................................ 5

    C.    USCIS Denied Or Intends to Deny SIJS Petitions Of Children Aged
    18 To 20 Based On The Imposition Of New Requirements Contrary
    to The Statute. ...................................................................................... 6

    D.    Plaintiffs And The Proposed Class Are Experiencing Irreparable
    Harm And Are At Immediate Risk Of Further Irreparable Harm. ......... 8

III.  STANDARD OF REVIEW ............................................................................... 10

IV.   PLAINTIFFS ARE LIKELY TO SUCCEED ON THE MERITS. ................ 10

    A.    USCIS's Imposition Of A New SIJS Eligibility Requirement Is
    Arbitrary And Capricious and Violates The APA. .............................. 10

    B.    USCIS's New Requirement Violates Due Process. ............................. 17

V.    PLAINTIFFS ARE SUFFERING AND WILL CONTINUE TO SUFFER
IRREPARABLE HARM WITHOUT  PRELIMINARY INJUNCTIVE RELIEF. ......... 21

VI.   THE REMAINING FACTORS SUPPORT PRELIMINARY RELIEF. ......................... 24

VII.  CONCLUSION ................................................................................................. 25

# TABLE OF AUTHORITIES

**Page**

## CASES

*Abdi v. Duke,*
    280 F.Supp.3d 373 (W.D.N.Y. 2017) ...................................................................25

*Amerijet Int'l, Inc. v. Pistole,*
    753 F.3d 1343 (D.C. Cir. 2014) ......................................................................15

*Anderson v. Butz,*
    550 F.2d 459 (9th Cir. 1977)..........................................................................17

*Ankenbrandt v. Richards,*
    504 U.S. 689 (1992) .......................................................................................13

*Ariz. Dream Act Coal. v. Brewer,*
    757 F.3d 1053 (9th Cir. 2014)........................................................................22

*Ariz. Dream Act Coal. v. Brewer,*
    855 F.3d 957 (9th Cir. 2017).....................................................................22, 25

*Baldwin v. Hale,*
    68 U.S. (1 Wall) 223 (1863) .....................................................................22, 25

*B.F. v. Superior Court,*
    207 Cal.App.4th 621 (2012)..............................................................................6

*Bd. of Regents of State Colls. v. Roth,*
    408 U.S. 564 (1972) .......................................................................................18

*Beltran v. Meyers,*
    677 F.2d 1317 (9th Cir. 1982)........................................................................23

*Chalk v. U.S. Dist. Ct. Cent. Dist. of Cal,*
    840 F.2d 701 (9th Cir. 1988)..........................................................................24

*Doe v. Trump,*
    288 F.Supp.3d 1045 (W.D. Wash. 2017), *reconsideration denied,* 284
    F.Supp.3d 1182 (W.D. Wash. 2018)...............................................................24

*Elrod v. Burns,*
    427 U.S. 347 (1976) .......................................................................................22

*Encino Motorcars, LLC v. Navarro,*
    136 S. Ct. 2117 (2016) .............................................................................10, 14

*Engquist v. Or. Dep't of Agric.,*
    478 F.3d 985 (9th Cir. 2007)..........................................................................19

*FCC v. Fox Television Stations, Inc.,*
    556 U.S. 502 (2009) .......................................................................................14

*Franklin v. Massachusetts,*
    505 U.S. 788 (1992) .......................................................................................10

*Inland Empire –Immigrant Youth Collective*,
No. EDCV 17-2048 PSG (SHKx), 2018 WL 1061408, (C.D. Cal. Feb. 26, 2018) ......................24

*I.N.S. v. Yueh-Shaio Yang*,
519 U.S. 26 (1996) .................................................................................................................14

*Johnson v. Newburgh Enlarged School Dist.*,
239 F.3d 246, 252 (2d. Cir. 2001) ........................................................................................14

*League of Wilderness Defs./Blue Mountains Biodiversity Proj. v. Connaughton*,
752 F.3d 755 (9th Cir. 2014) .................................................................................................25

*Leiva-Perez v. Holder*,
640 F.3d 962, 970 (9th Cir. 2011) ........................................................................................23

*Lester v. Parker*,
235 F.2d 787 (9th Cir. 1956) .................................................................................................22

*Lopez-Valenzuela v. Arpaio*,
770 F.3d 772 (9th Cir. 2014) ...........................................................................................18, 19

*Marsh v. Cnty. of San Diego*,
680 F.3d 1148 (9th Cir. 2012) ..........................................................................................18, 19

*Mathews v. Eldridge*,
424 U.S. 319 (1976) ..............................................................................................................21

*Matter of Amaya*,
21 I&N Dec. 583 (BIA 1996) ...............................................................................................20

*Matter of [Redacted]*,
(AAO Sept. 22, 2009) ...........................................................................................................12

*Matter of [Redacted]*,
(AAO Sept. 22, 2009) ...........................................................................................................12

*Matter of E-D-J-B-F-*,
ID# 00230237 (AAO June 5, 2017) .......................................................................................5

*Matter of L-M-R-R-*,
ID# 336648 (AAO June 24, 2017) .........................................................................................5

*Matter of P-P-C-A*,
ID# 47632 (AAO June 24, 2017) ..........................................................................................12

*Medina v. U.S. Dep't of Homeland Security*,
---F.Supp.3d---, 2018 WL 2214085, *12 (W.D. Wash. May 15, 2018) ....................................22

*Melendres v. Arpaio*,
695 F.3d 990 (9th Cir. 2012)...................................................................................................22

*Morton v. Ruiz*,
415 U.S. 199 (1974) ...............................................................................................................17

Manatt, Phelps &
Phillips, LLP
Attorneys At Law
Los Angeles

iii

MOTION FOR PRELIMINARY INJUNCTION

*Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*,
 463 U.S. 29 (1983) ...............................................................................11, 16

*National Cable & Telecomm. Ass'n v. Brand X Internet Services*,
 545 U.S. 967 (2005) ...........................................................................................8

*Nozzi v. Hous. Auth. Of L.A.*,
 806 F.3d 1178 (9th Cir. 2015) .................................................................18, 19, 21

*Osorio-Martinez v. U.S.*
 893 F.3d 153 (3d. Cir. 2018) ...................................................................18, 19, 23

*Perez v. Mortg. Bankers Ass'n*,
 135 S.Ct. 1199 (2015) ............................................................................10, 14, 16

*Perez-Olano v. Gonzalez*,
 248 F.R.D. 248 (C.D. Cal. 2008) ..................................................................13, 22

*Perry v. Sindermann*,
 408 U.S. 593 (1972) ..........................................................................................18

*Rodriguez v. Robbins*,
 715 F.3d 1127 (9th Cir. 2013) .............................................................................25

*Sacora v. Thomas*,
 628 F.3d 1059 (9th Cir. 2010) .............................................................................10

*San Diego Air Sports Ctr., Inc. v. F.A.A.*,
 887 F.2d 966 (9th Cir. 1989) ..............................................................................16

*Sea-Land Serv., Inc. v. Dep't of Transp.*,
 137 F.3d 640 (D.C. Cir. 1998) ............................................................................14

*SEC v. Chenery Corp.*,
 332 U.S. 194 (1947) ..........................................................................................14

*Sec'y of Agric. v. United States*,
 347 U.S. 645 (1954) ..........................................................................................14

*Torres v. U.S. Dep't of Homeland Security*,
 No. 17-cv-1840, 2017 WL 4340385 (S.D. Cal. Sept. 29, 2017) .............................23

*Thompson v. Washington*,
 497 F.2d 626 (D.C. Cir. 1973) ............................................................................21

*United States v. Caceres*,
 440 U.S. 741 (1979) ..........................................................................................20

*Winter v. Nat. Res. Def. Cncl.*,
 555 U.S. 7 (2008) ....................................................................................10, 21, 25

*Wong Wing v. United States*,
 163 U.S. 228 (1896) ..........................................................................................17

Manatt, Phelps &
Phillips, LLP
Attorneys At Law
Los Angeles

MOTION FOR PRELIMINARY INJUNCTION

*Yale-New Haven Hosp. v. Leavitt*,
    470 F.3d 71 (2d Cir. 2006)..................................................................................16

**STATUTES**

8 C.F.R. § 204.11(a)................................................................................*passim*

22 C.C.R. § 50301.................................................................................................23

5 U.S.C. § 552(a)(1)(D)..................................................................................16, 17

5 U.S.C. § 706(2)(A)......................................................................................10, 14

5 U.S.C. § 706(2)(C)..........................................................................................14

5 U.S.C. § 706(2)(D)..........................................................................................17

8 U.S.C. § 1101(a)(27)(J).......................................................................*passim*

8 U.S.C. § 1101(b)(1)..............................................................................*passim*

8 U.S.C. § 1232(d)(6)..........................................................................................18

8 U.S.C. § 1255(a).................................................................................................9

Administrative Procedure Act, 5 U.S.C. §§ 701, et seq..............................*passim*

Cal. Code Civ. Pro. § 155 .............................................................................6, 11

Cal. Prob. Code § 1510.1 ..........................................................................*passim*

Cal. Prob. Code § 2351(a)....................................................................................11

Due Process Clause of 5th Amendment of the U.S. Constitution.......................17

Due Process Clause of 14th Amendment of the U.S. Constitution...................17

Federal Rule of Civil Procedure 65......................................................................1

Immigrant Act of 1990, Pub. L. No. 101-649 § 153, 104 Stat. 4978 (1990)....................................4

Immigration and Technical Corrections Act of 1994, Pub. L. No. 103-416, § 219
    108 Stat. 4316 (1994).....................................................................................4

Trafficking Victims Protections Reauthorization Act, Pub. L. 110-457, 122 Stat.
    5044, 5080 § § 235(d) (2008) ...........................................................4, 6, 12, 13

**OTHER AUTHORITIES**

Special Immigrant Status, 58 Fed. Reg. 42843, 42848 (Aug. 12, 1993) .........................5

USCIS Policy Manual, vol. 6, pt. J, ch. 1 .........................................................18

USCIS Policy Manual, vol. 6, pt. J, ch. 2 ................................................5, 12, 13

USCIS Policy Manual, vol. 6, pt. J, ch. 3 ..........................................12, 13, 15

Cal. Assem. Bill No. 900 (2015-2016 Reg. Sess.)...............................................5

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

Department of Homeland Security, Citizen. & Immigration Services Ombudsman, Recommendation to the Director of USCIS (Dec. 11, 2015) .................................................12

Judicial Council of Cal., *New Rules and Forms Implementing AB 900 in Guardianship Proc.* (2016) ...........................................................................................5

Liz Robbins, *A Rule is Changed for Young Immigrants, and Green Card Hopes Fade*, NEW YORK TIMES (Apr. 18, 2018)..................................................................7

Michael Aytes, Interoffice Memorandum, U.S Citizenship & Immigration Servs., AFM Update: Ch. 22: Employment-Based Petitions (AD03-01), at 82 (Sept. 12, 2006) ...........................................................................................................5

Ted Heeson, *USCIS Explains Juvenile Visa Denials*, POLITICO (April 25, 2018) .......................7

Office of the Director, Executive Office of Immigration Review, Memorandum re Case Priorities and Immigration Court Performance (Jan. 17, 2018) ........................4

Office of the Director, USCIS, Updated Guidance for the Referral of Cases and Issuance of Notices to Appear (NTAs) (June 28, 2018) .........................................4, 10, 20, 23

Office of the Director, USCIS, Policy Memorandum re Issuance of Certain RFEs and NOIDs; Revisions to Adjudicator's Field Manual (AFM) (July 13, 2018) ........................8

MOTION FOR PRELIMINARY INJUNCTION

Manatt, Phelps & Phillips, LLP
ATTORNEYS AT LAW
LOS ANGELES

# NOTICE OF MOTION AND MOTION FOR PRELIMINARY INJUNCTION

PLEASE TAKE NOTICE that on <u>a date and time to be noticed later</u>, at 280 S. 1st Street, San Jose, CA Courtroom <u>TBD</u>, Plaintiffs J.L., M.V.B., M.D.G.B., and J.B.A. ("Plaintiffs"), on behalf of themselves and all other similarly situated individuals they seek to represent (the "Proposed Class"), will, and hereby do move, pursuant to Rule 65 of the Federal Rules of Civil Procedure, for a preliminary injunction against Defendants Lee Francis Cissna, Kirstjen M. Nielsen, Robert Cowan, United States Department of Homeland Security ("DHS"), and United States Citizenship and Immigration Service ("USCIS") (collectively, "Defendants"). As set forth below, Plaintiffs respectfully request the Court enjoin USCIS from (1) denying SIJS petitions on the grounds that a California Probate Court does not have jurisdiction or authority to "reunify" an 18 to 20 year old with her parents; (2) initiating removal proceedings against or removing any SIJS petitioner who was appointed a guardian pursuant to Section 1510.1(a) of the California Probate Code and whose SIJS petition has been denied on the grounds that the California Probate Court did not have jurisdiction or authority to "reunify" an 18 to 20 year old petitioner with her parents. Plaintiffs further request the Court (3) enjoin Defendants to provide no less than 14 days' notice to Plaintiffs' counsel before Defendants take any adverse adjudicatory or enforcement action against any of the Plaintiffs or members of the Proposed Class during the pendency of this litigation; and (4) grant any other relief the Court deems just and equitable in light of the current and prospective irreparable harm that Plaintiffs and the Proposed Class are suffering and will suffer due to Defendants' actions.

This motion is based upon this Notice of Motion, the accompanying Memorandum of Points & Authorities; the accompanying declarations ("Decl.") of J.L., M.D.G.B., M.V.B., J.B.A., Kristen Jackson, Esq. ("Jacks. Decl."), Beth Tsoulos, MSW ("Tsou. Decl."), Debra Waters-Roman, Ph.D. ("Waters Decl."), Amanda Lyn Bhuket ("Bhuk. Decl.") and Sirena Castillo ("Cast. Decl."), the Appendix of Evidence[1], all other pleadings or documents on file or to be filed, and any other written or oral evidence or argument presented at or before this motion is heard.

---

[1] All Declarations and Exhibits ("Ex.") referenced herein are included in the concurrently-filed Appendix of Evidence.

**MEMORANDUM IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION**

## I.   INTRODUCTION

Plaintiffs J.L., M.V.B., M.D.G.B., and J.B.A. and the Proposed Class are immigrant children[2] appointed guardians under Section 1510.1(a) of the California Probate Code[3] by the Probate Division of the California Superior Court ("Probate Court"), which also determined they have been abused, abandoned or neglected by one or both parents and that it is not in their best interest to return to their country of nationality or last habitual residence. J.L. is a 19-year-old from New Zealand who was abandoned by her parents in infancy and brought to the United States to live with relatives. M.V.B. is a 19-year-old Honduran child who was abandoned by his parents and forced to flee the country to escape murder at the hands of gang members after he saw them kill his caretaker uncle. M.D.G.B., a 22-year-old college student from Mexico, was abused and abandoned by her parents, and eventually found a loving home with her grandmother in the United States. J.B.A. is a 22-year-old from Mexico, currently combating a cancer diagnosis, who suffered long-term abuse from her parents before finding safety and support from her guardian.

After being appointed a guardian, each Plaintiff sought Special Immigrant Juvenile Status ("SIJS"), a humanitarian protection created by Congress to allow abused, abandoned, and neglected children to lawfully remain in the U.S. in stable homes and to assist in their successful transition into adulthood. To be eligible for SIJS, petitioners must be (1) under 21 years of age; (2) unmarried; (3) declared dependent on a state juvenile court or placed in the custody of a state agency or individual appointed by such a court (such as being appointed a guardian); and (4) the subject of specific findings that reunification with one or both parents is not viable due to abuse, abandonment, or neglect and that it is not in the child's best interest to return to her home country ("SIJ Findings"). *See* 8 U.S.C. §§ 1101(b)(1), 1101(a)(27)(J) ("SIJS Statute"), and 1232(d)(6). In creating SIJS, Congress expressly reserved the role of making these "SIJ Findings" to state

---

[2] "Child" is defined by the Immigration and Nationality Act ("INA") and California law as a person under twenty-one years of age. *See* 8 U.S.C. § 1101(b)(1) (defining a child, in part, as an unmarried individual under the age of 21); Cal. Prob. Code § 1510(a)-(d) (defining a "child" to include juveniles ages of 18-20 seeking or under guardianship orders).
[3] All citations to Section 1510.1 refer to Section 1510.1 of the California Probate Code.

courts, recognizing they are best equipped to make custody and child welfare decisions. If a state court has issued such findings, the findings are supported by a factual record, and the child timely files a petition with USCIS, DHS consents to the SIJ classification, fulfilling the final eligibility requirement. *See* USCIS Policy Manual, vol. 6, J.2 § (D)(5), Cast. Decl. Ex. A ("6 USCIS PM")

Until recently, there was little doubt Plaintiffs would have been granted SIJS. In February 2018, however, USCIS inexplicably and unlawfully imposed a new requirement for SIJS eligibility: that the state court issuing SIJ Findings must have the authority to return a child to the custody of her parent. This extra-statutory requirement (which USCIS refused to acknowledge until months later) precludes children aged 18-20 from obtaining the humanitarian relief they need and qualify for. Plaintiffs are entitled to a preliminary injunction enjoining Defendants from furthering their unlawful imposition of this new requirement, for the following reasons:

First, Plaintiffs are likely to succeed on the merits of their claims. Defendants' sudden refusal to recognize SIJ Findings from a California Probate Court for children ages 18-20 is contrary to the SIJS Statute, governing law and congressional intent, is procedurally improper, and is an arbitrary and capricious agency action in violation of the Administrative Procedure Act ("APA"). California law assigns the Probate Court the authority to appoint guardians and make SIJ Findings, including the finding that reunification with one or both parents is not viable. The SIJS Statute requires that USCIS defer to state courts' interpretation of their own law. Thus, contrary to USCIS's unlawful position, the Probate Court had the authority to make the reunification findings regardless of its ability to return a child to the custody of her parents. Through their unlawful denials of relief, Defendants' actions deprive Plaintiffs of their ability to access SIJS and its numerous benefits in violation of the Constitution's Due Process Clause.

Second, USCIS's actions are causing and will continue to cause Plaintiffs devastating and irreparable harm. USCIS's unlawful action wipes out the stability Plaintiffs have been striving for in the care of their guardians; triggers fast-tracked deportation proceedings for Plaintiffs who, through their SIJS Petitions, brought themselves to the attention of immigration authorities for the

MANATT, PHELPS & PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

first time;[4] renders Plaintiffs already in removal proceedings vulnerable to immediate deportation to countries where a state court *already* determined it is against their best interests to return; causes severe, lasting health consequences to Plaintiffs; and strips them of other benefits that flow from SIJS, including lawful permanent residency.

Third, the balance of equities and the public interest weigh heavily in favor of provisional relief because an injunction would require USCIS only to return to applying the SIJS Statute as Congress wrote and intended it, without any new requirement, as it has for years. A return to prior practices during the pendency of this litigation imposes no harm on the agency.

Plaintiffs thus seek a preliminary injunction enjoining USCIS's unlawful conduct and protecting Plaintiffs from the life-threatening harm they are facing and will continue to face.

## II.    RELEVANT BACKGROUND

### A.    The SIJS Statute and Deference To State Courts.

Congress created SIJS to provide abused, abandoned, or neglected immigrant children in foster care a pathway to permanent residence. Immigrant Act of 1990, Pub. L. No. 101-649 § 153, 104 Stat. 4978 (1990). Since its creation in 1990, Congress has greatly expanded the SIJS Statute to make SIJS available to *all* immigrant children under 21 who are declared dependent on a state juvenile court or placed by such a court in a custodial relationship with an adult, for whom reunification with one or both parents is not viable due to abuse, abandonment, or neglect, and for whom a return to their home country would be against their best interest. *See* Trafficking Victims Protections Reauthorization Act, Pub. L. 110-457 § 235(d), 122 Stat. 5044, 5080 (2008) ("TVPRA"); Immigration and Technical Corrections Act of 1994, Pub. L. No. 103-416 § 219, 108 Stat. 4316 (1994). The SIJS Statute confers all fact-finding authority to the state juvenile

---

[4] On January 17, 2018, the Executive Office for Immigration Review ("EOIR") announced that all removal proceedings filed with the court after that date would be prioritized and Immigration Judges were expected to reach a decision—either relief or removal—within one calendar year of filing. EOIR, Memo re: Case Priorities and Immigration Court Performance Measures (Jan. 17, 2018), Cast. Decl. Ex. G. On June 28, 2018, USCIS announced its intent to issue a Notice to Appear ("NTA") and initiate removal proceedings against individuals, including those who seek SIJS whose petitions for immigration benefits are denied. *See* USCIS Updated Guidance for the Referral of Cases and Issuance of NTAs, p. 7 (June 28, 2018), Cast. Decl. Ex. E ("USCIS June 28 Memo").

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

4

court applying state law and requires USCIS to defer to the state court's findings. Thus, USCIS is not authorized to challenge a state court's jurisdiction to make findings under *state law* or the court's application of state law. 8 U.S.C. § 1101(a)(27)(J)(i),(ii); 6 USCIS PM J.2 § (D)(4) ("There is nothing in USCIS guidance that should be construed as instructing juvenile courts on how to apply their own state law"). USCIS has continuously recognized this mandate and promulgated agency practices to ensure that adjudicators defer to state court findings. *See* Special Immigrant Status, 58 Fed. Reg. 42843-01, 42848 (Aug. 12, 1993); Michael Aytes, Interoffice Mem., USCIS, AFM Update: Ch. 22: Employment-Based Petitions (AD03-01), at 82 (Sept. 12, 2006) ("The task of the adjudicator is not to determine whether the [SIJS Finding] was properly issued"), Cast. Decl., Ex. B[5]; 6 USCIS PM, J.2 § (D)(4). Now, in contradiction to the law, USCIS has impermissibly decided to reject the Probate Court's findings.

## B.    The Relevant California Legal Framework.

In 2015, the California Legislature passed Assembly Bill 900 ("AB 900"), which authorized California Probate Courts to appoint guardians for immigrant children aged 18 to 20. *See* Cal. Prob. Code § 1510.1. The legislature found guardianships for children between ages 18 and 20 "necessary" because many immigrant children are "particularly vulnerable" and "need [] a custodial relationship" as they adjust to a "new cultural context, language, and education system, and recover from the trauma of abuse, neglect, and abandonment." Cal. Assem. Bill No. 900 (2015-2016 Reg. Sess.) § (a)(6)(c). AB 900 added Section 1510.1 to the Probate Code and authorized courts to apply the existing guardianship framework to children aged 18 to 20. *See* Judicial Council of Cal., *New Rules and Forms Implementing AB 900 in Guardianship Proc.*, at 2 (June 30, 2016). Guardians of children between ages 18 and 20 have the same custodial authority as guardians for youth under 18. *Id.*, at 3 ("appointment under Section 1510.1 confers the same powers and duties on the guardian of an 18 to 20 year-old ward as conferred by the appointment

---

[5] The Administrative Appeals Office ("AAO") has also repeatedly affirmed state's role and the deference USCIS must give its findings. *See e.g., Matter of L-M-R-R-*, ID# 336648 (AAO June 14, 2017), at 2 ("When determining whether USCIS's consent is warranted, USCIS generally defers to the expertise of the juvenile court on matters of child welfare under state laws.'"); *Matter of E-D-J-B-F-*, ID# 00230237 (AAO June 5, 2017), at 3 ("USCIS is not the fact finder in regards to issues of child welfare state laws and relies upon the expertise of the juvenile court").

MANATT, PHELPS & PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

of a guardian for a ward under 18.").

Each of the Plaintiffs received SIJ Findings from a juvenile court in California, as required by the statute. "Juvenile court" as defined in the SIJS regulations is "a court located in the United States having jurisdiction under State law to make judicial determinations about the custody and care of juveniles." 8 C.F.R. § 204.11(a) ("SIJS Regulations").[6] In California, a "juvenile court" includes the juvenile, probate, and family divisions of the Superior Court. Cal. Code Civ. Proc. § 155(a)(1). California law is explicit that the Probate Court has jurisdiction to make determinations regarding the custody and care of juveniles and such jurisdiction extends to Plaintiffs and the class they represent. *See* Cal. Prob. Code § 1510.1 (providing guardianships for 18-to-20-year-olds and defining "minor," "child," and "ward" to include juveniles aged 18 to 20); *see also B.F. v. Super. Ct.*, 207 Cal.App.4th 621, 628-30 (2012).

**C.    USCIS Denied Or Intends to Deny SIJS Petitions Of Children Aged 18 To 20 Based On The Imposition Of New Requirements Contrary to The Statute.**

Until recently, USCIS and the AAO routinely recognized the jurisdiction of state courts, including the Probate Court, to make SIJ Findings for applicants aged 18 to 20. *See* 6 USCIS PM, J.3 § (A)(1) ("Examples of state courts that may meet this definition include. . . guardianship, *probate*, and delinquency courts" (emphasis added).) Moreover, USCIS routinely approved SIJS petitions for children ages 18 to 20 who received guardianships from state juvenile courts pursuant to state laws such as Section 1510.1(a). On information and belief, prior to 2017, USCIS had not denied a *single* SIJS petition from a petitioner aged 18 to 20 on the grounds that a state juvenile court lacked authority to reunify the child with her parent. (*See* Jacks. Decl., ¶ 26.)

In summer 2017, however, USCIS drastically changed its SIJS adjudication policies for children 18 to 20. Instead of adjudicating SIJS petitions within 180 days as the law requires (*see* TVPRA § 235(d)(2) (2008)), USCIS began holding petitions for children over 18, leaving them in

---

[6] The SIJS Regulations are outdated and do not reflect recent amendments to the SIJS Statute, including the TVPRA. They incorporate neither the disjunctive added by the statute (i.e., that SIJS can be based on either a determination that the petitioner is dependent on the court or a custody determination) nor the removal of the foster care requirement. *See* 8 U.S.C. § 1101(a)(27)(J). However, the TVPRA did not alter the definition of "juvenile court" in the SIJS Statute or narrow SIJS eligibility in any way. To the contrary, it expanded opportunities for immigrant children to access SIJS relief.

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

limbo. For example, USCIS received J.L.'s petition on March 21 2017, and acted only after J.L. filed a mandamus complaint nine months later asking the court to order USCIS to adjudicate her petition. (*See* J.L. Decl., ¶¶ 20-23.) Likewise, USCIS waited seventeen months before issuing a Notice of Intent to Deny ("NOID") J.B.A.'s petition. (*See* J.B.A. Decl., ¶¶ 16-18.)

In February 2018, USCIS' legal counsel purportedly issued new guidance to USCIS (which was not publicly acknowledged until months later), stating the SIJS Statute requires a state court have authority to return a child to the custody of a parent in order to find that reunification is not viable. *See* Ted Heeson, *USCIS Explains Juvenile Visa Denials*, Politico (April 25, 2018) (with statement from USCIS spokesperson Jonathon Withington), Cast. Decl. Ex. C (("Politico Statement").. In or about March 2018, USCIS began applying this not-yet-announced requirement to children in California by issuing NOIDs and denials on petitions filed for children with guardianship orders entered pursuant to Section 1510.1(a). *See id.* ("[USCIS] has denied roughly 260 applicants who sought [SIJS] based on guidance issued in February.") For example, USCIS issued J.L.'s NOID on March 2, 2018, stating "[t]here is no indication that [Section 1510.1] gives the court the authority to reunify a person over the age of 18 with a parent." (*See* J.L. Decl., ¶ 21, Ex. C.) J.L. received a denial of her petition on April 17, 2018. (*Id.*, ¶ 23.)

Soon after J.L.'s denial on this unreasoned basis, USCIS spokesperson Jonathan Withington denied to the media there had been any change in USCIS policy. *See* Liz Robbins, *A Rule Is Changed for Young Immigrants, and Green Card Hopes Fade*, New York Times (Apr. 18, 2018) (quoting Withington,"USCIS has not issued any new guidance or policy directives regarding the adjudication of SIJS petitions"), Cast. Decl. Ex. D ("NY Times Article"). On April 24, 2018, however, Withington issued a contrary statement, admitting (1) in the summer of 2017, USCIS began holding petitions filed by children 18 to 20, and (2) in February 2018, USCIS began imposing a new requirement that a state court have the authority to return a child to the custody of her parent to issue valid SIJ Findings. *See* Politico Statement.. Withington concluded "[s]ince most courts cannot place a child back in the custody of their parent once the child reaches the age of majority…, those state courts do not have power and authority to make the reunification finding for purposes of SIJ eligibility." *Id*. This short statement made to a single

Manatt, Phelps & Phillips, LLP
Attorneys At Law
Los Angeles

media outlet was the USCIS's only attempt to explain the imposition of a new eligibility requirement for SIJS.[7]

USCIS continues to issue NOIDs and denials to petitions filed pursuant to Section 1510.1(a) on the basis of its new requirement. (*See e.g.*, M.D.G.B. Decl., ¶ 20, Ex. C; J.B.A. Decl., ¶ 5, Ex. C.) USCIS's reasoning in these NOIDs makes clear that, in their view, the new requirement forecloses *all* SIJS petitions from 18 to 20-year-olds in California.

**D.** **Plaintiffs And The Proposed Class Are Experiencing Irreparable Harm And Are At Immediate Risk Of Further Irreparable Harm.**

Before USCIS imposed a new requirement for SIJS eligibility, SIJS benefited many children in California aged 18 to 20 by providing the stability they desperately needed to recover from parental abuse, abandonment and neglect, and affording them educational, professional, economic, and personal opportunities through lawful permanent residence. (Tsou. Decl., ¶¶ 9-10.) SIJS also allowed these abused, abandoned, and neglected children to remain in the U.S. with guardians who could provide them with stable, healthy, and loving relationships. (*Id.*)

The wrongful denial of SIJS exposes an already vulnerable population of children, who have faced unimaginable trauma, to immediate and irreparable harm. (*See* Waters Decl., ¶¶ 6-15; Tsou. Decl., ¶¶ 11-16.) USCIS's unlawful new requirement dooms Plaintiffs' meritorious SIJS petitions, jeopardizes their stability, denies them SIJS benefits, and renders them vulnerable to deportation. (Jacks. Decl., ¶¶ 28-30.) As a result, these children suffer from the fear and imminent threat of, among other things, being forced to leave their communities, churches and schools, separating from their loving guardians, and the prospect of forced-return to a country they do not know, or where they face violence and abuse. (*See* Waters Decl., ¶¶ 6-15; Tsou. Decl., ¶¶ 11-16; M.D.G.B. Decl., ¶¶ 21-26; J.B.A. Decl., ¶¶ 19-22; J.L. Decl., ¶¶ 24-27; M.V.B. Decl., ¶¶ 16-17.))

---

[7] Plaintiffs expect USCIS to argue the new requirement it imposes is simply a reinterpretation of law. This is a distinction without a difference. USCIS's pattern of recent adjudications reflects a clear change in USCIS's position regardless of whether USCIS identifies its approach as a new requirement or a new interpretation of law. For the reasons discussed *infra*, USCIS cannot circumvent APA and Due Process requirements by framing its new approach to SIJS petitions as a change in interpretation of law instead of a policy change. *See e.g.*, *Nat'l Cable & Telecomm. Ass'n v. Brand X Internet Servs.*, 545 U.S. 967, 982 (2005) (performing an identical analysis regardless of whether agency labeled new position as policy change or change in interpretation). No matter what USCIS might call it, its actions violate the APA and Due Process.

MANATT, PHELPS & PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

For example, if USCIS denies M.D.G.B.'s petition, she will lose the life she has worked hard to build in the United States. (M.D.G.B. Decl., ¶¶ 14-17, 21-26.)  Because her grandmother was appointed her guardian, M.D.G.B. has been able to secure financial aid and is excelling at California State University-Fullerton. (*Id.*, ¶¶ 12-17.) Denial of her SIJ petition, however, leaves her at risk of deportation to a country where she knows only pain, forces her to abandon her studies, and rips her from the only caregiver who has ever shown her love. (*Id.*, ¶¶ 21-26.)

J.B.A.'s harm is just as real and imminent. J.B.A. was recently diagnosed with cancer and depends heavily on her guardian – whom she calls "mom" – to care for her. (*Id.*, ¶¶ 10-13.) She is on her guardian's health insurance, and with her guardian's assistance, receives the health care she needs to treat her cancer and depression. (*Id.*) J.B.A. submitted her SIJS petition on February 6, 2017 and received a NOID seventeen months later on July 20, 2018, based on USCIS's new requirement. (*Id.*, ¶¶ 16-18.) Since then, her health has declined and she lives in fear of deportation to her native Mexico, a country she left at age seven and does not know, without the healthcare she needs, and without the care of her loving guardian. (*Id.*, at ¶¶ 21-22.)

Likewise, when USCIS wrongfully denied J.L.'s SIJS petition based on its new unlawful requirement, it threw the stability she and her guardians have tried to achieve into upheaval. J.L., who was brought to the U.S. when she was just four months old after being abandoned by parents, was recently accepted to a four-year university where she hoped to pursue her dream of becoming a doctor. (*Id.*, ¶¶ 12, 25.) USCIS's denial renders her unable to attend because her immigration status prevents her from working or securing student loans.[8] (*Id.*) Moreover, because she came to the U.S. as an infant, USCIS's denial endangers her by putting her at risk of deportation to a country she has no ties to or memories of. (J.L. Decl., ¶¶ 24-25)

USCIS *will* place Plaintiffs and the Proposed Class into removal proceedings when it denies their petitions if they do not have other status. *See* USCIS June 28 Memo.[9] For M.V.B.,

---

[8] Upon the approval of her SIJS petition, J.L. would have been eligible to immediately adjust her status to permanent residency.  *See* 8 U.S.C. § 1255(a).

[9] As of September 11, 2018, USCIS can also deny SIJS petitions for lack of initial evidence *without* giving children an opportunity to respond to Requests for Evidence or NOIDs. *See* Cast. Decl., Ex. F.

who is already in removal proceedings (M.V.B. Decl., ¶ 16), and similarly situated Proposed Class members, denial of their petitions makes deportation more likely.

## III.    STANDARD OF REVIEW

A preliminary injunction is warranted if Plaintiffs establish they are (1) "likely to succeed on the merits" and (2) "likely to suffer irreparable harm in the absence of preliminary relief," (3) "that the balance of equities" is in their favor, and (4) an "injunction is in the public interest." *Winter v. Natural Res. Def. Council*, 555 U.S. 7, 20 (2008). Plaintiffs satisfy each requirement.

## IV.    PLAINTIFFS ARE LIKELY TO SUCCEED ON THE MERITS.

Agency action cannot stand if it is arbitrary, capricious, or contrary to law, or if it is done without appropriate process. USCIS's new and unexplained requirement cannot withstand the slightest scrutiny, and therefore, Plaintiffs are likely to succeed on the merits.

### A.    USCIS's Imposition Of A New SIJS Eligibility Requirement Is Arbitrary And Capricious and Violates The APA.

The APA "sets forth the procedures by which federal agencies are accountable to the public and their actions subject to review by the courts." *Franklin v. Mass.*, 505 U.S. 788, 796 (1992). A court "shall" set aside agency action if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). As with formal rulemaking, final agency action achieved through an informal process is subject to review under section 706 of the APA. *See e.g., Perez v. Mortg. Bankers Ass'n*, 135 S.Ct. 1199, 1209 (2015) ("arbitrary and capricious" review is available for agency rules that do not proceed through notice and comment). Agency action should be set aside as arbitrary and capricious if the agency fails to explain the basis of its decision, fails to consider all relevant factors and articulate a "rational connection between the facts found and the choice made," or fails to offer a "reasoned basis" for departures from preexisting policies. *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983); *see also Encino Motorcars, LLC v. Navarro, LLC*, 136 S.Ct. 2117, 2125 (2016)("agency must examine the relevant data and articulate a satisfactory explanation for its action including a rational connection between the facts found and the choice made."

Here, Plaintiffs are likely to prevail on their APA claim for the following reasons, each of

MANATT, PHELPS & PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

which alone is sufficient to establish Plaintiffs' claims: (1) USCIS's actions contravene federal and state law; (2) even if USCIS's new requirement were legally permissible (which it is not), the requirement is arbitrary and capricious because it is unsupported by reasoned explanation; and (3) the new requirement was adopted without notice, despite the serious reliance interests at stake.

### 1. USCIS's New Requirement Contravenes Federal And State Law.

USCIS' new requirement and the related denials of SIJS petitions based on the unlawful imposition of a new SIJS eligibility requirement contravenes federal and state law:

<u>First</u>, USCIS's new reunification requirement is unlawful because it violates the SIJS Statute by imposing an eligibility requirement for SIJS that does not exist anywhere in the law. Neither the SIJS Statute, the USCIS Policy Manual, nor any regulation indicate that the juvenile court must have authority to order the reunification of a child and her parent to be recognized as a court with authority to make SIJ Findings. Indeed, the definition of "juvenile court" makes no reference whatsoever to reunifying a petitioner with his or her parents, providing instead that juvenile court is one with "jurisdiction under State law to make judicial determinations about the care and custody of juveniles." 8 C.F.R. § 204.11(a). Similarly, the SIJS Statute merely requires a *finding* that "reunification with 1 or both of the immigrant's parents is not viable due to abuse, neglect, abandonment, or a similar basis found under State law." 8 U.S.C. § 1101(a)(27)(J).

<u>All</u> relevant authority confirms the Probate Court has jurisdiction over the custody and care of children ages 18 to 20. Accordingly, USCIS should recognize SIJ Findings issued by the Probate Court, as it always has. Section 1510.1 defines an 18-20-year-old as a "child" and allows the court to place the child into a guardianship, thereby granting the guardian, "care, custody, and control" of the child. Cal. Prob. Code § 2351(a). California law explicitly designates the Probate Court as a juvenile court with jurisdiction to make SIJ Findings. Cal. Code Civ. Proc. § 155. The USCIS Policy Manual also recognizes that probate courts may make SIJ Findings and that SIJS is available to children who apply prior to age 21. 6 USCIS PM, J.2-3. Indeed, until March 2018, USCIS always recognized a California Probate Court as a "juvenile court," whether the guardian was appointed before or after the child turned 18. (*See* Jacks. Decl., ¶¶ 25-26.)

Further, until recently, the AAO recognized that the required construction of the SIJS

Manatt, Phelps & Phillips, LLP
Attorneys At Law
Los Angeles

Statute requires the grant of SIJS even when the state court cannot reunify a child and her parents. For instance, the AAO has ordered the approval of SIJS when a parent is deceased even though a child cannot be reunified with a dead parent. *See e.g.*, *Matter of P-P-C-A*, ID# 47632 (AAO Feb. 7, 2017) at 3 ("The juvenile court's non-viability determination was premised on a factual finding by the court that is supported by the record, namely that the Petitioner's father was deceased"). Additionally, the AAO ordered the approval of SIJS petitions arising out of guardianship proceedings in California where the court could not actually reunify the child with the parent because the parent was incarcerated. *Matter of [Redacted]* (AAO Sept. 22, 2009), at 6 (approving SIJS in guardianship proceedings where a parent was incarcerated).[10]

Second, Defendants' imposition of this new requirement is unlawful because it not a permissible construction of the SIJS Statute. Instead, it (1) is contrary to the congressional intent to expand SIJS eligibility beyond foster-care youth, and (2) effectively nullifies the amendments to the SIJS Statute made in 1994 and in the TVPRA of 2008. In each of the denials or NOIDs, USCIS relies on outdated regulations contrary to current law. (*See* M.D.G.B. Decl., ¶ 20, Ex. C; J.B.A. Decl., ¶ 5, Ex. C.) To support the position that a juvenile court can make SIJ Findings only if it has the authority to actually reunify petitioners with their parents, USCIS cites to 8 C.F.R. § 204.11(a)'s definition of a child eligible for long-term foster care. (*Id.*) This provision is *no longer relevant* to SIJS eligibility because the TVPRA of 2008 *eliminated* the requirement that, to be eligible for SIJS, a child be found eligible for long-term foster care. *See* TVPRA § 235(d)(i) (2008).[11] By citing to outdated regulations, USCIS ignores the intent of Congress to expand SIJS beyond foster care youth and to allow SIJ Findings to be made in a wide range of custodial and dependency proceedings, such as a guardianship proceeding under Section 1510.1.

In addition, USCIS's denials are inconsistent with Congress's intent to allow children

---

[10] Despite years of practice to the contrary, the AAO has recently changed course and followed USCIS's direction by referring to SIJ Findings as legal findings and requiring that courts have the ability to reunify SIJ petitioners with their parents.

[11] USCIS is well aware the SIJS Regulations are outdated and inconsistent with the SIJS Statute. *See* DHS, Citizen. & Immig. Srvcs. Ombudsman, Recommendation to USCIS Dir. (Dec. 11, 2015) (recommending USCIS "[i]ssue final SIJ regulations that fully incorporate all statutory amendments").), Cast. Decl., Ex. H.

MANATT, PHELPS & PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

between the ages of 18 to 20 to receive SIJS. Children who have not yet reached their 21st birthday are "children" eligible for SIJS. *See* 8 U.S.C. § 1101(b)(1)(defining a child, in part, as an unmarried individual under the age of 21). Congress reaffirmed its intention to allow children 18 to 20 to receive SIJS by adding age-out protections in the TVPRA of 2008 so the SIJS classification would not be denied on the basis of age if the child is under 21 years old on the date she files a SIJS petition. *See* TVPRA § 235(d)(i) (2008). However, as noted above in Section II.C., USCIS's spokesperson expressly acknowledged the new requirement would prevent most children over 18 from receiving SIJS. *See* Politico Statement.

Third, in adding a new requirement and issuing NOIDS and denials to Plaintiffs, USCIS unlawfully fails to defer to the Probate Court's findings. Congress vested state courts with the authority to make SIJ Findings, including to determine that a child cannot reunify with one or both parents due to abuse, abandonment or neglect. *See* 8 U.S.C. § 1101(a)(27)(J); 6 USCIS PM J.2(D); *Perez-Olano v. Gonzalez*, 248 F.R.D. 248, 265 (C.D. Cal. 2008) (In the SIJS Statute, "Congress appropriately reserved for state courts the power to make child welfare decision, an area of traditional state concern and expertise" (citing *Ankenbrandt v. Richards*, 504 U.S. 689, 702 (1992).). Until now, USCIS consistently recognized its obligation to defer to the state court's expertise in ascertaining its own jurisdiction and applying its own state's laws. *See e.g.,* 6 USCIS PM, J.3 § (A)(2). By rejecting the Probate Court's application of California law, USCIS violates the SIJS Statue by disregarding the state court determinations. In J.L.'s NOID and denial, for example, USCIS refused to either (1) accept the state court's finding that it has the authority to determine a child cannot reunify with her parents, or (2) defer to the state court's determination that J.L. cannot reunify with her parent under California law. (*See* J.L. Decl., ¶ 5, Exs. C, F.) As such, USCIS violates the SIJS Statute by rejecting state court determinations.

## 2. USCIS's New Requirement Violates The APA Because Defendants Failed To Explain The Basis For The New Requirement.

Even if USCIS's substantive change in interpreting the SIJS Statute is correct – which it is not – USCIS failed to provide any adequate basis or reasoned explanation for its new requirement and departure from past practices and policies. Likewise, USCIS failed to provide a rational

MANATT, PHELPS & PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

connection between the facts found and the choice made, or to consider all relevant factors. As such, the new requirement must be set aside as an arbitrary and capricious violation of the APA.

First, USCIS failed to give "adequate reasons for its decision[]" to depart from past practice and impose a new requirement into the SIJS Statute. *See Encino,* 136 S.Ct. at 2125. Agencies like USCIS have an obligation to render consistent opinions and to follow, distinguish, or overrule their own precedent, adequately explaining departures from prior norms and the legal basis of their decisions. *Sec'y of Agric. v. U.S.*, 347 U.S. 645, 652-53 (1954); *I.N.S. v. Yueh-Shaio Yang*, 519 U.S. 26, 32 (1996). Accordingly, agency action must be set aside unless its basis is "set forth with such clarity as to be understandable." *SEC v. Chenery Corp.,* 332 U.S. 194, 196 (1947).[12] This is particularly true where a prior policy "has engendered serious reliance interests that must be taken into account." *Mortg. Bankers Ass'n,* 135 S. Ct. at 1209. Thus, reversing a pre-existing policy requires a "more detailed justification than what would suffice for a new policy created on a blank slate." *FCC v. Fox Television Stations, Inc.,* 556 U.S. 502, 515 (2009). USCIS flunks this basic test, inflicting grievous harm on Plaintiffs without providing *any* reasonable explanation for this new requirement. *See* 5 U.S.C. §§ 706(2)(A), 706(2)(C); *Sea-Land Serv., Inc. v. Dep't of Transp.*, 137 F.3d 640, 646 (D.C. Cir. 1998)(action cannot be sustained "where it is based not on the agency's own judgment but on an erroneous view of the law.")

Indeed, USCIS's policy represents a 180-degree reversal of its prior position, which Plaintiffs and the Proposed Class relied upon USCIS's when applying for SIJS. (*See* Jacks. Decl., ¶¶ 22-26.) Until recently, USCIS routinely granted SIJS Petitions to children with guardianships under Section 1510.1(a) and did not question the Probate Court's authority or jurisdiction to make SIJ Findings. (*See id.*). USCIS's own Policy Manual recognizes that a probate court may issue SIJ Findings and confirms its obligation to defer to the state court's findings and interpretation of its own law. *See* 6 USCIS PM, J.3 § (A)(2); *id.*, J.2 § (A). Plaintiffs have structured their lives around SIJS and relied on the SIJS Statute and USCIS's regulations, policies, and promises to

---

[12] USCIS may not now articulate new reasons for this change. "A reviewing court . . . must judge the propriety of [agency] action solely by the grounds invoked by the agency," and not post hoc grounds articulated in litigation. *Chenery*, 332 U.S. at 196

MANATT, PHELPS & PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

make decisions to take out loans, enroll in college, and build careers. (*See* J.L. Decl., ¶¶ 12-18, 24-27; M.D.G.B. Decl.,¶¶ 14-17, 21-26; M.V.B., Decl. ¶¶ 11-17, J.B.A. Decl. ¶¶ 9-22.) Relying on USCIS's practice (and the law), some petitioners and their attorneys delayed pursuing guardianship until after a child's 18th birthday on the understanding that there was no meaningful difference between SIJ Findings issued before or after that date. (*See* Jacks. Decl., ¶ 25.)

For USCIS to change its policy so suddenly and drastically, one would expect – and the APA requires – USCIS to justify its change with a reasoned explanation. Here, at best, USCIS can argue that its statement explaining its departure from prior policy are the <u>two sentences</u> that its spokesperson shared with a single media outlet on April 24, 2018.[13] *See* Politico Statement. This cryptic statement, however, does not remotely meet the APA's requirement that an agency provide a reasoned basis for its actions. *See Amerijet Int'l, Inc. v. Pistole*, 753 F.3d 1343, 1350 (D.C. Cir. 2014) ("[C]onclusory statements will not do; an agency's statement must be one of *reasoning*." (citations omitted)). The statement asserts, for the first time, the requirement that "a state court have the authority to return a child to the custody of their parent in order for that court to find that reunification is not viable," but offers no rationale from any legal authority to justify such a requirement. USCIS also fails to address why, decades after SIJS was created, "the statute requires" a new element for eligibility.[14] Moreover, because USCIS failed to acknowledge that SIJS petitioners like Plaintiffs, have reasonably come to rely on the expectation they would be protected by SIJS when they meet the statutory elements and submit petitions that are indistinguishable from those that USCIS has granted, without question, for years, the agency's failure to explain its departure from prior practice should not be permitted. *Mortg. Bankers Ass'n*, 135 S.Ct. at 1209 (government must provide special justification "when its prior policy has

---

[13] "For purposes of establishing eligibility for SIJ, the statute requires that a state court have the authority to return a child to the custody of their parent in order for that court to find that reunification is not viable. Since most courts cannot place a child back in the custody of their parent once the child reaches the age of majority (as determined by state and in most instances that is age 18), those state courts do not have power and authority to make the reunification finding for purposes of SIJ eligibility." *See* Politico Statement.

[14] Moreover, USCIS misled the public about its unilateral change to the SIJS requirements. As discussed above at Section II.C, USCIS denied to the New York Times on April 18, 2018, that any policy change had occurred, and then changed that position six days later in the statement reported by Politico. *See* NY Times Article; Politico Statement..

MOTION FOR PRELIMINARY INJUNCTION

engendered serious reliance interests that must be taken into account").

Second, agencies must also consider all relevant issues and factors to withstand arbitrary and capricious review. *Motor Vehicle Mfrs. Ass'n*, 463 U.S. at 43. Further, "the agency must consider reasonably obvious alternatives and, if it rejects those alternatives, it must give reasons for the rejection, sufficient to allow for meaningful judicial review." *See Yale-New Haven Hosp. v. Leavitt*, 470 F.3d 71, 80 (2d Cir. 2006) (citation omitted). Here, USCIS's new policy summarily overturns and usurps the Probate Court's authority to issue SIJ Findings for petitioners over the age of 18 and, in doing so, ignores the impact of this new policy on countless lives. Not only does USCIS's April 24, 2018 statement provide no reasonable explanation for the policy, it contains (1) no indication that it recognizes the devastating impact of its new requirement on Plaintiffs or their caretakers, communities, schools, churches, or local economies or (2) that USCIS has taken these compelling factors into account.

### 3. USCIS Adopted the New Requirement Without Adequate Notice.

Under the APA, USCIS was required to follow the full array of procedural requirements, including notice and comment prior to promulgating its new requirement. *San Diego Air Sports Ctr., Inc. v. F.A.A.*, 887 F.2d 966, 969 (9th Cir. 1989); 5 U.S.C. § 552(a)(1)(D)(an agency must notify the public of "substantive rules . . . [and] interpretations of general applicability formulated and adopted by the agency.")  Despite the substantial reliance interests at stake, it failed to do so.

Agency action may be invalidated if not undertaken pursuant to procedures required by law. 5 U.S.C. § 706(2)(D). A companion statute, 5 U.S.C. § 552(a)(1)(D), provides that an agency must publish "statements of general policy or interpretations of general applicability formulated and adopted by the agency." Violation of this notice requirement is a basis for setting aside agency action where the affected individuals lacked adequate and timely notice and suffered prejudice. *See e.g.*, *Morton v. Ruiz*, 415 U.S. 199, 235-36 (1974)(overturning the BIA's denial of benefits for failure to provide notice that benefits were no longer available to those who lived off reservations); *Anderson v. Butz*, 550 F.2d 459, 463 (9th Cir. 1977).

When USCIS began to deny SIJS petitions by refusing to recognize the validity of SIJ Findings for children ages 18 to 20, USCIS provided no public notice of the change, thereby

Manatt, Phelps & Phillips, LLP
Attorneys At Law
Los Angeles

violating the APA.[15]  After more than a decade of recognizing the state courts' ability to make SIJ Findings for children aged 18 to 20 and juvenile court jurisdiction over such children, it was incumbent upon USCIS to notify the public about its wholesale departure from its prior practice and legal conclusions. *See Morton*, 415 U.S. at 232, 236 (explaining that "determination of eligibility [for benefits] cannot be made on an ad hoc basis," particularly where applicants had a "legitimate expectation" of relief). Given the widespread impact of USCIS's sudden restrictions on SIJS eligibility, the agency had an obligation to publish or otherwise notify the public. In addition to independently constituting a violation of the APA, USCIS's lack of transparency highlights the arbitrary and capricious manner in which this policy was implemented.

### B.    USCIS's New Requirement Violates Due Process.

USCIS's new eligibility requirement and denial of meritorious SIJS petitions violates due process and punishes traumatized children who reasonably relied on the SIJS Statute in petitioning for relief. Immigrants who are physically present in the U.S. are guaranteed the protections of the Due Process Clause of the U.S. Constitution. *See Wong Wing v. U.S.,* 163 U.S. 228, 238 (1896) (explaining "all persons within the territory of the United States are entitled to the protection" of the Due Process Clause). The government may not infringe on important interests, such as liberty and property, unless the infringement is narrowly tailored to serve a compelling governmental interest. *See e.g.*, *Lopez-Valenzuela v. Arpaio*, 770 F.3d 772, 780 (9th Cir. 2014).[16]  Finally, the due process clause prohibits government conduct that "shocks the conscience." *Marsh v. Cnty. of San Diego*, 680 F.3d 1148, 1155 (9th Cir. 2012).

### 1.    Defendants' New Requirement and Denial of Relief Unlawfully Infringes Upon Plaintiffs' Constitutionally Protected Interests.

Defendants' actions improperly infringe upon Plaintiffs' constitutionally protected liberty and property interests. The Ninth Circuit has repeatedly confirmed the property interests protected by the Due Process Clause "extend beyond tangible property and include anything to which a

---

[15] USCIS's cursory and *post-hoc* April 25, 2018 statement through Politico was issued months after USCIS began adjudicating using its new policy, failed to meet the agency's obligation to inform affected individuals of USCIS's new policy, and cannot be considered public notice.

[16] The government must meet a heightened standard because of the fundamental liberty interests at stake. *See e.g.*, *Lopez-Valenzuela*, 770 F.3d at 780.

Manatt, Phelps & Phillips, LLP
Attorneys At Law
Los Angeles

plaintiff has a 'legitimate claim of entitlement.'" *Nozzi v. Hous. Auth. of L.A.*, 806 F.3d 1178, 1191 (9th Cir. 2015) (quoting *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 576–77 (1972)). "A legitimate claim of entitlement is created and [its] dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Roth*, 408 U.S. at 577 (quotations and citation omitted). This independent source may be a statute, regulation, "explicit contractual provisions," "implied" agreements, or "rules or mutually explicit understandings." *Perry v. Sindermann*, 408 U.S. 593, 601–02 (1972).

Plaintiffs' entitlement to SIJS is based on "a set of rigorous, congressionally defined eligibility criteria" outlined in the SIJS Statute, regulations, and agency guidelines. *See* 8 U.S.C. §§ 1101(b)(1), 1101(a)(27)(J), and 1232(d)(6); 8 C.F.R. § 204.11; 6 USCIS PM, J.1; *Osorio-Martinez v. U.S.* 893 F.3d 153, 163 (3d. Cir. 2018). The constitutionally protected liberty and property interests flowing from a SIJS grant include: (i) adjustment to lawful permanent residence; (ii) freedom from government custody or detention; (iii) the right to remain in the U.S. and live with a legal guardian; (iv) access to federally funded educational programming; (v) access to public benefits; (vi) work authorization and preferential status when seeking employment-based visas; and (vii) professional licenses. *See Osorio*, 893 F.3d at 163 (describing benefits that flow from a grant of SIJS); *Nozzi*, 806 F.3d at 1190–91 (finding property interest in government benefits); *Lopez-Valenzuela*, 770 F.3d at 780-81 (freedom from detention is a "fundamental liberty interest" held by immigrants); *Engquist v. Or. Dep't of Agric.*, 478 F.3d 985, 997–98 (9th Cir. 2007) (due process protects "the right to pursue a chosen profession").

Here, Plaintiffs have a legitimate claim of entitlement to SIJS and its benefits because they relied on the SIJS statute, regulations, and decades of prior USCIS practice in timely petitioning the government for SIJS. They were eligible for SIJS under the criteria set by Congress. Absent USCIS's unlawful actions, they would have been granted SIJS. Nonetheless, Defendants have unlawfully denied and intend to deny Plaintiffs' SIJS petitions, impermissibly infringing on the liberty and property interests that flow from SIJS and violating their due process rights.

MANATT, PHELPS & PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

## 2. The Government's Conduct "Shocks the Conscience."

The Due Process Clause also forbids the government from depriving individuals of liberty or property in a manner that "shock[s] the conscience" and "offend[s] the community's sense of fair play and decency." *Marsh*, 680 F.3d at 1155 (citations omitted). Government conduct that needlessly causes "fear" and "severe emotional distress" or "is likely to cause [a] family profound grief" may shock the conscience and violate the Due Process Clause. *Id.*

Even if Defendants could prove the law permits them to impose a new requirement for SIJS-eligibility, which they cannot for the reasons discussed in Section IV.A, Defendants' change to the requirements for children who have *already* applied for SIJS – in reliance on the SIJS Statute and Defendants' consistent practice of approving petitions similar to Plaintiffs – shocks the conscience and violates due process. In a bait-and-switch, Defendants pulled the rug from under Plaintiffs by denying them SIJS and using the very information Plaintiffs provided in their SIJS petitions to place them in removal proceedings. *See* USCIS June 28 Memo, p. 7.

Plaintiffs and the Proposed Class are in a *far* worse position now having applied for SIJS than if they had never petitioned the government for humanitarian relief. *See United States v. Caceres*, 440 U.S. 741, 752–53 (1979) (Due Process Clause is implicated where, as here, "an individual has reasonably relied on [government representations made] for his guidance or benefit and has suffered substantially because of their violation by the [government].") Plaintiffs brought themselves to the attention of the U.S. government and provided the government with their country of origin in their SIJS petition, thereby admitting alienage – a predicate element the government must prove to establish removability. *See Matter of Amaya*, 21 I&N Dec. 583, 588 (BIA 1996) (Evidence of alienage must be established in removal proceedings.) M.V.B. and members of the Proposed Class already in removal proceedings relied on SIJS as a shield from removal, in some cases relying on their clear SIJS eligibility to forego other procedural challenges or possible avenues for relief, and now face a higher likelihood of removal than if they had pursued a different strategy. (*See* Jacks. Decl. ¶ 33.) USCIS's actions in denying Plaintiffs' petitions and pursuing their removal from the U.S. will destroy Plaintiffs' personal, educational, and physical and psychological well-being. (*See* M.D.G.B. Decl., ¶¶ 21-26; J.B.A. Decl., ¶¶ 19-

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

22; J.L. Decl., ¶¶ 24-27; M.V.B. Decl., ¶¶ 16-20.; Tsou. Decl., ¶¶ 11-17; Waters Decl., ¶¶ 13-15.) The life-altering consequences of this bait-and-switch "shock[s] the conscience" and is antithetical to our fundamental "notions of fair play, ordered liberty and human decency." *Johnson v. Newburgh*, 239 F.3d 246, 252 (2d. Cir. 2001)

### 3. USCIS's New Requirement Violates Plaintiffs' Procedural Due Process Rights.

The bedrock principle underlying procedural due process is clear: "Parties whose rights are to be affected are entitled to be heard; and in order that they may enjoy that right they must be notified." *Baldwin v. Hale*, 68 U.S. 223, 233 (1863). Here, as explained in Section IV.A(2)-(3) above, USCIS has deprived Plaintiffs of protected liberty and property interests without following adequate procedures by: (1) adopting a new requirement for SIJS eligibility which stripped petitioners over 18 of their ability to access SIJS and the vital relief, benefits and protections it provides; (2) disregarding state court findings; and (3) abolishing the only process over-18 petitioners in guardianships have to receive SIJS.

Where the interest to the individual is extremely high, the government is required to provide significant procedural protections prior to depriving individuals of the property and liberty interests at stake. *See Mathews v. Eldridge*, 424 U.S. 319, 333 (1976).[17] Where the government changes a policy or adds new requirements to accessing benefits, it must adhere to individuals' procedural due process rights by providing "the opportunity to be heard at a meaningful time and in a meaningful manner." *Id.*; *see also Nozzi*, 806 F.3d at 1190-98 (Section 8 recipients had protected property interest in housing benefits that gave them due process right to notice prior to change requiring higher rents); *Thompson v. Washington*, 497 F.2d 626, 639 (D.C. Cir. 1973) (presence of substantial constitutional claim to procedural due process "informed" court's construction of statutory procedures). Here, Defendants afforded Plaintiffs no such opportunity when they added a requirement for SIJS eligibility without any notice but a *post-hoc*

[17] As discussed above in Section IV.B(1), the significant interests at stake here, include (i) adjustment to lawful permanent residence; (ii) freedom from government custody or detention; (iii) the right to remain in the U.S. and live with a legal guardian; (iv) access to federally funded educational programming; (v) access to public benefits; (vi) work authorization and preferential status when seeking employment-based visas; and (vii) professional licenses.

statement to Politico. *See* Politico Statement.

## V. PLAINTIFFS ARE SUFFERING AND WILL CONTINUE TO SUFFER IRREPARABLE HARM WITHOUT PRELIMINARY INJUNCTIVE RELIEF.

Parties seeking preliminary injunctive relief must show they are "likely to suffer irreparable harm in the absence of preliminary relief." *Winter*, 555 U.S. at 20. Here, USCIS's unlawful imposition of a new requirement for SIJS and the resulting unlawful denials of Plaintiffs' SIJS petitions is causing and will continue to cause irreparable harm that cannot be remedied if the Court waits until the end of trial to grant relief. Intangible injuries, such as those suffered by Plaintiffs, typically lack adequate legal remedies, and "may qualify as irreparable harm." *Ariz. Dream Act Coal. v. Brewer*, 757 F.3d 1053, 1068 (9th Cir. 2014) ("*Ariz. I*") (internal quotations and brackets omitted). Absent preliminary relief, Plaintiffs and the Proposed Class will continue to suffer immediate and irreparable harms, including the following:

First, Plaintiffs and the Proposed Class currently suffer from and will continue to suffer from the irreparable harm of being ineligible for green cards and the accompanying benefits. At least one federal court has found that the unlawful deprivation of SIJS constitutes irreparable harm sufficient for a *permanent* injunction because the denial of SIJS results in an inability to obtain a green card. *See Perez-Olano*, 248 F.R.D. at 267 ("As a result of Defendants' unlawful application of the specific consent requirement, Plaintiffs have and will suffer substantial and immediate irreparable injury in losing eligibility for SIJ status and SIJ-based adjustment."). For the vast majority of the Proposed Class, SIJS is the only path to a green card. Without lawful status, Plaintiffs and the Proposed Class are unable to plan for their futures, whether that be enrolling in higher education programs, accessing medical services, pursuing career opportunities, or marrying and starting families of their own. The Ninth Circuit Court of Appeals held that the loss of professional opportunities alone can constitute irreparable harm satisfying the preliminary injunction standard. *See Ariz. Dream Act Coal. v. Brewer*, 855 F.3d 957, 978 (9th Cir. 2017) ("*Ariz. II*") (finding DACA recipients were irreparably harmed by Arizona's policy denying them driver's licenses because being unable to commute to jobs limited their professional opportunities); *see also Lester v. Parker*, 235 F.2d 787, 789 (9th Cir. 1956) (recognizing

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

"constitutionally protected right to work"); *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)) ("It is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury'"). That harm is heightened for young individuals such as Plaintiffs who are at the start of their working lives: "[s]etbacks early in [] careers are likely to haunt [young] Plaintiffs for the rest of their lives" because Plaintiffs' entire careers could be "constrained by professional opportunities they are denied today." *Ariz. I*, 757 F.3d at 1068 (irreparable harm "heightened by Plaintiffs' young age and fragile socio economic status"); *see also Medina v. DHS*, ---F.Supp.3d---, 2018 WL 2214085, *12 (W.D. Wash. May 15, 2018). J.L. is now unable to work or attend the college of her choice because she does not have lawful status, and she is therefore unable to pursue her dream of becoming a doctor. (J.L. Decl., ¶¶ 12, 25.) Plaintiffs and the Proposed Class will be denied a myriad of other benefits available through a green card, such as healthcare. (Tsou. Decl., ¶ 14); *see also* 22 C.C.R. § 50301 (lawfully present individuals eligible for the full scope of Medi-Cal benefits); *Beltran v. Meyers*, 677 F.2d 1317, 1322 (9th Cir. 1982) (sufficient showing of injury when enforcement of rule "may deny them needed medical care.")

        <u>Second</u>, Plaintiffs and the Proposed Class face removal from the United States. For Proposed Class members like J.L., who are not yet in removal proceedings, the denial of SIJS petitions will result in the initiation of removal proceedings against them and deportation. *See* USCIS June 28 Memo, p. 7. For M.V.B. and Proposed Class members already in removal proceedings, SIJS denial makes it far more likely they will be removed soon from the U.S. (Jacks Decl., ¶¶ 28-30.) Indeed, for one member of the Proposed Class, J.A.L., denial of SIJS renders him imminently vulnerable to removal. J.A.L.'s SIJS petition was initially approved on April 30, 2018. (Bhuk., ¶ 6, Ex. D.) However, two days after approving his petition, USCIS issued a Reopen Notice, informing J.A.L. it "reconsidered the decision previously issued on [his] case." (*Id.*, ¶ 7, Ex. E.) USCIS issued a NOID the same day, applying the new reunification requirement, and issued a denial on July 13, 2018 on the same basis. (*Id.*, ¶¶ 7-8, Exs. F, G.) J.A.L. is currently in removal proceedings, with a hearing date of October 10, 2018. (*Id.*, ¶ 9.) USCIS's denial of J.A.L.'s petition places him at heightened and imminent risk of removal. (*Id.*; Jacks. Decl., ¶¶ 28-

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

30.) Removal is especially likely because the government can rely on the very information provided in J.A.L's or any other class members' SIJS petition to meet its burden to establish alienage and removability. (Jacks. Decl., ¶¶ 28-30); USCIS June 28 Memo.

If removed from the U.S., Plaintiffs and Proposed Class members face separation from their caring guardians and return to countries that a court has already found is not in their best interest and where they face imminent harm. *See Osorio*, 893 F.3d at 179 (irreparable harm satisfied given the juvenile court's finding "that it would not be in the child's best interest to be returned to his or her country of origin.") M.V.B. faces death in Honduras at the hands of gang members who killed his caretaker uncle, murdered several other members of his family, and tried to kill M.V.B. (M.V.B. Decl., ¶¶ 10, 16-17). J.B.A. suffers from thyroid cancer and depression and receives treatment under her guardian's health insurance; removal to Mexico places her life in danger because she will not be able to access potentially life-saving care. (J.B.A. Decl., ¶¶ 12-13, 22); *see also Leiva-Perez v. Holder*, 640 F.3d 962, 970 (9th Cir. 2011) (irreparable harm from risk of deportation); *Doe v. Trump*, 288 F.Supp.3d 1045, 1082 (W.D. Wash. 2017) (W.D. Wash. 2018) (irreparable harm when forcibly separated from family members); *Torres v. DHS*, No. 17-cv-1840, 2017 WL 4340385, *6 (S.D. Cal. Sept. 29, 2017). (irreparable harm from loss of "sense of well-being" and threat of removal) (S.D. Cal. Sept. 29, 2017).

<u>Third</u>, the denial or fear of denial of SIJS subjects these already vulnerable Plaintiffs to further mental, emotional, and psychological harm. (Waters Decl., ¶¶ 14, 15.) This harm is exacerbated by the inevitable reality of removal from the United States. (*See* Jacks. Decl., ¶ 30.) For example, M.D.G.B. is "devastated" and "terrified" after receiving her NOID. (M.D.G.B. Decl., ¶¶ 21-25.) Removal from the U.S. would tear M.D.G.B. away from her grandmother – her only loving caretaker – and return her to a country where she has known only abuse and neglect. (*Id.*) After receiving her NOID, J.B.A. could not get out of bed for days, cried, and "felt destroyed." (J.B.A. Decl., ¶¶ 24-27.) Her symptoms of depression have worsened at the prospect of losing her "mom" and being forced to return to Mexico where she does not have health insurance or any care for her cancer or depression. (*Id.*) Likewise, denial of J.L.'s application has left her "hopeless and depressed" now that her dreams of college have been shattered, and

replaced with nightmares of being deported. (*Id.*) These severe mental health consequences are unsurprising; for Plaintiffs and the Proposed Class, denial of their bona fide SIJS petitions is "experienced as another traumatic event in their life," can "have severe, devastating, and permanent consequences to their physical and emotional well-being," and will likely lead to "an increase both in the severity and frequency of the symptoms they are already experiencing. (Waters Decl., ¶¶ 13-15.) Such stress and psychological harm establishes irreparable harm. *See e.g., Chalk v. U.S. Dist. Ct.*, 840 F.2d 701, 709 (9th Cir. 1988) (finding irreparable harm due to "emotional stress, depression and reduced sense of well-being...."(citation omitted).); *Inland Empire –Immigrant Youth Collective*, No. EDCV 17-2048 PSG (SHKx), 2018 WL 1061408, at *6 (C.D. Cal. Feb. 26, 2018) ("The Court should also consider the emotional pain to which the named Plaintiffs have attested . . .which is a cognizable form of irreparable injury.")

## VI.     THE REMAINING FACTORS SUPPORT PRELIMINARY RELIEF.

These final two elements of the preliminary injunction test – the balance of the equities and the public interest – merge when the government is a party. *See League of Wilderness Defs./Blue Mountains Biodiversity Proj. v. Connaughton*, 752 F.3d 755, 766 (9th Cir. 2014). In assessing these factors, courts consider the impact of the injunction on nonparties as well as parties. *See id*. The Court must "balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." *Winter*, 555 U.S. at 24. The federal government, however, cannot suffer harm from an injunction that simply requires it to follow its legal obligations. *See Abdi v. Duke*, 280 F.Supp.3d 373, 410 (W.D.N.Y. 2017).

Without an injunction, Plaintiffs will suffer hardship from, among other things: (1) losing SIJS and the multitude of benefits it offers; (2) facing deportation from the United States and their guardians to a country that a court has found is not in their best interest; (3) stalling or reversing their recovery from the trauma they endured at the hands of one or both parents; and (4) suffering severe and lasting mental health consequences of losing an opportunity for stability and relief they had relied on. On the other hand, an injunction would require only that USCIS correctly apply the law and return to adjudicating SIJS petitions in the same manner it has for years; the requested relief thus imposes no hardship on the USCIS. *Rodriguez v. Robbins,* 715 F.3d 1127,

1145 (9th Cir. 2013) ("[The government] cannot suffer harm from an injunction that merely ends an unlawful practice"); *Ariz. II*, 855 F.3d at 978 ("[I]t is clear that it would not be equitable or in the public's interest to allow the state to violate the requirements of federal law, especially when there are no adequate remedies available"(citation omitted).); *League of Wilderness Defs.*, 752 F.3d at 765 (Balance of hardships tips in plaintiffs' favor if the harm plaintiff faces without an injunction is permanent while the harm defendant faces if an injunction is granted is temporary.)

Moreover, the public interest weighs strongly in favor of granting Plaintiffs' motion. SIJS protects extremely vulnerable and abused children. USCIS's sudden new eligibility requirement harms the public interest by generating fear and uncertainty among such children and undermining the credibility of its promises to non-citizens regarding immigration status. Accordingly, both the balance of the equities and the public interest favor provisional relief.

## VII.  <u>CONCLUSION</u>

For the foregoing reasons, pending adjudication on the merits, this Court should enjoin USCIS from denying SIJS petitions based on their new eligibility requirements; initiating removal proceedings against or removing a SIJS petitioner who was appointed a guardian pursuant to Section 1510.1(a) of the California Probate Code and whose SIJS petition has been denied based on the unlawful requirement. Plaintiffs further request the Court enjoin Defendants to provide no less than 14 days' notice to Plaintiffs before taking adverse adjudicatory or enforcement action against Plaintiffs or the Proposed Class; and grant any other relief the Court deems just and equitable in light of the current and prospective irreparable harm that Plaintiffs and the Proposed Class are suffering and will suffer due to Defendants' unlawful actions.

Dated: August 14, 2018

MANATT, PHELPS & PHILLIPS, LLP
MATTHEW KANNY
ADRIENNE MARSHACK
SIRENA CASTILLO

PUBLIC COUNSEL
JUDY LONDON
SARA VAN HOFWEGEN
MARY TANAGHO ROSS

LAWYERS' COMMITTEE FOR CIVIL RIGHTS OF THE SAN FRANCISCO BAY AREA
KEITH WURSTER

By: **/s/**
     Sirena Castillo
     Attorneys for *Plaintiffs*
     J.L., M.V.B., M.D.G.B., and J.B.A., on behalf of themselves and all others similarly situated