1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

J.L., M.V.B., M.D.G.B., and J.B.A., on behalf of themselves and all others similarly situated,

Plaintiffs,

v.

LEE FRANCIS CISSNA, Director, U.S. Citizenship and Immigration Services, KIRSTJEN M. NIELSEN, Secretary, U.S. Department of Homeland Security, ROBERT COWAN, Director, National Benefits Center, UNITED STATES DEPARTMENT OF HOMELAND SECURITY, and UNITED STATES CITIZENSHIP AND IMMIGRATION SERVICES,

Defendants.

Case No. 18-cv-04914-NC

**ORDER GRANTING PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**

Re: Dkt. No. 6

Plaintiffs are young immigrants who were abused, neglected, or abandoned by their parents. They seek classification as Special Immigrant Juveniles ("SIJ") as a pathway to lawful permanent residency in the United States. They contend that defendants—the United States Department of Homeland Security ("DHS"), the United States Citizenship and Immigration Services ("USCIS"), and individual officers in charge of those departments—have adopted a new policy that unlawfully denies them SIJ status by imposing requirements beyond the scope of the law. Plaintiffs now move for a preliminary injunction to enjoin that policy. *See* Dkt. No. 6. Because the Court finds that Plaintiffs have demonstrated a likelihood of success on the merits, a likelihood of irreparable harm in the absence of preliminary relief, and the balance of equities and public interest weighs in their favor, the Court GRANTS Plaintiffs' motion for preliminary injunction enjoining Defendants from effecting their new policy.

# I.  Background

## A.  Federal Regulatory Framework and History

Each year, a small percentage of immigrant visas are allocated to immigrant juveniles with Special Immigrant Juvenile status.  *See* 8 U.S.C. §§ 1153.  To be eligible for SIJ status, an immigrant must:

> (i)  [have] been declared dependent on a juvenile court located in the United States or whom such a court has legally committed to, or placed under the custody of, an agency or department of a State, or an individual or entity appointed by a State or juvenile court located in the United States, and whose reunification with 1 or both of the immigrant's parents is not viable due to abuse, neglect, abandonment, or a similar basis found under State law;
>
> (ii)  for whom it has been determined in administrative or judicial proceedings that it would not be in the alien's best interest to be returned to the alien's or parent's previous country of nationality or country of last habitual residence; and
>
> (iii)  in whose case the Secretary of Homeland Security consents to the grant of special immigrant juvenile status . . . .

8 U.S.C. § 1101(a)(27)(J) ("SIJ statute").  If granted, SIJ status also provides a pathway to lawful permanent residency and, ultimately, citizenship.  *See* 8 U.S.C. §§ 1255, 1427.  When an immigrant applies for SIJ status, USCIS must grant or deny SIJ status within 180 days.  *See* 8 U.S.C. § 1232(d)(2).  Because the dispute in this case centers around USCIS's current interpretation of the SIJ statute, a brief overview of the statutory history is useful.

Congress first recognized SIJ status as a form of immigration relief in 1990.  Specifically, the Immigration and Nationality Act of 1990 conferred "special immigrant status" to immigrants "declared dependent on a juvenile court located in the United States and . . . deemed eligible by that court for long-term foster care, and . . . it would not be in the alien's best interest to be returned to the alien's or parent's previous country of

2

nationality . . . ." Pub. L. No. 101-649 § 153, 104 Stat. 4978 (1990) (amending 8 U.S.C.

§ 1101). Implementing regulations enacted by the United States Immigration and

Naturalization Service ("INS")[1] in 1993 defined a "juvenile court" as "a court located in

the United States having jurisdiction under state law to make judicial determinations about

the custody and care of juveniles." 8 C.F.R. § 101.6(a) (1993). Those regulations also

stated that whether an immigrant was an eligible "juvenile" within the meaning of the SIJ

statute depended on "the law of the state in which the juvenile court upon which the alien

has been declared dependent is located[.]" 8 C.F.R. § 101.6(c)(1) (1993).

　　　In 1997, Congress amended the SIJ statute to clarify that the statute applied to

immigrant juveniles who had been "legally committed to, or placed under the custody of,

an agency or department of a state and who has been deemed eligible by that [juvenile]

court for long-term foster care due to abuse, neglect, or abandonment . . . ." Pub. L. No.

105-119 § 113, 111 Stat. 2440 (1997) (amending 8 U.S.C. § 1101). The 1997 amendments

added a new requirement that the Attorney General[2] consent to the state court dependency

order before SIJ status could be granted. *Id.* INS regulations defining "juvenile court"

remained largely unchanged, but clarified that eligible juveniles were aliens "under

twenty-one years of age." 8 C.F.R. §§ 204.11(a), (c)(1) (1999). Federal law continued to

defer to state courts applying state law for "declarations of dependency." 8 C.F.R.

§ 204.11(c)(3) (1999); *see also* USCIS, Policy Manual, vol. 6, pt. J ch. 2 § D.4 ("There is

nothing in USCIS guidance that should be construed as instructing juvenile courts on how

to apply their own state law.").

　　　In 2008, Congress passed the Trafficking Victims Protection Reauthorization Act

("TVPRA"), making two significant amendments to the SIJ statute. *See* Pub. L. No. 110-

457 § 235(d), 122 Stat. 5044 (2008). First, the TVPRA removed the requirement that

immigrant juveniles seeking SIJ status must be "deemed eligible by [a juvenile] court for

---

[1] The INS was dissolved by the Homeland Security Act of 2002 and its duties were transferred to the USCIS. *See* Pub. L. No. 107-296, 116 Stat. 2135 § 471.
[2] The SIJ statute now requires the Secretary of Homeland Security's consent instead. *See* Pub. L. No. 110-457 § 235(d)(1)(B)(ii), 122 Stat. 5044 (2008).

long-term foster care due to abuse, neglect, or abandonment ." *Id.* § 235(d)(1)(A).
Congress replaced that requirement with the condition that the immigrant seeking SIJ
status could not be "reunifi[ed] with 1 or both of [her] parents . . . due to abuse, neglect,
abandonment, or a similar basis found under state law." *Id.* Second, the TVPRA added an
"age-out" provision, which provided that the applicant's eligibility for SIJ status was
dependent on her age at the time she applied for SIJ status. *Id.* § 235(d)(6).

Despite these amendments, however, implementing regulations continue to
reference pre-TVPRA statutory text conditioning SIJ status on eligibility for long-term
foster care. *See* 8 C.F.R. § 204.11(a), (c)(4)–(5) (2009) ("SIJ regulation").

## B.    California Statutory Framework

In 2014, the California legislature added § 155 to the California Code of Civil
Procedure, granting "the juvenile, probate, and family court divisions of the superior
court" jurisdiction "to make judicial determinations regarding the custody and care of
children within the meaning of the federal Immigration and Nationality Act (8 U.S.C. Sec.
1101 et seq. and 8 C.F.R. Sec. 204.11)." Cal. Code Civ. Proc. § 155(a)(1); *see also Bianka
M. v. Super. Ct.*, 5 Cal. 5th 1004, 1013 (2018).  In 2015, the legislature specifically
empowered California probate courts to "appoint a guardian of the person for an unmarried
individual who is 18 years of age or older, but who has not yet attained 21 years of age, in
connection with a petition to make the necessary findings regarding special immigrant
juvenile status." Cal. Prob. Code § 1510.1; *see also* Cal. Assem. Bill No. 900 (2015–2016
Re. Sess.) § 1(a)–(b).  In doing so, California probate courts are governed by the same
substantive law as guardianships of minors.  *See* Cal. Prob. Code § 1514 (citing Cal. Fam.
Code §§ 3020, 3040 *et seq.*).

## C.    Factual Background of This Case

Plaintiffs are four young immigrants seeking to represent a class of "[c]hildren who
have received guardianship orders pursuant to [California] Probate Code § 1510.1(a) and
who have or will receive denials of their [SIJ status] petitions on the grounds that the state
court cannot reunify them with their parents." Dkt. No. 1 ("Compl.") ¶¶ 1, 71.

According to the complaint, J.L. is a 19-year-old immigrant from New Zealand who was abandoned by her biological parents when she was four months old.  *See* Dkt. No. 1 ¶ 18.  J.L. is currently living in California with her two aunts.  *Id.*  On January 20, 2017, J.L. was placed under the guardianship of her aunts by the Los Angeles County Probate Court.  *Id.*  In doing so, the probate court also made the required SIJ findings.  *Id.*; *see also* Dkt. No. 17, Ex. E (amended SIJ findings for J.L. dated March 23, 2018).  J.L. applied for SIJ status on March 15, 2017, but USCIS denied her application on April 17, 2018, asserting that the Los Angeles County Probate Court did not qualify as a "juvenile court" within the meaning of the SIJ statute.  Compl. ¶ 18.

M.V.B. is a 19-year-old immigrant from Honduras who was abandoned by his biological parents shortly after birth.  *Id.* ¶ 19.  On August 2, 2017, the Los Angeles County Probate Court appointed M.V.B.'s cousin as his legal guardian after making the required findings.  *Id.*  M.V.B. applied for SIJ status on August 14, 2018.  *Id.*  USCIS has not acted on his application.  *Id.*  M.V.B. is currently in removal proceedings.  *Id.* ¶ 64.

M.D.G.B. is a 22-year-old immigrant from Mexico who was abandoned by her biological father at birth and was abused by her mother throughout her childhood.  *Id.* ¶ 20.  On February 1, 2017, the San Diego County Probate Court appointed M.D.G.B.'s grandmother as her guardian.  *Id.*  M.D.G.B. applied for SIJ status on February 2, 2017.  *Id.*  On April 24, 2018, USCIS issued a Notice of Intent to Deny ("NOID") SIJ status asserting that the San Diego County Probate Court was not a "juvenile court."  *Id.*

J.B.A. is a 22-year-old immigrant who left Mexico at 7 years old and suffered years of traumatic and violent abuse by her biological father.  *Id.* ¶ 21.  On January 20, 2017, the Alameda County Probate Court appointed J.B.A.'s former computer science teacher, who had previously taken in J.B.A. when she escaped her father's abuse, as her guardian.  *Id.*  J.B.A. applied for SIJ status on February 6, 2017.  *Id.*  On July 20, 2017, USCIS issued a NOID asserting that the Alameda County Probate Court was not a "juvenile court."  *Id.*

Plaintiffs contend that, in the summer of 2017, USCIS began holding SIJ applications for individuals between the ages of 18 and 20 for longer than 180 days to

1    implement a new policy regarding SIJ status.  *Id.* ¶¶ 18–21, 46.  However, on April 18,

2    2018, in a statement to the New York Times, USCIS denied that there had been any

3    change in policy with regards to SIJ applications.  *See id.* ¶ 47; *see also* Liz Robbins, *A*

4    *Rule Is Changed for Young Immigrants, and Green Card Hopes Fade*, NEW YORK TIMES

5    (Apr. 18, 2018), *available at* https://www.nytimes.com/2018/04/18/nyregion/special-

6    immigrant-juvenile-status-trump.html.

7        But a week later, USCIS acknowledged in a public statement that it had recently

8    started to deny SIJ applications in connection with new guidance issued in February 2018.

9    *See* Compl. ¶ 47; *see also* Ted Heeson, *Morning Shift: Travel ban at SCOTUS*, POLITICO

10   (April 25, 2018), *available at* https://www.politico.com/newsletters/morning-

11   shift/2018/04/25/travel-ban-at-scotus-182935.  USCIS stated that it centralized

12   adjudication of SIJ applications in November 2016 to increase the consistency and efficacy

13   of SIJ adjudications.  *See* Dkt. No. 7-6 at 138 ("Politico Statement"); *see also* Dkt. No. 34-

14   1 ("Rosenstock Decl.")[3] ¶ 5.  USCIS also stated that it started holding SIJ applications for

15   individuals over the age of 18 over the summer of 2017 to await legal guidance from the

16   USCIS Office of Chief Counsel ("OCC").  *See* Politico Statement; *see also* Rosenstock

17   Decl. ¶ 10.  The OCC issued its guidance in February 2018, specifically instructing that

18   "[t]he evidence submitted must establish that the court had the power and authority to

19   make the required determinations about the care and custody of the petitioner, which

20   includes parental reunification, as a juvenile."  Dkt. No. 34-9 ("OCC Guidance") at 1.

21   With the OCC's legal guidance in hand, USCIS stated that "most courts . . . do not have

22   power and authority to make the reunification finding for purposes of SIJ eligibility."

23   Politico Statement.  USCIS then revised its Consolidated Handbook of Adjudication

24   Procedures, a companion resource to its Policy Manual, to reflect OCC guidance.  *See*

25   Rosenstock Decl. ¶ 11; *see also* Dkt. No. 34-10 ("Volume 6 of the Consolidated Handbook

26   of Adjudication Procedures" or "CHAP").

27   _____

28   [3] USCIS produced a declaration from Peter Rosenstock, a Branch Chief within the Field
     Operations Directorate at USCIS in support of their opposition.  *See* Rosenstock Decl. ¶ 1.

## II. Legal Standard

"A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Nat'l Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008); *see also* Fed. R. Civ. P. 65. In the Ninth Circuit, a plaintiff only needs to show "serious questions going to the merits" if the "'balance of hardships tips sharply in plaintiff's favor,' and the other two *Winter* factors are satisfied." *Alliance for the Wild Rockies v. Pena*, 865 F.3d 1211, 1217 (9th Cir. 2017) (quoting *Shell Offshore, Inc. v. Greenpeace, Inc.*, 709 F.3d 1281, 1291 (9th Cir. 2013)).

## III. Discussion

### A. Likelihood of Success on the Merits

Plaintiffs argue that the USCIS's change in policy violates the Administrative Procedure Act ("APA") because it is arbitrary and capricious. In particular, Plaintiffs argue that USCIS's new SIJ policy contravenes federal and state law and was promulgated without a reasoned explanation. Plaintiffs also argue that USCIS violated the APA by adopting the policy without the required notice and comment period. *See* Dkt. No. 6 at 10–11. USCIS counters that the purported policy change is merely internal guidance that is not subject to the APA and, even if it were, is consistent with the law. *See* Dkt. No. 34 at 13–18. In addition, USCIS argues that, with the exception of J.L.'s denial of SIJ status, there has been no final agency action suitable for judicial review.

#### 1. Arbitrary and Capricious

A court reviews final agency actions under the "arbitrary and capricious" standard of the APA, 5 U.S.C. § 702(2)(A). *See Friends of Endangered Species v. Jantzen*, 760 F.2d 976, 980–81 (9th Cir. 1985). Under the APA, the court "shall" set aside any agency decision that it finds "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 702(2)(A).

An agency action is arbitrary and capricious if "the agency has relied on factors

1   which Congress has not intended it to consider, entirely failed to consider an important

2   aspect of the problem, offered an explanation for its decision that runs counter to the

3   evidence before the agency, or is so implausible that it could not be ascribed to a

4   difference in view or the product of agency expertise." *Motor Vehicles Mfrs. Ass'n v. State*

5   *Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983).

6       Review under the "arbitrary and capricious" standard is narrow, and the reviewing

7   court "is not to substitute its judgment for that of the agency" and "should uphold a

8   decision of less than ideal clarity if the agency's path may reasonably be discerned."

9   *F.C.C. v. Fox Television Stations, Inc.*, 556 U.S. 502, 513–14 (2009).  Despite this narrow

10  scope of review, the court's inquiry must be "searching and careful."  *Marsh v. Or. Natural*

11  *Res. Council*, 490 U.S. 360, 378 (1989).  Ultimately, "the agency must articulate a rational

12  connection between the facts found and the conclusions made." *Or. Natural Res. Council*

13  *v. Lowe*, 109 F.3d 521, 526 (9th Cir. 1997) (citing *U.S. v. Louisiana-Pac. Corp.*, 967 F.2d

14  1372, 1376 (9th Cir. 1992)).

15              **a.      Whether USCIS's Policy is Consistent with Federal Law**

16       The core of this dispute is whether California probate courts must have "the

17  capacity to order reunification with a parent" in order to have jurisdiction to make the

18  required factual findings under the SIJ statute.  OCC Guidance at 2; *see also* CHAP at 7

19  ("the evidence must establish that the court that issued the order had the legal authority and

20  power to actually reunify a petition with his or her allegedly unfit parents . . .").  Because

21  USCIS's justifications for this requirement are lacking, the Court concludes that Plaintiffs

22  have raised serious questions going to the merits.

23       The text of the SIJ statute requires that the petition be "declared dependent on a

24  juvenile court located in the United States . . . ."  8 U.S.C. § 1101(a)(27)(J).  The

25  implementing regulations define "juvenile court" as "a court located in the United States

26  having jurisdiction under State law to make judicial determinations about the custody and

27  care of juveniles."  8 C.F.R. § 204.11(a).  Juveniles include unmarried individuals under 21

28  years of age.  *See* 8 C.F.R. § 204.11(c).  California law provides that its probate courts

8

have "jurisdiction under California law to make judicial determinations regarding the custody and care of children within the meaning of the federal Immigration and Nationality Act . . . ." Cal. Code Civ. Proc. § 155(a)(1).  Children are defined under California law for the purposes of the SIJ statute as "an unmarried individual who is younger than 21 years of age and who . . . consents to the appointment of a guardian or extension of a guardianship after he or she attains 18 years of age." Cal. Prob. Code § 1510.1(d).

On the face of these statutes and regulations, California probate courts have jurisdiction to make the required SIJ findings.  The plain text of the implementing regulation imposes no substantive requirements before a state court is permitted to make SIJ findings.  It does not outline what types of "judicial determinations regarding the custody and care of juveniles" a state court must be empowered to make before it has jurisdiction under the SIJ statute. 8 C.F.R. § 204.11(a).  Rather, it simply states that the court must have "jurisdiction under State law" to do so. *Id.*  And California law unambiguously grants its probate courts with such jurisdiction. *See* Cal. Code Civ. Proc. § 155(a)(1) (California probate courts have "jurisdiction under California law to make judicial determinations regarding the custody and care of children within the meaning of the [SIJ statute]"); Cal. Prob. Code § 1510.1.

USCIS argues that California probate courts nevertheless lack jurisdiction to make the determination that "reunification with 1 or both of the immigrant's parents is not viable due to abuse, neglect, abandonment, or a similar basis found under state law." 8 U.S.C. § 1101(a)(27)(J).  In order to make such a finding, USCIS reasons, the court must also have the power to compel reunification if warranted. *See* CHAP at 2.  But this requirement is not found in either the SIJ statute or regulation and USCIS points to no case law to support its conclusion.  Furthermore, the Court cannot "reasonably . . . discern" why it is necessary for the state court to have the ability to compel reunification to determine that reunification is not viable. *Fox Television*, 556 U.S. at 514.  After all, the SIJ statute does not require the juvenile court to actually compel reunification in the event that a state court

9

finds that reunification *is* viable.

To support its reading, USCIS cites to language in the SIJ regulation providing that a juvenile court order finding that the petitioner is dependent upon the court and is eligible for long-term foster care must be "issued by a court of competent jurisdiction" that is "authorized by law to make such decisions." *See* Dkt. No. 34 at 17 (quoting 8 C.F.R. § 204.11(d)(2)(i–iii)). USCIS also points to language in the regulation stating that "eligible for long-term foster care means that a determination has been made by the juvenile court that family reunification is no longer a viable option." *Id.* (quoting 8 C.F.R. § 204.11(a)). According to USCIS, for a court to be "authorized by law" to decide that "family reunification is no longer a viable option," the court must have jurisdiction to determine the viability or non-viability of family reunification. *Id.* This, USCIS concludes, means that juvenile courts must have the power to actually reunify SIJ petitioners with their biological parents. *Id.*

USCIS's reasoning is flawed. The TVPRA expressly removed all references to long-term foster care from the SIJ statute. *See* Pub. L. No. 110-457 § 235(d), 122 Stat. 5044 (2008). USCIS's reliance on the SIJ regulation's definition of "eligible for long-term foster care" holds no weight when Congress explicitly disapproved of that language.

Recognizing this discrepancy, USCIS characterizes the TVPRA changes as merely clarifying that petitioners do not need to be eligible for foster care. *See* Dkt. No. 45 at 5.[4] Thus, USCIS maintains that its interpretation of the SIJ statute and regulation accords with the TVPRA because it only needs to ignore references to "long-term foster care" in the SIJ regulation and may continue to give weight to language requiring state courts to find that "family reunification is no longer a viable option." *Id.*

---

[4] USCIS also asserts in passing that "the [juvenile] court's determination is meant to be in place until the child reaches the age of majority." *Id.* This is plainly inconsistent with the regulation because the regulation itself contemplates guardianship past the age of majority. *See* 8 C.F.R. § 204.11(a) ("A child who is eligible for long-term foster care will normally be expected to remain in foster care until reaching the age of majority, *unless the child is adopted or placed in a guardianship situation*.") (emphasis added); *see also Auer v. Robbins*, 519 U.S. 452, 461 (1997) (agency interpretations are "controlling unless plainly erroneous or inconsistent with the regulation").

However, the family reunification language cited by USCIS is tied to the definition of long-term foster care eligibility. *See* 8 C.F.R. § 204.11(a) ("eligible for long-term foster care means that a determination has been made by the juvenile court that family reunification is no longer a viable option."). In addition, the TVPRA did more than "clarify" that long-term foster-care eligibility was no longer necessary. By striking the long-term foster care eligibility requirement, the TVPRA also changed the reunification requirement. SIJ petitioners no longer need to show that family reunification is not viable—they only need to show that reunification with *at least one* of their biological parents is no longer viable. *See* 8 U.S.C. § 1101(a)(27)(J)(i). Thus, the SIJ regulation's requirement that "*family* reunification is no longer a viable option" is no longer good law. 8 C.F.R. § 204.11(a) (emphasis added). Indeed, under the plain language of the statute, a juvenile court order could suffice to establish SIJ eligibility even if it finds that reunification with *one* parent is viable, provided that it also finds that reunification with the other parent is not. USCIS's reliance on language that has been explicitly removed by Congress casts significant doubt on the validity of its interpretation.

Discerning USCIS's decision-making path is also made more difficult by USCIS's inconsistent application of the SIJ statutory regime to different states' statutory frameworks. For example, Maryland's implementing statute provides that its equity courts have jurisdiction over:

> custody and guardianship of an immigrant child pursuant to a motion for Special Immigrant Juvenile factual findings requesting a determination that a child was abused, neglected, or abandoned before the age of 18 for the purposes of § 101(a)(27)(J) of the federal Immigration and Nationality Act.

Md. Family § 1-201(b)(10). That statute also provides that "[f]or the purposes of subsection (b)(10) of this section, 'child' means an unmarried individual under the age of 21 years." *Id.* § 1-201(a). USCIS apparently has no issue with this statute and its attempts to distinguish it from California's statute are unconvincing. *See* CHAP at 8.

For example, USCIS reasons that Maryland's statute is distinguishable because it

11

"changed the definition of child." *Id.* But it is not clear that a state's definition of "child" is relevant. The SIJ statute does not mention "child" or "children" and the SIJ regulation broadly defines the limits of SIJ eligibility to include "an alien under twenty-one years of age [and] unmarried . . . ." 8 C.F.R. § 204.11(c). More importantly, the regulation explicitly contemplates the possibility that the SIJ statute may apply to individuals past a state's age of majority. *See* 8 C.F.R. 204.11(a); *see also supra* fn. 4. If Congress wished to tether the SIJ statutory regime to a state's age of majority, it could have done so.

In any case, even if the SIJ statutory regime only applies to "children," California law has a similar analogue to Maryland's Family Code § 1-201(a). California law provides that "[f]or the purposes of this division, the terms 'child,' 'minor,' and 'ward' include an unmarried individual who is younger than 21 years of age and who . . . consents to the appointment of a guardian or extension of a guardianship after he or she attains 18 years of age." Cal. Prob. Code § 1510.1(d). USCIS makes no attempt to explain why California's consent requirement permits it to ignore the preceding language.

USCIS also attempts to distinguish Maryland's statute as giving "the [equity] court jurisdiction over custody until 21 for SIJ purposes." CHAP at 8. This too is unconvincing. The California statute expressly grants its probate courts jurisdiction "to make judicial determinations regarding the *custody* and care of children within the meaning of the federal Immigration and Nationality Act . . . ." Cal. Code Civ. Proc. § 155(a)(1) (emphasis added).[5]

To be sure, the California statutory regime severely curtails the appointed guardian's ability to exercise significant authority over the petitioner. *See* Cal. Prob. Code § 1510.1(c) (the guardian may not "abrogate any of the rights that a person who has

---

[5] The CHAP also distinguishes the Maryland and California statutes on the basis that California courts supposedly treat SIJ juvenile court orders as "'factual' only," while Maryland courts apparently treat these orders as "legal conclusions." CHAP at 8. It is unclear, however, why the factual-legal distinction matters. In any case, USCIS's attempt to distinguish Maryland and California's statutory regimes using the factual-legal dichotomy is particularly confusing given that the Maryland statute expressly refers to SIJ findings as "factual." *See* Md. Family § 1-201(b)(10).

12

attained 18 years of age may have as an adult under state law . . . without the ward's express consent."). California law also conditions the appointment of a guardian for petitioners over the age of 18 on the petitioner's consent. *See id.* § 1510.1(a). However, USCIS points to no state or federal authority to support the proposition that a court lacks jurisdiction solely because its power to exercise authority is conditioned on a party's consent.[6] *Cf. Int'l Shoe v. Wash.*, 326 U.S. 310, 317–18 (1945) (personal jurisdiction over diverse, out-of-state parties depends on their consent, whether express or implied).

Finally, USCIS guidance states that "[g]enerally, a petition should not be denied based USCIS' [sic] interpretation of state law, but rather officers should *defer to the juvenile court's interpretation of the relevant state laws*." CHAP at 7 (emphasis added). The evidence accompanying a SIJ petition only needs to "establish that the juvenile court based its decision, *including whether or not it has jurisdiction to issue the order, on state law* rather than federal immigration law." *Id.* (emphasis added); *see also Perez-Olano v. Gonzalez*, 248 F.R.D. 248, 265 (C.D. Cal. 2008) ("Congress appropriately reserved for state courts the power to make child welfare decisions, an area of traditional state concern and expertise."). The California Supreme Court has found that California probate courts have jurisdiction to make "necessary state court findings," including reunification determinations. *Bianka M*, 5 Cal. 5th at 1013. Under USCIS's own guidance, this should settle the issue.

The arbitrary and capricious standard requires that agency action "be only a reasonable, not the best or most reasonable, decision." *Nat'l Wildlife Fed'n v. Burford*, 871 F.2d 849, 855 (9th Cir. 1989). Here, however, USCIS's decision is inconsistent with the plain text of the SIJ statute. At a minimum, Plaintiffs have raised serious questions

---

[6] USCIS appears to believe that the interaction between California law and the SIJ statute presents a "giant loophole" for immigration enforcement and the SIJ statute's consent requirement is a way to combat that loophole. Dkt. No. 34 at 18–19 n.5. According to USCIS, the statute's consent requirement requires it to review SIJ petitions to determine whether the juvenile court order is bona fide, meaning that the order was sought to obtain relief from abuse, neglect, or abandonment, and was not primarily or solely sought to obtain an immigration benefit. *See id.* at 18. Even if this were true, whether a juvenile court order is bona fide has no bearing on whether the issuing court had jurisdiction.

going to the merits of their claim that USCIS's new policy is unreasonable.

> **b.  Whether USCIS Was Required to Provide a Reasoned Explanation for the Basis of the New Policy**

Plaintiffs also argue that USCIS's new policy is arbitrary and capricious because it failed to provide any adequate basis or reasoned explanation for its new requirement.  *See* Dkt. No. 6 at 13.  USCIS responds that no explanation was required because USCIS did not create new eligibility requirements or change their policy.  Instead, USCIS merely clarified the legal requirements for SIJ status and centralized adjudications of SIJ proceedings.  *See* Dkt. No. 34 at 19.  USCIS does not meaningfully dispute that it did not adequately explain any such change.[7]

Under the APA, an agency must "examine the relevant data and articulate a satisfactory explanation for its action."  *Motor Vehicle*, 463 U.S. at 43.  The reviewing court "may not supply a reasoned basis for the agency's action that the agency itself has not given," but must "uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned."  *Id.*  This requirement that an agency "provide reasoned explanation for its action would ordinarily demand that it display awareness that it *is* changing position."  *Fox Television*, 556 U.S. at 515 (emphasis in original).  "An agency may not, for example, depart *sub silentio* or simply disregard rules that are still on the books."  *Id.*

The requirement that an agency must explain its decision applies whenever an agency makes a "conscious change of course."  *Id.*  While it most obviously applies when an agency adopts or displaces a formal rule or policy, the requirement also applies to agency actions relating to implied rules or policies.  *Humane Soc'y of the U.S. v. Locke*, 626 F.3d 1040, 1050 n.4 (9th Cir. 2010); *see also Ramos v. Nielsen*, 321 F. Supp. 3d 1083, 1108–09 (N.D. Cal. 2018).  If an agency "announces and follows—by rule or by settled

---

[7] To the extent USCIS relies on its statement to the media (*see* Politico Statement), that statement supplies only two sentences to explain USCIS's new policy.  The explanation was conclusory and does not come close to satisfying the APA's requirement of a "reasoned explanation."  *Motor Vehicle*, 463 U.S. at 43.

course of adjudication—a general policy by which its exercise of discretion will be governed, an irrational departure from that policy (as opposed to an avowed alteration of it) could constitute" arbitrary and capricious action. *I.N.S. v. Yueh-Shaio Yang*, 519 U.S. 26, 32 (1996). If such a departure exists, the agency must give reasons for departing from its past precedent to survive review under the APA. *See California Trout v. F.E.R.C.*, 572 F.3d 1003, 1023 (9th Cir. 2009) (citing *W. States Petroleum Ass'n v. E.P.A.*, 87 F.3d 280, 284 (9th Cir. 1996)); *see also Humane Soc'y*, 626 F.3d at 1049 ("Divergent factual findings with respect to seemingly comparable [cases]" requires explanation); *Greater Boston Television Corp. v. F.C.C.*, 444 F.2d 841, 852 (D.C. Cir. 1970) (agency action may be arbitrary and capricious "if [it] glosses over or swerves from prior precedents without discussion"), *cited with approval in Nw. Envtl. Def. Ctr. v. Bonneville Power Admin.*, 477 F.3d 668, 687 (9th Cir. 2007).

Here, USCIS argues that its new policy does not represent a "change" requiring explanation. According to USCIS, it merely clarified existing law and centralized SIJ adjudications to improve consistency. The record before the Court, however, does not support USCIS's characterization of its action. USCIS does not dispute Plaintiffs' assertion that it regularly approved SIJ petitions before February 2018. *See* Dkt. No. 7-7 ("Jackson Decl.") ¶ 23–25; Rosenstock Decl. ¶ 12. USCIS also does not dispute Plaintiffs' assertion that it has not approved *any* SIJ petitions since its adoption of the new policy in February 2018.[8] Instead, according to Plaintiffs, USCIS has begun issuing "cookie-cutter denials" of SIJ petitions from California petitioners. Jackson Decl. ¶ 27. The drastic decrease in SIJ petition approvals closely mirrors agency actions in other cases where an explanation was required.

In *Western States Petroleum Association*, for example, the EPA considered a proposal from the state of Washington to implement an emissions permit program. 87

---

[8] At oral argument, USCIS suggested that this could change given that it has yet to act on many SIJ petitions, including that of M.V.B., M.D.G.B., and J.B.A. The Court is not convinced, particularly given that USCIS has already issued NOIDs.

F.3d at 282–83.  The EPA denied the state's proposal, citing a federal regulation that it believed applied to the emissions at issue.  *Id.* at 283.  However, in at least eight other instances, the EPA approved permit programs that implicated the very same regulation.  *Id.* at 283–84.  The EPA argued that the court should ignore that inconsistency because "the Washington decision represents the EPA's first thorough, well-reasoned decision of whether [certain emissions] may be excepted from [the regulation]."  *Id.* at 284.  The Ninth Circuit rejected the EPA's argument out of hand and found that "the EPA's rejection Washington's [emission] rules is undeniably a change in agency interpretation . . . ."  *Id.* (internal citations and quotations omitted).  Although the Ninth Circuit recognized that the EPA has the power to "adjust its policies and rulings in light of experience and announce new principles in adjudicatory proceeding[s]," it was required to "clearly set forth the ground for its departure from prior norms so that we may understand the basis of the EPA's actions and judge the consistency of that action with the EPA's mandate."  *Id.*

So too here.  USCIS's interpretation of the SIJ statute to require state courts to have the power to compel reunification is "undeniably a change in agency interpretation."  *Id.* Whether USCIS's current interpretation of the SIJ statute and regulation is a "clarification" or a "policy change" does not change that fact that the interpretation represents a sharp departure from prior practice.  Before February 2018, USCIS consistently approved SIJ petitions based on supporting findings from California courts.  Now, USCIS consistently denies SIJ petitions with similar findings even though no relevant federal and state laws have changed.  Furthermore, Rosenstock's declaration belies USCIS's argument that no change occurred.  According to Rosenstock, there was no specific guidance or policy before February 2018, but now there is.  *See* Rosenstock Decl. ¶¶ 11–12 (USCIS changed its procedures in accordance with guidance issued in February 2018).  Issuing guidance where none had existed for nearly a decade constitutes a change that requires a reasoned explanation, particularly when that guidance has resulted in drastically different outcomes in similar cases.

In an attempt to bolster its argument, USCIS points to three SIJ adjudications made

16

before 2018 where it denied petitions on the basis that the state court had no jurisdiction to make the required findings. *See* Dkt. No. 34 at 19 n.3.[9] Those cases, however, are inapposite. None of those cases concern California law, California courts, or California petitioners. *See e.g.*, Dkt. No. 37-3 at 4 (Maryland petitioner denied SIJ status because Maryland did not authorize its courts to make guardianship determinations for individuals over the age of 18 when the juvenile court order was issued in 2013)[10]; Dkt. No. 37-6 at 4–5 (Iowa petitioner denied SIJ status because the petitioner was issued a guardianship order pursuant to an Iowa statute that only applied to individuals under the age of 18). Moreover, none of these cases addressed the legal theory at issue in this case: whether a state juvenile court must have the power to actually reunify a petitioner with her biological parents to make SIJ findings.

Even if the Court accepts USCIS's characterization of its guidance as a "clarification" with no substantive effect, "an agency's duty to explain cogently the bases of its decisions is not limited to circumstances in which the agency departs directly from an earlier path." *Humane Soc'y*, 626 F.3d at 1050–51. USCIS's inconsistent treatment of SIJ petitions with similar factual backgrounds (*i.e.*, SIJ findings from California probate courts) requires an explanation. *Id.*

Accordingly, the Court finds that Plaintiffs have shown a likelihood of success on the merits with regards to their claim that USCIS failed to provide a reasoned explanation.

### c. Whether USCIS Was Required to Provide Adequate Notice

Finally, Plaintiffs contend that USCIS was required to follow the APA's procedural requirements. *See* Dkt. No. 6 at 16. USCIS argues that it was not required to follow the

---

[9] USCIS did not provide copies of the decisions it cited and its citations were too vague for the Court to determine with specificity which Administrative Appeals Office ("AAO") decisions USCIS was referencing. *See* Dkt. No. 34 at 14 n.3 (citing to "*In re Self Petitioner* (AAO February 15, 2013), *In re Self Petitioner* (AAO October 6, 2015), *In re Self Petitioner* (AAO April 20, 2016)"). Thus, the Court relied on the AAO decisions in Plaintiffs' Supplemental Request for Judicial Notice (Dkt. No. 37-1).
[10] Maryland amended its laws in 2014 to authorize its courts to make SIJ findings for individuals over the age of 18. *See* 2014 Md. Laws 96 (Maryland House Bill No. 315 amending Md. Family § 1-201).

17

APA's notice and comment procedures because its new policy is not a substantive rule. Rather, the new policy is an interpretive rule that preserves USCIS officers' ability to make individualized determinations. *See* Dkt. No. 34 at 15–16.

The APA requires a federal agency to follow prescribed notice and comment procedures before promulgating substantive rules. *See* 5 U.S.C. § 553. Those procedures do not apply to "interpretive rules, general statements of policy, or rules of agency organization, procedure, or practice." *Id.* § 553(b)(A).

In *Colwell v. Department of Health and Human Services*, 558 F.3d 1112, 1124 (9th Cir. 2009), the Ninth Circuit distinguished a substantive rule from a general statement of policy:

> The critical factor to determine whether a directive announcing a new policy constitutes a rule or a general statement of policy is "the extent to which the challenged [directive] leaves the agency, or its implementing official free to exercise discretion to follow, or not to follow, the [announced] policy in an individual case . . . .
>
> To the extent that the directive merely provides guidance to agency officials in exercising their discretionary power while preserving their flexibility and their opportunity to make "individualized determination[s]," it constitutes a general statement of policy . . . . In contrast, to the extent that the directive "narrowly limits administrative discretion" or establishes a "binding norm" that "so fills out the statutory scheme that upon application one need only determine whether a given case is within the rule's criterion," it effectively replaces agency discretion with a new "binding rule of substantial law."

*Colwell*, 558 F.3d at 1124 (quoting *Mada-Luna v. Fitzpatrick*, 813 F.2d 1006, 1013–14 (9th Cir. 1987)) (alterations in original).

Here, some of the language used in the CHAP is couched in terms that appear to suggest that the policy is not mandatory and preserves USCIS officers' discretion. *See, e.g.*, CHAP at 7 ("it *may be appropriate to deny* [the petition] on the basis that the

evidence does not establish eligibility . . . .") (emphasis added); *id.* ("USCIS *may ask the petitioner* to provide evidence that the court had competent jurisdiction . . ."); *id.* ("the officer should request that the applicant provide evidence that the court relied on the relevant state law to make the findings. This requirement can be met if the petitioner submits supplemental evidence . . . .").

However, the CHAP also contains language that effectively nullifies the discretionary language quoted above. For example, the CHAP states that petitioners can submit supplemental evidence such as "a copy of the petition with state law citations, excerpts from relevant state statutes considered by the state court prior to issuing the order" and "evidence [showing] that the court actually relied on those laws when making its findings." CHAP at 7–8. But the CHAP also states that:

> California civil procedures were updated to provide jurisdiction to all
> Superior courts in California to make "the factual findings" required by 8
> USC 1101(a)(27)(J)(i). See CA Civ. Pro. Section 155. However, USCIS
> views the required findings as legal conclusions on matters of child welfare
> that must be made by courts of competent jurisdiction. The change in
> California law does not appear to provide the courts with the power and legal
> authority to make decisions about a parent's ability to have custody of an
> individual over 18.

*Id.* The two statements are incongruous. USCIS's internal guidance instructs its officers to request evidence in the form of citations to relevant California law, while simultaneously declaring that law insufficient. This directive "so fills out the statutory scheme that upon application one need only determine whether a given case is within the rule's criterion," *i.e.*, whether the petition is from California. *Mada-Luna*, 813 F.2d at 1014 (internal citations and quotations omitted).

USCIS's actions reinforce the conclusion that its new policy is a mandatory substantive rule. In support of her SIJ petition, J.L. submitted a juvenile court order with SIJ findings from the California Superior Court for the County of Los Angeles. *See* Dkt.

1   No. 17, Ex. E at 70.  In that order, the Superior Court stated that "[t]his Court is a juvenile

2   court with authority to make decisions about the care and custody of minors.  *See* Cal.

3   Code Civ. Pro. § 155(a)(1) . . . ."  *Id.* at 72.  The Superior Court also stated that it "has the

4   authority to determine that reunification with [J.L.'s] parents is not viable . . . ."  *Id.* at 73

5   (citing Cal. Prob. Code §§ 1510.1, 2351).  These statements are precisely the type of

6   evidence the CHAP instructs USCIS officers to request, but USCIS nevertheless rejected

7   J.L.'s petition for lack of evidence.  *See* Dkt. No. 17, Ex. C at 21–22.

8       Accordingly, the Court finds that Plaintiffs have shown a likelihood of success on

9   their claim that USCIS was required and failed to follow the notice and comment

10  procedures of the APA.

### 2.   Final Agency Action

12      Despite the foregoing reasons, USCIS argues that Plaintiffs nonetheless fail to show

13  a likelihood of success or raise serious questions on the merits because three of the four

14  named plaintiffs do not have judicially reviewable "final agency actions."

15      Judicial review of agency actions is allowed "so long as the decision challenged

16  represents a 'final agency action for which there is no other adequate remedy in court.'"

17  *W. Radio Serv. Co. v. U.S. Forest Serv.*, 578 F.3d 1116, 1122 (9th Cir. 2009) (quoting

18  *Webster v. Doe*, 486 U.S. 592, 599 (1988)); *see also* 5 U.S.C. § 704.

19      An agency action is final if (1) it "marks the consummation of the agency's

20  decision-making process—it must not be of a merely tentative or interlocutory nature" and

21  (2) is "one by which rights or obligations have been determined, or from which legal

22  consequences will flow."  *Bennett v. Spear*, 520 U.S. 154, 177–78 (1997) (internal

23  citations and quotations omitted).  Finality requires that the action be the agency's "last

24  word on the matter."  *Whitman v. Am. Trucking Ass'ns*, 531 U.S. 457, 478 (2001).  "[T]he

25  core question is whether the agency has completed its decisionmaking process, and

26  whether the result of that process is one that will directly affect the parties."  *Indus.*

27  *Customers of NW. Utils. v. Bonneville Power Admin.*, 408 F.3d 638, 646 (9th Cir. 2005)

28  (quoting *Franklin v. Massachusetts*, 505 U.S. 788, 797 (1992)).  Factors such as "whether

the [action] amounts to a definitive statement of the agency's position, whether the [action] has a direct and immediate effect on the day-to-day operations of the party seeking review, and whether immediate compliance [with the terms] is expected" provide "an indicia of finality." *Id.* (quoting *Cal. Dep't of Water Res. v. FERC*, 341 F.3d 906, 909 (9th Cir. 2003)) (alterations in original). The Ninth Circuit approaches the finality requirement "in a pragmatic and flexible manner." *Havasupai Tribe v. Provencio*, 876 F.3d 1242, 1250 (9th Cir. 2017) (internal quotations omitted).

Here, USCIS attempts to characterize the relevant agency action as its denials (or, in the case of M.V.B., M.D.G.B., and J.B.A., its non-denials) of SIJ status. USCIS argues that because it has not issued final decisions on M.V.B., M.D.G.B., and J.B.A.'s SIJ petitions, Plaintiffs' motion should be denied as to those plaintiffs for lack of a judicially reviewable final action. *See* Dkt. No. 34 at 13. As to J.L.'s claims, USCIS argues that the REAL ID Act of 2005, 8 U.S.C. § 1252(g), bars judicial review because its denial of SIJ status is an enforcement action relating to J.L.'s removal. *See id.* at 20.

USCIS's arguments are not persuasive. Plaintiffs' lawsuit is not directly concerned with USCIS's specific denials of their SIJ petitions. Rather, the instant action seeks to curb USCIS's adoption of a dubious legal theory to justify a blanket policy of denying SIJ petitions for immigrant juveniles between the ages of 18–20. Specifically, Plaintiffs challenge USCIS's requirement that SIJ findings must be made by a state juvenile court with the power to actually reunify petitioners with their biological parents. Although USCIS's adoption of this legal theory may result in denials of SIJ status for specific SIJ petitions, it is USCIS's adoption of that theory, not the specific SIJ adjudications that may follow, that is at issue in this case.

Under the *Bennett* test, USCIS's new policy is a reviewable final agency action. First, USCIS's new policy was the "consummation of the agency's decision-making process." *Bennett*, 520 U.S. at 178. In its statement to Politico, USCIS represented that "[b]y late summer 2017, the USCIS [National Benefits Center ("NBC")] asked for legal guidance that affected pending cases filed by individuals over 18 . . . while the NBC

sought legal clarification from the USCIS Office of Chief Counsel." *See* Politico Statement. Then, USCIS "began to review . . . pending cases" to reflect that guidance. *Id.*

Rosenstock's declaration provides a similar and more detailed account of USCIS's decision-making process. In October 26, 2016, USCIS issued "new chapters" in its policy manual guidance regarding SIJ classification. Rosenstock Decl. ¶ 9. The guidance clarified that "a valid juvenile court order requires the state to have jurisdiction over the petitioner's care and custody under state law." *Id.* USCIS then requested additional guidance regarding state court jurisdiction under the SIJ statute and USCIS "paused adjudication of such cases pending that guidance." *Id.* ¶ 10. In February 2018, the OCC specifically instructed USCIS that "[t]he evidence submitted must establish that the court had the power and authority to make required determination about the care an [sic] custody of the petitioner, which includes parental reunification, as a juvenile." *Id.* ¶ 11. Following this instruction, USCIS revised its CHAP to implement those policies. *Id.* USCIS's revision of the CHAP and its implementation of its new policy marks the "consummation of the agency's decision-making process." *Bennett*, 520 U.S. at 178.

A recent Ninth Circuit decision reinforces this conclusion. In *Navajo Nation v. United States Dept. of Interior*, 819 F.3d 1084, 1089 (9th Cir. 2016), the National Park Service concluded that federal law applied to assorted Native American remains and archaeological items and started an inventory process to provide for the ultimate disposition of those items. The Ninth Circuit held that "[the Park Service's] legal determination that [federal law] appl[ied] to the remains and objects . . . marked the consummation of the agency's decisionmaking process as to that issue." *Id.* at 1091 (internal quotation marks omitted). Critical to the Ninth Circuit's decision was the fact that the underlying dispute concerned not whether specific items belonged to the plaintiffs, but whether the Park Service was correct in applying federal law at all. *Id.* at 1092.

Similarly, in *Alaska v. United States E.P.A.*, 244 F.3d 748 (9th Cir. 2001) the Ninth Circuit held that three enforcement orders entered by the EPA were final agency actions. The Ninth Circuit found irrelevant that the EPA had not actually commenced enforcement

1    actions against the plaintiffs. *Id.* at 750. It was sufficient that the EPA's orders were its

2    "final position on the factual circumstances upon which the Orders were predicated" and

3    that the plaintiff was "in legal jeopardy if it fails to comply with the Orders." *Id.* The

4    court also found dispositive that "[t]he EPA's position [was] unalterable; according to [the

5    EPA's] counsel, it would only change if the circumstances . . . change." *Id.*

6        In this case, USCIS made a legal determination that SIJ petitioners must produce

7    evidence that the state court providing SIJ findings had the power to compel family

8    reunification. USCIS has acted pursuant to that guidance by revising the CHAP and

9    denying SIJ petitions pursuant to the new guidance. USCIS's internal publication marks

10   the consummation of the USCIS's decision-making process. It is clear from USCIS's

11   conduct that there "would be no further agency decisionmaking" regarding their

12   interpretation of the SIJ statute and the first *Bennett* requirement is satisfied. *Navajo*

13   *Nation*, 819 F.3d at 1091 (internal quotation marks and alterations omitted).

14       The second *Bennett* requirement is also met because "legal consequences will flow"

15   from USCIS's adoption of the OCC's new legal theory. *Bennett*, 520 U.S. at 178.

16   Specifically, USCIS's policy will result in denials of SIJ status. Indeed, at least one

17   Plaintiff—J.L.—had her SIJ petition denied, while other Plaintiffs—M.D.G.B. and

18   J.B.A.—have been issued NOIDs based on the new policy. USCIS's new policy has "a

19   virtually determinative effect" on Plaintiffs' SIJ petitions. *Id.* at 169; *see also Columbia*

20   *Riverkeeper v. U.S. Coast Guard*, 761 F.3d 1084, 1095 (9th Cir. 2014) (Coast Guard's

21   letter of recommendation approving a proposed site of a natural gas facility was not a final

22   agency action because the Federal Energy Regulatory Commission does not always follow

23   its recommendation). USCIS makes no serious argument to the contrary.

24       USCIS's relies on *Reiter v. Cooper*, 507 U.S. 258, 269 (1993) and *Cabaccang v.*

25   *USCIS*, 627 F.3d 1313, 1316 (9th Cir. 2010) for support. These cases are inapposite. In

26   *Cabaccang*, the Ninth Circuit held that the pendency of the plaintiffs' immigration

27   proceedings and the fact that those proceedings could be appealed to an ALJ rendered the

28   agency's decision non-final. 627 F.3d at 1316 (citing *Reiter*, 507 U.S. at 269). Here,

however, Plaintiffs are not challenging USCIS's application of their new policy requiring

SIJ petitioners to provide evidence that the state court making SIJ findings could reunify

them with their biological parents. Plaintiffs are challenging the policy itself.

In sum, USCIS's adoption of the OCC's new interpretation of the SIJ statute

constitutes final agency action that is appropriate for judicial review. Because Plaintiffs

have demonstrated that they are likely to succeed on their APA claim in general, the first

*Winter* factor weighs heavily in favor of granting the preliminary injunction.[11]

## B. Irreparable Harm

"Irreparable harm is traditionally defined as harm for which there is no adequate

legal remedy, such as an award of damages." *Ariz. Dream Act Coalition v. Brewer (Ariz.

I)*, 757 F.3d 1053, 1068 (9th Cir. 2014). Here, Plaintiffs have demonstrated that they will

suffer irreparable harm absent a preliminary injunction.

If USCIS is permitted to continue to rely on its interpretation of the SIJ statute,

Plaintiffs suffer irreparable harm by losing eligibility for SIJ status and all attendant

benefits. For example, SIJ designees are exempt from a variety of grounds for removal,

such as "being found to be a 'public charge,' lacking a 'valid entry document,' or having

'misrepresented a material fact'—while seeking admission into the United States."

*Osorio-Martinez v. Attorney General U.S.A.*, 893 F.3d 153, 171 (3d Cir. 2018) (citing 8

U.S.C. §§ 1182(a), 1255(h)(2)(A)). SIJ designees are also granted access to federally-

funded education and preferential status for employment-based green cards. *Id.* (citing 8

U.S.C. §§ 1232(d)(4)(A), 1153(b)). The loss of these benefits by itself constitutes

irreparable harm.

In addition, the Ninth Circuit has recognized that losing professional opportunities

constitutes irreparable harm. *Ariz. I*, 757 F.3d at 1068 (citing *Enyart v. Nat'l Conference

of Bar Exam'r, Inc.*, 630 F.3d 1153, 1165 (9th Cir. 2011)). In *Ariz. I*, the Ninth Circuit

held that the denial of driver's licenses to a class of immigrant children caused irreparable

---

[11] Because the Court concludes that Plaintiffs are likely to succeed on their APA claim, it declines to address the viability of their Due Process claims at this time.

harm by severely limiting their professional opportunities. *Id.* Here, Plaintiffs assert, and USCIS does not dispute, that most of them will be unable to obtain green cards without SIJ status. *See* Dkt. No. 6 at 21. Without green cards, Plaintiffs' professional opportunities are not just limited, they are virtually eliminated.

USCIS argues that Plaintiffs will not be injured absent a preliminary injunction because their inability to obtain work authorization and lack of SIJ status is merely "a continuation of their *status quo* as aliens without legal status . . . ." Dkt. No. 34 at 22. This argument is not persuasive. The relevant injury is not Plaintiffs' current inability to work; it is the lost eligibility for SIJ status and their *continued* inability to obtain work authorization that follows as a result. Put differently, if USCIS is enjoined from implementing their purportedly unlawful policy, Plaintiffs can use California juvenile court orders to obtain SIJ status and enjoy its associated benefits. Absent a preliminary injunction, Plaintiffs will lose that opportunity and it is that lost opportunity which constitutes their irreparable injury. *Cf. Ariz. I*, 757 F.3d at 1068 (inability to obtain driver's licenses was an irreparable harm even though plaintiffs did not already have driver's licenses).

Plaintiffs are also likely to suffer irreparable harm in the form of removal proceedings. USCIS does not dispute that being deported constitutes irreparable harm under *Winter*. Rather, USCIS argues that such harm is too speculative. The Court disagrees.

On January 25, 2017, the President issued an Executive Order directing federal agencies "to employ all lawful means to ensure the faithful execution of the immigration laws of the United States against all removable aliens." Executive Order 13768, 82 Fed. Reg. 8799 (Jan. 25, 2017). In response, the Department of Homeland Security issued a "Policy Memorandum" providing that "USCIS will issue an [Notice to Appear] where, upon issuance of an unfavorable decision on an application, petition, or benefit request, the alien is not lawfully present in the United States." *See* Dkt. No. 7-6, Ex. E ("DHS Memo") at 154. Although these documents do not demonstrate that removal is certain, they suggest

1    that removal is at least likely to occur. The cases cited by USCIS to the contrary are

2    unpersuasive because they were decided under different administrations with different

3    enforcement priorities. *See, e.g.*, *Carlsson v. U.S.C.I.S.*, No. CV-12-7893-CAS, 2012 WL

4    4758118, at *9 (C.D. Cal. Oct. 3, 2012) (finding that the risk of deportation was unlikely

5    on record before the court). In any case, at least one of the Plaintiffs, M.V.B., is currently

6    in removal proceedings.[12]

7        Thus, the Court finds that Plaintiffs have shown that they are likely to suffer

8    irreparable harm in the absence of a preliminary injunction. The second *Winter* factor

9    weighs in favor of granting an injunction.

10    **C.**     **Balance of Hardships and the Public Interest**

11        The balance of hardships and public interest factor merge when the government is

12    the opposing party. *Nken v. Holder*, 556 U.S. 418, 435 (2009). These factors weigh in

13    favor of a preliminary injunction when plaintiffs have also established that the

14    government's policy violates federal law. *Ariz. I*, 757 F.3d at 1069; *see also Valle del Sol,*

15    *Inc. v. Whiting*, 732 F.3d 1006, 1029 (9th Cir. 2013) ("it is clear that it would not be

16    equitable or in the public's interest to allow the state . . . to violate the requirements of

17    federal law, especially when there are no adequate remedies available.").

18        Because Plaintiffs have satisfied the first and second *Winter* factors, the balance of

19    hardship and public interest factors are also met. Because all four *Winter* factors weigh in

20    favor of granting a preliminary injunction, the Court GRANTS Plaintiffs' motion for

21    preliminary injunction.

22    **D.**     **Bond and the Scope of Relief**

23        Federal Rule of Civil Procedure 65(c) permits preliminary injunctions "only if the

24    movant gives security in an amount that the court considers proper to pay the costs and

25

26    [12] Plaintiffs also claim that a member of their proposed class, J.A.L., was placed in
removal proceedings after being denied SIJ status. *See* Dkt. No. 6 at 22. To substantiate
27    their claim, Plaintiffs attached a declaration by J.A.L.'s attorney with redacted
documentation. *See* Dkt. No. 17-4. Because USCIS does not know J.A.L.'s identity, it is
28    unable to verify Plaintiffs' claims. In the interest of fairness, the Court will not rely on
Plaintiffs' claims regarding J.A.L. at this time.

damages sustained by any party found to have been wrongfully enjoined or restrained." Despite the mandatory language, "Rule 65(c) invests the district court with discretion as to the amount of security required, if any." *Johnson v. Couturier*, 572 F.3d 1067, 1086 (9th Cir. 2009). A court "may dispense with the filing of a bond when it concludes there is no realistic likelihood of harm to the defendant from enjoining his or her conduct." *Id.* (internal citation and quotations omitted). Here, USCIS did not request a bond and there is no likelihood of harm justifying a bond.

Preliminary injunctive relief is generally "limited to apply only to named plaintiffs where there is no class certification" unless extending injunctive relief to an absent class is necessary "to give prevailing parties the relief to which they are entitled." *Easyriders Freedom F.I.G.H.T. v. Hannigan*, 92 F.3d 1486, 1501–02 (9th Cir. 1996) (internal citations, quotations, and emphasis omitted).

Although a class has not yet been certified, California-wide preliminary injunctive relief is necessary to preserve the status quo and to prevent irreparable harm for all Plaintiffs and the putative class. *See Price v. City of Stockton*, 390 F.3d 1105, 1117–18 (9th Cir. 2004) (approving broad preliminary injunctive relief to "all displaced persons" not merely named plaintiffs); *see also Just Film, Inc. v. Merchant Servs., Inc.*, 474 Fed. Appx. 493, 495 (9th Cir. 2012) (class-wide preliminary injunction appropriate even when district court has not certified a class). This relief may be narrowed in the event Plaintiffs are unable to justify certification of a class. Accordingly, the Court ORDERS Plaintiffs to move for class certification within 28 days of this Order. The Court will expedite ruling on class certification.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

## IV. Conclusion

Plaintiffs' motion for preliminary injunction is GRANTED. During the pendency of this action:

1. It is hereby ORDERED that Director Lee Francis Cissna, Secretary Kirstjen M. Nielsen, Director Robert Cowan, the United States Department of Homeland Security, and the United States Citizenship and Immigration Services, their officers, agents, employees, representatives, and all persons acting in concert or participating with them are ENJOINED AND RESTRAINED;

2. From denying Special Immigrant Juvenile Status pursuant to 8 U.S.C. § 1101(a)(27)(J) on the ground that a California Probate Court does not have jurisdiction or authority to "reunify" an 18- to 20-year-old immigrant with his or her parents;

3. From initiating removal proceedings against or removing any Special Immigrant Juvenile Status petitioner who was appointed a guardian pursuant to § 1510.1(a) of the California Probate Code and whose Special Immigrant Juvenile Status petition has been denied on the grounds that the California Probate Court did not have jurisdiction or authority to "reunify" an 18- to 20-year-old immigrant with his or her parents; and

4. To provide no less than 14 days notice to Plaintiffs' counsel before Defendants take any adverse adjudicatory or enforcement action against any of the individual Plaintiffs or members of the Proposed Class.

Within 28 days of this Order, Plaintiffs must move for class certification pursuant to Federal Rule of Civil Procedure 23.

Within 14 days of this Order, Defendants must serve and file a declaration verifying that they have complied with this Order and detailing what steps, if any, they have taken to do so. The parties also must meet and confer within 14 days from the date of this Order

and file an initial Rule 26(f) Report and Case Management Statement.

**IT IS SO ORDERED.**

Dated: October 24, 2018

_____
NATHANAEL M. COUSINS
United States Magistrate Judge