JOSEPH H. HUNT
Assistant Attorney General
Civil Division
WILLIAM C. PEACHEY
Director
Office of Immigration Litigation
District Court Section
ELIANIS PEREZ
Assistant Director
LAUREN E. FASCETT
CATHERINE M. RENO
Trial Attorney
Office of Immigration Litigation
District Court Section
United States Department of Justice
P.O. Box 868, Ben Franklin Station
Washington, DC 20044
Telephone: (202) 353-8557
E-mail: Catherine.M.Reno@usdoj.gov
Attorneys for Defendants

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN JOSE DIVISION

| | |
|---|---|
| J.L., M.G.S, M.D.G.B., and J.B.A.,<br><br>          Plaintiffs<br><br><br>          v.<br><br><br>LEE FRANCIS CISSNA, Director, United States Citizenship and Immigration Services *et al.*,<br><br>Defendants. | Case No. 5:18-CV-4914 NC<br><br><br>DEFENDANTS' MOTION TO DISMISS FOR LACK OF SUBJECT-MATTER JURISDICTION AND FAILURE TO STATE A CLAIM<br><br>Date: Wednesday, March 6, 2019<br>Time: 1:00pm<br>Courtroom: 7, 4th Floor<br>Hon. Nathanael M. Cousins |

# **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ........................................................................................... 1

STATUTORY BACKGROUND .......................................................................................... 1

   I.   Special Immigrant Juvenile Classification......................................................... 1

   II.   Legal Framework for Guardianship Orders Issued After Age of Majority ...................... 5

PERTINENT FACTS ........................................................................................................ 8

STANDARD OF REVIEW .................................................................................................. 9

   I.   Subject-Matter Jurisdiction................................................................................. 9

   II.   Failure to State a Claim...................................................................................... 9

ARGUMENT ..................................................................................................................... 9

   I.   The Court Lacks Subject-Matter Jurisdiction Over Agency Actions That Are Not Final.. 9

      A.   Three of The Named Plaintiffs Should Be Dismissed Because USCIS Has Not Issued A Final Agency Decision On Their SIJ Petitions. ....................................... 9

      B.   USCIS's Clarification of Existing Law and Centralization of SIJ Adjudications Does Not Constitute Reviewable Final Agency Action. .................................... 11

   II.  The Court Lacks Subject-Matter Jurisdiction to Enjoin the Government from Initiating Removal Proceedings Against Plaintiffs. ................................................. 14

   III.   Plaintiffs Fail To State A Claim Upon Which Relief Can Be Granted......................... 16

      A.   USCIS's Denial of J.L.'s SIJ Petition Was Not Arbitrary or Capricious. ................ 17

         i.   APA Review Is Highly Deferential to Agency Judgment. ......................... 17

         ii.   USCIS's Statutory Interpretations Are Reasonable and Entitled to Deference......... 18

      B.   USCIS' Interpretation of Existing Law Is Not A New Policy That Requires Notice-and-Comment Rulemaking. ....................................................... 23

      C.   Plaintiffs do not have a Constitutionally Protected Interest in Obtaining SIJ Classification .................................................................................. 24

CONCLUSION.................................................................................................................. 24

# TABLE OF AUTHORITIES

**Cases**

*Abboud v. I.N.S.*, 140 F.3d 843 (9th Cir. 1998) ............................................................ 11

*Acquest Wehrle LLC v. U.S.*, 567 F. Supp. 2d 402 (W.D.N.Y. 2008) ......................... 14

*Ariz. Cattle Growers' Ass'n v. U.S. Fish & Wildlife*, 273 F.3d 1229 (9th Cir. 2001) ................. 17

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ........................................................................ 9

*Bechtel v. Admin. Review Bd.,* 710 F.3d 443 (2d Cir. 2013) ..................................... 17

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) ................................................ 9

*Bennett v. Spear*, 520 U.S. 154 (1997) .............................................................. 10, 13

*Board of Regents v. Roth*, 408 U.S. 564 (1972) ....................................................... 24

*Budhathoki v. Dep't of Homeland Sec.*, 220 F. Supp. 3d 778 (W. D. Tex. 2016) ...... 16

*Budhathoki v. Nielsen*, 898 F.3d 504 (5th Cir. 2018) .......................................... 22, 23

*CallerID4u, Inc. v. MCI Communications Services Inc.*, 880 F.3d 1048 (9th Cir. 2018) ........... 21

*Camp v. Pitts*, 411 U.S. 138 (1973) ........................................................................ 17

*Chevron. U.S.A. Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837 (1984) ............... 18

*Ching v. Mayorkas*, 725 F. 3d 1149 (9th Cir. 2013) ............................................... 15

*Christensen v. Harris Cty.*, 529 U.S. 576 (2000) ..................................................... 18

*County of Okanogan v. National Marine Fisheries Service*, 347 F.3d 1081 (9th Cir. 2003) ....... 21

*Dalton v. Specter,* 511 U.S. 462 (1994) .................................................................. 10

*Darby v. Cisneros*, 509 U.S. 137 (1993) ................................................................. 24

*Dia v. Ashcroft*, 353 F.3d 228 (3d Cir. 2003) ......................................................... 24

*Dixon v. U.S.*, 381 U.S. 68 (1965) ......................................................................... 11

*Elgharib v. Napolitano*, 600 F.3d 597 (6th Cir. 2010) ........................................... 15

*Nat. Res. Def. Council v. EPA*, 808 F.3d 556 (2d Cir. 2015) ................................. 18

i

*Epstein v. Washington Energy Co.*, 83 F.3d 1136 (9th Cir. 1999) .......................... 9

*Fairbanks N. Star Borough v. U.S. Army Corps of Engineers*, 543 F.3d 586 (9th Cir. 2008) 10, 14

*Foster v. Townsley*, 243 F.3d 210 (5th Cir. 2001) .......................... 15

*FTC v. Standard Oil Co. of Cal.*, 449 U.S. 232 (1980) .......................... 10

*Geier v. American Honda Motor Co., Inc.*, 529 U.S. 861 (2000).......................... 21

*Golden & Zimmermann, LLC v. Domenech*, 599 F.3d 426 (4th Cir. 2010) .......................... 14

*Hamama v. Homan*, No. 17-2171, 2018 WL 6722734 (6th Cir. Dec. 20, 2018).......................... 15, 16

*In re Baby Boy H.*, 63 Cal.App.4th 470 (1998) .......................... 6, 7, 8

*Jang v. Reno*, 113 F.3d 1074 (9th Cir. 1997).......................... 17

*Khalil v. Napolitano*, 983 F. Supp. 2d 484 (D.N.J. 2013) .......................... 14

*Kit Yee Kitty Li v. Sessions,* 685 F. App'x 593 (9th Cir. 2017) .......................... 15

*Larson v. U.S.*, 888 F.3d 578 (2d Cir. 2018).......................... 10

*Lee v. City of Los Angeles*, 250 F.3d 668 (9th Cir. 2001).......................... 9

*Mada-Luna v. Fitzpatrick*, 813 F.2d 1006 (9th Cir. 1988) .......................... 23

*Mathews v. Eldridge*, 424 U.S. 319 (1976).......................... 24

*Matter of J-R-C-N-*, 2015 WL 6447264 (DHS Oct. 6, 2015) .......................... 12

*McCarthy v. U.S.*, 850 F.2d 558 (9th Cir. 1988).......................... 9

*Moore v. Apfel*, 216 F.3d 864 (9th Cir. 2000).......................... 13

*Motor Vehicles Mfrs. Ass'n of the U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29 (1983).......................... 17

*Munoz v. Ashcroft*, 339 F.3d 950 (9th Cir. 2003) .......................... 24

*Navajo Nation v. U.S. Dep't of Interior*, 819 F.3d 1084 (9th Cir. 2016).......................... 13

*Net-Inspect, LLC v. U.S. Citizenship & Immigration Servs.*, No. C14-1514JLR, 2015 WL 880956 (W.D. Wash. Mar. 2, 2015) .......................... 10

*Olim v. Wakinekona*, 461 U.S. 238 (1983) .......................... 24

ii

*Or. Natural Desert Ass'n v. U.S. Forest Serv.*, 465 F.3d 977 (9th Cir. 2006) .............................. 10

*Pierce v. Society of Sisters*, 268 U.S. 510 (1925) ........................................................ 18

*Pimentel v. Holder,* 2011 WL 1496756 (D.N.J. Apr. 18, 2011) ...................................... 16

*Pinto v. Massanari*, 249 F.3d 840 (9th Cir. 2001) ........................................................ 17

*Prince v. Commonwealth of Massachusetts*, 321 U.S. 158 (1944) ................................. 18

*Reiter v. Cooper*, 507 U.S. 258 (1993) ........................................................................ 11

*Reliable Automatic Sprinkler Co., Inc. v. Consumer Product Safety Comm'n*,
   324 F.3d 726 (D.C. Cir. 2003) ................................................................................ 10

*Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471 (1999) .................................. 15, 16

*Rincon v. Dep't of Homeland Sec.*, 539 F.3d 1133 (9th Cir. 2008) ................................. 15

*Rivas-Melendrez v. Napolitano*, 689 F.3d 732 (7th Cir. 2012) ........................................ 15

*Riverside Cty. Dep't of Pub. Soc. Servs. v. Superior Court*, 71 Cal.App.4th 483 (1999) ............. 6

*Rodriguez v. Marin*, 909 F.3d 252 (9th Cir. 2018) ........................................................ 16

*Royal Siam Corp. v. Chertoff*, 484 F.3d 139 (1st Cir. 2007) .......................................... 11

*S.E.C. v. Alpine Sec. Corp.*, 308 F. Supp. 3d 775 (S.D.N.Y. 2018) ................................. 17

*Safari Aviation Inc. v. Garvey*, 300 F.3d 1144 (9th Cir. 2002) ...................................... 17

*Self Petitioner*, 2013 WL 5504799 (DHS Feb. 15, 2013) .............................................. 12

*Self Petitioner*, 2015 WL 4072664 (DHS Jun. 9, 2015) ............................................... 12

*Silva v. U.S.*, 866 F.3d 938 (8th Cir. 2017) ................................................................. 15

*Singh v. Gonzales*, 499 F.3d 969 (9th Cir. 2007) ........................................................ 14

*Spencer Enterprises, Inc. v. U.S.*, 345 F.3d 683 (9th Cir. 2003) ............................... 11, 13

*Stanley v. Illinois*, 405 U.S. 645 (1971) ..................................................................... 19

*Tovar-Landin v. Ashcroft*, 361 F.3d 1164 (9th Cir. 2004) ............................................. 24

*Town of Castle Rock, Colo. v. Gonzales*, 545 U.S. 748 (2005) ...................................... 24

*Troxel v. Granville*, 530 U.S. 57 (2000) ..................................................................... 19

iii

*U.S. ex rel. Accardi v. Shaughnessy*, 347 U.S. 260 (1954)..................................... 19, 20

*Ukiah Valley Med. Ctr. v. Fed. Trade Comm'n*, 911 F.2d 261 (9th Cir. 1990)........................... 10

*Van Dinh v. Reno*, 197 F.3d 427 (10th Cir. 1999).......................................... 16

*Williamson County Regional Planning Comm'n v. Hamilton Bank of Johnson* City,
   473 U.S. 172 (1985).............................................................. 24

*Wyeth v. Levine*, 555 U.S. 555 (2009) ............................................... 21

*Xia Fan Huang v. Holder*, 591 F.3d 124 (2d Cir. 2010)............................... 18

*Yu v. Brown*, 92 F. Supp. 2d 1236 (D. N.M. 2000) ................................. 24

**Statutes**

5 U.S.C. § 552 ...................................................................... 23

5 U.S.C. § 552(a)(1)(D) .............................................................. 23

5 U.S.C. § 552(a)(2)(C) .............................................................. 23

5 U.S.C. § 704 ............................................................. 10, 14, 24

5 U.S.C. § 706 ...................................................................... 17

5 U.S.C. § 706(2) ................................................................... 17

8 U.S.C. § 1101(a)(27)(J) ...................................................... 1, 2, 4

8 U.S.C. § 1103 ..................................................................... 21

8 U.S.C. § 1229 ..................................................................... 15

8 U.S.C. § 1229a .................................................................... 15

8 U.S.C. § 1231 ..................................................................... 15

8 U.S.C. § 1252(f)(1) ................................................................ 16

8 U.S.C. § 1252(g) ............................................................... 15, 16

8 U.S.C. § 1252(f) ........................................................... 1, 15, 16

42 U.S.C. § 671(a) ................................................................... 6

42 U.S.C. § 675 .................................................................... 4, 5

iv

42 U.S.C. § 5101 .................................................................................................. 19

Appropriations Act, Pub. L. No. 105-119, 111 Stat. 2440 (1997) ........................... 2, 18

Cal. Fam. Code § 6500 .......................................................................................... 7

Cal. Fam. Code § 7505(c) .................................................................................. 7, 20

Cal. Prob. Code § 1510.1 .............................................................................. 7, 8, 20

Cal. Prob. Code § 1510.1(a) .................................................................................. 8

Cal. Prob. Code § 1510.1(a)(1) ........................................................................... 7, 8

Cal. Prob. Code § 1510.1(c) .............................................................................. 8, 21

Cal. Prob. Code § 1513(b) ..................................................................................... 6

Cal. Prob. Code § 1601 ..................................................................................... 8, 20

Cal. Prob. Code § 2350(b) ..................................................................................... 7

Cal. Prob. Code § 2351(a) ................................................................................. 7, 20

Cal. Welf. & Inst. Code § 300 ................................................................................ 6

Cal. Welf. & Inst. Code § 303(a) ......................................................................... 20

Cal. Welf. & Inst. Code § 303(d) ....................................................................... 7, 20

Cal. Welf. & Inst. Code § 450 ............................................................................... 5

Cal. Welf. & Inst. Code § 358 ............................................................................... 6

California Civil Procedure § 155 ............................................................................ 7

Pub. L. 110-457 ..................................................................................................... 2

Pub. L. No. 101-649 ............................................................................................... 2

Pub. L. No. 105-119 ............................................................................................... 2

Social Services — General Amendments, 2014 Cal. Legis. Serv. Ch. 685 (S.B. 873); Cal. Legis. Serv. Ch. 685 (S.B. 873) ........................................................................... 7

U.S.C. § 1153(b)(4) ............................................................................................... 1

v

**Rules**

Fed. R. Civ. P. 12(b)(1)..........................................................................9, 24

Fed. R. Civ. P. 12(b)(6)........................................................................1, 9, 17

**Regulations**

8 C.F.R. § 204.11(a)............................................................................ passim

8 C.F.R. § 204.11(d)(2)...............................................................................19

8 C.F.R § 204.11.................................................................................1, 19

45 C.F.R. § 1355.25(a)..................................................................................5

45 C.F.R. § 1356.21(b)..................................................................................4

**Other Authorities**

152 Cong. Rec. E895 (daily ed. May 19, 2006) (tribute to Ken Borelli by Hon. Zoe Lofgren) ... 6

56 Fed. Reg. 23 ...........................................................................................2

56 Fed. Reg. 23208-9....................................................................................3

58 Fed. Reg. 42847 ......................................................................................3

6 USCIS Policy Manual J.2(A) ....................................................................18

6 USCIS Policy Manual J.1(B).......................................................................2

6 USCIS Policy Manual J.2(D)......................................................................5

6 USCIS Policy Manual J.2(D)(2).................................................................4

American Bar Association Center on Children and the Law: Quick Guide to Federal Child
    Welfare & Immigration Law .....................................................................4

Congressional Findings 42 U.S.C. § 5101, Note .........................................19

Department of Health and Human Services, *Major Federal Legislation Concerned With Child
    Protection, Child Welfare, and Adoption* (March 2015) ............................6

Dependency Quick Guide A Dogbook for Attorneys Representing Children and Parents, Judicial
    Council of California (3d ed. 2017)3 .........................................................6

*Guardianship*, http://www.courts.ca.gov/selfhelp-guardianship.htm ........................................ 7, 8

Judicial Council of California, Memorandum "New Rules and Forms Implementing Assembly Bill 900 in Guardianship Proceedings" (Jun. 30, 2016) ........................................................... 8

Sophie Gatowski, *et al.*, *Enhanced resource guidelines: Improving court practice in child abuse and neglect cases*, National Council of Juvenile and Family Court Judges (Reno, NV 2016) .. 3

U.S. Department of Health and Human Services. Child Information Gateway Glossary .............. 5

DEFENDANTS' MOTION TO DISMISS
Case No. 5:18-CV-4914 NC

**PRELIMINARY STATEMENT**

This Court should dismiss three of the four named Plaintiffs, specifically M.G.S., M.D.G.B, and J.B.A, for lack of jurisdiction under Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 12(b)(1) because they have not received a final agency action on their Special Immigration Juvenile ("SIJ") petitions and thus are not challenging a reviewable final agency determination as required for jurisdiction under the Administrative Procedure Act ("APA"). Further, contrary to Plaintiffs' assertions, United States Citizenship and Immigration Services ("USCIS") has not issued a new policy or any other reviewable final agency action regarding the adjudication of SIJ petitions that would create APA jurisdiction.

Additionally, the Court lacks jurisdiction to stay or prohibit the initiation of removal proceedings against SIJ petitioners pursuant to 8 U.S.C. §§ 1252(f) and 1252(g).

Lastly, the core legal issue in this case concerns the reasonableness of USCIS's interpretation of the phrase "juvenile court" within the context of the SIJ statute, 8 U.S.C. § 1101(a)(27)(J), as elucidated in the regulation, 8 C.F.R § 204.11, to mean that the state court must necessarily have authority to issue the types of child welfare rulings that USCIS relies upon in determining eligibility for SIJ classification. The Court should dismiss Plaintiffs' claim under Fed. R. Civ. P. 12(b)(6) because USCIS's statutory interpretation and application of the law to J.L.'s SIJ petition was not arbitrary, capricious, or contrary to law. The California Probate Court that issued her guardianship order was not acting as a juvenile court, as that term is used in 8 U.S.C. § 1101(a)(27)(J). A court that lacks the authority to make decisions regarding parental reunification does not meet the definition of "juvenile court." J.L. did not provide evidence of the Probate Courts' authority to return her to her parents' the custody. Accordingly, USCIS properly denied J.L.'s petition for SIJ classification.

**STATUTORY BACKGROUND**

**I.      Special Immigrant Juvenile Classification**

The Immigration and Nationality Act ("INA") allocates a percentage of immigrant visas to individuals considered "special immigrants." 8 U.S.C. § 1153(b)(4). In 1990, Congress established procedures for non-citizen juveniles who became dependents of state juvenile courts and eligible for

long-term foster care, to apply for lawful permanent resident status as a category of "special immigrant." Pub. L. No. 101-649, § 153, 104 Stat. 4978 (1990). Defendants herein incorporate by reference the Statutory Background as laid out in their Opposition to Class Certification ("Opp. to Class Cert."). *See* ECF No. 79 at 9–14. In 1997, Congress limited eligibility to juveniles declared dependent on the court because of abuse, neglect, or abandonment and amended the INA. *See e.g.* 6 USCIS Policy Manual J.1(B). Congress added the discretionary element of consent to ensure that SIJ classification was not "sought primarily for the purpose of obtaining the status of an alien lawfully admitted for permanent residence, rather than for the purpose of obtaining relief from abuse or neglect." *See* Appropriations Act, Pub. L. No. 105-119, § 113, 111 Stat. 2440, 2469 (1997) ("Appropriations Act").

In 2008, Congress enacted the William Wilberforce Trafficking Victims Protection Reauthorization Act of 2008 ("TVPRA"), Pub. L. 110-457, § 235, 122 Stat. 5044 (2008), which expanded and clarified the SIJ eligibility requirements. Since 2008, persons eligible for SIJ classification have been defined as follows:

> [A]n immigrant who is present in the United States—
>
> (i) who has been declared dependent on a juvenile court located in the United States or whom such a court has legally committed to, or placed under the custody of, an agency or department of a State, or an individual or entity appointed by a State or juvenile court located in the United States, and whose reunification with 1 or both of the immigrant's parents is not viable due to abuse, neglect, abandonment, or a similar basis found under State law;
>
> (ii) for whom it has been determined in administrative or judicial proceedings that it would not be in the alien's best interest to be returned to the alien's or parent's previous country of nationality or country of last habitual residence; and
>
> (iii) in whose case the Secretary of Homeland Security consents to the grant of special immigrant juvenile status …

8 U.S.C. § 1101(a)(27)(J).

The interpretation of "juvenile court" as used in 8 U.S.C § 1101(a)(27)(J) was established during the rulemaking process. The regulatory scheme establishing what the term meant and how each petitioner must establish the validity of the juvenile court order for the purposes of eligibility was initially published as an interim final rule. 56 Fed. Reg. 23,207 (May 21, 1991). A "juvenile court" is a "court located in the United States having jurisdiction under State law to make judicial determinations about the custody and care of juveniles." 8 C.F.R. § 204.11(a). The regulations further

require each SIJ petitioner to submit documents to establish that the court that issued the order was acting as a juvenile court with the appropriate power and authority to issue the required rulings by submitting the following:

> (i)     A juvenile court order, issued by a court of competent jurisdiction located in the United States, showing that the court has found the beneficiary to be dependent upon that court;
>
> (ii)    A juvenile court order, issued by a court of competent jurisdiction located in the United States, showing that the court has found the beneficiary eligible for long-term foster care; and
>
> (iii)   Evidence of a determination made in judicial or administrative proceedings by a court or agency recognized by the juvenile court and authorized by law to make such decisions, that it would not be in the beneficiary's best interest to be returned to the country of nationality or last habitual residence of the beneficiary or of his or her parent or parents.

*Id*. § 204.11(d)(2) and 56 Fed. Reg. 23208-9.

Notably the government did not receive any comments disputing that each petitioner must establish the juvenile court's competent jurisdiction. Rather, several commenters suggested the documentary requirements may be excessive because "the juvenile court could declare an individual eligible for long-term foster care only after finding the person dependent upon the court and only after alternatives to a long-term placement were considered".[1] 58 Fed. Reg. 42847. This demonstrates the clear understanding when the rule was promulgated that the terms in the statute are rooted in child welfare law and practice. The government concluded, however, that the requirement that the documents establish that all of the statutory criteria have been met by submitting orders issued by courts with competent jurisdiction would not be amended. Instead, the rule explicitly recognized the possibility that state laws governing juvenile court proceedings could change in the future and affirmed the belief that none of the statutory requirements could be ignored. *Id.*

Further, the phrase "eligible for long-term foster care," as it appears in § 204.11(d)(2)(ii),

---

[1] For information on dependency court proceedings, *see* Sophie Gatowski, *et al.*, *Enhanced resource guidelines: Improving court practice in child abuse and neglect cases*, National Council of Juvenile and Family Court Judges (Reno, NV 2016), *available at* https://www.ncjfcj.org/sites/default/files/%20NCJFCJ%20Enhanced%20 Resource%20Guidelines%2005-2016.pdf.

DEFENDANTS' MOTION TO DISMISS
Case No. 5:18-CV-4914 NC

1   "means that a determination has been made by the juvenile court that family reunification is no

2   longer a viable option." *Id.* § 204.11(a).

3       The TVPRA expanded the SIJ definition to include juveniles who would not be able to

4   reunify with at least one parent due to that parent's unfitness rather than limiting eligibility to

5   those who were eligible for a particular type of permanent placement option, specifically, long-

6   term foster care. 8 U.S.C. § 1101(a)(27)(J)[2]. The USCIS Policy Manual addresses the

7   amendment as follows:

8       The TVPRA 2008 replaced the need for a juvenile court to deem a juvenile
9       eligible for long-term foster care with a requirement that the juvenile court find
    reunification with one or both parents not viable. The term "eligible for long-term
10      foster care" is defined at 8 C.F.R. § 204.11(a) as requiring that family
    reunification no longer be viable and that this determination would be expected to
11      remain in place until the child reached the age of majority. USCIS interprets the
    TVPRA changes as a clarification that petitioners do not need to be eligible for or
12      placed in foster care and that they may be reunified with one parent or other
    family members. However, USCIS requires that the reunification no longer be a
13      viable option with at least one parent …. *See* 8 C.F.R. § 204.11(a)….

14  6 USCIS Policy Manual J.2(D)(2) n.9.[3] A finding that reunification is not viable requires that the

15  court declare, under the state child welfare law, that the petitioner cannot reunify with one or

16  both parents prior to aging out of the juvenile court's jurisdiction due to abuse, neglect,

17  _____

[2] An example of a court determining that reunification is no longer viable is when the goal of the
18  child welfare authority's plan for a permanent living situation for the child (known as a
"permanency plan") is no longer parental reunification. *See* 6 USCIS Policy Manual J.2(D)(2)
19  n.10.  *See also* 42 U.S.C. § 675 and 45 C.F.R. § 1356.21(b).

20  [3] The American Bar Association has taken a similar view, and stated the following in its
guidance on federal child welfare and immigration law:
21      The law governing SIJS was changed significantly in 2008. Prior to 2008, it
    required an applicant to have been deemed "eligible for long-term foster care" by
22      the court, which in turn was interpreted to mean that family reunification was no
    longer viable. Under the current law, the child need not be in actual state foster
23      care to be SIJS-eligible, and could, in fact, be residing with one parent. **Because
    the current statute requires only that reunification not be viable with *one or***
24  ***both*** **parents, the juvenile court can make the SIJS findings as soon as the**
    **court deems reunification not viable with *one* of the parents, even if the other**
25      **parent is still receiving reunification services.** This change in law means that
    many more children in the child welfare system are potentially eligible for SIJS.
26  *See* American Bar Association Center on Children and the Law: Quick Guide to Federal Child
Welfare & Immigration Law, at 2, *available at*
27  https://www.americanbar.org/content/dam/aba/administrative/child_law/QuickGuideChildWelfar
eImmigration1.authcheckdam.pdf (emphasis added).

28

DEFENDANTS' MOTION TO DISMISS
Case No. 5:18-CV-4914 NC

1   abandonment, or a similar basis under state law.[4] 6 USCIS Policy Manual J.2(D). USCIS policy

2   makes clear that eligibility for dependent children and children placed under the custody of an

3   individual or entity to protect them from abuse, neglect, abandonment or a similar legal basis,

4   requires the juvenile court to follow the same legal standards found in child welfare law when

5   making the ultimate determination regarding the custodial rights of the unfit parent.

6       **II.    Legal Framework for Guardianship Orders Issued After Age of Majority[5]**

7          The SIJ program was established to provide a pathway to lawful permanent residence to

8   children in the child welfare system.[6] The statutory and regulatory text relating to SIJ

9   classification incorporates and intersects with child welfare law and concepts at the federal and

10   state level relating to the viability of family relationships and the best interests of children. *See* 8

11   U.S.C. § 1101(a)(27)(J)(i)-(ii); 8 C.F.R. § 204.11(a), (c)(3)–(6) and (d)(2).

12          Congress has promulgated a national policy to strengthen families to prevent child abuse

13   and neglect, and to promote reunification of families where appropriate. Federal child welfare

14   law also requires children in state foster care to have a case plan that includes services for the

15   parents, child, and foster parents to improve the conditions in the parents' home and facilitate the

16   return of the child to his own safe home, or the permanent placement of the child outside the

17   parent's home. *Id*. § 675. Under federal law, the appropriate state agency must make "reasonable

18   efforts … to preserve and reunify families." *Id*. § 671(a)(15)(B). Federal child welfare law

19   recognizes limited circumstances in which reasonable efforts are not required to reunify the child

20

21   [4] Family reunification is a term of art used in child welfare proceedings and is generally
22   understood as the process of returning children from out-of-home care to their families of origin.
Reunification is both the primary goal for children in out-of-home care as well as the most
23   common outcome. *See* U.S. Department of Health and Human Services. Child Information
Gateway Glossary, *available at* https://www.childwelfare.gov/glossary/glossaryf/#family_
reunification. *See also* 45 C.F.R. § 1355.25(a).

24
25   [5] California courts can issue orders that may be valid for SIJ purposes for individuals over 18 in
certain instances. For example, eligible foster youth between 18 and 21 can be designated as
26   "non-minor" dependents (NMD), which allows the court to continue to have jurisdiction over
them. *See* Cal. Welf. & Inst. Code § 450. None of the named Plaintiffs fall into this category but
NMDs may be eligible for SIJ classification.

27
28   [6] The SIJ statute was introduced by a California Congressman and was influenced by a
California state child welfare services official. *See* 152 Cong. Rec. E895 (daily ed. May 19,
2006) (tribute to Ken Borelli by Hon. Zoe Lofgren).

and family, for example, where a court of competent jurisdiction has determined that the parent

has subjected the child to aggravated circumstances which may include, but are not limited to,

abandonment, torture, chronic abuse, and sexual abuse. *Id.* § 671(a)(15)(D). Where reunification

with a parent or parents is not appropriate, one alternative permanency option is legal

guardianship, which refers to a "judicially-created relationship between a child and caretaker that

is intended to be permanent and self-sustaining, as evidenced by the transfer of the following

parental rights" to the caretaker: protection, education, care and control of the person, custody of

the person, and decision-making authority. 45 C.F.R.

§ 1355.20. To obtain federal funding for their child welfare programs, each state must comply

with federal requirements in the Social Security Act. *See* Department of Health and Human

Services, *Major Federal Legislation Concerned With Child Protection, Child Welfare, and*

*Adoption* (March 2015), *available at* https://www.childwelfare.gov/pubpdfs/majorfedlegis.pdf.

　　　　In California "juvenile courts" hear cases hears cases involving children who have

allegedly been abused, neglected, or inadequately cared for. [7] *See* Cal. Welf. & Inst. Code § 300

and Cal. Prob. Code § 1513(b) (if a proposed ward before a probate court is or may be described

by Cal. Welf. & Inst. Code § 300, the probate court may refer the case to the child welfare

services agency; guardianship proceedings are stayed if dependency proceedings are initiated).

After a child is adjudged dependent and removed from the home, a reunification case plan is

generally designed to identify and resolve problems so that the child can safely return home (Cal.

Welf. & Inst. Code §§ 358, 358.1, 16501.1). The county social services agency presumably will

be required to provide reunification services to a parent. *See e.g. Riverside Cty. Dep't of Pub.*

*Soc. Servs. v. Superior Court*, 71 Cal. App. 4th 483, 487 (1999). However, in accordance with

federal child welfare law and state law, there are some enumerated "aggravated circumstances"

in which the general rule favoring reunification is overridden. *See* 42 U.S.C. § 671(a); Cal. Welf.

& Inst. Code, § 361.5(b)(1)–(15); *In re Baby Boy H.*, 63 Cal.App.4th 470, 478 (1998).

---

[7] For detailed information related to Dependency proceedings in California *see* Dependency
Quick Guide A Dogbook for Attorneys Representing Children and Parents, Judicial Council of
California (3d ed. 2017), *available at* https://www.courts.ca.gov/documents/dogbook.pdf.

DEFENDANTS' MOTION TO DISMISS
Case No. 5:18-CV-4914 NC

1       In 2014, California enacted California Civil Procedure § 155 in order to provide the

2 California superior court (including juvenile, probate, and family courts), "jurisdiction to make

3 judicial determinations regarding the custody and care of juveniles within the meaning of the

4 federal Immigration and Nationality Act." Social Services — General Amendments, 2014 Cal.

5 Legis. Serv. Ch. 685 (S.B. 873); Cal. Legis. Serv. Ch. 685 (S.B. 873). This provision grants

6 courts jurisdiction to make the "factual findings necessary to enable a child to petition the United

7 States Citizenship and Immigration Services for classification as a special immigrant juvenile."

8 Cal. Legis. Serv. Ch. 685 (S.B. 873). Significantly, Cal. Code Civ. Proc. § 155(a)(2) did not

9 grant the superior court any new jurisdiction to make *legal* findings regarding reunification.

10 Instead, it empowered them only to engage in *fact* finding for the limited purpose of SIJ

11 eligibility.

12       Then, in 2015, the California legislature passed Assembly Bill 900 ("AB 900"). The

13 legislature passed the bill to "give the probate court jurisdiction to appoint a guardian for a

14 person between 18 and 21 years of age in connection with a special immigrant juvenile status

15 petition." Cal. Assem. Bill No. 900 [2015-2016 Reg. Sess.] § [b]. AB 900 (Cal. Prob. Code

16 § 1510.1). The statute authorized probate courts to appoint guardians for unmarried adults

17 between the ages of 18 and 21. *See* Cal. Prob. Code § 1510.1(a)(1). The statute makes clear that

18 the appointment of such a guardian is for the limited purpose of making "the necessary findings

19 regarding special immigrant juvenile status." *Id*.

20       Under the California Probate Code generally, a guardian has "the care, custody, and

21 control of, and has charge of the education of, the ward." Cal. Prob. Code § 2351(a); *see* Cal.

22 Prob. Code § 2350(b) (defining "guardian" as simply "the guardian of the person."). Usually,

23 "[a] probate guardianship of the person is set up because a child is living with an adult who is not

24 the child's parent, and the adult needs a court order to make decisions on behalf of the child."

25 *Guardianship*, *available at* http://www.courts.ca.gov/selfhelp-guardianship.htm. Under

26 California law, the age of majority is 18. Cal. Fam. Code § 6500. Notably, California law does

27 not generally allow a parent to have custody of an adult son or daughter. *See* Cal. Welf. & Inst.

28 Code § 303(d); Cal. Fam. Code § 7505(c). As such, probate guardianships are generally intended

DEFENDANTS' MOTION TO DISMISS
Case No. 5:18-CV-4914 NC

for children under 18. *See Guardianship*, http://www.courts.ca.gov/selfhelp-guardianship.htm.

In contrast, under Cal. Prob. Code § 1510.1(a)(1), the ward — an adult under state law — must consent to the appointment of the guardian. *Id*. The statute does not authorize the guardian to "abrogate any of the rights that a person who has attained 18 years of age may have as an adult under state law, including, but not limited to, decisions regarding the ward's medical treatment, education, or residence, without the ward's express consent." Cal. Prob. Code § 1510.1(c). Although a guardianship may be "necessary and convenient," a person for whom a guardian has been appointed under this section "retains the rights that an adult may have under California law." Cal. Assem. Bill No. 900 (2015-2016 Reg. Sess.) § (a)(7). The ward, being over 18, can terminate the guardianship at any time by filing a petition with the court. Cal. Prob. Code § 1601. The creation of such a guardianship means that the court is limited to transferring the rights of the ward via his or her consent to the guardian rather than the usual transfer of parental rights to a guardian. According to the Judicial Council of California, Memorandum "New Rules and Forms Implementing Assembly Bill 900 in Guardianship Proceedings" (Jun. 30, 2016) at 4 "[U]nless the court finds that a proposed 18- to 20-year-old ward has diminished capacity— something not contemplated by AB 900—any decision-making authority held by the guardian must be freely conveyed from the ward himself or herself" *available at* http://www.courts.ca.gov/documents/BTB24-5G-1.pdf (last accessed Dec. 20, 2018).

The probate court cannot return a ward to a formerly unfit parent's custody since, due to the ward's status as an adult, they no longer have parental rights to custody to restore. Thus, Cal. Prob. Code § 1510.1 does not grant the Probate Court authority to make decisions about the care and custody of the ward beyond what the ward consents to.

## PERTINENT FACTS

The named Plaintiffs are four 20- to 22-year-old women and men born outside the U.S. who sought guardianship orders under Cal. Prob. Code § 1510.1(a) after their 18th birthdays. They have each filed Form I-360 petitions with USCIS to obtain SIJ classification under INA § 101(a)(27)(J). Defendants incorporate by reference herein, the factual allegations as laid out in Defendants' Opp. to Class Cert., ECF No. 79 at 7–10. For the limited purpose of the Opp. to

8

Class Cert. as well as this Motion to Dismiss, Defendants rely on the facts as alleged for each of the named Plaintiffs, but reserve the right to challenge them at a later time.

## STANDARD OF REVIEW

### I.    Subject-Matter Jurisdiction

Pursuant to Fed. R. Civ. P. 12(b)(1), dismissal is appropriate when the court lacks subject-matter jurisdiction over a claim. "[W]hen considering a motion to dismiss pursuant to Rule 12(b)(1) the district court is not restricted to the face of the pleadings, but may review any evidence, such as affidavits and testimony, to resolve factual disputes concerning the existence of jurisdiction." *McCarthy v. U.S.*, 850 F.2d 558, 560 (9th Cir. 1988).

### II.    Failure to State a Claim

In a motion to dismiss for Failure to State a Claim pursuant to Fed. R. Civ. P. 12(b)(6), all factual allegations set forth in the complaint "are taken as true and construed in the light most favorable to plaintiffs." *Epstein v. Washington Energy Co.*, 83 F.3d 1136, 1140 (9th Cir. 1999). Conclusory allegations of law, however, are insufficient to defeat a motion to dismiss. *Id.*; *see also Lee v. City of Los Angeles* 250 F.3d 668, 679 (9th Cir. 2001). A complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

## ARGUMENT

### I.    The Court Lacks Subject-Matter Jurisdiction Over Agency Actions That Are Not Final.

#### A.    Three of The Named Plaintiffs Should Be Dismissed Because USCIS Has Not Issued A Final Agency Decision On Their SIJ Petitions.

M.G.S., M.D.G.B., and J.B.A do not seek review of final agency actions because their SIJ petitions remain pending.[8] Since relief is still available from USCIS, the Court lacks jurisdiction to review their claims under the APA and these Plaintiffs should be dismissed from this lawsuit.

---

[8] USCIS received M.G.S.'s petition on September 5, 2017, and it remains pending (ECF No. 72-4 at 3). USCIS received M.D.G.B.'s SIJ petition on February 7, 2017, and it remains pending (ECF No. 7-3 at 2). USCIS received J.B.A.'s petition on February 6, 2017, and it remains pending (ECF No. 7-4 at 2).

APA review is limited to (1) final agency action (2) not committed to agency discretion by law (3) where Congress has not implicitly or explicitly precluded judicial review. *See* 5 U.S.C. § 704 ("Agency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court are subject to judicial review."); *Larson v. U.S.*, 888 F.3d 578, 587 (2d Cir. 2018); *Bennett v. Spear*, 520 U.S. 154, 175 (1997). The finality requirement is considered a necessary element of any APA claim. *See Dalton v. Specter,* 511 U.S. 462, 469 (1994); *Or. Natural Desert Ass'n v. U.S. Forest Serv.*, 465 F.3d 977, 982 (9th Cir. 2006) (party seeking judicial review under APA "must challenge a final agency action.").

An agency action is "final" if two conditions are met: (1) the action must mark the consummation of the agency's decision-making process — it must not be of a merely tentative or interlocutory nature, and (2) the action must be one by which rights or obligations have been determined, or from which legal consequences will flow. *Bennett*, 520 U.S. at 177–78 (internal citations omitted). The fact that "[n]o further decision-making on [an] issue can be expected ... [is] a clear indication that the first prong of the ... finality test is satisfied." *Net-Inspect, LLC v. U.S. Citizenship & Immigration Servs.*, No. C14-1514JLR, 2015 WL 880956, at *3 (W.D. Wash. Mar. 2, 2015) (quoting *Fairbanks N. Star Borough v. U.S. Army Corps of Engineers*, 543 F.3d 586, 593 (9th Cir. 2008)). Further, an agency action is deemed final if it is "'definitive'" and has a "'direct and immediate … effect on the day-to-day business'" of the party challenging the agency action. *Reliable Automatic Sprinkler Co., Inc. v. Consumer Product Safety Comm'n*, 324 F.3d 726, 731 (D.C. Cir. 2003) (quoting *FTC v. Standard Oil Co. of Cal.*, 449 U.S. 232, 239 (1980)). As for the second prong, "[t]he general rule is that administrative orders are not final and reviewable "unless and until they impose an obligation, deny a right, or fix some legal relationship as a consummation of the administrative process." *Ukiah Valley Med. Ctr. v. Fed. Trade Comm'n*, 911 F.2d 261, 264 (9th Cir. 1990) (citations omitted).

Plaintiffs do not assert that USCIS has issued any definitive, final decisions adjudicating M.G.S.'s, M.D.G.B.'s, and J.B.A's individual SIJ petitions; in contrast, they acknowledge that only J.L. has received a decision on her SIJ petition. *See* Plaintiffs' Amended Complaint ("Amend. Compl.") ECF No. 70, ¶ 19–21 (M.G.S.'s application is pending; M.D.G.B. and

J.B.A. only received NOIDs). Therefore, the requisite "finality" for APA review does not exist with regard to M.V.B.'s, M.D.G.B.'s, or J.B.A's claims. "Where relief is available from an administrative agency, the plaintiff is ordinarily required to pursue that avenue of redress before proceeding to the courts, and until that recourse is exhausted, suit is premature and must be dismissed." *Reiter v. Cooper*, 507 U.S. 258, 269 (1993).

USCIS adjudicates each SIJ petition on its own merits and the petitioner carries the burden of proof. The only reviewable "final agency decision" is USCIS's decision to deny or approve an individual SIJ petition and only USCIS's application of the SIJ statute and regulations in individual cases result in legal obligations and the flow of legal consequences. *See e.g. Spencer Enterprises, Inc. v. U.S.*, 345 F.3d 683, 688 (9th Cir. 2003) (identifying the "particular agency action at issue" as "INS's denial of an immigrant investor visa petition"); *Abboud v. I.N.S.*, 140 F.3d 843, 847 (9th Cir. 1998) ("[B]ecause the INS's denial of [claimant's visa petition] was a final order, we conclude that the district court had jurisdiction over this matter."). Thus, M.V.B.', M.D.G.B.'s, and J.B.A's claims (as well as those of any potential class members who are without final agency action on their SIJ petitions) should be dismissed for failure to state a claim.

### B.  USCIS's Clarification of Existing Law and Centralization of SIJ Adjudications Does Not Constitute Reviewable Final Agency Action.

Prior to 2016, individual field offices rendered USCIS's SIJ adjudications, and they may have applied the regulations inconsistently at times. *See* ECF No. 34-1 at 3. Additionally, no "policy" existed with respect to California guardianship orders issued to individuals over the age of majority. Thus, California USCIS field offices may have erroneously approved certain Form I-360 petitions for SIJ classification in which a state court appointed a guardian for petitioners between the ages of 18 and 21. Erroneous adjudications, however, do not confer a right or bind USCIS to continue adjudicating in error. *Dixon v. U.S.*, 381 U.S. 68, 72–73 (1965); *Royal Siam Corp. v. Chertoff*, 484 F.3d 139, 148 (1st Cir. 2007) ("The mere fact that the agency, by mistake or oversight, approved a specialty occupation visa petition on one occasion does not create an automatic entitlement to the approval of a subsequent petition for renewal of that visa."). Prior to

DEFENDANTS' MOTION TO DISMISS
Case No. 5:18-CV-4914 NC

2016, other USCIS field offices properly denied such SIJ petitions on the basis that the state court that issued the orders did not have jurisdiction over the care and custody of the petitioner as a juvenile under state law. *See e.g. In Re Self Petitioner*, 2013 WL 5504799 (DHS Feb. 15, 2013). There, USCIS's Administrative Appeals Office ("AAO") upheld the Nebraska Field Office's denial of an SIJ petition filed by an 18-year-old citizen of El Salvador. *Id.* at *2–3. The petitioner submitted an Iowa court order appointing a guardian over him, and the order was later amended to include a determination that petitioner was abandoned by his parents. *Id.* at *1. The USCIS field office denied the petition because, at the time of the state guardianship proceedings, the petitioner was not a minor under Iowa law, and the record was devoid of evidence that the guardianship order was issued pursuant to the court's jurisdiction over the petitioner as a juvenile. *Id.* at *3–4. *See also Matter of J-R-C-N-*, 2015 WL 6447264, at *4 (DHS Oct. 6, 2015) (juvenile court order submitted by SIJ petitioner from Honduras was "deficient" because the petitioner was not a minor under Missouri law, and his Missouri court order "does not cite to any exception supporting its jurisdiction over the Petitioner); *In re Self Petitioner*, 2015 WL 4072664, at *3–4 (DHS Jun. 9, 2015) (upholding denial of SIJ classification to 20-year-old Honduran who submitted a Texas "Order of Dependency and Findings," because the petitioner was not a minor under the Texas Family Code, and there was no evidence that the order was issued pursuant to the court's jurisdiction over the petitioner as a juvenile under state law).

As USCIS Branch Chief Rosenstock explained in his declaration, in November 2016, to ensure consistency in adjudication of SIJ petitions based on different state juvenile courts, USCIS centralized its adjudications of SIJ-based benefits at the National Benefits Center ("NBC"). *See* ECF No. 43-1 at 2–3. In doing so, USCIS was able to thoroughly consider whether and under what circumstances state courts had jurisdiction to make the necessary findings about the possibility of parental reunification, and to provide uniform training to those adjudicating SIJ petitions. However, USCIS did not adopt guidance or policy with respect to the specific issue of California guardianship orders. Rather, the increase in Form I-360 petition denials relating to SIJ petitioners between the ages of 18 through 21 in California was the result of a centralization of SIJ-based adjudications, which resulted in improved consistency in the overall adjudications

12

1    process — not some undisclosed policy change.

2        To the extent Plaintiffs assert that the centralization of SIJ adjudications in the NBC;

3    USCIS's training of NBC adjudicators; the February 2018 Legal Guidance; and the April 2018

4    Consolidated Handbook of Adjudication Procedures ("CHAP"), collectively constitute a "new"

5    policy or a "reversal" of prior "policy" that would somehow mark the "consummation" of some

6    formal agency decision-making process, such agency clarification of the applicable SIJ law is

7    still not a "final agency action" "by which rights or obligations have been determined or from

8    which legal consequences will flow" under both prongs of the *Bennett* test. *Bennett*, 520 U.S. at

9    178. "For an action to 'mark the consummation of the agency's decision-making process' under

10   the first *Bennett* prong, there must be an established 'formal procedure,' in which the agency

11   'evaluate[s] the merits of [the issue] to arrive at a reasoned, deliberate decision.'" *Navajo Nation*

12   *v. U.S. Dep't of Interior*, 819 F.3d 1084, 1098 (9th Cir. 2016) (citing cases). "A final decision

13   must establish an official position that is 'considered, definite and firm,' and constitutes the

14   agency's 'last word on the matter.'" *Id.* (citing cases). In this case, Plaintiffs have not identified,

15   nor cannot identify, any deliberate, established "formal procedure" for changing the agency's

16   interpretation of the SIJ statute and regulations — because none exists — and thus they cannot

17   meet the first prong of the *Bennett* test. Internal procedural guidance such as the Consolidated

18   Handbook of Administrative Procedures (CHAP) is not binding on adjudicators and has no legal

19   force. *See Moore v. Apfel*, 216 F.3d 864, 868 (9th Cir. 2000).

20       Moreover, even if the centralization of adjudications and internal guidance on what the

21   statute and regulation requires somehow mark the "consummation" of some formal agency

22   decision-making process, these documents and processes are not ones "by which rights or

23   obligations have been determined or from which legal consequences will flow." *Bennett*, 520

24   U.S. at 178. Instead, the SIJ statute and the regulations impose such legal obligations, and legal

25   consequences flow from USCIS's application of the law and regulations in individual cases. As a

26   result, the only reviewable "final agency decision" here is USCIS's decision to deny or approve

27   an individual SIJ petition — not the training or advice given to NBC adjudicators. *See e.g.*

28   *Spencer Enterprises, Inc.*, 345 F.3d at 688 (identifying the "particular agency action at issue" as

13

"INS's denial of an immigrant investor visa petition").

Defendants emphasize that the only *reviewable* "final agency action" for purposes of 5 U.S.C. § 704, is USCIS's application of the law and regulations to an individual SIJ petition resulting in approval or denial. That is because only the ultimate approval or denial of an individual petition imposes any legal obligations and/or consequences. Said differently, the only reviewable "final agency decision" here is USCIS's decision to deny J.L.'s individual SIJ petition — not training given to NBC adjudicators or the agency's publicly-available guidance documents. *See e.g. Khalil v. Napolitano*, 983 F. Supp. 2d 484, 488–89 (D.N.J. 2013) ("[T]he district courts may review the final determinations of visa denials when they are alleged to have violated the terms of the APA"); *cf. Fairbanks N. Star Borough v. U.S. Army Corps of Eng'rs*, 543 F.3d 586, 593–94 (9th Cir. 2008) (agency determination that certain property contains wetlands subject to the Clean Water Act was not reviewable final action because it did not determine rights or obligations from which legal consequences will flow); *Golden & Zimmermann, LLC v. Domenech*, 599 F.3d 426, 433 (4th Cir. 2010) (agency's FAQ explaining law and regulations was not final agency action under the APA because, *inter alia*, "if the [agency] had never published the Reference Guide and FAQ[], the [agency] would still have had the authority to prosecute licenses for engaging in the conduct described in FAQ[] because legal consequences do not emanate from FAQ[] but from the [statute] and its implementing regulations."); *Acquest Wehrle LLC v. U.S.*, 567 F. Supp. 2d 402, 410 (W.D.N.Y. 2008) (no final agency action when "the legal rights and obligations of the parties were precisely the same the day after the jurisdictional determination was issued as they were the day before").

## II.     The Court Lacks Subject-Matter Jurisdiction to Enjoin the Government from Initiating Removal Proceedings Against Plaintiffs.

When Congress enacted the REAL ID Act in 2005, it intended to strip federal district courts of jurisdiction to review foreign nationals' challenges to their removal orders and related enforcement action. *See Singh v. Gonzales*, 499 F.3d 969, 975–77 (9th Cir. 2007) (explaining that Congress intended to restore judicial review to its pre-1996 standard by eliminating district-court jurisdiction over removal orders and placing jurisdiction solely within the appellate courts).

1   In crafting 8 U.S.C. § 1252(g), Congress unambiguously instructed that "no court" has

2   jurisdiction over "any cause or claim" that arises from the Attorney General's decision or action

3   "to commence proceedings, adjudicate cases, or execute removal orders" against foreign

4   nationals. 8 U.S.C. § 1252(g).

5           Section 1252(g) provides:

6           Except as provided in this section and notwithstanding any other provision of law
            (statutory or nonstatutory), … , no court shall have jurisdiction to hear any cause
7           or claim by or on behalf of any alien arising from the decision or action by the
            Attorney General to commence proceedings, adjudicate cases, or execute removal
8           orders against any alien under this chapter.

9           This provision eradicates subject-matter jurisdiction in district courts with respect to

10   government decisions in these three categories. *See Reno v. Am.-Arab Anti-Discrimination*

11   *Comm.*, 525 U.S. 471, 482–83 (1999) (limiting reach of provision to "three discrete actions");

12   *see also Foster v. Townsley*, 243 F.3d 210, 213 (5th Cir. 2001). Appellate courts throughout the

13   U.S. have upheld the jurisdictional bar over removal matters in the federal-district courts. *E.g.*,

14   *Ching v. Mayorkas*, 725 F. 3d 1149 (9th Cir. 2013); *Hamama v. Homan*, No. 17-2171, 2018 WL

15   6722734, at *3–5 (6th Cir. Dec. 20, 2018) (finding 1252(g) barred district court's jurisdiction

16   over petitioners' removal-based claims, and vacating the injunction); *Elgharib v. Napolitano*,

17   600 F.3d 597 (6th Cir. 2010); *Rivas-Melendrez v. Napolitano*, 689 F.3d 732, 734 (7th Cir. 2012);

18   *Silva v. U.S.*, 866 F.3d 938, 942 (8th Cir. 2017). The Ninth Circuit adheres to this jurisdictional

19   bar. *See de Rincon v. Dep't of Homeland Sec.*, 539 F.3d 1133, 1138–39 (9th Cir. 2008) (holding

20   that the court was "jurisdictionally barred from hearing" the petitioner's challenge to her

21   removal-order reinstatement); *Kit Yee Kitty Li v. Sessions,* 685 F. App'x 593, 594 (9th Cir. 2017)

22   (The decision about whether to seek an immigrant's removal or initiate proceedings is not

23   subject to judicial review) (citing 8 U.S.C. § 1252(g)).

24           Additionally, with 8 U.S.C. § 1252(f), Congress prohibited courts from granting

25   classwide injunctive relief arising from the provisions under "subsection IV," including initiating

26   and conducting removal proceedings. *See* 8 U.S.C. § 1229 (Initiation of Removal Proceedings), 8

27   U.S.C. § 1229a (Removal Proceedings), 8 U.S.C. § 1231 (Detention and Removal of Aliens

28   Ordered Removed). Congress was clear in its directive to the courts — "[r]egardless of the

15

nature of the action or claim or the identity of the party…no court (other than the Supreme Court) shall have jurisdiction or authority to enjoin or restrain the operation of the provisions [in Part IV]." 8 U.S.C. § 1252(f). The only exception to this is "to an individual" against whom removal proceedings "have been initiated." *Id.* The Supreme Court has held that this provision is — by its plain terms — a limit on injunctive relief that prohibits federal courts from "granting classwide injunctive relief against the operation of §§ 1221–1231." *AADC*, 525 U.S. at 481–82. In fact, the Ninth Circuit recently affirmed that § 1252(f) bars jurisdiction over individuals against whom proceedings have *not* been initiated. *Rodriguez v. Marin*, 909 F.3d 252, 256 (9th Cir. 2018) (holding that the court had jurisdiction to grant injunctive relief because the petitioners were "individuals against whom proceedings" had been initiated). Further, the *Rodriguez* court contemplated that *AADC* may "foreclose the argument that § 1252(f)(1) allows classwide injunctive relief," even though *AADC* would not foreclose declaratory relief. *Id.* Thus, the Court must reject Plaintiffs' request that it enjoin Defendants from "initiating removal proceedings against or removing" aliens like J.L. whose SIJ petitions have been denied because (1) Congress explicitly prohibited such interference with the government's decision to conduct removal under 8 U.S.C. § 1252(g), and (2) 8 U.S.C. § 1252(f)(1) also bars the district court from entering class-wide injunctive relief to restrain the operation of the removal statutes. *See Hamama*, 2018 WL 6722734, at *5–8; *Van Dinh v. Reno*, 197 F.3d 427, 433 (10th Cir. 1999) ("§ 1252(f) forecloses jurisdiction to grant class-wide injunctive relief to restrain operation of §§ 1221–31 by any court other than the Supreme Court."); *Pimentel v. Holder,* 2011 WL 1496756, at *2 (D.N.J. Apr. 18, 2011) (explaining § 1252(f)(1) bars courts from exercising jurisdiction over class claims for injunctive relief); *see also Budhathoki v. Dep't of Homeland Sec.*, 220 F. Supp. 3d 778 (W.D. Tex. 2016) (recognizing application of 1252(g) on removal orders in SIJ cases, but does not restrict judicial review of denials of SIJ application in APA context).

### III.   Plaintiffs Fail To State A Claim Upon Which Relief Can Be Granted.

While the Court has subject-matter jurisdiction to review the denial of J.L.'s SIJ petition under the APA, USCIS's decision was not arbitrary or capricious, but rather was fully consistent

with the statute. USCIS's reading of the statute gives proper effect to Congress's intent of granting SIJ classification only to those juveniles who have required a juvenile court's intervention to obtain relief from abuse, neglect, abandonment and who — as a result of child welfare proceedings — would not be able to return to the custody of a parent due to the parents unfitness and preventing SIJ classification from being exploited as a means of obtaining immigration status by those who do not fall within the ambit of the statute. Therefore, the Court should dismiss Plaintiffs' claims pursuant to Fed. R. Civ. P. 12(b)(6).

### A.  USCIS's Denial of J.L.'s SIJ Petition Was Not Arbitrary or Capricious.

### i.  APA Review Is Highly Deferential to Agency Judgment.

Under the APA, this Court may only hold unlawful and set aside an agency decision that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with [the] law" or "unsupported by substantial evidence." 5 U.S.C. § 706(2); *Ariz. Cattle Growers' Ass'n v. U.S. Fish & Wildlife*, 273 F.3d 1229, 1236 (9th Cir. 2001); *Bechtel v. Admin. Review Bd.,* 710 F.3d 443, 445–46 (2d Cir. 2013). This standard of review is narrow and does not give the Court the authority to substitute its judgment for that of the agency. *See Motor Vehicles Mfrs. Ass'n of the U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983). Agency action may be reversed under the arbitrary-and-capricious standard only if the agency has relied on factors that Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view of the product of agency expertise. *Safari Aviation Inc. v. Garvey*, 300 F.3d 1144, 1150 (9th Cir. 2002), *cert. denied*, 538 U.S. 946 (2003).

The Court's review of an agency's action under the APA is generally limited to the administrative record compiled by the agency. *See* 5 U.S.C. § 706; *Camp v. Pitts*, 411 U.S. 138, 142 (1973) (per curiam); *Pinto v. Massanari*, 249 F.3d 840, 847 (9th Cir. 2001). Particularly in the context of immigration policy, the Ninth Circuit has determined that review is "especially deferential." *Jang v. Reno*, 113 F.3d 1074, 1077 (9th Cir. 1997). "An agency to which Congress has delegated authority to administer a statute is entitled to judicial deference to its views of the

statute it administers." *S.E.C. v. Alpine Sec. Corp.*, 308 F. Supp. 3d 775, 789 (S.D.N.Y. 2018)

(citing *Chevron. U.S.A. Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 844 (1984)).

Additionally, "[t]o defer to an agency's interpretation of a statute as reasonable, this Court 'need

not conclude that the agency construction was the only one it permissibly could have adopted …

or even the reading the court would have reached if the question initially had arisen in a judicial

proceeding.'" *Xia Fan Huang v. Holder*, 591 F.3d 124, 129 (2d Cir. 2010) (quoting *Chevron*,

467 U.S. at 843 n.11). The Court must also "defer to an agency's 'interpretation of its own

regulations unless that interpretation is plainly erroneously or inconsistent with the regulation.'"

*Id.* (quoting *Nat. Res. Def. Council v. EPA*, 808 F.3d 556, 569 (2d Cir. 2015)). If the regulation at

issue "is unambiguous, however, 'the clear meaning of the regulation controls and may not be

overridden by an inconsistent agency interpretation.'" *Id.* (citing *Christensen v. Harris Cty.*, 529

U.S. 576, 588 (2000)).

### ii.   USCIS's Statutory Interpretations Are Reasonable and Entitled to Deference.

Contrary to Plaintiffs' assertions, USCIS's denial of J.L.'s SIJ petition, based on its

interpretation and application of the law, was not arbitrary, capricious, or contrary to law.

Plaintiffs erroneously allege that USCIS has imposed "an extra-statutory eligibility requirement

on SIJS petitions." ECF No. 70 at ¶ 53. Specifically, Plaintiffs assert that "nothing in the SIJS

Statute indicates that a juvenile court must possess authority to order SIJS petitioners back into

the control of their parents." *Id.* at ¶ 54. Plaintiffs' position misses the point of SIJ classification.

Children who have required the intervention and protection of a state court due to parental

maltreatment may be eligible for SIJ classification when such a court determines that due to their

unfitness a parent will be permanently deprived of their custodial rights and that it is in the best

interests of the child to remain in a placement in the U.S. *See* Appropriations Act, at § 113; 6

USCIS Policy Manual J.2(A). It is axiomatic that because children lack competence to make

decisions, they must be under the custody of an adult. The Constitution recognizes that parents

have a fundamental right to raise their children. *See Pierce v. Society of Sisters*, 268 U.S. 510,

534–35 (1925); *Prince v. Commonwealth of Massachusetts*, 321 U.S. 158, 166 (1944) ("the

custody, care and nurture of the child reside first in the parents, whose primary function and freedom include preparation for obligations the state can neither supply nor hinder"). Under the principle of *parens patriae*, however, the government can intervene in the parent-child relationship when parents fail to provide proper care. *Troxel v. Granville*, 530 U.S. 57, 88 (2000); *Stanley v. Illinois*, 405 U.S. 645, 651 (1971). Plaintiffs' cavalier position that courts can make critical determinations regarding parents' rights based on facts alone — without applying established law — is antithetical to the U.S.'s prevailing policies favoring reunification. *See* Congressional Findings 42 U.S.C. § 5101, Note, *available at* http://uscode.house.gov/view.xhtml?path=/prelim@title42/chapter67&edition=prelim ("national policy should strengthen families to prevent child abuse and neglect, provide support for needed services to prevent the unnecessary removal of children from families, and promote the reunification of families where appropriate"). USCIS reasonably requires that petitioners establish that the court orders submitted to establish eligibility have been issued by juvenile courts with competent jurisdiction to make such grave decisions regarding the parent-child relationship. 8 C.F.R. § 204.11(d)(2). Accordingly, and as set forth below, USCIS's denial of J.L's petition on the basis that she introduced insufficient evidence that the California Probate Court was acting as a "juvenile court," due to its lack of jurisdiction to make a decision to return J.L. to the custody of her parents through reunification, was reasonable and legally sound.

As discussed, *supra* at 8, 8 C.F.R. § 204.11 defines the penitent terms. Regulations have the force of law and USCIS is obliged to follow its own rules. *U.S. ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 265 (1954). Accordingly, in order to be considered a valid juvenile court order for the purposes of establishing SIJ eligibility, the state court that issued the order must have competent jurisdiction under state law to make the required determinations about the care and custody of juveniles and thus must be "authorized by law to make such decisions" that "family reunification is no longer a viable option" as to the individual petitioner appearing before that court. *See* 8 C.F.R. §§ 204.11(a), (d)(2)(i)–(ii). In order for a juvenile court to have authority to determine the non-viability of family reunification, the court must have competent jurisdiction to determine both whether a parent could regain custody and to order reunification,

if warranted; *i.e.* it must have jurisdiction to determine whether the allegedly abusive, neglectful, or abandoning (or other similar basis under state law) parent or parents has the right to obtain custody of a petitioner as a juvenile under state law. *See* 8 C.F.R §§ 204.11(a), (d)(2)(i)–(ii) (emphasis added). USCIS's decision denying J.L.'s petition explicitly relies on the statute, regulations, and interpretive guidance found in the publicly available Policy Manual. *See* ECF No. 7-1 at 18–22. The decision clearly provides J.L. with a reasoned explanation as to why she failed to meet her burden to establish SIJ eligibility. *Id.* Federal immigration law does not define "abuse," "neglect" or "abandonment," and specific legal definitions of those terms for the purposes of juvenile dependency derive from state law and thus varies by state. Although J.L.'s Probate Court order purported to make findings relating to "abuse, neglect and abandonment" under "state law," the statutory authority it relied on applies to state child welfare proceedings for children under 18 years of age. *See* ECF No. 7-1 at 21–22; *see* Cal. Welf. & Inst. Code § 303(a); Cal. Fam. Code § 7505(c) and § 6500. Notably, California law does not generally allow a parent to have custody of an adult. *See* Cal. Welf. & Inst. Code § 303(d); Cal. Fam. Code § 7505(c). As such, probate guardianships are generally for children under 18. *See* Guardianship, *available at* http://www.courts.ca.gov/selfhelp-guardianship.htm; *see also* Cal. Prob. Code § 2351(a).

     In AB 900, the California legislature gave the Probate Court jurisdiction to appoint a guardian for a person between 18 and 21 years of age specifically in connection with a special immigrant juvenile status petition. The statute makes clear that such guardianship appointment is for the limited purpose of making "the necessary findings regarding special immigrant juvenile status" and that the ward — an adult under state law — must consent to the guardian appointment; retains all of his or her rights as an adult under state law; and can terminate the guardianship at any time by filing a petition with the court. Cal. Prob. Code § 1601. Therefore, Cal. Prob. Code § 1510.1 does not grant the probate court authority to make decisions about the custody rights of parents and furthermore, the court cannot return a ward to a formerly unfit parent's custody upon even if it could determine that the reunification was viable. Clearly, the probate court is not acting under *parens patriae* authority.

Thus, USCIS reasonably found that J.L.'s Probate Court order was not issued by a "juvenile court" with competent jurisdiction as the SIJ statute and regulations define those terms. Specifically, in its April 17, 2018 denial of J.L.'s petition, USCIS noted that although J.L. was placed in a guardianship with her consent, such an arrangement explicitly preserved her rights as an adult to make decisions on her own behalf. *See* Cal. Prob. Code § 1510.1(c). The decision further noted that J.L. conceded that the court that issued her order was unable to make a reunification finding as that term is used under California law. ECF No. 7-1, Exh. C.

Accordingly, because J.L did not meet her burden of establishing that a juvenile court determined reunification with her parents was not viable, USCIS's decision not to approve J.L.'s SIJ petition was neither arbitrary nor capricious. Additionally, that AB 900 provides a state court jurisdiction specifically in connection with a special immigrant juvenile status petition does not override the Federal regulations governing SIJ classification and require USCIS to defer to state court orders that endeavor to satisfy federal immigration requirements — especially when that state law is in direct conflict with the stated objective of the federal regulatory scheme. *See Geier v. American Honda Motor Co., Inc.*, 529 U.S. 861, 886 (2000) (action permitted under state tort law was preempted because it conflicted with Department of Transportation standard);*see also County of Okanogan v. National Marine Fisheries Service*, 347 F.3d 1081, 1084–86 (9th Cir. 2003) (finding that vested water rights under state law did not exempt plaintiffs from compliance with the Endangered Species Act); *CallerID4u, Inc. v. MCI Communications Services Inc.*, 880 F.3d 1048, 1061 (9th Cir. 2018) (quoting *Wyeth v. Levine*, 555 U.S. 555, 576–77 (2009)) ("While agencies have no special authority to pronounce on pre-emption absent delegation by Congress, they do have a unique understanding of the statutes they administer and an attendant ability to make informed determinations about how state requirements may pose an 'obstacle to the accomplishment and execution of the full purposes and objectives of Congress.'").

State courts are not authorized to make decisions regarding SIJ eligibility or to administer any portion of the INA. *See* 8 U.S.C. § 1103 (setting forth the powers and duties of the Secretary of Homeland Security). That a California law provides jurisdiction, or that a court decides that it

21

has jurisdiction and chooses to issue an order, does not render the court's jurisdiction or the order legally binding on USCIS unless the court had competent jurisdiction to make the required determination as the SIJ classification regulations provide. If any state court could issue an order for the purposes of an SIJ petition, the regulatory text that prescribes that the order be "*issued by a court of competent jurisdiction*" would be superfluous. The Fifth Circuit has flatly rejected Plaintiffs' contentions regarding USCIS's purported "deference" to state courts in a recent SIJ-related decision similar to this one. In *Budhathoki v. Nielsen*, 898 F.3d 504 (5th Cir. 2018), three alien plaintiffs over the age of 18 filed what is known in Texas as a "Suit Affecting Parent-Child Relationship" ("SAPCR") under the Texas Family Code. *Id.* at 506. Texas law generally defines "child" or "minor" as "a person under 18 years of age who is not and has not been married," but in the child-support context, "child" includes persons over 18. *Id.* In the plaintiffs' SAPCR suits, the state courts awarded plaintiffs child support and made certain findings — *e.g.* that the applicants were under 21, unmarried, had been abandoned by their parents, and that returning to their home countries were not in their best interest. *Id.* at 507. Plaintiffs filed SIJ petitions with USCIS and submitted their SAPCR orders, but USCIS denied the petitions. *Id.* USCIS's denials were based on the ground that, while Texas courts had the legal authority to order *child support* for juveniles over 18, plaintiffs' SAPCR orders did not show that they were issued by a court "having jurisdiction under state law to make judicial determinations about the care and custody of juveniles." *Id.* at 509 (citing 8 C.F.R. § 204.11(a) definition of juvenile court). In short, USCIS determined that an order requiring child support was not a "care and custody" determination, and under Texas law, individuals 18 years and older were not juveniles even if they were eligible for child support. *Id.* at 509–10. Plaintiffs brought an APA challenge arguing that a SAPCR order is "a valid custody or dependency order for SIJ purposes." *Id.* at 510. The Fifth Circuit affirmed the district court's denial of plaintiffs' APA challenge, finding that USCIS had not acted arbitrarily and capriciously. *Id.* at 516. Characterizing the dispute as one "about the discretion, indeed the obligation in USCIS's view, of the federal agency to decide the sufficiency for federal purposes of Texas state court child support orders," the Fifth Circuit held that "[w]hether a state court order submitted to a federal agency for the purpose of gaining a federal

22

1   benefit made the necessary rulings *very much is a question of federal law*, not state law, *and the*

2   *agency had authority to examine the orders for that purpose.*" *Id.* at 511 (emphases added).

3       Likewise, here, USCIS properly exercised its authority to examine J.L.'s Probate Court

4   order to determine whether the Probate Court had jurisdiction to make the required rulings over

5   "care and custody." USCIS reasonably concluded that it did not.[9]

### B. USCIS' Interpretation of Existing Law Is Not A New Policy That Requires Notice-and-Comment Rulemaking.

8       Finally, this Court should also dismiss Plaintiffs' claim that the purported "policy"

9   violated the APA because it was not "publish[ed]" pursuant to 5 U.S.C. § 552(a)(1)(D). Section

10  3 of the APA, as amended by the Freedom of Information Act, 5 U.S.C. § 552 requires that

11  "[e]ach agency shall separately state and currently publish in the Federal Register for the

12  guidance of the public—(D) substantive rules of general applicability adopted as authorized by

13  law, and statements of general policy or interpretations of general applicability formulated and

14  adopted by the agency . . . ." 5 U.S.C. § 552(a)(1)(D). Plaintiffs have failed to allege what should

15  have been published — and there is no dispute that the Policy Manual is available to the public.

16  An agency is only required to "make available for public inspection in an electronic format …

17  statements of policy and interpretations which have been adopted by the agency and are not

18  published in the Federal Register" and "administrative staff manuals and instructions to staff that

19  affect a member of the public," 5 U.S.C. § 552(a)(2)(C), (D). USCIS has complied with this

20  requirement since the Policy Manual is accessible to the public. In addition, § 552(a)(2)(C), (D)

21  has no requirement for notice, public comment, or input before the statements of general policy

22  or interpretations can be implemented. The only "general statements of policy" subject to the

23  publication requirement are those that advise "the public prospectively of the manner in which

24  the agency proposes to exercise a discretionary power." *Mada-Luna v. Fitzpatrick*, 813 F.2d

25  1006, 1013 (9th Cir. 1988). An agency's interpretation of existing law and policy do not fall

---

[9] In *Budhathoki*, USCIS made two findings:1) that the petitioners did not carry their burden of establishing eligibility for SIJ status, and 2) that, regardless, USCIS would not favorably exercise its discretionary consent function. In contrast, in J.L.'s case, USCIS determined that J.L. did not meet her burden of establishing eligibility for SIJ status, but USCIS did not continue on to make a separate finding regarding its discretionary consent.

DEFENDANTS' MOTION TO DISMISS
Case No. 5:18-CV-4914 NC

within this category.

### C.   Plaintiffs do not have a Constitutionally Protected Interest in Obtaining SIJ Classification

To have a protectable property or liberty interest in a benefit, "a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." *Board of Regents v. Roth*, 408 U.S. 564, 577 (1972). Contrary to Plaintiffs' assertions (Amend. Comp. at ¶ 82), SIJ classification alone does not confer any benefits. It simply allows the recipient to subsequently apply for the discretionary relief of adjustment of status. Additionally, SIJ classification is an immigration benefit available only with the discretion of the Attorney General through USCIS's consent function. *Yu v. Brown*, 92 F. Supp. 2d 1236, 1241 (D. N.M. 2000). Thus, Plaintiffs have no constitutionally protected right in the grant of discretionary relief of SIJ classification. *See Town of Castle Rock, Colo. v. Gonzales*, 545 U.S. 748, 756 (2005) (the Due Process Clause does not protect a "benefit . . . if government officials may grant or deny it in their discretion."); *see Olim v. Wakinekona*, 461 U.S. 238, 249 (1983); *see also Tovar-Landin v. Ashcroft*, 361 F.3d 1164 (9th Cir. 2004) ("aliens have no fundamental right to discretionary relief from removal for purposes of due process and equal protection"); *Munoz v. Ashcroft*, 339 F.3d 950, 954 (9th Cir. 2003) ("Since discretionary relief is a privilege created by Congress, denial of such relief cannot violate a substantive interest protected by the Due Process clause").[10]

### CONCLUSION

Pursuant to Fed. R. Civ. P 12(b)(1), this Court should dismiss M.G.S., M.D.G.B, and J.B.A's because they have not received a final agency action from USCIS concerning their SIJ petitions that would be reviewable by this Court. J.L is the only named Plaintiff who has a "final

---

[10] Additionally, with regard to M.G.S., J.B.A., and M.D.G.B., even if a due process claim existed here, it is not ripe for judicial review. Due process entitles the petitioner only to "the opportunity to be heard at a meaningful time and in a meaningful manner." *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976); *see also Dia v. Ashcroft*, 353 F.3d 228, 239 (3d Cir. 2003). As explained *supra* at 9-11, under the APA, only "final agency action" is subject to judicial review. 5 U.S.C. § 704. An agency decision is "final" when "'the initial decisionmaker has arrived at a definitive position on the issue that inflicts an actual, concrete injury.'" *Darby v. Cisneros*, 509 U.S. 137, 144, 113 (1993) (quoting *Williamson County Regional Planning Comm'n v. Hamilton Bank of Johnson City*, 473 U.S. 172, 193 (1985)).

DEFENDANTS' MOTION TO DISMISS
Case No. 5:18-CV-4914 NC

1   agency action" from USCIS, a necessary requirement in order to state a claim under the APA.

2   Additionally, because USCIS's denial of J.L.'s SIJ petition and its interpretation of the term

3   juvenile court was not arbitrary and capricious as a matter of law, the Court should dismiss that

4   claim under Federal R. Civ. P. 12(b)(6).

5   Dated January 7, 2019                    Respectfully submitted,

6   JOSEPH H. HUNT                           */s/ Catherine M. Reno*
    Assistant Attorney General               CATHERINE M. RENO
7                                            Trial Attorney
    WILLIAM C. PEACHEY                       U.S. Department of Justice
8   Director, District Court Section         Civil Division
    Office of Immigration Litigation         Office of Immigration Litigation —
9                                            District Court Section
    ELIANIS PÉREZ                            P.O. Box 868, Ben Franklin Station
10  Assistant Director                       Washington, DC  20044
                                             Tel: (202) 353-8557
11  LAUREN FASCETT                           Fax: (202) 305-7000
    Trial Attorney                           Email: catherine.m.reno@usdoj.gov
12
13                                           *Attorneys for Defendants*
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

DEFENDANTS' MOTION TO DISMISS
Case No. 5:18-CV-4914 NC

1

## <u>CERTIFICATE OF SERVICE</u>

2          I hereby certify that on this 7th day of January 2019, I electronically filed the foregoing

3    with the Clerk of Court by using the CM/ECF system, which provided an electronic notice and

4    electronic link of the same to all attorneys of record through the Court's CM/ECF system.

5

6                                    By:     /s/ Catherine M. Reno
                                             CATHERINE M. RENO
7                                            Trial Attorney
                                             Office of Immigration Litigation
8                                            Civil Division, U.S. Dep't of Justice
                                             P.O. Box 868, Ben Franklin Station
9                                            Washington, D.C. 20044

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANTS' MOTION TO DISMISS
Case No. 5:18-CV-4914 NC