1  MATTHEW KANNY (SBN 167118)                JUDY LONDON (SBN 149431)
   mkanny@Manatt.com                         jlondon@publiccounsel.org
2  ADRIANNE MARSHACK (SBN 253682)            SARA VAN HOFWEGEN (SBN 266985)
   amarshack@Manatt.com                      svanhofwegen@publiccounsel.org
3  SIRENA CASTILLO (SBN 260565)              MARY TANAGHO ROSS (SBN 280657)
   scastillo@Manatt.com                      mross@publiccounsel.org
4  MANATT, PHELPS & PHILLIPS, LLP            PUBLIC COUNSEL
   11355 West Olympic Boulevard              610 South Ardmore Avenue
5  Los Angeles, CA 90064-1614                Los Angeles, CA 90005
   Telephone:    (310) 312-4000              Telephone:    (213) 385-2977
6  Facsimile:    (310) 312-4224              Facsimile:    (213) 385-9089

7

8  KEITH WURSTER (SBN 198918)
   kwurster@lccr.com
9  LAWYERS' COMMITTEE FOR CIVIL
   RIGHTS OF THE SAN FRANCISCO BAY
10 AREA
   131 Steuart Street, Suite 400
11 San Francisco, CA 94105
   Telephone:    (415) 543-9444
12 Facsimile:    (415) 543-0296

13 Attorneys for *Plaintiffs*
   J.L., M.V.B., M.D.G.B., and J.B.A., on
14 behalf of themselves and all others similarly
   situated

15

16                  **UNITED STATES DISTRICT COURT**

17           **FOR THE NORTHERN DISTRICT OF CALIFORNIA**

18 J.L., M.V.B., M.D.G.B., and J.B.A., on behalf      Case No. CV 18-4914
   of themselves and all others similarly situated,
19
                                                       
20              Plaintiffs,                            **PLAINTIFFS' OPPOSITION TO**
                                                       **DEFENDANTS' MOTION TO DISMISS**
   v.                                                  **THE AMENDED COMPLAINT**
21
22 LEE FRANCIS CISSNA, Director, U.S.
   Citizenship and Immigration Services,
23 KIRSTJEN M. NIELSEN, Secretary, U.S.               Date: March 6, 2019
   Department of Homeland Security, ROBERT            Time: 1:00 p.m.
24 COWAN, Director, National Benefits Center,         Ctrm: 7, 4th Floor
   U.S. Citizenship and Immigration Services,         Hon. Nathanael M. Cousins
25 UNITED STATES DEPARTMENT OF
   HOMELAND SECURITY, and UNITED                      Action Filed: August 14, 2018
26 STATES CITIZENSHIP AND
   IMMIGRATION SERVICES,
27
                Defendants.
28

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
  LOS ANGELES

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ...................................................................................................... 1

II.   THE GOVERNMENT MISSTATES THE APPLICABLE LEGAL FRAMEWORK ........ 2

    A.    Requirements for SIJS Eligibility.................................................................... 2

    B.    The Authority to Make SIJ Findings Lies With the State Court, and USCIS Must Defer to the State Court's Expertise in Child Welfare Matters...................... 2

    C.    California Law Grants the Probate Court Authority to Make Legal Determinations Regarding the Custody and Care of Juveniles Aged 18 to 20 and to Make SIJ Findings on Their Behalf.................................................. 3

    D.    The Government Relies on Superseded Law Regarding Eligibility for Long-Term Foster Care. .......................................................................... 5

III.  ARGUMENT .......................................................................................................... 5

    A.    The Motion Is Procedurally Deficient Because It Attempts to Re-litigate Issues This Court Already Decided in Its PI Order.................................... 5

    B.    The FRCP 12(b)(1) Motion Should Be Denied Because This Court Has Subject Matter Jurisdiction.............................................................. 8

        1.    Plaintiffs' Complaint Challenges Final Agency Action .............................. 8

        2.    USCIS's New Policy Is Not Mere "Clarification" of Existing Law ........... 10

        3.    Plaintiffs Are Not Barred From Seeking the Requested Injunction............ 11

    C.    Plaintiffs' Complaint States Valid Claims on Which Relief Can Be Granted, and the Motion Should Be Denied .......................................... 13

        1.    The Motion Exceeds the Permissible Scope of Rule 12(b)(6) .................. 13

        2.    Plaintiffs State a Claim Under the APA ...................................... 14

            a.    The Government's Actions Are Not Entitled to Deference ........... 14

            b.    Plaintiffs Have Sufficiently Alleged That the Government's New Requirement Is Arbitrary and Capricious.............................. 15

                (1)    The Agency Action Violates Federal Law ........................ 16

                (2)    The Agency Action is an Impermissible Construction of the SIJS Statute. ........................................................ 18

                (3)    The Government Violated the APA by Departing From Years of Practice Without Reasoned Explanation. .............................................................. 19

            c.    Plaintiffs Sufficiently Allege USCIS's Adoption of a New Policy Regarding SIJS Required Notice and Comment. ................. 22

        3.    Plaintiffs State a Due Process Claim for Relief, Alleging That Plaintiffs Have a Constitutionally Protected Interest in Obtaining SIJ. ...... 23

IV.   CONCLUSION ...................................................................................................... 25

MANATT, PHELPS & PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

i

1

## TABLE OF AUTHORITIES

2

**Page**

3

## CASES

4

*Ariz. Cattle Growers' Ass'n v. U.S. Fish & Wildlife*,
273 F.3d 1229 (9th Cir. 2001)..................................................................................15

5

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ...............................................................................................14, 20

6

7

*B.F. v. Super. Ct.*,
207 Cal. App. 4th 621 (2012) .................................................................................3, 18

8

*Bd. of Regents of State Colls. v. Roth*,
408 U.S. 564 (1972) ..................................................................................................23

9

10

*Bechtel v. Admin. Review Bd.*,
710 F.3d 443 (2d Cir. 2013) .....................................................................................15

11

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ..................................................................................................13

12

*Bennett v. Spear*,
520 U.S. 154 (1997) .............................................................................................7, 8, 9

13

14

*Budhathoki v. Nielsen*,
898 F.3d 504 (5th Cir. 2018).....................................................................................19

15

*Cal. Dep't of Water Res. v. Fed. Energy Regulatory Comm'n*,
341 F.3d 906 (9th Cir. 2003) ......................................................................................9

16

*Camp v. Pitts*,
411 U.S. 138 (1973) ..................................................................................................15

17

18

*Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc.*,
467 U.S. 837 (1984) ............................................................................................14, 15

19

*Colwell v. Dep't of Health & Human Servs.*,
558 F.3d 1112 (9th Cir. 2009).....................................................................................22

20

21

*Ctr. for Bio. Diversity v. Nat'l Hwy. Traffic Safety Admin.*,
538 F.3d 1172 (9th Cir. 2008).......................................................................................16

22

*Fed. Commc'ns Comm'n v. Fox Television Stations, Inc.*,
556 U.S. 502 (2009).......................................................................................................21

23

*Franklin v. Massachusetts*,
505 U.S. 788 (1992).........................................................................................................8

24

*Grace v. Whitaker*
--- F. Supp. 3d ---, No. 18-cv-01853 (EGS), 2018 WL 6628081 (D.D.C. 2018) .......13

25

26

*Indus. Customers of Nw. Utils v. Bonneville Power Admin.*,
408 F.3d 638 (9th Cir. 2005)........................................................................................8, 9

27

28

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

ii

1

**TABLE OF AUTHORITIES**
(continued)

2

Page

3      *Jang v. Reno,*
           113 F.3d 1074 (9th Cir. 1997)...................................................................................15
4
       *Mada-Luna v. Fitzpatrick,*
5          813 F.2d 1006 (9th Cir. 1988)...................................................................................22
6      *Marsh v. Cnty. of San Diego,*
           680 F.3d. 1148 (9th Cir. 2012).................................................................................25
7
       *McNary v. Haitian Refugee Ctr., Inc.,*
8          498 U.S. 479 (1991).................................................................................................12
9      *Moss v. U.S. Secret Serv.,*
           572 F.3d 962 (9th Cir. 2009).......................................................................................5
10     *Motor Vehicles Mfrs. Ass'n, Inc. v. State Farm Mut. Auto. Ins. Co.,*
           463 U.S. 29 (1983)...................................................................................................15
11
       *Navajo Nation v. United States Dep't of Interior,*
12         819 F.3d 1084 (9th Cir. 2016).....................................................................................9
13     *Nozzi v. Hous. Auth. of L.A.,*
           806 F.3d 1178 (9th Cir. 2015)..............................................................................23, 24
14
       *Osorio-Martinez v. U.S.*
15         893 F.3d 153 (3d Cir. 2018).....................................................................................24
16     *Perez-Olano v. Gonzalez,*
           248 F.R.D. 248 (C.D. Cal. 2008) ................................................................................3
17     *Perry v. Sindermann,*
           408 U.S. 593 (1972).................................................................................................23
18
       *Pinto v. Massanari,*
19         249 F.3d 840 (9th Cir. 2001).....................................................................................15
20     *R.I.L-R v. Johnson,*
           80 F. Supp. 3d 164 (D.D.C. 2015) ............................................................................12
21
       *Ramos v. Nielsen,*
22         321 F. Supp. 3d 1083 (N.D. 2018)............................................................................21
23     *Regents of Univ. of California v. U.S. Dep't of Homeland Sec.,*
           908 F.3d 476 (9th Cir. 2018)..............................................................................6, 21
24     *Reid v. Donelan,*
           22 F. Supp. 3d 84 (D. Mass 2014) ...........................................................................12
25
       *Reiter v. Cooper,*
26         507 U.S. 258 (1993)...................................................................................................7
27     *S.E.C. v. Alpine Sec. Corp.,*
           308 F. Supp. 3d 775 (S.D.N.Y. 2018).......................................................................15
28

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

iii

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THE AMENDED COMPLAINT

# TABLE OF AUTHORITIES
### (continued)

**Page**

*S.E.C. v. Chenery Corp.*,
  318 U.S. 80 (1943)...................................................................................................15

*S.E.C. v. Schooler*,
  No. 3:12-cv-2164-GPC-JMA, 2013 WL 3320364 (S.D. Cal. July 1, 2013).................6

*Safari Aviation v. Garvey*,
  300 F.3d 1144 (9th Cir. 2002).................................................................................15

*Safe Air for Everyone v. EPA*,
  488 F.3d 1088 (9th Cir. 2007).................................................................................16

*Shroyer v. New Cingular Wireless Serv., Inc.*,
  622 F.3d 1035 (9th Cir. 2010).................................................................................18

*Tamburri v. Suntrust Mortg., Inc.*,
  875 F. Supp. 2d 1009 (N.D. Cal. 2012)......................................................................6

*Town of Castle Rock v. Gonzales*,
  545 U.S. 748 (2005).................................................................................................23

*U.S. v. Hovsepian*,
  359 F.3d 1144 (9th Cir. 2004)...........................................................................11, 12

*United States v. Arizona*,
  No. CV-10-1413-PHX-SRB, 2010 WL 11405085 (D. Ariz. Dec. 10, 2010) ................6

*United States v. Smith*,
  389 F.3d 944 (9th Cir. 2004).......................................................................................6

*Walters v. Reno*,
  145 F.3d 1032 (9th Cir. 1998)..................................................................................12

*Weisbuch v. Cnty. of Los Angeles*,
  119 F.3d 778 (9th Cir. 1997)....................................................................................14

*Whitman v. Am. Trucking Ass'ns*,
  531 U.S. 457 (2001)...................................................................................................8

*Wilderness Soc'y v. U.S. Fish & Wildlife Serv.*,
  353 F.3d 1051 (9th Cir. 2003)..................................................................................15

*Williams v. Gerber Prod. Co.*,
  552 F.3d 934 (9th Cir. 2008)....................................................................................13

*Winter v. Natural Res. Def. Council, Inc.*,
  555 U.S. 7 (2008)........................................................................................................5

*Xia Fan Huang v. Holder*,
  591 F.3d 124 (2d Cir. 2010).....................................................................................15

## STATUTES

5 U.S.C. § 553.................................................................................................................22

1

2

### TABLE OF AUTHORITIES
**(continued)**

**Page**

3    5 U.S.C. § 553(b)(A)...............................................................................................22

4    8 U.S.C. § 101(a)(27)(J)(i).........................................................................................5

5    8 U.S.C. § 101(a)(27)(J)(iii).......................................................................................4

     8 U.S.C. § 1101(a)(27)(J)................................................................................. passim

6    8 U.S.C. § 1101(a)(27)(J)(i)......................................................................................17

7    8 U.S.C. § 1101(b)(1)...............................................................................................24

8    8 U.S.C. § 1232(d)(6)...............................................................................................24

9    8 U.S.C. § 1252(f).............................................................................................1, 11, 12, 13

10   8 U.S.C. § 1252(g)........................................................................................... passim

     8 U.S.C. § 1255(a)...................................................................................................25

11   42 U.S.C. § 5101......................................................................................................18

12   Ala. Code § 16-64-1....................................................................................................4

13   Ala. Code § 26-2A-70..................................................................................................4

14   Cal. Code Civ. Proc. § 155(a)(1)...............................................................................18

     Cal. Code Civ. Proc. § 155(a)-(b)................................................................................4

15   Cal. Prob. Code § 1510(a).........................................................................................18

16   Cal. Prob. Code § 1510(a)-(d)....................................................................................18

17   Cal. Prob. Code § 1510.1..........................................................................................19

18   Cal. Prob. Code § 1510.1(a).............................................................................4, 14, 21

19   Cal. Prob. Code § 1510.1(a)-(d)..................................................................................3

     Cal. Prob. Code § 1510.1(d)......................................................................................11

20   Cal. Prob. Code § 1514(a)...........................................................................................3

21   Cal. Prob. Code § 2351(a)................................................................................3, 4, 18

22   Cal. Welf. & Inst. Code § 303(a).................................................................................4

23   Md. Code, Fam. Law § 1-201.......................................................................................4

24   Miss. Code Ann. § 1-3-27............................................................................................4

     Miss. Code Ann. § 93-13-13.........................................................................................4

25   N.Y. Fam. Ct. Act § 661(a)..........................................................................................4

26   Pub. L. No. 110-35, § 201(a) (2008)............................................................................4

27   Pub. L. No. 110-457, § 235, 122 Stat. 5080 (2008)....................................................17

28   Pub. L. No. 110-457, § 235(d)(i) (2008)......................................................................5

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THE AMENDED COMPLAINT

1

2

## TABLE OF AUTHORITIES
### (continued)

**Page**

3

Pub. L. No. 110-457 § 235(d), 122 Stat. 5044 (2008) ....................................................15

4

## OTHER AUTHORITIES

5

8 C.F.R. § 204.11 ................................................................................................5, 19, 24

6

8 C.F.R. § 204.11(1) .............................................................................................................2

8 C.F.R. § 204.11(a) ...................................................................................................17, 18

7

8 C.F.R. § 204.11(c) ..........................................................................................................18

8

5B C. Wright & A. Miller, Federal Practice and Procedure § 1356 (3d ed. 2004)...........18

9

6 USCIS PM 1.2(D)(5) ......................................................................................................24

10

6 USCIS PM J.1 .................................................................................................................24

6 USCIS PM J.2(B) ..............................................................................................................2

11

6 USCIS PM J.2(D)(5) ..........................................................................................2, 3, 4, 25

12

6 USCIS PM J.3(A)(1) ..........................................................................................................2

13

Cal. Assemb. Bill No. 900 § (a)(6) ..........................................................................3, 4, 19

14

Heeson, Ted, *Morning Shift: Travel ban at SCOTUS*, POLITICO (April 25, 2018),
  *available at* https://www.politico.com/newsletters/morning-
  shift/2018/04/25/travel-ban-at-scotus-182935 .........................................................10

15

16

Judicial Council of Cal., New Rules and Forms Implementing AB 900 in
  Guardianship Proceedings (2016) at 3 ........................................................................4

17

## RULES

18

Fed. R. Civ. P. 12(b)(1).......................................................................................................8

19

Fed. R. Civ. P. 12(b)(6)........................................................................................6, 13, 20

Fed. R. Civ. P. 15(a)..........................................................................................................25

20

21

22

23

24

25

26

27

28

I. **INTRODUCTION.**

The Government's Motion to Dismiss [Dkt. No. 91] ("Motion") should be denied because Plaintiffs' allegations, taken as true, state a claim that the Government's imposition of a new and unlawful requirement on SIJS petitioners violates the APA and the Due Process Clause.  Through its new requirement, the Government strips otherwise eligible petitioners, who have already suffered abuse, abandonment, or neglect, of their right to a vital form of humanitarian relief and the many benefits which follow.

As a threshold matter, the Motion is procedurally deficient and must be denied because it improperly seeks to relitigate issues this Court has previously decided in its Order [Dkt. No. 49] ("PI Order") granting Plaintiffs' Motion for Preliminary Injunction [Dkt. No. 6] ("PI Motion").  Having already established a "likelihood of success" in their PI Motion, Plaintiffs easily satisfy the "plausibility" standard to survive a motion to dismiss.

The Motion also fails on the merits.  First, this Court has subject matter jurisdiction to hear the case and to impose the requested injunctive relief.  As this Court has already held, USCIS's implementation of the new SIJS requirement *is* a final agency action, because it is the consummation of USCIS's decision-making process.  This change was not mere clarification of existing law.  The Government does not deny that prior to the new policy, no California SIJS petition was denied on the basis that the California Probate Court lacked authority to make the required SIJ Findings for applicants between the ages of 18 and 20, and after the policy, no such California SIJS petition has been approved.  Finally, 8 U.S.C. §§ 1252(f) and (g) do not bar injunctive relief in cases where, as here, Plaintiffs challenge whether the Government's new requirement complies with federal law.

Second, Plaintiffs have sufficiently alleged their APA and Due Process claims, and the Government's improper attempts to delve into the merits of the claims must be disregarded.  As is pertinent to survive a motion to dismiss, Plaintiffs' APA claim sufficiently alleges that Plaintiffs are challenging final agency action, that the Government's change in interpretation of federal law is arbitrary and capricious, and that the Government failed to follow required notice-and-comment procedures.  The Government relies on unsupported extensions of *superseded* federal regulations concerning foster care and *irrelevant* definitions from other statutes involving children.  The new

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THE AMENDED COMPLAINT

1  SIJS requirement is contrary to the plain text of the statute and clearly-stated legislative intent, and

2  the Government has provided no reasoned explanation for the change.  Similarly, Plaintiffs' Due

3  Process claim is sufficiently alleged.  Plaintiffs allege that they have a right to SIJS status and its

4  attendant benefits because they are eligible under the criteria set by Congress.  Applying the new

5  requirement to children who previously applied for SIJS—in reasonable reliance on the plain text of

6  the statute and regulations, as well as decades of USCIS's prior practice of approving applications

7  like theirs—and then using the information in those applications to subject them to removal

8  proceedings is the ultimate unconscionable bait-and-switch in violation of Due Process.

9          Therefore, the Government's Motion should be denied it its entirety.

10  **II.     THE GOVERNMENT MISSTATES THE APPLICABLE LEGAL FRAMEWORK.**

11         The Government spends much of its Motion setting forth its interpretation of the applicable

12  legal framework for SIJS.  Mot. 1:24-8:22.  However, the Government misconstrues the eligibility

13  requirements for SIJS, fails to defer to the state court's authority, mischaracterizes California's

14  guardianship framework, ignores the amendments to the federal statute made by the Trafficking

15  Victims Protection Reauthorization Act of 2008 ("TVPRA"), relies on outdated regulations, and

16  unlawfully imposes nonexistent eligibility requirements on SIJS petitioners.

17         **A.     Requirements for SIJS Eligibility.**

18         To be eligible for SIJS, the petitioner must (1) be under 21 years of age; (2) be unmarried;

19  and (3) be the subject of a juvenile court order with specific findings that reunification with at least

20  one parent is not viable due to abuse, abandonment, or neglect and that it is not in the petitioner's

21  best interest to return to his or her home country.  8 U.S.C. § 1101(a)(27)(J) ("SIJS Statute"); 6

22  USCIS Policy Manual ("PM") J.2(B).  DHS must also consent to the grant of SIJS.  *Id.*  A "juvenile

23  court" is "a court located in the United States having jurisdiction under State law to make judicial

24  determinations about the custody and care of juveniles."  8 C.F.R. § 204.11(1); 6 USCIS PM

25  J.3(A)(1).  The consent requirement does not confer discretion to USCIS; instead, "USCIS generally

26  consents to the grant of SIJ classification when the order includes or is supplemented by a reasonable

27  factual basis for all of the required findings."  6 USCIS PM J.2(D)(5).

28

**B.**    **The Authority to Make SIJ Findings Lies With the State Court, and USCIS Must Defer to the State Court's Expertise in Child Welfare Matters.**

The Government misstates the critical role Congress reserved for state courts in making SIJ Findings and impermissibly questions the basis and authority for the state court's finding.  The SIJS Statute explicitly gives authority to the state court—not USCIS—to make SIJ Findings.  8 U.S.C. § 1101(a)(27)(J).  USCIS must defer to the state court's expertise in child welfare matters and to the state court's interpretations of its own laws.  *See Perez-Olano v. Gonzalez*, 248 F.R.D. 248, 265 (C.D. Cal. 2008).  "The SIJ statute affirms the *institutional competence of state courts* as the appropriate forum for child welfare determinations regarding abuse, neglect, or abandonment, and a child's best interests."  *Id.* (emphasis added).  In drafting the SIJS Statute, consistent with the state courts' general jurisdiction over child welfare matters, "Congress appropriately reserved for state courts the power to make child welfare decisions, an area of traditional state concern and expertise." *Id*.  Given Congress's intent and the clear language of the SIJS Statute, USCIS must defer to the state court's SIJ Findings.  6 USCIS PM J.2(D)(5).

**C.**    **California Law Grants the Probate Court Authority to Make Legal Determinations Regarding the Custody and Care of Juveniles Aged 18 to 20 and to Make SIJ Findings on Their Behalf.**

The California Probate Code grants the probate division of the superior court the authority to make determinations about the custody and care of children through guardianship proceedings.  Cal. Prob. Code §§ 1514(a) (the court may appoint a guardian of a person where it appears necessary and convenient), 2351(a) (the guardian "has the care, custody, and control of, and has the charge of the education of, the ward"); *B.F. v. Super. Ct.*, 207 Cal. App. 4th 621, 628 (2012) ("the [California] Probate Code authorizes the superior court to make judicial determinations about the care and custody of juveniles" by appointing a guardian).

The Probate Court's authority to place a child in the custody of a guardian is not limited to children under the age of 18.  Rather, California law allows the appointment of guardians for children under the age of 21 and specifically defines the terms "minor," "child," and "ward" to include certain juveniles aged 18 to 20.  Cal. Prob. Code § 1510.1(a)-(d).  The California Legislature found this custodial relationship appropriate for many immigrant children aged 18 to 20 because they

1    are often "particularly vulnerable" and have "a need for a *custodial relationship* with a responsible

2    adult" and these "*custodial arrangements* promote permanency and the long-term well-being of

3    immigrant children present in the United States who have experienced abuse, neglect, or

4    abandonment."  Cal. Assemb. Bill No. 900 (2015-2016 Reg. Sess.) ("AB 900") § (a)(6) (emphasis

5    added).  Although guardianships for 18-to-20-year-old children must be made "in connection" with a

6    request for SIJ Findings and require the child's consent to the appointment of the guardian, they are

7    not limited to immigration purposes; instead, guardians of children between the ages of 18 and 20

8    have the same broad custodial authority as guardians for children under the age of 18.  *See* Judicial

9    Council of Cal., New Rules and Forms Implementing AB 900 in Guardianship Proceedings (Judicial

10   Council Memo) (2016) at 3.  An 18-year-old placed into the custody of a guardian in California is

11   also subject to the "care, custody, and control" of the guardian in the same way as a child under the

12   age of 18.  *See id.;* Cal. Prob. Code § 2351(a).[1]  Similarly, California law clearly defines the Probate

13   Court as a juvenile court and gives it explicit authority to make SIJ Findings, including finding that

14   reunification is not viable due to abuse, abandonment, or neglect.  Cal. Code Civ. Proc. § 155(a)-(b).[2]

15       A guardianship granted under California Probate Code section 1510.1(a) also conforms to

16   USCIS's interpretation of the consent function in the SIJS Statute because it is granted to fulfill the

17   child's need for a custodial relationship and not primarily to obtain an immigrant benefit.  *See* 8

---

[1] California's expansion of custodial relationships to certain children aged 18 to 20 is consistent with state and federal priorities recognizing the vulnerability of many youth and their need for ongoing support.  *See, e.g.,* Cal. Welf. & Inst. Code § 303(a) (extending access to benefits for foster youth until they turn 21); Fostering Connections to Success and Increasing Adoption Act, Pub. L. No. 110-35, § 201(a) (2008) (extending federal foster care services to youth from ages 18 to 21).  It is also congruent with several other states that permit guardianships for youth aged 18 or older.  *See, e.g.,* Ala. Code §§ 16-64-1, 26-2A-70; Miss. Code Ann. §§ 1-3-27, 93-13-13; Md. Code, Fam. Law § 1-201; and N.Y. Fam. Ct. Act § 661(a).

[2] The Government incorrectly suggests that definitions of abuse, abandonment, and neglect in California are limited to children under the age of 18, and thus SIJ Findings cannot be made on behalf of children 18-20 who receive guardianships under Probate Code § 1510.1(a).  Mot. 29:10-17.  However, the Government elsewhere acknowledges that SIJ Findings may be made for foster youth aged 18 to 20, Mot. 5:24-26, who would be subject to the same definitions of youth abandonment and neglect.  Moreover, the Government ignores the California Legislature's clear directive in creating Probate Code § 1510.1(a)—to apply the existing guardianship frameworks to 18-to-20-year-olds who are also seeking SIJ Findings and to explicitly define them as children.  AB 900 § (a)(6) (describing the intent of the Legislature to create a "custodial relationship" for youth aged 18 to 20); Judicial Council Memo at 3.

U.S.C. § 101(a)(27)(J)(iii); 6 USCIS PM J.2(D)(5).[3]

### D.   The Government Relies on Superseded Law Regarding Eligibility for Long-Term Foster Care.

The Government once again improperly justifies its position that a juvenile court must have the legal authority to remove a child from his or her parents' custody, by citing the definition of eligibility for long-term foster care that Congress explicitly removed from the SIJS eligibility criteria.  Mot. 1:14-16, 2:28-3:11, 3:24-4:2 (citing 8 U.S.C. § 101(a)(27)(J)(i) and 8 C.F.R. § 204.11 (definition of eligibility for long-term foster care).  However, neither provision contains this requirement.  The regulation's requirement that a youth be eligible for long-term foster care is no longer relevant to SIJS eligibility because the TVPRA eliminated this requirement.  Pub. L. No. 110-457, § 235(d)(i) (2008).  And the SIJS Statute itself does not suggest that the state court finding that reunification is not viable is a legal conclusion requiring the state court to have the power to actually reunify children with their parents.  8 U.S.C. § 101(a)(27)(J)(i).  The SIJS Statute requires that in order for a youth to be eligible for SIJS, "reunification with 1 or both of the immigrant's parents is not viable due to abuse, neglect, abandonment, or a similar basis found under State law."  *Id.*

## III.   ARGUMENT

### A.   The Motion Is Procedurally Deficient Because It Attempts to Re-litigate Issues This Court Already Decided in Its PI Order.

The Motion should be denied because it attempts to re-litigate issues as to its APA claim that this Court already decided in its PI Order.[4]  The standard on a motion for preliminary injunction (likelihood of success) is more stringent than the standard for determining whether plaintiff has stated a claim (plausibility).  *Compare Winter v. Natural Res. Def. Council, Inc.,* 555 U.S. 7, 20 (2008) ("A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the

---

[3] The consent function is limited to ensuring the SIJS classification "is bona fide, which means that the juvenile court order was sought to obtain relief from abuse, neglect, abandonment, or a similar basis under state law, and not primarily or solely to obtain an immigration benefit."  6 USCIS PM J.2(D)(5).

[4] Although the Government has filed an appeal of the PI Order [Dkt. No. 80], the preliminary injunction is not automatically stayed (*see* Dkt. No. 81).  Moreover, the parties agree that the appeal does not divest this Court of jurisdiction over the case.  *See* Dkt. No. 90.  Therefore, the PI Order remains the active law of the case in full force.

merits" (citations omitted)), *with Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) ("[F]or a complaint to survive a motion to dismiss[,] the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief."). Given the more stringent requirement to demonstrate a likelihood of success on the merits for a preliminary injunction, the Court should not reexamine on a motion to dismiss those "claims with regard to which the Court previously found that Plaintiff[s] had demonstrated a likelihood of success." *United States v. Arizona*, No. CV-10-1413-PHX-SRB, 2010 WL 11405085, at *6 (D. Ariz. Dec. 10, 2010) (finding that if plaintiff has passed muster under the likelihood-of-success standard, it has also stated a claim sufficient to survive a motion to dismiss under Rule 12(b)(6)). *See also Regents of Univ. of California v. U.S. Dep't of Homeland Sec.*, 908 F.3d 476, 512 (9th Cir. 2018) (upholding preliminary injunction and affirming the district court's denial of a motion to dismiss plaintiffs' claim that the Deferred Action for Childhood Arrivals ("DACA") rescission was arbitrary and capricious under the APA for the same reasons); *S.E.C. v. Schooler*, No. 3:12-cv-2164-GPC-JMA, 2013 WL 3320364, at *4 (S.D. Cal. July 1, 2013) (denying motion to dismiss following a grant of preliminary injunction where plaintiff "easily met the less stringent burden of Rule 12(b)(6) having met its burden on a motion for preliminary injunction").

Moreover, the "law of the case" doctrine precludes a court from "reexamining an issue previously decided by the same court . . . in the same case." *United States v. Smith*, 389 F.3d 944, 948 (9th Cir. 2004). *See also Tamburri v. Suntrust Mortg., Inc.*, 875 F. Supp. 2d 1009, 1021 (N.D. Cal. 2012) (finding that "Defendants' motion to dismiss is foreclosed by two of [the] Court's prior rulings," including an "order granting a preliminary injunction"). Therefore, this Court can and should adopt and incorporate the analysis it set forth in the PI Order. *See Regents of Univ. of California*, 908 F.3d at 512 (adopting and incorporating by reference the analysis set forth to uphold the district court's grant of preliminary injunction on the APA claims to affirm the district court's denial of a motion to dismiss the APA claims). As detailed below, this Court has already considered and rejected the exact arguments advanced in the Motion regarding Plaintiffs' APA claim.

Here, the Motion first asserts that this Court lacks subject matter jurisdiction on the basis that the challenged agency actions were not final because (1) three of the named Plaintiffs have not yet

1   received SIJS denials and (2) USCIS's clarification of existing law does not constitute a reviewable

2   final agency action.   Mot. 9:20-14:21.   The Government initially made these   arguments in its

3   Opposition to Plaintiffs' Motion for Preliminary Injunction.  *See* Dkt. No. 34 ("PI Opp'n")  at 13:3-

4   18.  Rejecting that contention, this Court explained:

5            Plaintiffs' lawsuit is not directly concerned with USCIS's specific denials of their
         SIJ petitions.  Rather, the instant action seeks to curb USCIS's adoption of a
6            dubious legal theory to justify a blanket policy of denying SIJ petitions for
         immigrant juveniles between the ages of 18–20.  Specifically, Plaintiffs challenge
7            USCIS's requirement that SIJ findings must be made by a state juvenile court with
         the power to actually reunify petitioners with their biological parents.  Although
8            USCIS's adoption of this legal theory may result in denials of SIJ status for specific
         SIJ petitions, *it is USCIS's adoption of that theory, not the specific SIJ*
9            *adjudications that may follow, that is at issue in this case.*

10  PI Order 21:8-23 (emphasis added).  This Court went on to explain that pursuant to the *Bennett* test,

11  USCIS's new policy is a reviewable final agency action because (1) the new policy was the

12  "consummation of the agency's decision-making process" insofar as the agency completed its review

13  and revised its Consolidated Handbook of Adjudication Procedures ("CHAP") to implement the new

14  policies and (2) "legal consequences will flow" from the new policy because it will result in denials

15  of SIJ status.  PI Order 21:24-23:23.  In particular, this Court rejected the Government's reliance on

16  *Reiter v. Cooper*, 507 U.S. 258, 269 (1993), on which the Government again relies (*see* Mot. 11:1-5),

17  finding that case inapposite because Plaintiffs here "are not challenging USCIS's *application* of their

18  new policy" but rather "are challenging the policy itself," and are asserting that "USCIS's adoption

19  of the OCC's new interpretation of the SIJ statute constitutes final agency action that is appropriate

20  for judicial review."  PI Order 23:24-24:7 (emphasis added).

21            Second, the Motion focuses on the denial of J.L.'s specific SIJS petition (Mot. 14:22-16:25),

22  repeating the argument from its PI Opp'n that the REAL ID Act of 2005, 8 U.S.C. § 1252(g), bars

23  judicial review because its denial of SIJS is an enforcement action relating to J.L.'s removal.  *See* PI

24  Opp'n 20:9-28.  But as this Court has already established, the present dispute is about "USCIS's

25  adoption of that theory, not the specific SIJ adjudications that may follow."  PI Order 21:22-23.

26            Third, the Government asserts that its sudden departure from prior practice was not "arbitrary

27  and capricious" because its review of J.L.'s petition is entitled to deference.  Mot. 17:8-23:5.  This

28  argument ignores this Court's prior rulings that the new requirement is "inconsistent with the plain

text of the SIJ statute" and "[a]t a minimum, Plaintiffs have raised serious questions going to the merits of their claim," and that the Government was not exempt from having to provide a reasoned explanation for the change.  PI Order 13:22-14:1 and 17:12-20.

Finally, the Government contends that USCIS's actions constitute interpretation of existing law, as opposed to implementation of a new policy, and therefore do not require notice-and-comment rulemaking.  Mot. 23:6-24:1.  Again, this repeats argument the Government made in the PI Opp'n 15:2-16:18.  And again, this Court rejected this argument, determining that the Government's position effectively reduces the inquiry to whether the petition is from California (in which case it will be denied), thus making the new policy a mandatory substantive rule that is not discretionary and therefore is subject to the APA's notice-and-rulemaking requirement.  PI Order 17:20-20:10.

Because nearly all the issues raised in the Motion have already been raised and properly rejected in the Court's PI Order, the Motion should be denied.

**B.    The FRCP 12(b)(1) Motion Should Be Denied Because This Court Has Subject Matter Jurisdiction.[5]**

The Government contends that this Court lacks subject matter jurisdiction because (1) there is no final agency action to review and (2) the REAL ID Act of 2005 prohibits enjoining the government from initiating removal proceedings.  Mot. 9:19-16:25.  Both arguments lack merit.

**1.    Plaintiffs' Complaint Challenges Final Agency Action.**

Plaintiffs' complaint challenges the Government's "final agency action," specifically its unlawful imposition of new requirements to the SIJS Statute.  First Amended Complaint ("FAC") ¶¶ 64, 65, 91, 99, 102, 104, 117.  An agency action is final if it "marks the 'consummation' of the agency's decision-making process" as opposed to being merely tentative or interlocutory in nature and if it is "one by which 'rights or obligations have been determined,' or from which 'legal consequences will flow.'"  *Bennett v. Spear*, 520 U.S. 154, 177-78 (1997) (citations omitted).  It must be the agency's "last word on the matter."  *Whitman v. Am. Trucking Ass'ns*, 531 U.S. 457, 478 (2001).  The central inquiry is "whether the agency has completed its decision-making process, and

---

[5] Although the Motion should be denied because Plaintiffs have already met their burden, having successfully moved for a preliminary injunction, Plaintiffs will address each of the arguments.

1  whether the result of that process is one that will directly affect the parties." *Indus. Customers of*

2  *Nw. Utils v. Bonneville Power Admin.*, 408 F.3d 638, 646 (9th Cir. 2005) (quoting *Franklin v.*

3  *Massachusetts*, 505 U.S. 788, 797 (1992)).  Factors to be considered include "whether the [action]

4  amounts to a definitive statement of the agency's position, whether the [action] has a direct and

5  immediate effect on the day-to-day operations of the party seeking review, and whether immediate

6  compliance [with the terms] is expected" to provide "an indicia of finality." *Id.* (quoting *Cal. Dep't*

7  *of Water Res. v. Fed. Energy Regulatory Comm'n*, 341 F.3d 906, 909 (9th Cir. 2003)).

8         The final agency action being challenged can be the agency's legal interpretation rather than

9  the specific decision made as a result of that interpretation.  *See Navajo Nation v. United States*

10 *Dep't of Interior*, 819 F.3d 1084 (9th Cir. 2016).  In *Navajo Nation*, the National Park Service had

11 concluded that federal law applied to Native American remains and archaeological items, and began

12 to inventory and dispense with those items accordingly.  *Id.*  The Ninth Circuit noted that the

13 underlying dispute concerned not whether specific items belonged to the plaintiffs, but whether the

14 Park Service was correct in applying federal law to all the items generally.  *Id.* at 1091-92.

15        Throughout its Motion, the Government restricts its analysis to the named Plaintiffs' specific

16 SIJS denials (or lack thereof).  This completely misses the crux of Plaintiffs' lawsuit, which does not

17 concern the final adjudication of SIJS petitions, but rather "seeks to curb USCIS's adoption of a

18 dubious legal theory to justify a blanket policy of denying SIJ petitions for immigrant juveniles

19 between the ages of 18-20" whose petitions rely on findings from the California Probate Court.  PI

20 Order 21:15-18.  *See also* FAC ¶¶ 1-12, 45-61, 70-72, 75.  Under the *Bennett* test, USCIS's new

21 policy is a reviewable final agency action because the new policy was the "consummation of the

22 agency's decision-making process" and the "legal consequences" that "will flow" from the new

23 policy is categorical denial of SIJS.  *See* PI Order 21:25-26, 23:14-19.  Similar to the challenge in

24 *Navajo Nation*, the dispute here concerns USCIS's policy change, not individual denials.  In the

25 same way the National Park Service's legal determination that federal law applied to the Native

26 American remains and objects marked the consummation of the agency's decision-making process

27 as to that issue, so too does USCIS's implementation of its new policy mark the consummation of

28 the agency's decision-making process because USCIS issued new guidance on adjudicating SIJS

1   petitions and began denying SIJS based on that guidance. *See* PI Order 22:13-15, 20-22.

2       Moreover, "legal consequences will flow" from USCIS's adoption of the Office of Chief

3   Counsel's new legal theory, because the new policy has a "virtually determinative effect" causing

4   categorical denials of SIJS. PI Order 23:14-19. Indeed, prior to implementing its new requirement,

5   USCIS had not denied a single California SIJS petition on the basis that the juvenile court lacked

6   authority to reunify a child with his or her parents. FAC ¶ 45. Now, USCIS's new policy has "a

7   virtually determinative effect" on 18-to-20-year-old SIJS petitioners whose petitions rely on

8   California Probate Court SIJ Findings.

9               **2.    USCIS's New Policy Is Not Mere "Clarification" of Existing Law**

10      The Government's assertion that USCIS's new policy is mere "clarification of existing law"

11  is undercut by its own statements to the contrary, which delineate USCIS's clear change in

12  adjudicative policy. *See* FAC ¶ 47; Ted Heeson, *Morning Shift: Travel ban at SCOTUS*, POLITICO

13  (April 25, 2018), *available at* https://www.politico.com/newsletters/morning-shift/2018/04/25/travel-

14  ban-at-scotus-182935; Dkt. No. 7-6 at 138; Dkt. No. 34-1 ("Rosenstock Decl."); Dkt. No. 34-9; Dkt.

15  No. 34-10 ("Volume 6 of the Consolidated Handbook of Adjudication Procedures" or "CHAP").

16  First, in February 2018, USCIS's Office of Chief Counsel "issued guidance which specifically

17  instructed that '[t]he evidence submitted must establish that the court had the power and authority to

18  make required determination[s] about the care and custody of the petitioner, which includes parental

19  reunification as a juvenile.'" Rosenstock Decl. ¶ 11. Next, "[f]ollowing [this] guidance, USCIS

20  revised its Consolidated Handbook of Adjudications Procedures (CHAP), a companion resource to

21  the Policy Manual providing USCIS employees with procedures for implementing those policies."

22  *Id.* And finally, the Government noted, "prior to centralization of SIJ adjudications at the NBC,

23  USCIS's California Field Offices approved certain Form I-360 petitions for SIJ classification in

24  which a state court appointed a guardian for petitioners between the ages of 18 and 21." *Id.* at ¶ 12.

25      This Court already found that "USCIS's interpretation of the SIJ statute to require state courts

26  to have the power to compel reunification is 'undeniably a change in agency interpretation'" and

27  "represents a sharp departure from prior practice." PI Order 16:15-18. This Court specifically noted

28  that prior to February 2018, USCIS consistently approved SIJS petitions based on supporting

1    findings from California courts for individuals aged 18-20, but now "USCIS consistently denies SIJ

2    petitions with similar findings even though no relevant federal and state laws have changed." *Id.* at

3    16:18-21.  Nothing in the Motion undermines the Court's findings.

4         Equally unavailing is the assertion that no policy previously existed with respect to California

5    guardianship orders issued to individuals aged 18-20, and all previously approved SIJS petitions

6    were "erroneous adjudications" as a result of the lack of prior policy.  Mot. 11:20-25.  As this Court

7    already noted, "[i]ssuing guidance where none had existed for nearly a decade constitutes a change

8    that requires a reasoned explanation, particularly when that guidance has resulted in drastically

9    different outcomes in similar cases."  PI Order 16:24-27.

10        Furthermore, the Government's *continued* reference to out-of-state SIJS adjudications made

11   prior to 2018 where USCIS denied petitions on the basis that the state court had no jurisdiction to

12   make the SIJ Findings is *still* inapposite.  Mot. 11:28-12:18.  The Government first argued in its PI

13   Opp'n that SIJS denials from Maryland, Iowa, and Missouri somehow affected the denial of

14   California-based SIJS petitioners.  PI Opp'n 14 n.3.  But none of those cases concern California law,

15   California courts, or California petitioners.  Nor do they address the legal theory at issue in this case:

16   whether a state juvenile court must have the power to actually reunify a petitioner with his or her

17   biological parents to make SIJ Findings.  As this Court has already found, under California law,

18   "children" are defined for purposes of the SIJS Statute as "an unmarried individual who is younger

19   than 21 years of age and who . . . consents to the appointment of a guardian or extension of a

20   guardianship after he or she attains 18 years of age."  PI Order 9:3-7 (quoting Cal. Prob. Code

21   § 1510.1(d)).

22                           **3.    Plaintiffs Are Not Barred From Seeking the Requested Injunction**

23        The Government's arguments that injunctive relief is barred fare no better.  The Government

24   contends that Plaintiffs are jurisdictionally barred from seeking review pursuant to the REAL ID Act

25   of 2005, 8 U.S.C. § 1252(g).  *See* Mot. 14:22-15:23.  The Government also argues that 8 U.S.C.

26   § 1252(f) prohibits courts from granting classwide injunctive relief arising from the provisions under

27   subsection IV, "including conducting and initiating removal proceedings."  Mot. 15:24-28.  The

28   Government is wrong.

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

11

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THE AMENDED COMPLAINT

1    Section 1252(g) does not foreclose review of the Attorney General's overarching legal

2  authority to exercise his discretion. *U.S. v. Hovsepian,* 359 F.3d 1144, 1155-56 (9th Cir. 2004).  In

3  Hovsepian, the Ninth Circuit held that 1252(g) did not bar the district court from enjoining Plaintiffs'

4  removal, reasoning that the court "may consider a purely legal question that does not challenge the

5  Attorney General's discretionary authority, even if the answer to that legal question—a description

6  of the relevant law—forms the backdrop against which the Attorney General later will exercise

7  discretionary authority." *Id.*  The same is true here. Plaintiffs do not challenge the Attorney

8  General's ability to exercise his discretionary immigration enforcement authority in any particular

9  case; rather, they challenge an unlawful policy that renders them vulnerable to that discretion.

10    Moreover, section 1252(g) "does not prevent the district court from exercising jurisdiction

11  over the plaintiffs' due process claims" because "[t]hose claims do not arise from a 'decision or

12  action by the Attorney General to commence proceedings, adjudicate cases, or execute removal

13  orders against any alien,' but instead constitute '*general collateral challenges to unconstitutional*

14  *practices and policies used by the agency.*'"  *Walters v. Reno*, 145 F.3d 1032, 1052 (9th Cir. 1998)

15  (citing *McNary v. Haitian Refugee Ctr., Inc.*, 498 U.S. 479, 492 (1991)) (emphasis added).  In

16  *Walters*, plaintiffs challenged the Attorney General's unconstitutional agency practice of failing to

17  provide adequate notices of deportation prior to removal proceedings.  Because the Attorney

18  General's discretion during removal proceedings was not at issue, section 1252(g) did not bar

19  enjoining the removal of class members who did not receive adequate notices.

20    Similar to the plaintiffs in *Hovsepian* and *Walters* who challenged the overarching legality of

21  agency conduct generally, as opposed to specific, case-based agency discretion, Plaintiffs here

22  challenge the legality of USCIS's overarching new blanket SIJS requirement.  Therefore, section

23  1252(g) does not deprive this Court of subject matter jurisdiction to issue the requested injunction.

24    Nor does section 1252(f) create such a bar.  According to the Government, section 1252(f)

25  prohibits courts from granting classwide injunctive relief *arising from removal proceedings*.  But

26  section 1252(f) does not limit a court's ability to provide injunctive relief when the injunctive relief

27  sought would "merely enjoin conduct that allegedly violates [the immigration statute]."  *R.I.L-R v.*

28  *Johnson*, 80 F. Supp. 3d 164, 184 (D.D.C. 2015); *see also Reid v. Donelan*, 22 F. Supp. 3d 84, 90

(D. Mass 2014) ("an injunction 'will not prevent the law from operating in any way, but instead would simply force the government to *comply* with the statute." "[S]ection 1252(f) only applies when a plaintiff challenges the legality of immigration laws and not, as here, when a plaintiff seeks to enjoin conduct that violates the immigration laws." *Grace v. Whitaker* --- F. Supp. 3d ---, No. 18-cv-01853 (EGS), 2018 WL 6628081 (D.D.C. 2018) (holding that section 1252(f) does not bar injunctive relief where plaintiffs alleged the policies related to expedited removal are in violation of the Immigration and Nationality Act (INA) and APA).

By its plain language, section 1252(f) does not apply here.  Plaintiffs do not seek injunctive relief arising from removal proceedings at all.  Rather, Plaintiffs challenge USCIS's new policy of effectively categorically denying SIJS petitions for applicants aged 18-20 whose petitions rely on California Probate Court SIJ Findings.  While the eventual harm that will result from this policy is, in many cases, removal proceedings, Plaintiffs do not challenge in this litigation any aspect of *removal proceedings* at all.  The Prayer for Relief in Plaintiffs' FAC is in accord.  Although the Government truncated a quote to make it appear as though Plaintiffs are seeking to enjoin the Government from "initiating removal proceedings against or removing" them, in fact Plaintiffs seek to enjoin the Government from (1) denying SIJS petitions on the ground that a California Probate Court does not have jurisdiction or authority to "reunify" an 18-to-20-year-old with his or her parents and (2) initiating removal proceedings against any SIJS petitioner who was improperly denied SIJS relief *on the basis of that illegal policy*.

Thus, Plaintiffs challenge USCIS's new policy and the dubious legal theory that underlies it, seek to make USCIS comply with the SIJS Statute, and seek to enjoin conduct that violates it.  Plaintiffs do not seek to prevent any legal implementation of the SIJS Statute.  Therefore, neither section 1252(f) nor section 1252(g) deprives this Court of jurisdiction from granting injunctive relief.

### C.  <u>Plaintiffs' Complaint States Valid Claims on Which Relief Can Be Granted, and the Motion Should Be Denied.</u>

#### 1.  <u>The Motion Exceeds the Permissible Scope of Rule 12(b)(6).</u>

In considering a Rule 12(b)(6) motion to dismiss, courts must accept the allegations of the complaint as true and construe the pleading "in the light most favorable to the plaintiff."  *See*

1  *Williams v. Gerber Prod. Co.*, 552 F.3d 934, 937 (9th Cir. 2008).  The complaint need only contain

2  "a short and plain statement of the claim showing that [the plaintiff] is entitled to relief," *Bell Atl.*

3  *Corp. v. Twombly*, 550 U.S. 544, 555 (2007), and "sufficient factual matter, accepted as true, to

4  'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

5  This plausibility standard "is not akin to a 'probability requirement,'" *id.*, and "weighing [of

6  evidence] is inappropriate . . . at the dismissal stage."  *Weisbuch v. Cnty. of Los Angeles*, 119 F.3d

7  778, 785 (9th Cir. 1997).  For purposes of evaluating whether Plaintiffs' pleading is plausible on its

8  face, it is entirely irrelevant why the Government disagrees on the merits.  The Motion raises

9  arguments which are inappropriate at this stage in the proceedings and procedurally improper.  And

10  in prevailing on their PI Motion, Plaintiffs have already satisfied the lower "plausibility" standard.

11  ### 2.    Plaintiffs State a Claim Under the APA.

12  In the FAC, Plaintiffs adequately allege the Government acted outside of its discretion and

13  contrary to federal law and congressional intent in imposing a new requirement for SIJS eligibility.

14  FAC ¶¶ 1, 3, 5, 9, 20, 21, 37, 45-61.  As discussed above, this Court already held that "at a

15  minimum, Plaintiffs have raised serious questions going to the merits of their claim that USCIS's

16  new policy is unreasonable" (PI Order 13:23-14:1) and found no support in either the SIJS Statute or

17  Regulations for USCIS's new requirement that, in order to make SIJ Findings, a court must have the

18  power to actually reunify a child with his or her parents.  *Id.* at 9:22-10:1.  *See also* FAC ¶¶ 34, 37,

19  39, 42, 53-60.  Thus, Plaintiffs adequately plead and raise a plausible inference of an APA violation.

20  Nonetheless, the Government argues that Plaintiffs have failed to state a claim that the

21  Government's action is arbitrary and capricious in violation of the APA, asking the Court to

22  adjudicate the *merits* of this suit by arguing that its actions are not arbitrary or capricious because

23  (1) APA review is highly deferential to agency judgment and (2) the Government's statutory

24  interpretations are reasonable. Mot. 16:26-23:5. The Government is wrong on both counts,

25  misconstrues the SIJS Statute and Probate Code § 1510.1(a), and relies on superseded regulations.

26  Plaintiffs sufficiently allege an APA violation.  FAC ¶¶ 53-58.

27  a.    The Government's Actions Are Not Entitled to Deference.

28  The Government first erroneously argues that the Court's review is "narrow" and deferential

to agency judgment. Mot. 17:9-18:12.  It is not so in this case.  While an agency may receive deference with respect to its own regulations and the statutes it administers, *see Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 844 (1984), deference is not warranted "if the agency has misconceived the law," *S.E.C. v. Chenery Corp.*, 318 U.S. 80, 94 (1943), or where an agency action contradicts congressional intent, *see Wilderness Soc'y v. U.S. Fish & Wildlife Serv.*, 353 F.3d 1051 (9th Cir. 2003).  Here, Plaintiffs allege both.  FAC ¶¶ 3-5, 9-13, 34, 37, 39, 42, 53-61. Thus, the Government is not entitled to deference.[6]

The Government's reliance on *Jang v. Reno*, 113 F.3d 1074, 1077 (9th Cir. 1997), is futile. *See* Mot. 17:25-27.  In that case, the court determined that the statute in question "evidenced no specific congressional intent" on the issue in question.  *Id.* at 1077.  Likewise, the other cases cited in support of government deference assume that the statute in question is ambiguous and that Congress has been silent on the issue.  *See* Mot. 17:9-18:12.[7]  Here, through the passage of the TVPRA, Congress *invalidated* the regulations on which the Government now relies and expanded SIJS beyond children eligible for long-term foster care.  *See* Pub. L. No. 110-457 § 235(d), 122 Stat. 5044 (2008).  Unlike the statutes relevant to the cases cited by the Government, Congress has clearly signaled its intent to allow children beyond the narrow confines of long-term foster care within the child welfare system to access SIJS and to require USCIS to defer to the state court.

---

[6] This Court held the new requirement "is inconsistent with the plain text of the SIJS statute" and Plaintiffs raised "serious questions going to the merits" as to the APA claim.  PI Order 13:22-14:1.

[7] In *S.E.C. v. Alpine Sec. Corp.*, 308 F. Supp. 3d 775 (S.D.N.Y. 2018), the court discusses deference in the context of the two-step *Chevron* analysis.  In *Alpine Sec. Corp.*, the statute in question delegated discretion to the agency.  *Id.* at 789-90.  What is more, all the cases cited in the Motion, including *Alpine Sec. Corp.,* were decided on a motion for summary judgment or on the merits, not on a motion to dismiss.  *See Ariz. Cattle Growers' Ass'n v. U.S. Fish & Wildlife*, 273 F.3d 1229 (9th Cir. 2001) (reviewing district court's decision on motion for summary judgment); *Bechtel v. Admin. Review Bd.*, 710 F.3d 443 (2d Cir. 2013) (adjudicating petition for review of the merits from administrative appellate body); *Motor Vehicles Mfrs. Ass'n, Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29 (1983) (reviewing decision on motion for summary judgment); *Safari Aviation v. Garvey*, 300 F.3d 1144 (9th Cir. 2002) (petition for review); *Camp v. Pitts*, 411 U.S. 138 (1973) (review of decision on motion for summary judgment); *Pinto v. Massanari*, 249 F.3d 840 (9th Cir. 2001) (reviewing merits of administrative law judge decision); *Jang*, 113 F.3d 1074 (reviewing decision on motion for summary judgment); *Xia Fan Huang v. Holder*, 591 F.3d 124 (2d Cir. 2010) (petition for review of merits of asylum claim).

1

               b.   <u>Plaintiffs Have Sufficiently Alleged That the Government's New Requirement Is Arbitrary and Capricious.</u>

2

3         The Government next alleges that Plaintiffs have failed to state a claim because USCIS's

4 "denial of J.L.'s SIJS petition . . . was not arbitrary, capricious, or contrary to law." Mot. 18. The

5 Government once again misconstrues Plaintiffs' APA claim. Plaintiffs allege that the Government's

6 actions are arbitrary and capricious because they (1) violate federal law, (2) are contrary to

7 congressional intent, and (3) lack a reasoned explanation for the new policy and radical shift in

8 adjudication.[8] FAC ¶¶ 53-58. Plaintiffs do not challenge the merits of any single SIJS adjudication

9 in this litigation, but instead allege that the new requirement that state courts issuing SIJ Findings

10 have the authority to compel reunification of a Petitioner with his or her parents violates the APA.

11 This indisputably states a claim under the APA. *See also Safe Air for Everyone v. EPA*, 488 F.3d

12 1088, 1101 (9th Cir. 2007) (an agency action is arbitrary and capricious under the APA if its

13 explanation is based on an erroneous legal premise); *Ctr. for Bio. Diversity v. Nat'l Hwy. Traffic*

14 *Safety Admin.*, 538 F.3d 1172, 1193 (9th Cir. 2008) (action is arbitrary and capricious if the agency

15 has failed to provide a reasoned explanation). Plaintiffs therefore raise *at least* a plausible inference

16 that the Government violated the APA by imposing a new requirement for SIJS eligibility that is

17 contrary to the law, and by changing its course without a reasoned explanation.

18                (1)    <u>The Agency Action Violates Federal Law.</u>

19         The Government argues its actions are not arbitrary and capricious because they are based on

20 "its interpretation and application of the law." Mot. 18:15-16. But the "law" on which the

21 Government relies is an outdated regulation and a misconstruction of the SIJS Statute. As discussed

22 above, the Government is not entitled to deference where its interpretation of the law is contrary to

23 federal law and congressional intent. Indeed, the SIJS Statute, the Regulations and California law all

24 grant probate courts the jurisdiction to make the required SIJ Findings, and none imposes the

25 requirement that a state court must be able to compel reunification with a child's parents.

26         The Government's *only* support for its requirement that a court have the legal authority and

27

28
_____

[8] While the Government's arguments go far beyond what is appropriate on a Motion to Dismiss, Plaintiffs will respond to these contentions accordingly.

1  power to actually reunify a petitioner with his or her parents is an outdated regulation about foster

2  care and a now-moot definition that in order for a petitioner to be eligible for long-term foster care, a

3  court must conclude that "family reunification is no longer a viable option."  Mot. 19:21-26.  The

4  Government reasons that to make this (now unnecessary) determination, a state court must have the

5  power to actually reunify SIJS petitioners with their biological parents.  This reasoning fails for

6  several reasons.

7        First, as this Court has already recognized, although the SIJS regulation states that a finding

8  that "family reunification is no longer a viable option" is a requirement for a petitioner to be found

9  eligible for long-term foster care, this regulation is no longer good law and does not apply here.  *See*

10  Pub. L. No. 110-457, § 235, 122 Stat. 5080 (2008) (TVPRA rescinded the long-term foster care

11  requirements); *see also* 8 C.F.R. § 204.11(a) ("eligible for long-term foster care means that a

12  determination has been made by the juvenile court that family reunification is no longer a viable

13  option").  The TVPRA explicitly removed this reunification requirement.  Pub. L. No. 110-457, §

14  235, 122 Stat. 5080 (2008) (amending 8 U.S.C. § 1101(a)(27)(J) by striking "State and who has been

15  deemed eligible by that court for long-term foster care due to abuse, neglect, or abandonment;" and

16  inserting "State, or an individual or entity appointed by a State or juvenile court located in the United

17  States and whose reunification with 1 or both of the immigrant's parents is not viable due to abuse,

18  neglect, abandonment, or a similar basis found under State Law").  Indeed, the SIJS Statute now

19  allows SIJS Findings to be made by courts outside of the foster care system and requires only that

20  petitioners show that reunification with *one* or both parents is not viable due to abuse, abandonment,

21  or neglect.  8 U.S.C. § 1101(a)(27)(J)(i).  By once again relying on an outdated regulation and

22  ignoring changes to the SIJS Statute, the Government attempts to hold petitioners to an outdated

23  standard.[9]  Thus, the arguments fail as they stand solely on outdated and irrelevant regulations.

24        Moreover, the Government ignores the definition of a state "juvenile court" and improperly

25  asserts a "juvenile court" must have the legal ability to reunify a child with his or her parents.  Mot.

26  1:12-23; 19:12-28.  To the contrary, the federal SIJS Statute requires that the petitioner be "declared

27

28

---

[9] And, as this Court already held, "this requirement is not found in either the SIJ statute or regulation."  PI Order 9:23-25.

dependent on a juvenile court located in the United States."   8 U.S.C. § 1101(a)(27)(J).   And a "juvenile court" is "a court located in the United States having jurisdiction under state law to make judicial determinations about the custody and care of juveniles," defined as unmarried individuals under 21 years of age.   8 C.F.R. § 204.11(a), (c).   Despite the Government's contrary assertions, probate courts in California have "jurisdiction under California law to make judicial determinations regarding the custody and care of children within the meaning of the federal Immigration and Nationality Act."   Cal. Code Civ. Proc. § 155(a)(1); *see also B.F.*, 207 Cal. App. 4th at 628. California law also defines "child" to include juveniles aged 18 to 20 seeking guardianship orders and SIJS Findings.   Cal. Prob. Code § 1510(a)-(d).   Indeed, the California Probate Court has the authority to appoint a legal guardian for a child under 21 years of age, and once appointed, the guardian has the "care, custody, and control" of the ward.   Cal. Prob. Code §§ 1510(a), 2351(a). Thus, the imposition of a new requirement on state courts issuing SIJ Findings is an extra-statutory requirement, which violates the federal SIJS Statute, as alleged in Plaintiffs' FAC.   FAC ¶ 57.[10]

            (2)    <u>The Agency Action is an Impermissible Construction of the SIJS Statute.</u>

Plaintiffs also adequately allege that the Government's action is arbitrary and capricious because it is contrary to congressional intent to expand SIJS eligibility through the TVPRA and to defer to state courts in making child welfare determinations.   FAC ¶ 57.   The Government wrongfully asserts that it is not required to defer to the state court's determinations, ignoring Congress's clear instruction to the contrary.   *See* FAC ¶¶ 59-60.   The Government's arguments are irrelevant to the sufficiency of Plaintiffs' allegations.   *See* 5B C. Wright & A. Miller, Federal Practice and Procedure § 1356, p. 354 (3d ed. 2004) (a motion to dismiss is not a vehicle for

---

[10] The Government raises a series of far-ranging policy arguments suggesting that state courts not only must have the power to actually reunify children with their parents in order to issue SIJ Findings, but that they must attempt to reunify children with their parents to accord with "national policy."   Mot. 19:5-18.   Offering defenses does not contest the sufficiency of Plaintiffs' allegations as stating a "cognizable legal theory" under the APA.   *See Shroyer v. New Cingular Wireless Serv., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010).   Rather than attack the validity of Plaintiffs' assertions, the Government offers external evidence of other statutes outside of the SIJS framework.   *See* Mot. 19:3-8 (describing congressional findings related to 42 U.S.C. § 5101 and citing Supreme Court cases addressing parental rights).   Such *post hoc* rationales using extra-record evidence are irrelevant to whether Plaintiffs have met their pleading standard (which they have).

"resolving a contest between the parties about the facts or the substantive merits of the plaintiff's case").  They also ignore the California Legislature's clear intention to provide legal guardianship to children under the age of 21 and provide them with meaningful custodial relationships as they adjust to a new cultural context, language, and education system, and recover from the trauma of abuse, neglect, or abandonment.  *See* AB 900 § (a)(6) .

The SIJS Statute and regulations are clear that the state juvenile court has the authority to make SIJ Findings under federal law and that the Government must defer to the state court's interpretations of its own law and jurisdiction.  8 U.S.C. § 1101(a)(27)(J); 8 C.F.R. § 204.11. Nonetheless, the Government erroneously asserts that it need not defer to the state court, citing to a Fifth Circuit case, *Budhathoki v. Nielsen*, 898 F.3d 504 (5th Cir. 2018), involving a state order that did not make the required findings regarding dependency or custody.  *Id*. at 513.  The underlying state court orders were child support orders—not orders involving the care and custody of juveniles—and did not include any language indicating that the subject child had been declared dependent on the state or placed in the care or custody of an individual or entity appointed by the state.  *Id*.  The *Budhathoki* court held that SIJ Findings must address dependency and custody as is required by the SIJS Statute—that is, that the juvenile court order must indicate that the child was declared dependent on a juvenile court or had been placed under the custody of an agency, individual, or entity.  *Id*.  Here, in contrast, the Government imposes a requirement *not* found in the SIJS Statute—that the juvenile court issuing SIJ Findings must have the authority to actually return a petitioner to his or her parents—and the state court orders at issue place the children into the care and custody of legal guardians.  The Government's reliance on *Budhathoki* is thus in error.[11]

(3)  The Government Violated the APA by Departing From Years of Practice Without Reasoned Explanation.

Plaintiffs also adequately allege that the Government departed from a longstanding practice

---

[11] Finally, rather than rely on the state court's interpretation of its own law, the Government offers its own deeply flawed interpretations of California Probate Code § 1510.1, as well as a slew of other California statutes, as justification for its determination that the California Probate Court could not actually reunify J.L. with her parents.  *See* Mot. 20:18-28.  The Government's improper interpretation on the law is addressed in Section II above.

without explanation or acknowledgement. *See* FAC ¶ 49. Instead of challenging the sufficiency of Plaintiffs' allegations, the Government (1) disputes the facts, (2) offers a *post hoc* rationale for its actions, and (3) argues that it provided a reasoned basis for the denial of J.L.'s SIJS petition. *See* Mot. 11:17-14:21, 18:13-23:5; 23:6-24:1.[12] None of the arguments attacks the sufficiency of Plaintiffs' allegations to state a claim for relief under the APA.

First, the Government disputes the facts, suggesting that Plaintiffs' allegations of long-standing prior practice amount simply to erroneously granted petitions. Mot. 11:24-25. Citing information outside the four corners of Plaintiffs' FAC, the Government denies any agency practice related to SIJS adjudication. Mot. 11:28-12:3. But it makes no difference how the Government characterizes the new requirement. The Government does not contest Plaintiffs' allegation in their complaint that before February 2018, the Government regularly granted SIJS petitions for 18-20 year-olds in California probate guardianships and that after February 2018, it has not granted a single petition for an 18-20-year-old petitioner with a probate guardianship from California on the grounds that the California Probate Court lacked authority to reunify the child with his or her parents.

Next, the Government offers an after-the-fact rationale for its actions: that the centralization of USCIS operations resulted in "improved consistency" in adjudications. Mot. 12:25-13:1. This *post hoc* explanation in litigation does not satisfy the APA's requirement that reversals in agency practice be accompanied by a reasoned explanation. PI Order 16:24-27. Plaintiffs allege that the Government consistently adjudicated SIJS petitions *before* it imposed the new requirement—but it consistently adjudicated them in accordance with the statute and did not previously deny relief based on extra-statutory grounds. *See* FAC ¶ 45. To the extent that the Government's rationale disputes Plaintiffs' assertion that adjudications *were* consistent before it imposed the new requirement, it is irrelevant under Rule 12(b)(6) as a dispute of fact, and the claim should continue to the merits. *See Iqbal*, 556 U.S. at 678.

Finally, the Government contends that by citing to "statute, regulations, and interpretive guidance found in the publicly available Policy Manual," it provides a "reasoned explanation" for its

---

[12] Again, this goes well beyond the arguments appropriate for a motion to dismiss and ignores the Plaintiffs' allegations that USCIS instituted a new policy in violation of the APA. FAC ¶ 49.

1    denial of Plaintiff J.L.'s SIJS petition.  Mot. 20:6-7.  But Plaintiffs here challenge the underlying

2    policy that led to the denial of J.L.'s petition: the imposition of the new requirement that state courts

3    issuing SIJ Findings have the authority to compel reunification of a Petitioner with his or her parents.

4    FAC ¶¶ 53-60.  But the Government offers the very policy that Plaintiffs are challenging as its

5    "reasoned explanation" for denying J.L.'s petition.  The Government's argument, then—that it

6    offered a reasoned explanation for denying J.L.'s petition because it based that decision on its

7    interpretation of the law—is circular.  The Government did not, and has not, offered a "reasoned

8    explanation" for its adoption of the new reunification requirement in the first place.  This is the crux

9    of Plaintiffs' allegations.

10          Specifically, in March 2018, the Government began to deny SIJS petitions submitted by 18-

11   to-20-year-old children for whom guardians were appointed pursuant to Probate Code § 1510.1(a),

12   based on a new requirement that state courts issuing SIJ Findings have the authority to compel

13   reunification of petitioners and their parents.  *See* FAC ¶ 49.  Before March 2018, USCIS had not

14   denied a SIJS petition on this basis.  *Id.* at ¶ 45.  The Government did not acknowledge the new

15   requirement at the time, did not notify Petitioners that they would be required to submit evidence to

16   meet the new requirement, and did not offer any reason for the change.  *Id.* at ¶ 50.  Indeed, the

17   Government initially *denied* that it had imposed a new requirement.  *Id.*  Eventually, as pressure

18   from the media mounted, the Government admitted that it had imposed a new requirement that

19   would prevent most 18-to-20-year-old petitioners who otherwise would have been eligible for SIJS

20   from qualifying.  *Id.* at ¶ 51 (quoting a USCIS spokesperson as saying that "[s]ince most courts

21   cannot place a child back in the custody of their parent once the child reaches the age of majority … ,

22   those state courts do not have power and authority to make the reunification finding for the purposes

23   of SIJ eligibility.")

24          *Sub silentio* reversal of long-standing agency practice, as Plaintiffs squarely allege in this

25   case, violates the APA.  *See Fed. Commc'ns Comm'n v. Fox Television Stations, Inc.*, 556 U.S. 502,

26   515-16 (2009) ("[T]he requirement that an agency provide a reasoned explanation for its action

27   would ordinarily demand that it display awareness that it *is* changing position. An agency may not . .

28   . depart from a prior policy *sub silentio*."); *see also Ramos v. Nielsen*, 321 F. Supp. 3d 1083 (N.D.

1   2018) (upholding plaintiffs' claims that the *sub silentio* departure from a prior practice or policy

2   violated the APA where plaintiffs alleged the government adopted a novel interpretation of the

3   statute and changed its course of practice); *see also Regents of Univ. of Cal.*, 908 F.3d 476

4   (upholding the district court's finding that plaintiffs stated a claim where they alleged the DACA

5   rescission was arbitrary and capricious).[13]   Accordingly, Plaintiffs' claim that the Government acted

6   arbitrarily and capriciously in violation of the APA by failing to provide a reasoned explanation for

7   the new departure from prior practice should survive.

8               c.   Plaintiffs Sufficiently Allege USCIS's Adoption of a New Policy
                     Regarding SIJS Required Notice and Comment.
9

10          The Government next argues that it had no notice-and-comment requirements prior to

11  implementing the new policy because "[a]n agency's interpretation of an existing law and policy do

12  not fall within this category" because the "only 'general statements of policy' subject to the

13  publication requirement are those that advise 'the public prospectively of the manner in which the

14  agency proposes to exercise a discretionary power.'"   Mot. 23:22-24:1 (citing *Mada-Luna v.

15  Fitzpatrick*, 813 F.2d 1006, 1013 (9th Cir. 1988)).   This is backward.   The portion cited from *Mada-*

16  *Luna* involved the "general statements of policy" *exemption* to the notice-and-comment requirement.

17  The APA requires federal agencies to follow prescribed notice-and-comment procedures prior to

18  promulgating substantive rules.   5 U.S.C. § 553*; see also* PI Order 18:4-5.   However, those

19  procedures do not apply to "interpretive rules, general statements of policy, or rules of agency

20  organization, procedure, or practice."  5 U.S.C. § 553(b)(A).  *See also* PI Order 18:5-7.  The Ninth

21  Circuit has distinguished a substantive rule from a general statement of policy by evaluating the

22  degree to which the policy leaves the agency "free to exercise discretion" to follow or not follow the

23  policy in an individual case.  *Colwell v. Dep't of Health & Human Servs.*, 558 F.3d 1112, 1124 (9th

24  Cir. 2009) (quoting *Mada-Luna*, 813 F.2d at 1013-14).[14]

25  [13]  Moreover, this Court already found that USCIS's new requirement "represents a sharp
    departure from prior practice" that "requires an explanation," and stated that the "conclusory"
26  explanation offered to the news media "does not come close to satisfying the APA's requirement
    of a 'reasoned explanation.'"  PI Order 14 n.7, 16:16-18, 17:15-17.
27

28  [14]  This Court has already considered the issue and determined that USCIS was required to follow
    notice-and-comment procedures before promulgating this new policy.  *See* PI Order 17:20-20:10.

22

Here, as alleged in the FAC, the Government's new requirement categorically forecloses discretion and mandates a specific outcome—the denial of virtually any SIJS petition for children in California who received their SIJ Findings after they turned 18.  FAC ¶¶ 1, 3, 7, 11, 18, 45, 50-52. Although the CHAP utilizes some language that *sounds* discretionary ("it may be appropriate to deny [the petition] on the basis that the evidence does not establish eligibility" and "USCIS may ask the petitioner to provide evidence that the court had competent jurisdiction"), other language in the CHAP "effectively nullifies the discretionary language quoted above."  PI Order at 18:26-19:25 (citing CHAP at 7-8).   Specifically, although the CHAP states that petitioners can submit supplemental evidence showing the California court relied on relevant state statutes when making its SIJ Findings, it also states that "California law does not appear to provide the courts with the power and legal authority to make decisions about a parent's ability to have custody of an individual over 18" (despite the plain language of the law to the contrary).  PI Order at 19:6-20 (citing CHAP at 7-8). Because "USCIS's internal guidance instructs its officers to request evidence in the form of citations to relevant California law, while simultaneously declaring that law insufficient," it effectively reduces the inquiry to whether the petition is from California.  PI Order at 19:20-25.  Accordingly, "USCIS's own actions reinforce the conclusion that the new policy is a mandatory substantive rule." PI Order at 19:26-27.  Therefore, as this Court already determined, USCIS "was required and failed to follow the notice and comment procedures of the APA."  PI Order 20:8-10.

### 3.   Plaintiffs State a Due Process Claim for Relief, Alleging That Plaintiffs Have a Constitutionally Protected Interest in Obtaining SIJ.

Finally, the Government argues that Plaintiffs do not have a constitutionally protected interest in obtaining "discretionary" SIJ classification.  Mot. 24:2-19.  This is a fundamental misstatement of Plaintiffs' Due Process claim.  FAC at ¶¶ 77-88.  The Ninth Circuit has repeatedly confirmed that the property interests protected by the Due Process Clause "extend beyond tangible property and include anything to which a plaintiff has a 'legitimate claim of entitlement.'"  *Nozzi v. Hous. Auth. of L.A.*, 806 F.3d 1178, 1191 (9th Cir. 2015) (quoting *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 576-77 (1972)).   Although "a benefit is not a protected entitlement if government officials may grant or deny it in their discretion," *Town of Castle Rock v. Gonzales*, 545

U.S. 748, 756 (2005), a legitimate claim of entitlement may exist where there are "rules or mutually explicit understandings that support [a plaintiff's] claim of entitlement to the benefit." *Perry v. Sindermann*, 408 U.S. 593, 601 (1972).

Plaintiffs' entitlement to SIJS is based on a set of rigorous, congressionally defined eligibility criteria outlined in the SIJS Statute, regulations, and agency guidelines. *See* 8 U.S.C. §§ 1101(b)(1), 1101(a)(27)(J), and 1232(d)(6); 8 C.F.R. § 204.11; 6 USCIS PM J.1.  The protected liberty and property interests flowing from a SIJS grant include (1) adjustment to lawful permanent residence, (2) freedom from government custody or detention, (3) the right to remain in the U.S. and live with a legal guardian, (4) access to federally funded educational programming, (5) access to public benefits, (6) work authorization and preferential status when seeking employment-based visas, and (7) professional licenses. *See Osorio-Martinez v. U.S.* 893 F.3d 153, 163 (3d Cir. 2018) (describing benefits that flow from a grant of SIJS); *Nozzi*, 806 F.3d at 1190-91 (finding property interest in government benefits).

Here, Plaintiffs have alleged a legitimate claim of entitlement to SIJS and its benefits because they relied on the SIJS Statute, regulations, and decades of prior USCIS practice in timely petitioning the government for SIJS.  FAC ¶ 106.  *See also Nozzi*, 806 F.3d at 1191 ("[P]laintiffs have a protected property right to public benefits where, as here, a statute authorizes those benefits and the 'implementing regulations' 'greatly restrict the discretion' of the people administering those benefits").  Plaintiffs have supported their petitions with juvenile court orders making the SIJ Findings required by statute. The SIJS Statute and its implementing policy limits USCIS' discretion to deny only those petitions without a factual basis supporting a finding of abandonment, abuse, or neglect. 6 USCIS PM 1.2(D)(5). As in *Nozzi*, where the Ninth Circuit recognized a protected property interest in a public benefit, Plaintiffs fall under the ambit of a statute that confers limited discretion on its adjudicators, yet the Government's new policy denies them relief.  They were eligible for SIJS under the criteria set by Congress.  FAC ¶¶ 11, 69, 106.  Absent USCIS's unlawful actions, they would have been granted SIJS.  FAC ¶ 61.  The Government has unlawfully denied and intends to deny Plaintiffs' SIJS petitions, impermissibly infringing on the liberty and property interests that flow from SIJS and violating Plaintiffs' Due Process rights.  FAC

1    ¶¶ 45-61.

2         The Government's position that SIJS is a discretionary form of relief is legally incorrect.

3    When the INA extends an agency discretion—i.e., the authority to decline to extend relief even when

4    all other eligibility criteria have been met—it does so explicitly and in clear language.  *See, e.g.,* 8

5    U.S.C. § 1255(a) (adjustment of status subject to Attorney General's discretion).   The consent

6    function within the SIJS Statute does not grant USCIS discretion to decline relief when all other

7    requirements have been met. Instead, USCIS "generally consents to the grant of SIJ classification

8    when the order includes or is supplemented by a reasonable factual basis for all of the required

9    findings." 6 USCIS PM J.2(D)(5).

10        The Government's conduct also "shocks the conscience" and "offend[s] the community's

11   sense of fair play and decency."  *Marsh v. Cnty. of San Diego*, 680 F.3d. 1148, 1155 (9th Cir. 2012).

12   By applying the new requirements to children who have *already* applied for SIJS (in reliance on the

13   SIJS Statute and the government's prior consistent practice of approving petitions similar to

14   Plaintiffs'), the government pulls the ultimate bait-and-switch, denying petitioners SIJS and using the

15   very information they provided in their petitions to place them in removal proceedings.

16        Accordingly, Plaintiffs adequately allege a Due Process claim.

17   **IV.    CONCLUSION**

18        For the foregoing reasons, Plaintiffs respectfully request that the Court deny the

19   Government's Motion.   In the event the Court finds any of Plaintiffs' allegations insufficient,

20   Plaintiffs request leave to amend pursuant to Fed. R. Civ. P. 15(a).

21   Dated: January 28, 2019

22   MANATT, PHELPS & PHILLIPS, LLP          LAWYERS' COMMITTEE FOR CIVIL RIGHTS OF
     MATTHEW KANNY                           THE SAN FRANCISCO BAY AREA
23   ADRIANNE MARSHACK                       KEITH WURSTER
     SIRENA CASTILLO
24
     PUBLIC COUNSEL                          By: **/s/** *Sirena P. Castillo*
25   JUDY LONDON                                  Sirena Castillo
     SARA VAN HOFWEGEN                            Attorneys for *Plaintiffs*
26   MARY TANAGHO ROSS                            J.L., M.V.B., M.D.G.B., and J.B.A., on behalf
                                                  of themselves and all others similarly situated
27

28

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
  LOS ANGELES

1

**CERTIFICATE OF SERVICE**

2

I hereby certify that on January 28, 2019, the foregoing document was electronically filed

3

with the Clerk of the Court for U.S. District Court, Northern District of California, through the

4

CM/ECF system. All parties are registered CM/ECF users and will be served through the CM/ECF

5

system.

6

7

By:/s/   Sirena Castillo_____

8

9

10

11

12

13

321608041.8

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Manatt, Phelps &
Phillips, LLP
Attorneys At Law
Los Angeles

1