UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| J.L., M.D.G.B., J.B.A., and M.G.S., on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>LEE FRANCIS CISSNA, Director, United States Citizenship and Immigration Services, et al.,<br><br>Defendants. | Case No.18-cv-04914-NC<br><br>**ORDER DENYING DEFENDANTS' MOTION TO DISMISS**<br><br>Re: Dkt. No. 91 |

Plaintiffs are young immigrants seeking Special Immigrant Juvenile ("SIJ") status. They allege that defendants—the United States Department of Homeland Security ("DHS"), the United States Citizenship and Immigration Services ("USCIS"), and individual officers in charge of those departments—adopted an unlawful policy that prevents them from obtaining that status. The Court previously granted Plaintiffs' motion for preliminary injunction and motion for class certification. *See* Dkt. Nos. 49, 112. Defendants now move to dismiss the amended complaint, arguing that they complied with the Administrative Procedure Act, did not violate due process, and the Court lacks subject matter jurisdiction. *See* Dkt. No. 91. For the reasons explained below, the Court DENIES Defendants' motion to dismiss.

## I. Background

### A. Statutory and Factual Background

The statutory and factual background is well-known to the parties. Because that background has not changed since the Court's February 1, 2019, order granting class certification, the Court will not recount the SIJ statutory framework or Plaintiffs' factual allegations here. *See* Dkt. No. 112; *see also* Dkt. No. 49.

### B. Procedural Background

On October 24, 2018, the Court granted Plaintiffs' motion for a preliminary injunction and enjoined Defendants from denying SIJ status on the grounds that California Probate Courts do not have jurisdiction to issue SIJ guardianship orders. *See* Dkt. No. 49.

Plaintiffs amended their complaint on November 20, 2018, alleging claims for: (1) violation of the Fifth and Fourteenth Amendment Due Process Clause; (2) violation of the Immigration and Nationality Act, 8 U.S.C. § 1101, pursuant to the Administrative Procedure Act ("APA"), 5 U.S.C. § 706; (3) arbitrary and capricious actions, 5 U.S.C. § 706; (4) failure to conduct notice-and-comment rulemaking, 5 U.S.C. § 553; (5) violation of the Due Process Clause under the APA, 5 U.S.C. § 706; and (6) declaratory judgment. *See* Dkt. No. 70 ("FAC").

Plaintiffs then moved for class certification under Federal Rule of Civil Procedure 23(b)(2). *See* Dkt. No. 71. The Court certified a class of SIJ petitioners with California Probate Court guardianship orders on February 1, 2019. *See* Dkt. No. 112 at 20.

While Plaintiffs' motion for class certification was pending, Defendants moved to dismiss the first amended complaint. *See* Dkt. No. 91. That motion is now fully briefed (*see* Dkt. Nos. 109, 115) and was heard on March 6, 2019 (*see* Dkt. No. 136). All parties have consented to the jurisdiction of a magistrate judge. *See* Dkt. Nos. 14, 26, 141.

## II. Legal Standard

A motion to dismiss for failure to state a claim under Rule 12(b)(6) tests the legal sufficiency of a complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). On a motion to dismiss, all allegations of material fact are taken as true and construed in the

light most favorable to the non-movant. *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337–38 (9th Cir. 1996). The Court, however, need not accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Secs. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008). Although a complaint need not allege detailed factual allegations, it must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when it "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In contrast, the Court may consider materials beyond the allegations in the complaint on a motion to dismiss for lack of subject matter jurisdiction. *See Robinson v. U.S.*, 586 F.3d 683, 685 (9th Cir. 2009). "[N]o presumptive truthfulness attaches to plaintiff's allegations" and the Court "may hear evidence regarding jurisdiction and resolv[e] factual disputes where necessary." *Id.* (internal quotation marks and citations omitted).

### III. Discussion

#### A. Final Agency Action

Under the APA, courts can review agency actions "so long as the decision challenged represents a 'final agency action for which there is no other adequate remedy in court.'" *W. Radio Serv. Co. v. U.S. Forest Serv.*, 578 F.3d 1116, 1122 (9th Cir. 2009) (quoting *Webster v. Doe*, 486 U.S. 592, 599 (1988)); *see also* 5 U.S.C. § 704.

An agency action is final if (1) it "marks the consummation of the agency's decision-making process—it must not be of a merely tentative or interlocutory nature" and (2) is "one by which rights or obligations have been determined, or from which legal consequences will flow." *Bennett v. Spear*, 520 U.S. 154, 177–78 (1997) (internal citations and quotations omitted). The Ninth Circuit approaches the finality requirement "in a pragmatic and flexible manner." *Havasupai Tribe v. Provencio*, 906 F.3d 1155, 1163 (9th Cir. 2018) (internal quotations omitted).

3

Defendants argue that plaintiffs M.G.S., M.D.G.B., and J.B.A. must be dismissed because their SIJ petitions remain pending. *See* Dkt. No. 91 at 19. As a result, according to Defendants, there has been no final agency action as to those plaintiffs and the Court lacks subject matter jurisdiction to review their claims. *Id.*

The Court disagrees. As explained in the Court's prior orders, Plaintiffs do not challenge USCIS's adjudication of each individual SIJ petition. *See, e.g.*, Dkt. No. 49 at 21; Dkt. No. 112 at 15. Plaintiffs instead challenge Defendants' adoption of a new requirement for SIJ eligibility. Defendants' reliance on *Spencer Enters., Inc. v. U.S.*, 345 F.3d 683 (9th Cir. 2003) and *Abboud v. I.N.S.*, 140 F.3d 843 (9th Cir. 1998) is not persuasive. Both *Spencer* and *Abboud* challenged specific adjudications, not an underlying government policy. *See Spencer*, 345 F.3d at 686 (challenging INS's denial of plaintiff's immigrant investor petition); *Abboud*, 140 F.3d at 845 (challenging INS's denial of plaintiff's application for an immigrant visa).

Under the first *Bennett* prong, "the challenged agency action must represent the consummation of the agency's decisionmaking process." *Or. Natural Desert Ass'n v. U.S. Forest Serv.*, 465 F.3d 977, 984 (9th Cir. 2006). It "must not be of a merely tentative or interlocutory nature." *Bennett*, 520 U.S. at 178. Instead, the court must determine whether the agency "has rendered its last word on the matter." *Or. Natural Desert*, 465 F.3d at 977 (quoting *Whitman v. Am. Trucking Ass'n*, 531 U.S. 457, 478 (2001)).

As the Court explained in its October 24, 2018, order granting a preliminary injunction, USCIS's revision of its Consolidated Handbook of Adjudication Procedures ("CHAP") and its subsequent implementation of the new SIJ requirement satisfies the first *Bennett* requirement. *See* Dkt. No. 49 at 22. USCIS's legal determination that the SIJ statute requires state courts to have the power to actually reunify petitioners with their parents marks the consummation of its decision-making process. The administrative record shows that USCIS's Office of Chief Counsel promulgated legal guidance regarding the SIJ statute in February 26, 2018. *See* Dkt. No. 133 ("CAR") at 103–04. That guidance was then adopted and published in the CHAP. *See* CAR 106, 107–18.

4

*Navajo Nation v. United States Dept. of Interior*, 819 F.3d 1084, 1089 (9th Cir. 2016) is directly on point. In *Navajo Nation*, the National Park Service determined that federal law applied to assorted Native American remains and archaeological items and started an inventory process to provide for the ultimate disposition of those items. The Ninth Circuit held that "[the Park Service's] legal determination that [federal law] appl[ied] to the remains and objects . . . marked the consummation of the agency's decisionmaking process as to that issue." *Id.* at 1091 (internal quotation marks omitted). There, as here, the underlying dispute in the district court was not the agency's application of the law to specific cases. *See id.* at 1092. Because the dispute was over whether the Park Service properly applied federal law, the agency's legal determination was a justiciable final action. *Id.*

Defendants' characterization of USCIS's actions as mere "guidance" or "centralization" does not change the analysis. In *Alaska v. United States E.P.A.*, 244 F.3d 748, 750 (9th Cir. 2001), the Ninth Circuit found irrelevant that the EPA had not actually commenced enforcement actions against the plaintiffs. It was enough that the enforcement orders were "unalterable." *Id.*; *see also Or. v. Ashcroft*, 368 F.3d 1118, 1147 (9th Cir. 2004) (Wallace, J., concurring in part) ("nonbinding, pre-enforcement, interpretive rule" may satisfy the first *Bennett* requirement). More recently, in *California Sea Urchin Commission v. Bean*, 828 F.3d 1046, 1049–50 (9th Cir. 2016), the Ninth Circuit held that both the Fish and Wildlife Service's establishment of failure criteria and its application of that criteria could satisfy the consummation requirement.

Defendants further argue that Plaintiffs fail to satisfy the first *Bennett* prong because Plaintiffs have not pointed to a "formal procedure" for changing the CHAP. Dkt. No. 91 at 22. This argument is backwards. The APA specifically requires agencies to follow certain formal procedures when engaging in substantive rulemaking. *See* 5 U.S.C. § 553. Agencies are not required to follow those procedures when engaging in interpretive rulemaking. *Id.* But whether those procedures apply is a question of law suitable for judicial review. Defendants cannot avoid review by unilaterally claiming that its

5

1  rulemaking was merely a clarification of the law and pointing to its lack of a formal
2  process as proof.

3  Likewise, Defendants' related argument that its adoption of the new SIJ requirement is interpretive and therefore not a final agency action "puts the cart before the horse." *See Faith Int'l Adoptions v. Pompeo*, 345 F. Supp. 3d 1314, 1325 (W.D. Wash. 2018). "To allow [the] State to avoid review of its action by simply claiming that its interpretation was correct would constitute an end-run around the judicial process, which exists precisely to assess such claims." *Id.* In short, the Court finds that the first *Bennett* prong is satisfied.

The second *Bennett* prong is satisfied when "rights or obligations have been determined" or "legal consequences will flow" from the agency action. *Bennett*, 520 U.S. at 178; *see also Ukiah Valley Med. Ctr. v. FTC*, 911 F.2d 261, 264 (9th Cir. 1990) (final agency action must "impose an obligation, deny a right, or fix some legal relationship"). "[A]n agency action may be final if it has a 'direct and immediate . . . effect on the day-to-day business' of the subject party." *Or. Natural Desert*, 465 F.3d at 987 (quoting *Ukiah Valley*, 911 F.2d at 264)). Courts must "consider 'whether the [action] has the status of law or comparable legal force, and whether immediate compliance with its terms is expected.'" *Id.* (alteration in original).

*Oregon Natural Desert Association* is instructive. There, the Forest Service issued annual operating instructions to various ranchers wishing to graze their livestock on federal land. *See Or. Natural Desert*, 465 F.3d at 981. The Ninth Circuit held that the instructions satisfied the second *Bennett* prong because the Forest Service could "issue a Notice of Non-Compliance" if ranchers failed to comply with the instructions. *Id.* at 987. "[T]hat [a] violation can prompt the Forest Service to take enforcement action against the non-complying permittee is a show of the [instructions'] 'legal force' and the Forest Service's expectation of 'immediate compliance with its terms.'" *Id.* at 988.

Similarly, in *Navajo Nation*, the Park Service's determination that federal law applied to assorted Native American remains and archaeological items satisfied *Bennett*'s

6

1  second requirement because "its decision to apply [federal law] necessarily determined at
2  least some of the Navajo Nation's property rights in the remains and objects." 819 F.3d at
3  1093. The Ninth Circuit further reasoned "that the Park Service's unexplained decision to
4  apply NAGPRA to the remains and objects necessarily forecloses the Nation's argument
5  that it has complete ownership of the remains and objects pursuant to its treaty rights." *Id.*

Here, "legal consequences will flow" from USCIS's determination that California Probate Courts do not have jurisdiction over any SIJ petitioner over the age of 18 seeking a guardianship order under California Probate Code § 1510.1 (*see* CAR at 112–113). *Bennett*, 520 U.S. at 178. USCIS determined that "California law does not appear to provide [California Probate] courts with the power and legal authority to make decisions about a parent's ability to have custody of an individual over 18." CAR at 113. Because USCIS requires SIJ petitioners to "establish [that] the court had the power and legal authority under state law to place the petitioner under the custody of the parent[,]" USCIS's legal determination effectively forecloses the possibility that any California petitioner with a guardianship order under § 1510.1 will succeed in their SIJ petition. *Id.*

Finally, Defendants rely on two out-of-circuit cases to argue that their interpretation of the SIJ statute is not a reviewable final action. *See* Dkt. No. 115 at 10. Neither of these cases considered the *Bennett* doctrine and proceeded directly to the merits of the challengers' APA claims. *See Perez v. Cissna*, 914 F.3d 846, 851 (4th Cir. 2019); *Budhathoki v. Nielsen*, 898 F.3d 504, 509 (5th Cir. 2018). Accordingly, the Court will not consider those cases here and will discuss them in connection with the merits of Plaintiffs' claims below.

Because Defendants' adoption of their new SIJ requirement satisfies both prongs of the *Bennett* test, it is a judicially reviewable final agency action.

**B.   REAL ID Act of 2005**

The REAL ID Act of 2005 precludes district courts from "hear[ing] any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any

7

alien . . . ." 8 U.S.C. § 1252(g). Likewise, § 1252(f)(1) "prohibits federal courts from granting classwide injunctive relief against the operation of §§ 1221 – 123[2]." *Jennings v. Rodriguez*, --- U.S. ----, 138 S. Ct. 830, 851 (2018) (citing *Reno v. American-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 481 (1999)). Section 1252(f)(1), however, does not affect jurisdiction over statutory claims that "seek to enjoin the operation of the immigration . . . statutes, but to enjoin conduct . . . not authorized by the statutes." *Rodriguez v. Hayes*, 591 F.3d 1105, 1120 (9th Cir. 2010), *accord Jennings*, 138 S. Ct. at 851.

Neither § 1252(g) nor § 1252(f) apply in this case. Section 1252(g) applies narrowly and does not "refer[] to all claims arising from deportation proceedings." *American-Arab Anti-Discrimination Comm.*, 525 U.S. at 482. Rather, § 1252(g) only limits the Court's jurisdiction over Defendants' decision to "commence proceedings, adjudicate cases, or execute removal orders." *See id.*; *see also* 8 U.S.C. § 1252(g). Here, Plaintiffs challenge Defendants' allegedly unlawful application of the SIJ statute, not Defendants' decision to seek their removal, which is beyond the reach of § 1252(g). *Cf. Jennings*, 138 S. Ct. at 841 (Section 1252(b)(9) does not bar jurisdiction when "[Plaintiffs] are not asking for review of an order of removal; they are not challenging the decision to . . . seek removal; and they are not even challenging any part of the process by which their removability will be determined.").

As to § 1252(f), Defendants construe Plaintiffs' request for injunctive relief as seeking blanket protection from removal. *See* Dkt. No. 151 at 16–17. The Court, however, does not read Plaintiffs' request for relief so broadly. Plaintiffs seek to enjoin Defendants from removing class members on the basis of the challenged conduct, *i.e.*, denying SIJ status because the California Probate Court issued a guardianship order under California Probate Code § 1510.1. *See* Dkt. No. 109 at 20. In any case, § 1252(f) does not prohibit injunctive relief directed at violations of a statute and that is all that Plaintiffs seek here. *See Rodriguez*, 591 F.3d at 1120.

8

**C.     Arbitrary and Capricious Agency Action**

A court reviews final agency actions under the "arbitrary and capricious" standard of the APA, 5 U.S.C. § 702(2)(A). *See Friends of Endangered Species v. Jantzen*, 760 F.2d 976, 980–81 (9th Cir. 1985). Under the APA, the court "shall" set aside any agency decision that it finds "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 702(2)(A).

An agency action is arbitrary and capricious if "the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Motor Vehicles Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983).

Review under the "arbitrary and capricious" standard is narrow, and the reviewing court "is not to substitute its judgment for that of the agency" and "should uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned." *F.C.C. v. Fox Television Stations, Inc.*, 556 U.S. 502, 513–14 (2009). Despite this narrow scope of review, the court's inquiry must be "searching and careful." *Marsh v. Or. Natural Res. Council*, 490 U.S. 360, 378 (1989). Ultimately, "the agency must articulate a rational connection between the facts found and the conclusions made." *Or. Natural Res. Council v. Lowe*, 109 F.3d 521, 526 (9th Cir. 1997) (citing *U.S. v. Louisiana-Pac. Corp.*, 967 F.2d 1372, 1376 (9th Cir. 1992)).

Defendants contend that their statutory interpretations are reasonable and entitled to deference. *See* Dkt. No. 91 at 27. According to Defendants, SIJ petitioners must establish that the juvenile court issuing a guardianship order have the authority make the required determination that family reunification is no longer viable. To have that authority, Defendants reason, the juvenile court must have jurisdiction to determine whether a parent could regain custody and to order reunification if warranted. This is so because the state court guardianship order will permanently deprive the parent of their custodial rights.

Defendants' interpretation is not reasonable. As a threshold matter, the Court notes that the SIJ regulations are outdated and parts of it are no longer good law. As explained in the Court's prior orders, Congress amended the SIJ statute in 2008 with the Trafficking Victims Protection Reauthorization Act. *See* Pub. L. No. 110-457 § 235(d), 122 Stat. 5044 (2008). In that statute, Congress explicitly removed the requirement that immigrant juveniles seeking SIJ status must be "deemed eligible by [a juvenile] court for long-term foster care due to abuse, neglect, or abandonment." *Id.* § 235(d)(1)(A). Congress replaced that requirement with the condition that the immigrant seeking SIJ status could not be "reunifi[ed] with 1 or both of [her] parents . . . due to abuse, neglect, abandonment, or a similar basis found under state law." *Id.* Despite this change, however, the very first section of the SIJ regulation continues to state that "[e]ligible for long-term foster care means that a determination has been made by the juvenile court that family reunification is no longer a viable option." 8 C.F.R. § 204.11(a). The regulation also continues to tether SIJ eligibility to "ha[ving] been deemed eligible by the juvenile court for long-term foster care." *Id.* § 204.11(c)(4). Defendants' continued reliance on outdated regulations is plainly unreasonable.

In response, Defendants argue that the TVPRA merely clarified that SIJ petitioners no longer need to be eligible for long-term foster care. *See* Dkt. No. 91 at 13; *see also* CAR 63–64. Defendants maintain that the SIJ regulations' family reunification requirement continue to have force. *Id.* But the only mention of a "family reunification" requirement is found in § 204.11(a). *See* 8 U.S.C. § 204.11(a). That section contains definitions of relevant terms, including a definition of "[e]ligible for long-term foster care" as "a determination has been made by the juvenile court that family reunification is no longer a viable option." *Id.* By eliminating the "long-term foster care" requirement, Congress naturally eliminated the definition of a now-defunct term.

Even if the TVPRA did not significantly change the law, California Probate Courts have competent jurisdiction to make the required custody determinations. California Code of Civil Procedure § 155(a) states: "[a] superior court has jurisdiction under California law

10

to make judicial determinations regarding the *custody* and *care* of children within the meaning of the federal Immigration and Nationality Act . . . which includes, but is not limited to, the juvenile, probate, and family court divisions of the superior court." California law further authorizes its probate courts to find that the SIJ petition was "[l]egally committed to, or placed under the custody of, a state agency or department, or an individual or entity appointed by the court." Cal. Code Civ. Proc. § 155(b)(1). And California Probate Code § 1510.1 authorizes California Probate Courts to "appoint a guardian of the person for an unmarried individual who is 18 years of age or older, but who has not yet attained 21 years of age" if the petitioner consents.

Defendants maintain that these statutory grants of jurisdiction are not enough because California law only permits its courts to make factual findings regarding reunification. *See* Dkt. No. 115 at 14. It is not clear, however, why the reunification finding must be a legal conclusion. As the California Supreme Court recently explained, a reunification finding is inherently factual because it does not "grant . . . parental rights or to order [the parent] to fulfill parental responsibilities." *Bianka M. v. Sup. Ct.*, 5 Cal. 5th 1004, 1021–22 (2018). This reasoning is bolstered by the fact that nothing in the statutory language suggests that the state court must also have the authority to compel reunification. *See* 8 U.S.C. § 1101(a)(27)(J). Rather, the only legal finding required under the SIJ statute is a finding of dependency or guardianship. *See* 8 U.S.C. § 1101(a)(27)(J)(i). And California law explicitly authorizes its probate courts to appoint a guardian for SIJ petitioners with their consent.

Defendants cite two out-of-circuit cases in support of their position. Setting aside the fact that neither case analyzes California law, both cases are also distinguishable. First, in *Budhathoki*, the Fifth Circuit held that Texas child support orders did not satisfy the SIJ statute even though those orders found that reunification with at least one of the petitioner's parents was not viable. 898 F.3d at 515. The Fifth Circuit reasoned that "before a state court ruling constitutes a dependency order [within the meaning of the SIJ statute], it must in some way address custody or at least supervision." *Id.* at 513. Texas

11

child support orders, however, did no more "than impose a financial obligation on parents." *Id.* Thus, SIJ petitioners could not rely on those orders to obtain SIJ status. *Id.*

In contrast, California guardianship orders address custody or supervision. *See* Cal. Prob. Code § 2351(a). Defendants correctly note that guardians appointed under California Probate Code § 1510.1 are severely limited in what decisions they can make for the petitioner. *See id.* § 1510.1(c) ("This section does not authorize the guardian to abrogate any of the rights that a person who has attained 18 years of age may have as an adult under state law . . . without the ward's express consent."). But § 1510.1(c) does not alter the fact that guardians have legal custody of the petitioner; that section speaks to the petitioner's personal rights, not his or her legal status. *Id.*; *see also id.* § 2351(a) ("the guardian or conservator . . . *has the care, custody, and control of*, and has charge of the education of, the ward . . . This control *shall not extend to personal rights* retained by the conservatee . . . unless specifically limited by court order.") (emphasis added). Of course, if a guardian appointed under § 1510.1 can effectively make *no* decisions for the petitioner whatsoever, that may be strong evidence that the guardianship order is not *bona fide*. *See* 8 U.S.C. § 1101(a)(27)(J)(iii) (Secretary of Homeland Security must "consent[] to the grant of special immigrant juvenile status . . ."). This does not mean, however, that California Probate Courts are unable to enter valid guardianship orders for SIJ petitioners or that *all* guardianship orders entered under § 1510.1 are invalid.

*Perez v. Cissna*, 914 F.3d 846, 856 (4th Cir. 2019) is similarly distinguishable. There, an SIJ petitioner used a temporary custody order to apply for SIJ status. *Id.* at 850. That order, however, did not state "that the finding related to reunification was intended to last to the age of majority"[1] and "was simply to preserve the status quo." *Id.* at 856. Guardianship orders under § 1510.1, however, are not temporary.[2]

---

[1] In *Perez*, the age of majority was relevant because the parties agreed that the state court did not have jurisdiction over the petitioner once he turned 18. *Id.* at 850.
[2] *Perez* was decided by a divided panel. The dissent opined that the "plain and ordinary meaning" of "custody" includes no temporal limits. *Perez*, 914 F.3d at 862–63 (King, J., dissenting). Because there was no evidence that Congress sought to exclude temporary custody orders, the dissent concluded that USCIS's decision was unlawful. *See id.* at 863.

12

In sum, Defendants' interpretation of the SIJ statute reads in an additional requirement. Because that interpretation is contrary to federal and California law, Plaintiffs have stated a claim.

### D. Notice-and-Comment Rulemaking

The APA requires a federal agency to follow prescribed notice and comment procedures before promulgating substantive rules. *See* 5 U.S.C. § 553. Agencies must publish a "[g]eneral notice of proposed rule making . . . in the Federal Register" and "give interested persons an opportunity to participate in the rule making . . . ." *Id.* §§ 553(b), (c). Those procedures do not apply to "interpretive rules, general statements of policy, or rules of agency organization, procedure, or practice." *Id.* § 553(b)(A).

Citing § 552, Defendants argue that they have complied with the APA because their Policy Manual is available to the public. *See* Dkt. No. 32. However, Plaintiffs do not take issue with Defendants' compliance with § 552. Plaintiffs' notice-and-comment claim arises under § 553. *See* FAC ¶ 103. And, as explained in the Court's prior order, Defendants' current interpretation of the SIJ statute, crystallized for the first time in its February 26, 2018, legal guidance (*see* CAR 103–04) and the updated CHAP (*see id.* at 107–118), constitutes a substantive rule subject to the notice-and-comment procedures of § 553.[3] *See* Dkt. No. 49 at 17–20.

### E. Fifth and Fourteenth Amendment Due Process

"The Due Process Clause of the Fourteenth Amendment imposes procedural constraints on governmental decisions that deprive individuals of liberty and property interests." *Nozzi v. Hous. Auth. of City of Los Angeles*, 806 F.3d 1178, 1190 (9th Cir.

---

[3] Elsewhere in Defendants' motion, they argue that their interpretation of the SIJ statute is not subject to the APA's requirements because USCIS's pre-2018 adjudications granting SIJ petitions supported by § 1510.1 guardianship orders were simply erroneous. *See* Dkt. No. 91 at 20; *see also* Dkt. No. 115 at 9 (citing *R.L. Inv. Ltd. Partners v. I.N.S.*, 86 F. Supp. 2d 1014, 1024–25 (D. Haw. 2000), aff'd 273 F.3d 874 (9th Cir. 2001)). Thus, Defendants argue, those unpublished, prior adjudications are non-precedential. *Id.* Even if this were true, however, the fact remains that Defendants' current interpretation of the SIJ statute was put into practice for the first time in 2018. This interpretation is a substantive rule not authorized by the SIJ statute. Defendants must therefore comply with the APA's notice-and-comment procedures.

13

2015). Thus, the government violates procedural due process when (1) the plaintiff has a protected property or liberty interest; and (2) the government fails to provide adequate procedural safeguards. *Id.* at 1191, 1192.

Here, Defendants only argue that Plaintiffs do not have a protectable liberty or property interest in SIJ classification because SIJ classification does not confer any benefits and SIJ relief is discretionary. *See* Dkt. No. 91 at 33.

"The property interests that due process protects extend beyond tangible property and include anything to which a plaintiff has a 'legitimate claim of entitlement.'" *Nozzi*, 806 F.3d at 1190 (quoting *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 569–70 (1972)). "Property interests . . . are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law-rules or understandings that secure certain benefits . . . ." *Roth*, 408 U.S. at 577. "Although a benefit is not a protected entitlement if government officials may grant or deny it in their discretion, a legitimate claim of entitlement may exist where there are rules or mutually explicit understandings that support [a plaintiff's] claim of entitlement to the benefit . . . ." *Regents of the Univ. of Cal. v. U.S. Dep't of Homeland Sec.*, 908 F.3d 476, 514 (9th Cir. 2018) (internal citations and quotation marks omitted).

Here, SIJ status confers a large swath of various benefits that may constitute a protectable property interest. *Cf. Ressler v. Pierce*, 692 F.2d 1212, 1215–16 (9th Cir.1982) ("In addition, [the plaintiff] has a constitutionally protected 'property' interest in Section 8 benefits by virtue of her membership in a class of individuals whom the Section 8 program was intended to benefit."). For example, SIJ designees are exempt from a variety of grounds for removal, such as "being found to be a 'public charge,' lacking a 'valid entry document,' or having 'misrepresented a material fact'—while seeking admission into the United States." *Osorio-Martinez v. Attorney General U.S.A.*, 893 F.3d 153, 171 (3d Cir. 2018) (citing 8 U.S.C. §§ 1182(a), 1255(h)(2)(A)). SIJ designees are also granted access to federally-funded education and preferential status for employment-based green cards. *Id.* (citing 8 U.S.C. §§ 1232(d)(4)(A), 1153(b)).

14

Whether Plaintiffs have a legitimate claim of entitlement to SIJ classification, however, presents a closer question. The SIJ statute provides that the Secretary of Homeland Security must "consent[] to the grant of special immigrant juvenile status . . ." 8 U.S.C. § 1101(a)(27)(J)(iii). At least one court has reasoned that this consent requirement makes SIJ classification discretionary. *See Yu v. Brown*, 92 F. Supp. 2d 1236, 1252 (D.N.M. 2000) ("[A]pplicants must . . . seek a favorable exercise of INS discretion. This shift from non-discretionary to discretionary relief has certainly impaired the legal rights possessed by [petitioners] . . . .").

On the other hand, the SIJ regulations prescribe a series of "rules or mutually explicit understandings that support [a plaintiff's] claim of entitlement to the benefit . . ." *Perry v. Sindermann*, 408 U.S. 593, 601 (1972). In particular, the SIJ regulations state that "[a]n alien is eligible for classification as a special immigrant under section 101(a)(27)(J) of the Act if the alien" meets all six eligibility criteria. 8 C.F.R. § 204.11(c). Similarly, USCIS's policy manual states that "USCIS *generally consents* to the grant of SIJ classification when the order includes or is supplemented by a reasonable factual basis for all of the required findings." CAR at 90 (emphasis added).

Plaintiffs have plausibly alleged that they have a protected property interest in SIJ status. Whether the Secretary's consent function is truly discretionary or if it is strictly controlled by a set of rules or mutually explicit understandings raises questions of fact that cannot be resolved at this stage of the proceedings. *Cf. Regents of the Univ. of Cal.*, 908 F.3d at 515 ("All these points might have revealed a question of fact as to whether a mutually explicit understanding of presumptive renewal existed—thereby avoiding dismissal on the pleadings—if plaintiffs were bringing a claim that, for example, their individual DACA renewals were denied for no good reason.").

/ / /

/ / /

/ / /

/ / /

15

## IV. Conclusion

For the foregoing reasons, the Court DENIES Defendants' motion to dismiss.

**IT IS SO ORDERED.**

Dated: March 15, 2019

_____
NATHANAEL M. COUSINS
United States Magistrate Judge