1   MATTHEW KANNY (SBN 167118)
    mkanny@manatt.com
2   ADRIANNE MARSHACK (SBN 253682)
    amarshack@manatt.com
3   SIRENA CASTILLO (SBN 260565)
    scastillo@manatt.com
4   MANATT, PHELPS & PHILLIPS, LLP
    11355 West Olympic Boulevard
5   Los Angeles, CA 90064-1614
    Telephone:    (310) 312-4000
6   Facsimile:    (310) 312-4224

    JUDY LONDON (SBN 149431)
    jlondon@publiccounsel.org
    SARA VAN HOFWEGEN (SBN 266985)
    svanhofwegen@publiccounsel.org
    MARY TANAGHO ROSS (SBN 280657)
    mross@publiccounsel.org
    PUBLIC COUNSEL
    610 South Ardmore Avenue
    Los Angeles, CA 90005
    Telephone:    (213) 385-2977
    Facsimile:    (213) 385-9089

7   BREE BERNWANGER (NY 5036397)
        pro hac vice
8   bbernwanger@lccrsf.org
    LAWYERS' COMMITTEE FOR CIVIL
9   RIGHTS OF THE SAN FRANCISCO BAY
    AREA
10  131 Steuart Street, Suite 400
    San Francisco, CA 94105
11  Telephone:    (415) 543-9444
    Facsimile:    (415) 543-0296

12
    Attorneys for *Plaintiffs*
13  J.L., M.D.G.B., J.B.A., and M.G.S. on behalf
    of themselves and all others similarly situated

14

15                **UNITED STATES DISTRICT COURT**

16          **FOR THE NORTHERN DISTRICT OF CALIFORNIA**

17  J.L., M.D.G.B., J.B.A., and M.G.S., on behalf
    of themselves and all others similarly situated,

Case No. CV 18-4914

18

19                    Plaintiffs,

**PLAINTIFFS' NOTICE OF MOTION
AND MOTION FOR PARTIAL
SUMMARY JUDGMENT**

20  v.

21  KENNETH T. CUCCINELLI, Director, U.S.
    Citizenship and Immigration Services, KEVIN

Filed Concurrently Herewith:

22  K. MCALEENAN, Acting Secretary, U.S.
    Department of Homeland Security, ROBERT

(1) Appendix of Evidence; and

23  COWAN, Director, National Benefits Center,
    U.S. Citizenship and Immigration Services,

(2) [Proposed] Order.

24  UNITED    STATES    DEPARTMENT    OF
    HOMELAND    SECURITY,    and    UNITED

Date: October 9, 2019
Time: 1:00 p.m.

25  STATES    CITIZENSHIP    AND
    IMMIGRATION SERVICES,

Ctrm: 5, 4th Floor
Hon. Nathanael M. Cousins

26

Action Filed: August 14, 2018

27                    Defendants.

28

# TABLE OF CONTENTS

**Page**

NOTICE OF MOTION FOR PARTIAL SUMMARY JUDGMENT .......................................... 1

MEMORANDUM OF POINTS AND AUTHORITIES ............................................................ 2

I.     INTRODUCTION ............................................................................................................... 2

II.    LEGAL BACKGROUND ................................................................................................... 5

      A.    The SIJ Statute and Deference to State Courts ...................................................... 5

      B.    The Relevant California Legal Framework............................................................. 8

III.   STATEMENT OF FACTS .................................................................................................. 10

      A.    In February 2018, the Government Adopted a New Requirement That the
           State Court Issuing SIJ Findings Have the Authority to Return the Child to
           the Custody of Her Parent ...................................................................................... 10

      B.    The Government Has Denied or Will Deny SIJS Petitions of Children
           Aged 18 to 20 Based on the New Requirement ..................................................... 11

IV.   LEGAL STANDARDS FOR MOTION............................................................................ 13

V.    THE GOVERNMENT'S ADOPTION AND IMPLEMENTATION OF ITS NEW
      SIJS ELIGIBILITY REQUIREMENT VIOLATES THE APA...................................... 13

      A.    Adoption of the New SIJS Requirement Is a Reviewable Final Agency
           Action..................................................................................................................... 14

      B.    The New SIJS Eligibility Requirement Is Arbitrary and Capricious in
           Violation of the APA Because It Contravenes Federal Law, State Law,
           Congressional Intent, and the SIJ Statute Consent Function ................................. 17

           1.    The Government's New SIJS Eligibility Requirement Is Contrary to
                the Plain Language of the SIJ Statute ...................................................... 18

                a.    The SIJ Statute does not require that the state juvenile court
                    have the authority to reunify a child with her parents by
                     ordering her returned to their custody............................................ 19

                b.    The SIJ Statute specifically defers to state court's authority
                    to make SIJ Findings pursuant to state law................................... 20

           2.    The Government's New SIJS Eligibility Requirement Misinterprets
                State Law................................................................................................... 21

           3.    The New SIJS Eligibility Requirement Contravenes Congressional
                Intent to Expand SIJS Eligibility ............................................................ 23

           4.    The Government's New Policy Abuses the Consent Function................. 24

      C.    The Government's New SIJS Eligibility Requirement Is a Change in
           Government Policy and the Government Failed to Supply a Reasoned
           Analysis for the Change ........................................................................................ 26

      D.    The Government's Adoption of the New SIJS Eligibility Requirement
           Violated the Notice Requirement Under Section 706 of the APA and 5
           U.S.C. § 552(A)(1)(D) ......................................................................................... 28

VI.   CONCLUSION ................................................................................................................... 29

1

## <u>TABLE OF AUTHORITIES</u>

2

<u>Page</u>

3

**CASES**

4

*Abbott Labs. v. Gardner,*
387 U.S. 136 (1967), *overruled on other grounds*, 430 U.S. 99 (1977) ...................................15

5

*Abramski v. United States,*
134 S. Ct. 2259 (2014) ...........................................................................................................23

6

7

*Aid Ass'n for Lutherans v. U.S. Postal Serv.,*
321 F.3d 1166 (D.C. Cir. 2003) .............................................................................................24

8

*Atchison, Topeka & Santa Fe Ry. Co. v. Wichita Bd. of Trade,*
412 U.S. 800 (1973).................................................................................................................26

9

10

*Bahr v. EPA,*
836 F.3d 1218 (9th Cir. 2016).................................................................................................17

11

*Bennett v. Spear,*
520 U.S. 154 (1997)...................................................................................................3, 15, 16, 17

12

*Bowen v. Georgetown Univ. Hosp.,*
488 U.S. 204 (1988).................................................................................................................23

13

14

*Brown v. Department of Homeland Sec.,*
313 F. Supp. 3d 1252 (W.D. Wash. 2018).............................................................................20

15

*Budhathoki v. Nielsen,*
898 F.3d 504 (5th Cir. 2018)...................................................................................................22

16

17

*Cal. Trout v. F.E.R.C.,*
572 F.3d 1003 (9th Cir. 2009).................................................................................................27

18

*Chevron v. NRDC*
467 U.S. 837 (1983)..............................................................................................................6, 20

19

20

*Citizens to Preserve Overton Park, Inc. v. Volpe,*
401 U.S. 402 (1971).................................................................................................................13

21

*Dickson v. Sec'y of Def.,*
68 F.3d 1396 (D.C. Cir. 1995) ...............................................................................................27

22

23

*Encino Motorcars, LLC v. Navarro,*
136 S.Ct. 2117 (2016).............................................................................................................27

24

*F.C.C. v. Fox Television Stations, Inc.,*
556 U.S. 502 (2009).................................................................................................................27

25

*Galvez v. Cuccinelli,*
No. C19-0321RSL, 2019 WL 3219372 (W.D. Wash. July 17, 2019) ........................... passim

26

27

*Gomez-Sanchez v. Sessions,*
892 F.3d 985 (9th Cir. 2018)...................................................................................................18

28

1

### TABLE OF AUTHORITIES
(continued)

2

Page

3    *Hernandez v. Williams, Zinman & Parham PC*,
        829 F.3d 1068 (9th Cir. 2016)................................................................................23

4

     *Humane Soc'y of the U.S. v. Locke*,

5        626 F.3d 1040 (9th Cir. 2010)................................................................................27

6    *I.N.S. v. Yueh-Shaio Yang*,
        519 U.S. 26 (1996).........................................................................................26, 27

7
     *Indus. Customers of Nw. Utils v. Bonneville Power Admin.*,
8        408 F.3d 638 (9th Cir. 2005)................................................................................15

9    *Jimenez–Cedillo v. Sessions*,
        885 F.3d 292 (4th Cir. 2018)................................................................................26

10
     *Kazarian v. U.S.C.I.S.*,
11       596 F.3d 1115 (9th Cir. 2010)..............................................................................18

     *Lamie v. U.S. Tr.*,
12       540 U.S. 526 (2004)............................................................................................23

13   *Lone Mountain Processing, Inc. v. Sec'y of Labor*,
        709 F.3d 1161 (D.C. Cir. 2013) ..........................................................................26

14
     *Mines v. Sullivan*,
15       981 F.2d 1068 (9th Cir. 1992)..............................................................................23

16   *Morton v. Ruiz*,
        415 U.S. 199 (1974)............................................................................................29

17   *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*,
        463 U.S. 29 (1983)..............................................................................................26
18

19   *Navajo Nation v. United States Dep't of Interior*,
        819 F.3d 1084 (9th Cir. 2016)..............................................................................15

20   *Occidental Eng'g Co. v. I.N.S.*,
        753 F.2d 766 (9th Cir. 1985)................................................................................13

21
     *Perez v. Mortgage Bankers Ass'n*,
22       135 S. Ct. 1199 (2015).........................................................................................27

23   *Perez-Olano v. Gonzalez*,
        248 F.R.D. 248 (C.D. Cal. 2008) .....................................................................8, 20

24   *Public Citizen, Inc. V. F.A.A.*,
        988 F.2d 186 (D.C. Cir. 1993) .............................................................................27
25

26   *R.F.M. v. Nielsen*,
        365 F.Supp.3d 350 (S.D.N.Y. 2019)............................................................... passim

27   *Ramos v. Nielsen*,
        321 F.Supp.3d 1083 (N.D. Cal. 2018) ..................................................................27

28

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

iii

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PARTIAL SUMMARY JUDGMENT

## TABLE OF AUTHORITIES
### (continued)

**Page**

*S.E.C. v. Chenery Corp.*,
  332 U.S. 194 (1947)........................................................................................27

*San Diego Air Sports Ctr., Inc. v. F.A.A.*,
  887 F.2d 966 (9th Cir. 1989)............................................................................29

*Schneider v. Chertoff*,
  450 F.3d 944 (9th Cir. 2006)............................................................................23

*SEC v. Chenery Corp.*,
  318 U.S. 80 (1943)..........................................................................................18

*Sec'y of Agric. v. U.S.*,
  347 U.S. 645 (1954)........................................................................................26

*Solid Waste Agency of N. Cook Cty. v. U.S. Army Corps of Eng'rs*,
  531 U.S. 159 (2001)........................................................................................20

*W.A.O. v. Cuccinelli*,
  No. 219CV11696MCAMAH, 2019 WL 3549898 (D.N.J. July 3, 2019) ....................... passim

*W. Radio Serv. Co. v. U.S. Forest Serv.*,
  578 F.3d 1116 (9th Cir. 2009)..........................................................................14

*Weisberg v. U.S. Dep't of Justice*,
  489 F.2d 1195 (D.C. Cir. 1973)........................................................................29

*Western States Petroleum Assn' v. EPA*,
  87 F.3d 280 (9th Cir. 1996)...............................................................................4

### STATUTES

5 U.S.C. § 552 ..................................................................................................4

5 U.S.C. § 552(A)(1)(D) ..............................................................................28, 29

5 U.S.C. § 704 ................................................................................................15

5 U.S.C. § 706(2) ............................................................................................13

5 U.S.C. § 706(2)(A) ..................................................................................14, 17

5 U.S.C. § 706(2)(C)-(D) .................................................................................14

5 U.S.C. § 706(2)(D) .....................................................................................4, 28

5 U.S.C. § 706(2)(E) ........................................................................................17

8 U.S.C. § 1101(a)(27)(J)...........................................................................2, 8, 16

8 U.S.C. § 1101(a)(27)(J)(i)......................................................................18, 19, 20

8 U.S.C. § 1101(a)(27)(J)(ii)............................................................................20

8 U.S.C. § 1101(a)(27)(J)(iii)......................................................................10, 24

8 U.S.C. § 1101(b)(1).........................................................................................5

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PARTIAL SUMMARY JUDGMENT

### TABLE OF AUTHORITIES
**(continued)**

**Page**

Cal. Code Civ. Proc. § 155 ................................................................22

Cal. Code Civ. Proc. § 155(a) ..........................................................22

Cal. Code Civ. Proc. § 155(a)(1) ...................................................9, 22

Cal. Code Civ. Proc. § 155(a)-(b)(2) ................................................22

Cal. Code Civ. Proc. § 155(b) ...........................................................22

Cal. Prob. Code § 1510.1 ...........................................................passim

Cal. Prob. Code § 1514 .......................................................................9

Cal. Prob. Code § 2351 ..................................................................9, 10

Cal. Welf. & Inst. Code, §§ 200-987 .................................................21

Pub. L. No. 101-649 § 153, 104 Stat. 4978 (1990) .............................5

Pub. L. No. 105-119, Nov. 26, 1997 ...................................................7

Pub. L. No. 110-457 § 235(d), 122 Stat. 5044, 5080 (2008) ..............7

TVPRA § 235(d) ...............................................................................20

TVPRA § 235(d)(1)(A)(i) .................................................................24

TVPRA § 235(d)(2) ...........................................................................11

TVPRA § 235(d)(6) ...........................................................................24

### OTHER AUTHORITIES

8 C.F.R. § 204.11 ............................................................................5, 6

8 C.F.R. § 204.11(a) .........................................................6, 8, 19, 22

8 C.F.R. § 204.11(d)(i)-(ii) ...............................................................19

8 C.F.R. § 204.11(d)(2)(i)-(ii) ...........................................................19

8 C.F.R. § 205.1 ..................................................................................6

8 C.F.R. § 245.1 ..................................................................................6

58 Fed. Reg. 42843, 42850 (August 12, 1993) ..............................5, 16

76 Fed. Reg. 54978-01, 54983 (Sept. 6, 2011), 2011 WL 2882775 ........24

6 USCIS PM J.2 (B) ............................................................................8

6 USCIS PM J.2(D)(5) .....................................................................7, 24

6 USCIS PM J(4)(E)(1) ........................................................................8

Aytes, Michael, Interoffice Mem., USCIS, AFM Update: Ch. 22: Employment-
Based Petitions (AD03-01), at 82 (Sept. 12, 2006) ..............................8

Cal. Assemb. Bill No. 900 (2015-2016 Reg. Sess.) § (a)(6) ...................9

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PARTIAL SUMMARY JUDGMENT

1

2

### TABLE OF AUTHORITIES
**(continued)**

**Page**

3

Judicial Council of Cal., New Rules and Forms Implementing AB 900 in
Guardianship Proc. ("Implementing AB 900"), at 3 (June 30, 2016).......................................10

4

Mem. from Donald Neufeld, Acting Associate Dir., USCIS, *Trafficking Victims
Protection Reauthorization Act of 2008: Special Immigrant Juvenile Status
Provisions* at 3 (March 24, 2009),
https://www.uscis.gov/sites/default/files/USCIS/Laws/Memoranda/Static_Files
_Memoranda/2009/TVPRA_SIJ.pdf.........................................................................7

Office of Chief Counsel, "Clarification of Interpretation of Reunification with One
or Both Parents for Purposes of Establishing SIJ Classification"...........................................10

### RULES

Fed. R. Civ. P. 56(a)..............................................................................................13

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PARTIAL SUMMARY JUDGMENT

### NOTICE OF MOTION FOR PARTIAL SUMMARY JUDGMENT

PLEASE TAKE NOTICE that on October 9, 2019, at 1:00 p.m. at 280 S. 1st Street, San Jose, CA, Courtroom 5, Plaintiffs J.L., M.D.G.B., J.B.A. and M.G.S. (collectively, "Plaintiffs"), on behalf of themselves and all others similarly situated, will and hereby do move this Court, pursuant to Rule 56 of the Federal Rules of Civil Procedure, for an order granting partial summary judgment in favor of Plaintiffs on Counts Two, Three, Four, and Five of the First Amended Complaint ("FAC") against Defendants Kenneth Cuccinelli, Kevin McAleenan, Robert Cowan, United States Department of Homeland Security, and United States Citizenship and Immigration Services ("USCIS") (collectively, "the Government").  Plaintiffs also move for an order granting such other and further relief as the Court deems just and proper.

This motion is based upon this Notice of Motion; the accompanying Memorandum of Points and Authorities; the accompanying declarations of Plaintiffs and class representatives J.L. ("J.L. Decl."), M.D.G.B. ("M.D.G.B. Decl."), J.B.A. ("J.B.A. Decl."), M.G.S. ("M.G.S. Decl."), the Certified Administrative Record ("CAR") and supplement thereto ("Supp. CAR"),[1] the Appendix of Evidence,[2] all other pleadings or documents on file or to be filed, and any other written or oral evidence or argument presented at the time or before this motion is heard.

---

[1] The CAR can be found at Dkt. 133.  The Supp. CAR can be found at Dkt. 164.

[2] All Declarations and Exhibits referenced herein are included in the concurrently filed Appendix of Evidence.

1

**MEMORANDUM OF POINTS AND AUTHORITIES**

2

**I.     INTRODUCTION**

3        A government agency cannot arbitrarily adopt and impose a new eligibility requirement for

4   humanitarian immigration relief when that requirement is contrary to the plain language of a

5   federal statute enacted by Congress.  In 1993, Congress enacted a statute to confer Special

6   Immigrant Juvenile Status ("SIJS"), a form of humanitarian relief created to protect vulnerable

7   immigrant children, by providing a path to lawful permanent residence.  But in early 2018,

8   without the notice or explanation required by the Administrative Procedure Act ("APA") and

9   relying on obsolete regulations, the Government imposed a brand-new requirement for SIJS not

10  set forth in or supported by the governing statute.  As a result of this improper and unsupported

11  new requirement, Plaintiffs and class members—who meet every requirement for SIJS that the

12  Special Immigrant Juvenile Statute and regulations impose—are categorically excluded from

13  obtaining SIJS.

14       The relevant facts are undisputed. Plaintiffs and the class they represent are immigrant

15  children, aged 18 to 20 years old at the time of the relevant findings, who were abandoned,

16  abused, and/or neglected and who meet the requirements for SIJS as set forth in the Immigration

17  and Nationality Act ("INA"), 8 U.S.C. § 1101(a)(27)(J) (the "SIJ Statute"), and the William

18  Wilberforce Trafficking Victims Protection Reauthorization Act of 2008 ("TVPRA").  Each

19  Plaintiff and class member is an unmarried child who has been placed under the care of a

20  guardian by the Probate Division of the California Superior Court ("Probate Court") pursuant to

21  express authority set forth in California Probate Code section 1510.1(a) ("Section 1510.1(a)")

22  (applying the Code's provisions on guardianships to certain children 18-20 years of age).  And

23  each Plaintiff and class member is the subject of a Probate Court order finding that reunification

24  with at least one of his or her parents is not viable due to abandonment, abuse, or neglect, and that

25  it is not in the child's best interest to return to his or her country of origin (the "SIJ Findings").

26  Since the adoption of Section 1510.1(a) in 2016, if a California Probate Court issued such

27  findings pursuant to state law, and the findings were supported by the factual record, a petitioning

28  18-to-20-year-old child would regularly receive SIJS and the benefits that follow, including a path

1   to lawful permanent residence in the United States.

2        However, in early 2018, the Government inexplicably and impermissibly adopted, through the

3   publication of internal materials and without any notice to the public, a new, additional, and

4   unlawful requirement for SIJS: that the state court issuing SIJ Findings must have the authority to

5   return a child to the custody of his or her parent, in order to qualify as a "juvenile court" under the

6   SIJ Statute.  This requirement appears nowhere in the current statute or any effective regulation, but

7   is instead derived solely from obsolete language in regulations that are outdated and inconsistent

8   with the amended current version of the SIJ Statute.   In adopting this new requirement, the

9   Government arbitrarily reversed decades of its practice of appropriately recognizing a state juvenile

10   court's primacy in rendering the underlying eligibility determinations.   Although the SIJ Statute

11   does not require that reunification be possible, the Government wrongfully denied SIJS based on

12   the conclusion that "California law does not appear to provide the courts with the power and legal

13   authority to make decisions about a parent's ability to have custody of an individual over 18."  CAR

14   108, 113.  Thus, in effect, the Government's new rule precludes California courts from ever making

15   valid SIJ Findings for any child in California who otherwise qualifies under Section 1510.1(a).  And

16   because every Plaintiff and every class member has received or will receive SIJ Findings pursuant

17   to Section 1510.1(a) and otherwise meet the statutory requirements for SIJS, the Government's new

18   SIJS eligibility requirement categorically excludes each of them from obtaining the humanitarian

19   relief they need, qualify for, and are entitled to.  The Government's new SIJS eligibility requirement

20   must be set aside.

21        As an initial matter, contrary to the Government's argument, this Court has the power to

22   review and set aside the Government's new SIJS eligibility requirement.  Pursuant to *Bennett v.*

23   *Spear*, 520 U.S. 154, 177-78 (1997), the Government's adoption of the legal analysis — "that

24   California juvenile courts do not have jurisdiction to issue appropriate dependency orders for SIJ

25   petitioners over the age of 18 because those courts do not have authority to order reunification"

26   — is a final agency action that is subject to review under the APA.  Dkt. 161, p. 3-4.  This Court

27   already held that the Government's decision to adopt a new SIJS eligibility requirement and

28   resulting categorical foreclosure of the Plaintiffs' ability to receive SIJS was the consummation of

1   the agency's decision-making process, determines "rights or obligations," and is an action from

2   which "legal consequences flow" and therefore is a reviewable final agency action.  *See* Dkt. 49 at

3   p. 22-23; Dkt. 142 at p. 4-7.

4       Next, the Government's new SIJS eligibility requirement is arbitrary and capricious in

5   violation of the APA because it is (a) contrary to the plain language of the SIJ Statute and is

6   supported only by a reading of an obsolete regulation that conflicts with the current statute,

7   (b) based on a misinterpretation of state law, (c) fundamentally at odds with congressional intent,

8   and (d) an abuse of the Government's consent function.

9       The Government's new SIJS eligibility requirement also violates the APA because the

10  Government failed to provide any adequate basis or reasoned explanation for implementation of the

11  new requirement and abrupt departure from its past practices.  As this Court has already explained,

12  an "interpretation of the SIJ statute to require state courts to have the power to compel reunification

13  is 'undeniably a change in agency interpretation.'"  Dkt. 49 at 16:15-18 (quoting *Western States*

14  *Petroleum Assn' v. EPA*, 87 F.3d 280, 284 (9th Cir. 1996)).

15      Finally, the process by which the Government implemented its new policy violated the notice

16  procedures of the APA, which require courts to find unlawful and set aside agency action found to

17  be "without observance of procedure required by law[.]"  5 U.S.C. § 706(2)(D).   Indeed, the

18  Certified Administrative Record in this case makes clear that the Government instituted this new

19  requirement for SIJS eligibility without *any* notice to the public as required under 5 U.S.C. § 552.

20      Notably, every other court to consider the Government's new SIJS eligibility requirement has

21  found that the imposition of the "reunification" requirement is inconsistent with the SIJ Statute's

22  plain language, exceeds USCIS's authority, and is unreasonable, and has enjoined the Government

23  from enforcing the requirement or has set aside the new requirement and granted summary judgment

24  to the plaintiffs.   The court in *R.F.M. v. Nielsen* granted summary judgment to plaintiffs earlier this

25  year, finding that the new requirement (as applied to children placed in guardianships by New York

26  family courts) contravenes the SIJ Statute, lacks a reasonable explanation, was premised on an

27  erroneous interpretation of state law, and was not enacted with adequate notice as required by the

28  APA.  *R.F.M. v. Nielsen*, 365 F.Supp.3d 350, 377-78, 383 (S.D.N.Y. 2019).  The court in *Galvez v.*

1    *Cuccinelli* enjoined the Government from denying SIJS "on the ground that a Washington state court

2    does not have jurisdiction or authority to 'reunify' an immigrant with his or her parents," and

3    determined that plaintiffs established they are likely to succeed on their claims that (1) the new SIJS

4    requirement "is not in accordance with federal law," (2) "USCIS's new policy is arbitrary and

5    capricious because the agency failed to provide a reasoned explanation," and (3) "USCIS failed to

6    follow the APA's procedural requirements." *Galvez v. Cuccinelli*, No. C19-0321RSL, 2019 WL

7    3219372, at *5-6 (W.D. Wash. July 17, 2019).   And the court in *W.A.O. v. Cuccinelli* held that

8    "Defendants' imposition of a new requirement for SIJS, and delay, denial, or revocation of Plaintiffs'

9    and class members' SIJS petitions," violated the APA by "(1) exceeding the agency's statutory

10   authority under the [INA], (2) usurping the authority granted to state courts by the INA, (3) depriving

11   Plaintiffs and class members of due process of law, and (4) failing to follow prescribed procedures."

12   *W.A.O. v. Cuccinelli,* No. 219CV11696MCAMAH, 2019 WL 3549898, at *1 (D.N.J. July 3, 2019).

13          The material facts and the law underlying Plaintiffs' claims are undisputed.   Thus, Plaintiffs

14   respectfully request that the Court enter summary judgment on behalf of Plaintiffs and the class as

15   to Counts Two, Three, Four, Five, and Six and set aside the Government's unlawful new policy.

16   **II.    LEGAL BACKGROUND**

17          **A.    The SIJ Statute and Deference to State Courts.**

18          Congress originally created SIJS in 1990 to provide a pathway to permanent residence for

19   certain vulnerable, undocumented children[3] eligible for foster care.   Immigrant Act of 1990, Pub. L.

20   No. 101-649 § 153, 104 Stat. 4978 (1990) [Supp. CAR 00000440-531].   In creating SIJS, Congress

21   deferred to the state courts' expertise in child welfare matters by requiring that a state juvenile court,

22   applying state law, must determine whether a child satisfies the substantive eligibility criteria for

23   SIJS.   *See* Special Immigrant Status, 58 Fed. Reg. 42843, 42850 (August 12, 1993) (codified at 8

24   C.F.R. § 204.11 [Supp. CAR 00000747-749]); CAR 078-79; Supp. CAR 00000233-235.   In the SIJ

25   _____

26   [3] "Child" is defined by the INA and California law as a person under 21 years of age.   8 U.S.C.
     § 1101(b)(1) (defining "child" to include an unmarried individual under the age of 21) [Supp. CAR
27   00000307-309]; Cal. Prob. Code § 1510.1(a)-(d) (defining "child" to include juveniles ages 18-20
     seeking SIJ Findings concurrently with the appointment of a guardian) [Supp. CAR 00000630].
28   *See also* CAR 018; CAR 028.

1   Statute's first iteration, a child would be eligible for SIJS if he or she was the subject of a state

2   juvenile court order finding that (1) the child was dependent on the court; (2) the child was eligible

3   for long-term foster care; and (3) it would not be in the child's best interests to be returned to her

4   home country.  *See* Supp. CAR 00000440-531.

5         In regulations issued in 1993 and since superseded by statute, [4] the Immigration and

6   Nationality Service (INS), Defendant USCIS's predecessor agency, defined certain statutory terms

7   and made clear that the SIJ Statute recognizes the primacy of state courts in child welfare decisions.

8   *See* CAR 069-79; Supp. CAR 00000221-235.   The regulations, which were promulgated to

9   implement the SIJ Statute as it read in 1993, recognized a child as "eligible for long-term foster care"

10  within the meaning of the then-effective SIJ Statute when a juvenile court had determined that

11  "family reunification is no longer a viable option."  *See* 8 C.F.R. § 204.11(a) [Supp. CAR 00000747]

12  (superseded by statute at PL 110-457, Dec. 23, 2008 [Supp. CAR 00000580-623]); CAR 078; Supp.

13  CAR 00000234.  The 1993 regulation defined "juvenile court" as "a court located in the United

14  States having jurisdiction under State law to make judicial determinations about the custody and care

15  of juveniles."  *Id*.  In explaining the regulatory definitions, the INS made clear that a child *need not*

16  actually be placed in foster care in order to be eligible for SIJS.  *Id*.  Instead, the INS recognized that

17  children in a variety of circumstances could seek SIJS, and that state juvenile courts should have the

18  flexibility to order whatever placement best served the child's interests without disqualifying the

19  child from SIJS eligibility, specifically including guardianship.  *Id*.

20        Since creating SIJS nearly three decades ago, Congress has twice made major substantive

21  revisions to the SIJ Statute, but the regulations *have never been revised* to align with the statutory

22  changes.  *See* CAR 008.  First, in 1997, Congress added that a child's long-term foster care eligibility

23  must arise from abuse, abandonment, or neglect as defined under state law, and expanded eligibility

24  to children *either* deemed "dependent" on the juvenile court *or* "legally committed to or placed under

---

[4] To the extent that current federal regulations (*see* 8 C.F.R. §§ 204.11, 205.1, 245.1) are contrary to congressional intent as expressed in the statutory amendments, they have been superseded.  *See Chevron v. NRDC* 467 U.S. 837, 842–43 & n.9 (1983).  USCIS SIJS training issued in 2016 explicitly acknowledged that the regulations were not current.  *See* CAR 008 ("Specifically, it is important to note that the eligibility requirements in the SIJ regulations are not current.")

1   the custody of a state agency." *See* PL 105-119, Nov. 26, 1997 [Supp. CAR 00000392].  Congress

2   also conferred authority on the Attorney General (at the time, the head of the INS's parent agency) to

3   "consent" to the juvenile court order.  *Id.*  Then in 2008, through the TVPRA, Congress again

4   amended the SIJ Statute to greatly expand its reach.

5          The TVPRA made five major changes to SIJS eligibility and adjudication.  *See* TVPRA, Pub.

6   L. 110-457 § 235(d), 122 Stat. 5044, 5080 (2008) [Supp. CAR 00000580-623].  First, it eliminated

7   the requirement that children be "eligible for long term foster care."  (As noted, the related

8   regulations were never updated to reflect this deletion from the SIJ Statute, and still use and explain

9   this obsolete and irrelevant term.)  The TVPRA replaced the foster care eligibility requirement with a

10  new requirement that a state juvenile court must find that the child's reunification with at least one

11  parent was not viable due to abandonment, abuse, neglect, or a similar basis under state law.

12  *Id.*  Second, it expanded SIJS eligibility to include a number of additional types of custodial

13  arrangements, including the legal commitment or placement of the child in the custody of an

14  individual.  *Id.*  Third, it narrowed the consent function, requiring the DHS Secretary (the current

15  head of USCIS's parent agency) to consent to a grant of SIJS rather than to the underlying state court

16  order.[5]  *Id.*  The consent determination is an acknowledgement that the request for SIJ classification

17  is bona fide (sought primarily for the purpose of obtaining relief from abuse, abandonment, or

18  neglect, or similar basis under state law, and not solely for immigration purposes).  Mem. from

19  Donald Neufeld, Acting Associate Dir., USCIS, *Trafficking Victims Protection Reauthorization Act*

20  *of 2008: Special Immigrant Juvenile Status Provisions* at 3 (March 24, 2009),

21  https://www.uscis.gov/sites/default/files/USCIS/Laws/Memoranda/Static_Files_Memoranda/2009/T

22  VPRA_SIJ.pdf. Fourth, the TVPRA added age-out protections to ensure that children who turned 21

23  while their SIJS petitions were pending would not be excluded from relief.  *Id.*  Fifth and finally, the

24  TVPRA added a 180-day statutory deadline for adjudication that begins to run when the SIJS petition

25  is filed.  *Id.*

26  _____

[5] The Government has recognized that the consent requirement does not confer discretion to the
Government; instead, "the Government generally consents to the grant of SIJ classification when

27  the order includes or is supplemented by a reasonable factual basis for all of the required findings."
CAR 042, 043; *see also* 6 USCIS Policy Manual ("PM") J.2(D)(5) [CAR 089-99; Supp. CAR

28  00002471].

Thus, under current law, to be eligible for SIJS, the petitioner must be under 21 years of age, unmarried, and the subject of a state juvenile court order with specific findings that reunification with at least one parent is not viable due to abuse, abandonment, or neglect and that it is not in the petitioner's best interest to return to his or her home country.  8 U.S.C. § 1101(a)(27)(J) [Supp. CAR 00000300]; 6 USCIS PM J.2 (B) [CAR 086-87; Supp. Car. 00002468-2469]; *see also* CAR 017; CAR 025.  The Secretary of DHS must also consent to the SIJS grant.[6]  *Id.*

### B.   The Relevant California Legal Framework.

As explained above, in drafting the SIJ Statute, consistent with state courts' general jurisdiction over child welfare matters, "Congress appropriately reserved for state courts the power to make child welfare decisions, an area of traditional state concern and expertise."  *Perez-Olano v. Gonzalez*, 248 F.R.D. 248, 265 (C.D. Cal. 2008).  Throughout the SIJ Statute's history, the state juvenile court's primacy in rendering the underlying eligibility determinations under state law has not changed.  Indeed, the Government has continuously recognized this mandate and promulgated agency practices to ensure that adjudicators defer to state court findings.  *See* CAR 078-79; Supp. CAR 00000233-235; Michael Aytes, Interoffice Mem., USCIS, AFM Update: Ch. 22: Employment-Based Petitions (AD03-01), at 82 (Sept. 12, 2006) ("The task of the adjudicator is not to determine whether the [SIJ Finding] was properly issued"); CAR 088-89; Supp. CAR 00000085; Supp. CAR 00002470-2471.  Given Congress's intent and the clear language of the SIJ Statute, the Government must defer to a state court's SIJ Findings.  CAR 089-90; Supp. CAR 00002471-2472.

California Probate Courts are "juvenile courts" within the meaning of the SIJ Statute.  CAR 024; *see also* 8 C.F.R. § 204.11(a) [Supp. CAR 00000747] (defining "juvenile court" as "a court located in the United States having jurisdiction under State law to make judicial determinations about

---

[6] The DHS Secretary delegates authority to consent to the grant of SIJS to USCIS.  6 USCIS PM J(4)(E)(1) [CAR 097].  The USCIS PM explains that the agency relies on the state court's expertise in these matters, and the agency is not to reweigh the evidence on which the state court relied in issuing a Special Findings Order.  CAR 089-99; Supp. CAR 00002471; *cf.* Dkt. 49 at n.6 (explaining that even if "the statute's consent requirement requires it to review SIJS petitions to determine whether the juvenile court order is bona fide, ... whether a juvenile court order is bona fide has no bearing on whether the issuing court had jurisdiction").  The USCIS Ombudsman explained that the agency should not "substitute its application of State law for that of the court's exercise of dependency."  Supp. CAR 00002690.

1    the custody and care of juveniles."). And California law could not be clearer that the Probate Court
2    has jurisdiction to make determinations regarding the custody and care of juveniles and that such
3    jurisdiction extends to Plaintiffs and the class they represent. CAR 024; *see also* Cal. Code Civ.
4    Proc. § 155(a)(1) (defining "juvenile court" as including the juvenile, probate, and family divisions
5    of the Superior Court) [Supp. CAR 00000659].

6        In 2015, the California Legislature passed Assembly Bill 900 ("AB 900"), which created
7    custodial relationships for 18-to-20-year-old children, codified in Probate Code section 1510.1. AB
8    900 authorizes California Probate Courts to appoint guardians for immigrant children aged 18 to 20
9    and specifically defines the terms "minor," "child," and "ward" to include certain juveniles aged 18
10   to 20. Cal. Prob. Code § 1510.1(a)-(d) [Supp. CAR 00000630]. The California Legislature found
11   guardianships appropriate and "necessary" for many immigrant children aged 18 to 20 because they
12   are vulnerable and have "a need for a custodial relationship with a responsible adult," and because
13   these "custodial arrangements promote permanency and the long-term well-being of immigrant
14   children present in the United States who have experienced abuse, neglect, or abandonment." Cal.
15   Assemb. Bill No. 900 (2015-2016 Reg. Sess.) § (a)(6) [Supp. CAR 00000625].

16       AB 900 did not create a new type of guardianship; it simply expanded the Probate Court's
17   authority to appoint a "guardian of the person" as already defined by California law. *See* Cal. Prob.
18   Code § 1510.1 [Supp. CAR 00000630] (extending authority to appoint a "guardian of the person" to
19   certain 18-to-20-year-olds); Cal. Prob. Code § 1514 (governing standard for appointing a "guardian
20   of the person"); Cal. Prob. Code § 2351 [Supp. CAR 00000638] (setting forth powers of a "guardian
21   of the person"). To appoint a guardian of the person under Probate Code section 1510.1(a), as with
22   any other guardian of the person, a court must hold an evidentiary hearing and find that the
23   appointment is "necessary or convenient." *See* Cal. Prob. Code §§ 1514(a); 1510.1(a) [Supp. CAR
24   00000630]. Once appointed, the guardian has the "care, custody, and control" of the person. Cal.
25   Prob. Code § 2351(a) [Supp. CAR 00000638]. *See also* Supp. CAR 00000630 (establishing that a
26   guardian of an 18-to-20-year-old seeking SIJ Findings is a "guardian of the person").

27       Although Section 1510.1(a) guardianships must be made "in connection" with a request for
28

SIJ Findings and require the child's consent to the appointment of the guardian[7], the impact of such an appointment is not limited to immigration purposes solely.  The Legislature found guardianships for children between ages 18 and 20 "necessary" because many immigrant children are particularly vulnerable and "need [] a custodial relationship" as they adjust to a "new cultural context, language, and education system, and recover from the trauma of abuse, neglect, and abandonment."  Supp. CAR 00000625.  Guardians appointed pursuant to Section 1510.1(a) have the same "care, custody, and control" and responsibility as guardians for children under the age of 18.  Cal. Prob. Code § 2351(a); Supp. CAR 00000638; Supp. CAR 00001989.  This includes an obligation to provide for the safety of the child, and guiding and assisting the child in medical, educational, and other services.  Accordingly, a guardianship granted under Section 1510.1(a) conforms to the federal government's interpretation of a bona fide application for SIJS because it is granted to fulfill the child's need for a custodial relationship and not primarily to obtain an immigrant benefit.  *See* 8 U.S.C. § 1101(a)(27)(J)(iii); Supp. CAR 00000300; CAR 089-99; Supp. CAR 00002471-2472.

## III.   STATEMENT OF FACTS

### A.   In February 2018, the Government Adopted a New Requirement That the State Court Issuing SIJ Findings Have the Authority to Return the Child to the Custody of Her Parent.

On February 26, 2018, the Government issued legal guidance through its Office of Chief Counsel ("OCC") titled "Clarification of Interpretation of Reunification with One or Both Parents for Purposes of Establishing SIJ Classification" (the "Legal Guidance").[8]  The Legal Guidance imposed a new requirement for SIJS eligibility that categorically excludes from SIJS those children in California who received guardianships under Section 1510.1(a).  CAR 103-104.   The Legal Guidance states: "In order for a juvenile court to have authority to determine the non-viability of family reunification, the court must <u>have competent jurisdiction to determine whether a parent will</u>

---

[7] As a prerequisite to the guardianship, the child must consent to the guardian's exercise of "care, custody, and control"; once a guardian is appointed under Section 1510.1(a), the guardian holds these powers until the child turns 21 or secures judicial termination of the guardianship.  Judicial Council of Cal., New Rules and Forms Implementing AB 900 in Guardianship Proc. ("Implementing AB 900"), at 3 (June 30, 2016) [Supp. CAR 00001989].

[8] The Legal Guidance was internally distributed, and the CAR is devoid of any indication that the Legal Guidance was subject to public notice and comment.

1   be able to gain custody of the petitioner." CAR 103 (emphasis in original). Thus, "in order for a

2   court order to be valid for the purpose of establishing SIJ eligibility," the Legal Guidance requires a

3   state court to "have competent jurisdiction to determine both whether a parent could regain custody

4   and to order reunification, if warranted." *Id*. To support the new requirement, the Legal Guidance

5   cites *the outdated and obsolete 1993 regulations* implementing the long-term foster care eligibility

6   requirement that *Congress removed from the SIJ Statute* in 2008. *Id*.

7          On April 30, 2018, the Government internally published portions of the Legal Guidance,

8   along with further elaboration of the new requirement's applicability to SIJS petitions, in its

9   Consolidated Handbook of Adjudications Procedures ("CHAP"). CAR 107-118.[9] Lifting statements

10  directly from the Legal Guidance, the CHAP states that "a state court order finding that parental

11  reunification is not viable will not be considered valid for the purpose of establishing SIJ eligibility if

12  the evidence submitted by the petitioner does not establish the court's jurisdiction under state law to

13  place the child under the custody of the allegedly unfit parent." CAR 108. The CHAP specifically

14  instructs that Section 1510.1(a) "does not appear to provide the courts with the power and legal

15  authority to make decisions about a parent's decision to have custody of an individual over 18."

16  CAR 113. However, the CHAP also instructs that the USCIS "should defer to the juvenile court's

17  interpretation of the relevant state laws" and, accordingly, "a petition should not be denied based on

18  USCIS' interpretation of the relevant state laws." CAR 108.

19      **B.**      **The Government Has Denied or Will Deny SIJS Petitions of Children Aged 18
                    to 20 Based on the New Requirement.**

20

21          At or around the time the Legal Guidance was issued, the Government began issuing Notices

22  of Intent to Deny ("NOID") and denials on SIJS petitions filed by children with guardianship orders

23  entered pursuant to Section 1510.1(a), many of which had been pending for months. *See* J.L. Decl. ¶

24  10; M.D.G.B. Decl. ¶ 12.[10] These NOIDs and denials continued all the way up to the time that this

---

25  [9] On March 6 and 7, 2018, USCIS's Field Operations Directorate expressed its intent to

26  incorporate the Legal Guidance into the CHAP, stating that "in order to ensure that the latest
    guidance gets out to the field and [National Benefits Center] we would like to include the

27  information in the CHAP until the Policy Manual can be updated." CAR 106; *see also* CAR 105.

28  [10] Instead of adjudicating SIJS petitions within 180 days as the law requires (*see* TVPRA
    § 235(d)(2)), the Government held them for many children over age 18. For example, the

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

1    Court granted Plaintiffs' Motion for Preliminary Injunction.  *See* Dkt. 49.

2        It is undisputed that before the issuance of the Legal Guidance, the Government *did not deny*

3    any bona fide SIJS petition from an 18-20 year old placed in a guardianship pursuant to

4    Section 1510.1(a) on *any* basis, let alone the basis that the Probate Court lacked the authority to

5    actually reunify the petitioner with her parents.[11]  Yet since the issuance of the Legal Guidance, the

6    Government *has not approved* a single SIJS petition for any member of the class.  *See* Dkt. 49 at

7    15:16-17 ("USCIS does not dispute Plaintiffs' assertion that it has not approved any SIJS petitions

8    since its adoption of the new policy in February 2018.").

9        For example, on March 2, 2018, within days of the issuance of the Legal Guidance, the

10   Government issued a NOID to J.L. applying the requirement articulated in the Legal Guidance.  *See*

11   J.L. Decl., ¶ 10 and Ex. E.  The NOID explained that the Government intended to deny J.L.'s petition

12   because "[t]here is no indication that [Section 1510.1(a)] gives the court the authority to reunify a

13   person over the age of 18 with a parent."  *See* J.L. Decl., ¶ 10, Ex. E.  Consistent with the Legal

14   Guidance, the NOID cited the outdated 1993 regulations defining eligibility for long-term foster care

15   as support for the reunification requirement.  *See* J.L. Decl., ¶ 10, Ex. E.  Then, on April 17, 2018,

16   about two weeks before publishing the Legal Guidance in the CHAP, the Government denied J.L.'s

17   SIJS Petition, again applying the new requirement articulated in the Legal Guidance and citing the

18   superseded 1993 regulations.  *See* J.L. Decl., ¶ 12 and Ex. G.  Similarly, on April 24, 2018, and July

19   20, 2018, respectively, the Government applied the new requirement explained in the Legal

20   Guidance when it issued NOIDs to M.D.G.B. and J.B.A.  M.D.G.B Decl., ¶ 12; J.B.A. Decl., ¶ 9.[12]

21   The Government's only asserted reason for denying these petitions is that the Probate Court does not

22   have the authority to force reunification of children over age 18 with a parent, and therefore,

23   Government received J.L.'s petition on March 21, 2017, and acted only after J.L. filed a mandamus
     complaint nine months later asking the court to order the Government to adjudicate her petition.
24   J.L. Decl., ¶¶ 8-10.  Likewise, the Government waited 17 months before issuing a NOID to J.B.A.
     J.B.A. Decl., ¶ 9, Ex. C.  M.G.S. has not received any update on his petition since it was received
25   by USCIS on September 8, 2017.  M.G.S. Decl., ¶ 8, Ex. C.

26   [11] The Government has not identified a single California SIJS petition that was denied on this
     basis prior to the issuance of the Legal Guidance, either in its CAR or in any filing.
27

28   [12] Plaintiff M.G.S., a 20-year-old Guatemalan child who was abused by his father and neglected
     by his mother, submitted his SIJS petition on August 29, 2017, and it is still pending.

1    according to the Government, the Probate Court could not make valid SIJ Findings.  *See* J.L. Decl.,

2    ¶ 12, Ex. G.  Thus, each of the Plaintiffs has had his or her SIJS petition denied, or his or her SIJS

3    petition will be denied, as a result of "Defendants' adoption of the new SIJ requirement."  Dkt. 142 at

4    7; *see also* Dkt. 49 at 24, Dkt. 161 at 3.

5    ## IV.    LEGAL STANDARDS FOR MOTION

6         Summary judgment shall be granted if the record shows there is no genuine dispute as to any

7    material fact and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).

8         When adjudicating a claim under the APA, this Court "shall hold unlawful and set aside

9    agency action" that is "found to be arbitrary, capricious, an abuse of discretion, or otherwise not in

10   accordance with law," "contrary to constitutional right, power, privilege, or immunity," "in excess of

11   statutory jurisdiction, authority, or limitations," or "without observance of procedure required by

12   law."  5 U.S.C. §706(2).  To ensure agency actions are reasonable and lawful, a court must conduct a

13   "thorough, probing, in-depth review" of the agency's reasoning and a "searching and careful"

14   inquiry into the factual underpinnings of the agency's decision.  *Citizens to Preserve Overton Park,*

15   *Inc. v. Volpe,* 401 U.S. 402, 415–16 (1971).  Adjudication at summary judgment is appropriate as it

16   is the district court's function "to determine whether or not as a matter of law the evidence in the

17   administrative record permitted the agency to make the decision it did."  *Occidental Eng'g Co. v.*

18   *I.N.S.,* 753 F.2d 766, 769 (9th Cir. 1985).

19   ## V.    THE GOVERNMENT'S ADOPTION AND IMPLEMENTATION OF ITS NEW SIJS
         ELIGIBILITY REQUIREMENT VIOLATES THE APA.

20

21        The Government's imposition of a new requirement that results in the *de facto* denial of SIJS

22   petitions for all members of the class is a reviewable final agency action that is contrary to the

23   governing law and should be struck down as an arbitrary and capricious government action.  Nothing

24   in the law or the Government's administrative record supports the reunification requirement it now

25   imposes on SIJS petitioners.  In *R.F.M.*, the District Court for the Southern District of New York

26   granted a motion for summary judgment brought by a class of SIJS petitioners whose SIJS petitions

27   were denied on the ground that the state court lacked the authority to reunify the 18-to-20-year-old

28   petitioners with their parents.  *R.F.M.*, 365 F.Supp.3d at 375-83.  The Plaintiffs in *R.F.M.* asserted a

near-identical[13] APA claim against these same defendants arising out of the same policy. *Id.* On March 15, 2019, the court ordered that the Government's "policy must be set aside*.*" *Id.* at 383. The *R.F.M.* court entered a final judgment against the Government, stating that "Defendants' conclusion that the New York Family Court lacks the jurisdiction and authority to enter SFOs for juvenile immigrants between their 18th and 21st birthdays" violates the SIJ Statute. Case No. 1:18-cv-05068-JGK, Dkt. 148 at 3. Further, the court found that the February 2018 Legal Guidance and update to the CHAP were a "fundamental reversal in [USCIS's] practices" and that the Government's change in policy was a final and reviewable agency action. *R.F.M.*, 365 F.Supp.3d at 375-76. In sum:

> Because the agency's policy is contrary to the plain language of the SIJ statute, lacks a reasoned explanation, is premised on erroneous interpretations of state law, and was not enacted with adequate notice, the policy is arbitrary and capricious, "in excess of statutory jurisdiction," and "without observance of procedure required by law. *See* 5 U.S.C. § 706(2)(A), (C)-(D).

365 F.Supp.3d at 383.[14]

Although *R.F.M.* is not binding on this Court, its analysis is instructive and persuasive authority for this Motion due to the near-identical issues and arguments. Like the *R.F.M.* plaintiffs, and as set forth below, Plaintiffs here contend that the Government's new eligibility requirement is a reviewable final agency action that should be set aside as violative of the APA for three reasons, each of which alone is sufficient: (1) the Government's actions contravene state and federal law and congressional intent; (2) even if the Government's new eligibility requirement were legally permissible (which it is not), it is unsupported by reasoned explanation; and (3) the new eligibility requirement was adopted without notice, despite the serious reliance interests at stake.

### A.    Adoption of the New SIJS Requirement Is a Reviewable Final Agency Action.

Under the APA, courts can review agency actions so long as the decision challenged represents a final agency action. *W. Radio Serv. Co. v. U.S. Forest Serv.*, 578 F.3d 1116, 1122 (9th

---

[13] *R.F.M.* involves the Government's erroneous interpretation of New York law. This case involves the Government's erroneous interpretation of California law and challenges the same policy on the same legal theory.

[14] The District of New Jersey and the Western District of Washington made similar findings when granting plaintiffs' motions for preliminary injunction and analyzing the same new SIJS requirement as it applied to SIJS petitioners aged 18 to 20 who had received underlying state court orders from New Jersey and Washington courts, respectively. *See W.A.O.*, 2019 WL 3549898; *Galvez*, 2019 WL 3219372.

Cir. 2009); *see also* 5 U.S.C. § 704.  An agency action is "final" —and thus reviewable—under the APA if two conditions are satisfied: (1) "the action must mark the consummation of the agency's decisionmaking process," and (2) "the action must be one by which rights or obligations have been determined, or from which legal consequences will flow."  *Bennett*, 520 U.S. 154, 177-78 (citation and internal quotations marks omitted).  The central inquiry is "whether the agency has completed its decisionmaking process, and whether the result of that process is one that will directly affect the parties."  *Indus. Customers of Nw. Utils v. Bonneville Power Admin.*, 408 F.3d 638, 646 (9th Cir. 2005).  The Supreme Court has instructed that this requirement should be interpreted in a "pragmatic" and "flexible" manner.  *Abbott Labs. v. Gardner*, 387 U.S. 136, 149-50 (1967), *overruled on other grounds*, 430 U.S. 99 (1977).

The Government's adoption of the new SIJ requirement is a final agency action because both *Bennett* conditions are satisfied.[15]

First, the Government's new requirement "mark[s] the consummation of the agency's decisionmaking process."  *Bennett*, 520 U.S. at 178 (citation and internal quotation marks omitted). Agency adoption of a position recommended by its internal legal counsel "marks the consummation of the agency's decisionmaking process as to that issue," regardless of whether the position is made public or followed a formal decisionmaking process.  *See Navajo Nation*, 819 F.3d at 1091-92 (holding that the Park Service's decision that federal law applied to certain Native American objects constituted final agency action under the *Bennett* test when the decision was based on the legal

---

[15] In various motions filed in this Action (*see*, *e.g.*, Dkt. 32; Dkt. 79; Dkt. 91), the Government has argued there is no final agency action because some of the named Plaintiffs and other members of the class have not yet received specific SIJS denials.  The Government's attacks missed the crux of Plaintiffs' lawsuit, which does not concern the final adjudication of SIJS petitions, but rather "seeks to curb the Government's adoption of a dubious legal theory to justify a blanket policy of denying SIJS petitions for immigrant juveniles between the ages of 18-20" whose petitions rely on findings from the California Probate Court.  Dkt. 49 (PI Order) at 21:15-18; *see also* Dkt. 112 (Class Cert. Order) at 15; Dkt. 142 (Motion to Dismiss Order) at 3:18-4:13; Dkt. 70 (FAC) ¶¶ 1-12, 45-61, 70-72, 75.  As Plaintiffs have explained and this Court has repeatedly recognized, this lawsuit challenges the Government's adoption of the new SIJS requirements and the unlawful basis on which the class members' denials (or prospective denials) of SIJS rest.  *See Navajo Nation v. United States Dep't of Interior*, 819 F.3d 1084 (9th Cir. 2016) (holding the final agency action being challenged can be the agency's legal interpretation rather than the specific decision made as a result of that interpretation).

1  opinion of the Interior solicitor).

2      Here, as this Court explained in its orders granting a preliminary injunction and denying the

3  Government's motion to dismiss, USCIS's revision of its CHAP pursuant to the Legal Guidance and

4  its subsequent implementation of the new SIJ requirement satisfies the first *Bennett* requirement.

5  Dkt. 49 at 22; Dkt. 142 at 4.   USCIS's adoption of the legal determination that the SIJ Statute

6  requires state courts to have the power to actually reunify petitioners with their parents marks the

7  consummation of its decision-making process. Dkt. 142 at 4.  *See also* Dkt. 161 at 4-5 ("The action

8  at issue is USCIS's adoption of the underlying legal analysis: that California juvenile courts do not

9  have jurisdiction to issue appropriate dependency orders for SIJ petitioners over the age of 18

10 because those courts do not have authority to order reunification.").   The CAR shows that the OCC

11 promulgated legal guidance advising National Benefits Center adjudicators how to interpret 8 U.S.C.

12 § 1101(a)(27)(J) and 8 C.F.R. § 204.11 on February 26, 2018.  *See* CAR at 103-104.  That guidance

13 was then adopted and published in the CHAP.  *See* CAR 106, 107-118.  Specifically, the CHAP

14 instructed adjudicators that petitions supported by Probate Code section 1510.1(a) did not satisfy the

15 new requirement.  *See* CAR 113.  These actions had the immediate and binding effect of directing

16 the Government adjudicators to apply the new requirement when adjudicating SIJS petitions, and

17 issue NOIDs or deny such petitions.  *See* J.L. Decl. ¶ 10; M.D.G.B. Decl. ¶ 12.  As already found by

18 both this Court and the *R.F.M* court, the Legal Guidance, the April revision of the CHAP, and the

19 adoption of the new SIJ eligibility requirement satisfy the first *Bennett* requirement because they

20 articulated the agency's legal determination and instructed adjudicators to apply it.  Dkt. 49 at 22;

21 Dkt. 142 at 4:14-6:9; *R.F.M.*, 365 F.Supp.3d at 375-76 ("The Policy embodied in the February 2018

22 Legal Guidance is the source of profound legal consequence for the plaintiffs because the

23 Government relies on it to deny their SIJ Petitions.").

24      Second, the new SIJS requirement both determines "rights or obligations," and is an action

25 "from which legal consequences will flow."  *Bennett*, 520 U.S. at 178 (citation and internal quotation

26 marks omitted).  Here, adopting the new SIJS requirement obligates USCIS officials to deny SIJS

27 petitions for all children with guardianships under Section 1510.1(a) on the basis that the Probate

28 Court lacked the authority to return them to their parents' custody.  Indeed, for Plaintiff J.L.,

profound legal consequences flowed almost immediately from the Legal Guidance, before it was even formally incorporated into the CHAP.  The Government issued a NOID to J.L. on March 2, 2018, days after the Legal Guidance was issued.  J.L. Decl., ¶ 10.  The Government then issued a final denial to J.L. based on the new SIJS eligibility requirement on April 17, 2018.[16]  *Id.* ¶ 12. Because the Government now requires SIJ petitioners to "establish [that] the court had the power and legal authority under state law to place the petitioner under the custody of the parent[,]" and because the Government has concluded that California Probate Courts do not have such power and legal authority (*see* CAR 113), the Government's action forecloses the possibility that any California petitioner with a guardianship order under Section 1510.1 will succeed in his or her SIJ petition.  *Id.* As this Court has previously explained, "the Government's new policy has a 'virtually determinative effect' on Plaintiffs' SIJS petitions" (Dkt. 49 at 14:18-19 (citing *Bennett*, 520 U.S. at 169)) and "effectively forecloses the possibility that any California petitioner with a guardianship order under § 1510.1 will succeed in their SIJ petition" (Dkt. 142 at 7:14-15); *see also R.F.M.*, 365 F.Supp.3d at 376 (finding that the same agency action was final and reviewable under the APA because "both prongs of *Bennett* are satisfied").

Accordingly, under U.S. Supreme Court and Ninth Circuit precedent, and as previously found by this Court, the Government's adoption of a new SIJS eligibility requirement satisfies both prongs of *Bennett*, and is thus reviewable under the APA.

**B.**   **The New SIJS Eligibility Requirement Is Arbitrary and Capricious in Violation of the APA Because It Contravenes Federal Law, State Law, Congressional Intent, and the SIJ Statute Consent Function.**

Under the APA, an agency action can be set aside where it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" or is "unsupported by substantial evidence." 5 U.S.C. § 706(2)(A),(E).  The standard is normally "highly deferential, presuming the agency action to be valid and affirming the agency action if a reasonable basis exists for its decision."  *Bahr v. EPA*, 836 F.3d 1218, 1229 (9th Cir. 2016) (citation and internal quotation marks omitted).  However, this Court and others already found that the Government's new SIJS eligibility requirement "is

---

[16] Privileged internal communications at USCIS dated the same day that were not included as part of the CAR indicated that an email was sent "to the field providing the web-based link to the revised CHAP FAQs."  Dkt. 157 at Doc. ID 25.

1    inconsistent with the plain text of the SIJ Statute."  Dkt. 49, 13:22-14:1.  *See also R.F.M.*, 365 F.

2    Supp.3d 350, 377-78; *Galvez*, 2019 WL 3219372, at *5; *W.A.O.*, 2019 WL 3549898, at *1.  Because

3    the Government's interpretation is not reasonable, the Government's statutory interpretations are not

4    entitled to deference.  *See Gomez-Sanchez v. Sessions*, 892 F.3d 985, 993 (9th Cir. 2018) (holding

5    "the Board's interpretation of the INA is not reasonable and that the rule it created in this case is

6    therefore not entitled to deference and must be vacated").  As detailed below, the Government's new

7    eligibility requirement must be set aside because it is contrary to the language of the SIJ Statute,

8    misinterprets state law, contravenes congressional intent, and is an abuse of the SIJ Statute's

9    "consent" function.

10        **1.**     **The Government's New SIJS Eligibility Requirement Is Contrary to the**

11             **Plain Language of the SIJ Statute.**

12        An agency action is arbitrary and capricious if "the decision was based on an improper

13   understanding of the law."  *Kazarian v. U.S.C.I.S.*, 596 F.3d 1115, 1118 (9th Cir. 2010).  Deference

14   to the agency is unwarranted "if the agency has misconceived the law."  *SEC v. Chenery Corp.*, 318

15   U.S. 80, 94 (1943).

16        Here, the SIJ Statute expressly states that a juvenile must be "declared dependent on a

17   juvenile court or placed in a qualifying custody arrangement" to be eligible for SIJS.  8 U.S.C.

18   § 1101(a)(27)(J)(i) [Supp. CAR 00000300].  As the *R.F.M.* court found, "a custody order *cannot be*

19   *required* in cases where the juvenile has been declared dependent on the juvenile court."  *R.F.M.*, 365

20   F.Supp.3d at 377 (emphasis added).  Thus, "[t]he agency's requirement—that to be a juvenile court

21   the state court must have jurisdiction to make custody determinations—is inconsistent with the SIJ

22   statute's plain language."  *Id*.

23        This Court should again find, consistent with its earlier order (*see* Dkt. 49), that the

24   Government's addition of this new requirement is in violation of the plain language of the SIJ Statute

25   for the following reasons.  First, the new reunification requirement is contrary to the plain text as it

26   imposes an eligibility requirement that does not exist *anywhere* in the law.  In fact, the Government's

27   only justification for this new requirement rests on obsolete regulations that directly conflict with the

28   operative SIJ Statute.  Second, the new reunification requirement is contrary to the plain text as it

overrides the SIJ Statute's recognition of the state courts' authority to make SIJ Findings pursuant to state law.

a.   The SIJ Statute does not require that the state juvenile court have the authority to reunify a child with her parents by ordering her returned to their custody.

The SIJ Statute does not require that the juvenile court have the authority to order a child returned to her parents' custody in order to make the requisite findings.  Instead, it offers three placement options that satisfy its eligibility requirements, only one of which involves any custody determination: 1) declaring the applicant dependent on the court; 2) placing the child in the custody of a state agency, department, entity, or individual; or 3) legally committing the child to a state agency, department, or entity, or to an individual.  8 U.S.C. § 1101(a)(27)(J)(i) [Supp. CAR 00000300].  The SIJ Statute does not *require* that the juvenile court have the authority to enter alternative custodial arrangements besides those listed, and it certainly does not require that the court specifically have the authority to place the child in her parents' custody.

To support its unlawful new position that a juvenile court issuing SIJ Findings must have the authority to actually return a child to her parents' custody, the Government relies solely on the 1993 regulations, which were superseded by statute over a decade ago.  *See* CAR 103 (citing 8 C.F.R. § 204.11(d)(2)(i)-(ii) and stating that "[t]he regulations as currently written require the court to have competent jurisdiction over dependency and long-term foster care decisions"); *see also* CAR 108 (citing same regulations in support of proposition that "in order for a court order to be valid for the purpose of establishing SIJ eligibility, the court must have the power and authority to determine both whether a parent could regain custody and to order reunification"). The relied-upon obsolete regulation defines eligibility for long-term foster care as predicated on a finding that "family reunification is no longer a viable option," and requires a child's SIJS petition to include evidence that he or she was found to be "eligible for long term foster care."  *See* 8 C.F.R. §§ 204.11(a), (d)(i)-(ii) [Supp. CAR 00000747-748].   But these regulations are no longer good law.   Both derive exclusively from long-term foster care eligibility requirements that Congress removed from the SIJ Statute in 2008 with the passage of the TVPRA, rendering the regulations at 8 C.F.R. §§ 204.11(a)

and(d)(ii) irrelevant to SIJS eligibility.  *See* TVPRA § 235(d) [Supp. CAR 00000612].[17]  As this Court already found, "[t]he TVPRA expressly removed all references to long-term foster care from the SIJ statute.  The Government's reliance on the SIJ regulation's definition of 'eligible for long-term foster care' holds no weight when Congress explicitly disapproved of that language." Dkt. 49 at 10.  The Government cannot justify its policy by reliance on an outdated regulation.  *R.F.M.*, 365 F. Supp. 3d at 379 ("The requirement that the Family Court must have authority to order reunification with an unfit parent cannot be justified by citing the outdated regulation and there is nothing in the text of the SIJ statute or any case law to support that requirement.").  There is nothing in the SIJ Statute that supports the Government's new requirement.  *Id.*

> **b.**   The SIJ Statute specifically defers to state court's authority to make SIJ Findings pursuant to state law.

The Government's unlawful new requirement also violates the APA because it impermissibly overrides the clear mandate of the federal statute recognizing state courts' authority to make SIJ Findings pursuant to state law.  *See* 8 U.S.C. § 1101(a)(27)(J)(i),(ii) [Supp. CAR 00000300].  The SIJ Statute grants state courts authority to issue SIJ Findings because of the state courts' *expertise* in making determinations about the care and custody of children. *Gonzalez*, 248 F.R.D. at 265 (finding that in the SIJ Statute, "Congress appropriately reserved for state courts the power to make child welfare decisions, an area of traditional state concern and expertise").  And more generally, "[t]here is a strong federal policy favoring federal recognition of valid state court judgments."  *Brown v. Department of Homeland Sec.*, 313 F. Supp. 3d 1252, 1259–60 (W.D. Wash. 2018); *see also Solid Waste Agency of N. Cook Cty. v. U.S. Army Corps of Eng'rs*, 531 U.S. 159, 172–73 (2001) (explaining that courts expect a "clear indication" of congressional intent when an "administrative interpretation alters the federal-state framework by permitting federal encroachment upon a traditional state power").  The court in *W.A.O.* further recognized that USCIS's "own policy guidance emphasizes the importance of deference to the jurisdiction and expertise of the state courts in making child welfare findings," citing to the USCIS Policy Manual's sections stating that

---

[17] To the extent that the regulations are contrary to statutory amendments, they have been superseded.  *See Chevron*, 467 U.S. at 842-843 & n.9.

1 | "[j]uvenile courts should follow their state laws on issues such as when to exercise their authority,

2 | evidentiary standards, and due process."  2019 WL 3549898, at *1.  *See also* CAR 113 (instructing

3 | that USCIS "should defer to the juvenile court's interpretation of the relevant state laws").

4 |         Here, the Government acted outside its congressionally delegated authority, and contrary to

5 | the agency's own guidance, in imposing a new eligibility requirement and disregarding the authority

6 | Congress gave state juvenile courts to make SIJ Findings.  The SIJ Statute confers authority to make

7 | the requisite placement determination and SIJ Findings on the state juvenile court—in this case, the

8 | California Probate Court—applying state law and *requires* the Government to defer to the state

9 | court's findings.  The Government cannot simply ignore a valid state court judgment in place of its

10 | own legally unsupported interpretation of state law.  The Government's new eligibility requirement

11 | directly conflicts with the federal statute in that it disregards the SIJ Statute's mandate that USCIS

12 | defer to the state juvenile court, a court that has the authority and expertise to make such findings.

13 |         Thus, the adoption of the reunification requirement was based on an improper understanding

14 | of the law, the Government violated the APA, and the requirement must be set aside.

15 |                 **2.    The Government's New SIJS Eligibility Requirement Misinterprets**
16 |                 **State Law.**

17 |         The Government may not disregard bona fide findings of a state court made pursuant to

18 | California law.  *See W.A.O.*, 2019 WL 3549898, at *1 ("In adjudicating SIJS petitions, USCIS is

19 | required to defer to state courts on matters of state law.  Congress reserved a critical role for state

20 | courts in the SIJS framework because state courts are expert in making child welfare determinations .

21 | . .").  Yet the Government's imposition of a new statutory requirement on SIJS petitioners

22 | misinterprets California law regarding the jurisdiction of California Probate Courts.

23 |         As applied to California courts, the federal regulation that defines a "juvenile court" is

24 | sufficiently broad to include superior courts hearing probate guardianship proceedings; family law

25 | custody, visitation, parentage, and adoption proceedings; and perhaps others beyond the dependency

26 | and delinquency cases that fall under California's Juvenile Court Law.  *See* Cal. Welf. & Inst. Code,

27 | §§ 200-987 [Supp. CAR 00002919-2920].  And California law *explicitly* designates the Probate

28 | Court as a juvenile court that "has jurisdiction under California law to make judicial determinations

regarding the custody and care of children within the meaning of the federal Immigration and Nationality Act" with jurisdiction to make SIJ Findings (Cal. Code Civ. Proc. § 155(a)(1)), including the finding that reunification is not viable due to abuse, abandonment, or neglect. Cal. Code Civ. Proc. § 155(a)-(b)(2) [Supp. CAR 00000659-660]. The Judicial Counsel of California issued a memorandum to the Presiding Judges of the Superior Courts specifically explaining that California Code of Civil Procedure section 155:

> applies or incorporates several elements of the federal SIJ statute to California law. First, it makes clear that a superior court, including the court's juvenile, probate, and family divisions, is a "juvenile court" as defined by federal regulations because it has "jurisdiction to make judicial determinations about the custody and care of" children (8 C.F.R. § 204.11(a)). (Code Civ. Proc., § 155(a).) Second, the new section expressly authorizes "these courts" to make the SIJ predicate findings. (*Id.*) Third, section 155 provides that, if an order is requested from the superior court that it make the SIJ predicate findings and there is evidence to support those findings, the court must issue an order that includes all the predicate findings as specified in that section. (*Id.*, § 155(b).)[Supp. CAR 00002921].

Moreover, California law grants California Probate Courts jurisdiction over the custody and care of juveniles ages 18 to 20 for guardianship proceedings. CAR 024; *see also* Cal. Prob. Code § 1510.1 [Supp. CAR 00000630]. Section 1510.1(a) defines an 18-to-20-year-old as a "child" and authorizes California Probate Courts to place the child into a guardianship, thereby granting the guardian "care, custody, and control" of the child.[18] Here, the Government's new requirement improperly disregards the California Probate Court's SIJ Findings by substituting its own interpretation of California law for that of state court judges with the requisite expertise. *See R.F.M.*, 365 F.Supp.3d at 381 (finding USCIS should not substitute its interpretation of state law for that of the state court applying its own laws and that in so doing, USCIS misconstrues state law); *Galvez*, 2019 WL 3219372, at *5 (USCIS "ignored state law—which clearly granted to the state courts jurisdiction to make custody and care determinations for named plaintiffs—and the state courts' factual determinations, declaring those courts incompetent solely because they lacked the authority to issue a certain type of custody order, namely reunification with a parent."). Thus the Government

---

[18] The fact that children seeking a guardianship pursuant to Section 1510.1(a) are placed in the "care and custody" of a guardian distinguishes this case from *Budhathoki v. Nielsen*, 898 F.3d 504 (5th Cir. 2018), where the state court had jurisdiction to make a monetary award, not to determine the child's care and custody.

1   misinterprets Section 1510.1(a), and in doing so has acted arbitrarily and capriciously in violation of

2   the APA.

3           **3.      The New SIJS Eligibility Requirement Contravenes Congressional
                       Intent to Expand SIJS Eligibility.**

4

5           Where an agency acts outside its delegated authority and in contravention of congressional

6   intent, the action must be set aside.  *See Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 208

7   (1988) (an agency's rule-making that was contrary to statutory provisions and congressional intent

8   was arbitrary and capricious in violation of the APA); *Schneider v. Chertoff*, 450 F.3d 944, 952 (9th

9   Cir. 2006) ("[W]e must reject those [agency] constructions that are contrary to clear congressional

10  intent or that frustrate the policy that Congress sought to implement.").  An agency acts outside of its

11  authority if its actions are inconsistent with the relevant statutes.  *See Mines v. Sullivan*, 981 F.2d

12  1068, 1070 (9th Cir. 1992) ("A court need not accept an agency's interpretation of its own

13  regulations if that interpretation is . . .  inconsistent with the statute under which the regulations were

14  promulgated.").  "The starting point in discerning congressional intent is the existing statutory text,

15  and not the predecessor statutes."  *Lamie v. U.S. Tr.,* 540 U.S. 526, 534 (2004) (citation omitted).

16  "When an examination of the plain language of the statute, its structure, and purpose clearly reveals

17  congressional intent, our judicial inquiry is complete."  *Hernandez v. Williams, Zinman & Parham*

18  *PC*, 829 F.3d 1068, 1073 (9th Cir. 2016) (internal quotation marks and citations omitted).  Further, a

19  court must "interpret the relevant words not in a vacuum, but with reference to the statutory context,

20  structure, history, and purpose."  *Abramski v. United States*, 134 S. Ct. 2259, 2267 (2014) (citation

21  and internal quotation marks omitted).

22          Here, the Government's new SIJS eligibility requirement contradicts clear congressional

23  intent as expressed in the TVPRA to expand, not narrow, SIJS eligibility.  While USCIS has the

24  authority to interpret its governing statutes and to have policies about that interpretation, even if the

25  new reunification requirement could be considered an interpretation, USCIS exceeded its authority

26  because its interpretation is contrary to congressional intent.  Beginning in 1994 and most recently in

27  2008, Congress amended the SIJ Statute to expand eligibility to a greater group of children in need of

28  humanitarian relief, and through the TVPRA it affirmed that SIJS relief is available to non-foster-

eligible children.  *See* TVPRA § 235(d)(1)(A)(i) [Supp. CAR 00000612].  Similarly, Congress reaffirmed its intention to allow children aged 18 to 20 to receive SIJS by adding age-out protections in the TVPRA so the SIJS classification would not be denied on the basis of age if the child is under 21 years old on the date he or she files an SIJS petition.  *See* TVPRA § 235(d)(6) [Supp. CAR 00000613].[19]

Thus, the TVPRA signaled Congress's clear intent to *expand* SIJS and not limit it as the Government now improperly attempts to do.  The Government's new SIJS eligibility requirement strips the Plaintiff class of the very protections Congress affirmed in the TVPRA.  Because USCIS exceeded its delegated authority by adopting the reunification requirement, the Government's actions are arbitrary and capricious in violation of the APA and must be set aside.

### 4.   The Government's New Policy Abuses the Consent Function.

The Government's imposition of its new eligibility requirement is also arbitrary and capricious because it exceeds the scope of the consent authority conferred to the Government by Congress.  8 U.S.C. § 1101(a)(27)(J)(iii) [Supp. CAR 00000300].  Where an agency exceeds its authority, that agency's action cannot survive judicial review and must be set aside.  *See Aid Ass'n for Lutherans v. U.S. Postal Serv.*, 321 F.3d 1166, 1174 (D.C. Cir. 2003) ("An agency construction of a statute cannot survive judicial review if a contested regulation reflects an action that exceeds the agency's authority.").  The consent authority is the only mechanism Congress extended to USCIS to deny an SIJS petition that is submitted by an applicant before her 21st birthday and supported by a juvenile court order that facially meets the SIJ Statute's requirements.  But the consent requirement does not authorize the Government to exercise broad discretion in adjudicating SIJS petitions; instead, "USCIS generally consents to the grant of SIJ classification when the order includes or is supplemented by a reasonable factual basis for all of the required findings."  CAR 042, 043; *see also* 6 USCIS PM J.2(D)(5) [CAR 089-90; Supp. CAR 000002471-2472].  USCIS's Policy Manual

---

[19] Notably, when USCIS issued proposed rules in 2011 to amend its regulations governing SIJS, the Government recognized that the TVPRA expanded eligibility for SIJ status in each of these ways.  76 Fed. Reg. 54978-01, 54983 (Sept. 6, 2011), 2011 WL 2882775 [Supp. CAR 00000793, 795].  These updated regulations were proposed and public comment was received; however, at the time of this filing, revised regulations have not been finalized.

explicitly forbids the agency from making its own determinations about whether the state court properly applied state law.[20]

Here, the Government abuses the limited nature of the consent function in claiming it may deny SIJS petitions supported by juvenile court orders that apply state law to make the statutorily required SIJ Findings, exercise jurisdiction under state law, and are supported by a reasonable factual basis.[21]  The Government may claim that its consent authority allows it to question and invalidate state court orders and make its own determination of whether the applicant has satisfied the eligibility requirements, but this argument fails.  As this Court already found, even if "the statute's consent requirement requires it to review SIJS petitions to determine whether the juvenile court order is bona fide, . . . whether a juvenile court order is bona fide has no bearing on whether the issuing court had jurisdiction."  Dkt. 49 at n.6.  Further, the USCIS Ombudsman has rejected this position, explaining that the agency should not "substitute its application of State law for that of the court's exercise of dependency."  Supp. CAR 00002690.  Accordingly, the Government is limited to assessing whether the "request for SIJ classification is bona fide."  CAR 042.  Finally, as the *R.F.M.* court recently found, "such a broad use of the consent function contravenes the directives in the agency's CHAP, which instructs that USCIS 'should defer to the juvenile court's interpretation of the relevant state laws' and accordingly, 'a petition should not be denied based on USCIS' interpretation of the relevant state laws."  365 F.Supp.3d at 381.

Thus, the congressionally defined consent function does not permit the Government to disregard the findings of state courts tasked with making care and custody determinations and to substitute its own interpretation of the law.  The Government's new SIJS requirement does exactly that in violation of the APA and must be set aside.

---

[20] Moreover, USCIS's 2011 proposed regulations specifically acknowledge that through the TVPRA, "Congress modified the consent requirements.  DHS consent is simply consent to the grant of SIJ status and not consent to the dependency order serving as a precondition to the grant of SIJ status."  Supp. CAR 00000793.  The proposed regulations would have made clear that "consent will be granted to otherwise eligible SIJ petitioners" consistent with congressional intent in creating the consent function.  Supp. CAR 00000798.

[21] The state court orders of the named Plaintiffs show that the Probate Court relied on state law in exercising jurisdiction and making the required findings.  (*See* J.L. Decl., ¶¶ 6, 7, Ex. A, C; M.D.G.B Decl., ¶ 7, Ex. A; J.B.A. Decl., ¶ 7, Ex. A; M.G.S. Decl., ¶ 6, Ex. A.)

**C.**    **The Government's New SIJS Eligibility Requirement Is a Change in Government Policy and the Government Failed to Supply a Reasoned Analysis for the Change.**

An agency action is arbitrary and capricious and must be set aside if "the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983). Moreover, to comply with the APA, an agency must "articulate a satisfactory explanation for its action including a rational connection between the facts found and the choice made." *Id.* at 44 (internal quotation marks and citation omitted). Where an agency has significantly departed from prior practice, "a reviewing court may not speculate on reasons that might have supported a change in agency position [] or supply a reasoned basis for the agency's action that the agency itself has not given." *Jimenez–Cedillo v. Sessions*, 885 F.3d 292, 299 (4th Cir. 2018) (citation and quotation marks omitted); *see also Atchison, Topeka & Santa Fe Ry. Co. v. Wichita Bd. of Trade*, 412 U.S. 800, 807-08 (1973) ("[A] settled course of behavior embodies the agency's informed judgment that, by pursuing that course, it will carry out the policies committed to it by Congress. . . . From this presumption flows the agency's duty to explain its departure from prior norms."). Thus, "[i]f an agency 'announces and follows—by rule or by settled course of adjudication—a general policy by which its exercise of discretion will be governed, an irrational departure from that policy (as opposed to an avowed alteration of it) could constitute' arbitrary and capricious action." Dkt. 49 at 14:24-15:3 (citing *I.N.S. v. Yueh-Shaio Yang*, 519 U.S. 26, 32 (1996)).

Agencies such as USCIS have an obligation to render consistent opinions and to follow, distinguish, or overrule their own precedent, adequately explaining departures from prior norms and the legal basis of their decisions. *See Sec'y of Agric. v. U.S.*, 347 U.S. 645, 652-53 (1954); *Yueh-Shaio Yang*, 519 U.S. at 32. "Failing to supply such analysis renders the agency's action arbitrary and capricious." *Lone Mountain Processing, Inc. v. Sec'y of Labor*, 709 F.3d 1161, 1164 (D.C. Cir. 2013). Giving "adequate reasons" for an agency's decision is "[o]ne of the basic procedural

1  requirements of administrative rulemaking". *Encino Motorcars, LLC v. Navarro*, 136 S.Ct. 2117,

2  2125 (2016).[22]   This is particularly true where a prior policy "has engendered serious reliance

3  interests that must be taken into account." *Perez v. Mortgage Bankers Ass'n*, 135 S. Ct. 1199, 1209

4  (2015).   Thus, an agency's reversal of a pre-existing policy requires a "more detailed justification

5  than what would suffice for a new policy created on a blank slate." *F.C.C. v. Fox Television*

6  *Stations, Inc.*, 556 U.S. 502, 515 (2009).

7       The requirement that an agency must explain its decision applies whenever an agency

8  makes a "conscious change of course," and while it most obviously applies when an agency adopts

9  or displaces a formal rule or policy, the requirement also applies to agency actions relating to

10  implied rules or policies.  *Humane Soc'y of the U.S. v. Locke*, 626 F.3d 1040, 1050, n.4 (9th Cir.

11  2010).   If an agency "announces and follows—by rule or by settled course of adjudication—a

12  general policy by which its exercise of discretion will be governed, an irrational departure from that

13  policy (as opposed to an avowed alteration of it) could constitute" arbitrary and capricious action.

14  *Yueh-Shaio Yang*, 519 U.S. at 32.   If such a departure exists, the agency must give reasons for

15  departing from its past precedent to survive review under the APA.  *See Cal. Trout v. F.E.R.C.*, 572

16  F.3d 1003, 1023 (9th Cir. 2009).   The failure to provide "reasoned explanation" for an agency's

17  decisions renders them arbitrary and capricious.  *Dickson v. Sec'y of Def.*, 68 F.3d 1396, 1404 (D.C.

18  Cir. 1995)*; see also Public Citizen, Inc. V. F.A.A.*, 988 F.2d 186, 197 (D.C. Cir. 1993) (holding

19  "[t]he requirement that agency action not be arbitrary or capricious includes a requirement that the

20  agency adequately explain its result").

21       *Sub silentio* reversal of longstanding agency practice also violates the APA.  *See Fox*

22  *Television Stations*, 556 U.S. at 515 (2009) ("[T]he requirement that an agency provide a reasoned

23  explanation for its action would ordinarily demand that it display awareness that it *is* changing

24  position.  An agency may not . . . depart from a prior policy *sub silentio* . . . "); *see also Ramos v.*

25  *Nielsen*, 321 F.Supp.3d 1083 (N.D. Cal. 2018) (upholding plaintiffs' claims that the *sub silentio*

26  departure from a prior practice or policy violated the APA where plaintiffs alleged the Government

27

28

---

[22] The Government may not now articulate new reasons for this change.  "A reviewing court . . .
must judge the propriety of [agency] action solely by the grounds invoked by the agency," and not
post hoc grounds articulated in litigation.  *S.E.C. v. Chenery Corp.*, 332 U.S. 194, 196 (1947).

1  adopted a novel interpretation of the statute and changed its course of practice).

2  Here, the Government has failed to provide any adequate basis or reasoned explanation for

3  its new requirement. The CAR itself provides no explanation of the reason for the change. The

4  Legal Guidance was simply issued with no announcement to the public and USCIS began issuing

5  SIJS denials in conformance with the new requirements. The Government may argue that the new

6  requirement is a mere clarification of its policy and thus no explanation was necessary. But this

7  argument is unavailing because the effect of the policy is to foreclose a benefit to the class that had

8  been routinely granted. This Court has already explained that "[w]hether the Government's current

9  interpretation of the SIJ statute and regulation is a 'clarification' or a 'policy change' does not

10  change the fact that the interpretation represents a sharp departure from prior practice" when the

11  Government had consistently approved SIJS petitions. Dkt. 49 at 16:16-18. Nothing produced by

12  the Government in its CAR or Supplemental CAR undermines this finding.[23] The law required the

13  Government to provide justification with a reasoned explanation prior to this drastic change. The

14  Government failed to do so and, as such, the new requirement must be set aside as an arbitrary and

15  capricious violation of the APA for failure to supply any reasoned analysis for the adoption of a

16  new SIJS eligibility requirement.

17  **D.** **The Government's Adoption of the New SIJS Eligibility Requirement Violated**
   **the Notice Requirement Under Section 706 of the APA and 5 U.S.C.**
18  **§ 552(A)(1)(D).**

19  Under the APA, courts must find unlawful and set aside agency action, findings, and

20  conclusions made "without observance of procedure required by law." 5 U.S.C. § 706(2)(D). A

21  companion statute, 5 U.S.C. § 552(a)(1)(D), provides that an agency must publish "statements of

22  general policy or interpretations of general applicability formulated and adopted by the agency." The

---

23  [23] In *R.F.M.*, the Government also was unable to show that there was no departure from prior
24  practice. There, the court noted that the Government "does not dispute that until early 2018, it
   regularly approved SIJ applications by petitioners who were older than eighteen when they
25  received a Special Findings Order from a New York Family Court, and that after early 2018 it
   began denying virtually all such petitions on the grounds that the Family Court was not acting as a
26  'juvenile court.'" *R.F.M.*, 365 F.Supp.3d at 374. And in *Galvez*, in granting plaintiffs' request for
   a preliminary injunction, the court specifically noted USCIS's failure to respond to plaintiff's
27  argument that "USCIS's new policy is arbitrary and capricious because the agency failed to
   provide an adequate basis or reasoned explanation for its new requirement" or to articulate a
28  satisfactory explanation for its action. 2019 WL 3219372 at *5.

1  purpose of 5 U.S.C. § 552(a)(1)(D) is to ensure that all individuals affected by a particular agency

2  action or policy have notice of its terms and to promote the "disclosure to the public of the manner in

3  which the Government conducts its business." *Weisberg v. U.S. Dep't of Justice*, 489 F.2d 1195,

4  1199 (D.C. Cir. 1973) (en banc). "Congress [ ] was concerned with the dilemma in which the public

5  finds itself when forced to litigate with agencies on the basis of secret laws or incomplete

6  information." *Id.* (citation and quotation marks omitted). Violation of this notice requirement is a

7  basis for setting aside agency action where the affected individuals lacked adequate and timely notice

8  and suffered prejudice. *See, e.g.*, *Morton v. Ruiz*, 415 U.S. 199, 235-36 (1974) (overturning the

9  BIA's denial of benefits for failure to provide notice that benefits were no longer available to those

10 who lived off reservations); *San Diego Air Sports Ctr., Inc. v. F.A.A.*, 887 F.2d 966, 969 (9th Cir.

11 1989) (requiring agencies to follow all procedural requirements, including notice and comment, prior

12 to promulgating new policies).

13        Here, when the Government began to deny SIJS petitions by refusing to recognize the

14 validity of SIJ Findings for children ages 18 to 20, the Government provided no public notice of the

15 change. It was incumbent upon the Government to notify the public about its wholesale departure

16 from its prior practice and legal conclusions. As explained by the court in *R.F.M.*, the "agency's new

17 policy is binding in SIJ adjudications and therefore 'readily falls within the broad category of rules

18 and interpretations encompassed by § 552(a)(1)(D).'" 365 F.Supp.3d at 382 (citations omitted).

19 Moreover, as this Court found, the agency's policy effectively replaced agency discretion with a new

20 binding rule of substantive law. Dkt. 49 at 17-20. Given the widespread impact of the

21 Government's sudden restrictions on SIJS eligibility, the agency had an obligation to publish or

22 otherwise notify the public. Failure to do so violated the notice requirements of § 552(a)(1)(D) and

23 requires that the policy be set aside.

24 **VI.    CONCLUSION**

25        It is undisputed that the Government's new policy violates the APA and deprives Plaintiffs of

26 the humanitarian relief for which they otherwise are eligible pursuant to federal law. Plaintiffs

27 respectfully request the Court grant their motion for partial summary judgment, set aside the policy,

28 rescind any NOIDs issued pursuant to the policy, and order the Government to re-adjudicate any

1   class members' denied SIJS petitions under the lawful and correct standard.

2   Dated: August 12, 2019

3                                   MANATT, PHELPS & PHILLIPS, LLP
                                    MATTHEW KANNY
4                                   ADRIANNE MARSHACK
                                    SIRENA CASTILLO
5
                                    PUBLIC COUNSEL
6                                   JUDY LONDON
                                    SARA VAN HOFWEGEN
7                                   MARY TANAGHO ROSS

8                                   LAWYERS' COMMITTEE FOR CIVIL RIGHTS OF
                                    THE SAN FRANCISCO BAY AREA
9                                   BREE BERNWANGER

10

11                                  By:  /s/ Sirena P. Castillo
                                        Sirena Castillo
12                                      Attorneys for *Plaintiffs*
                                        J.L., M.D.G.B., J.B.A., and M.G.S., on behalf
13                                      of themselves and all others similarly situated

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**CERTIFICATE OF SERVICE**

I hereby certify that on August 12, 2019, the foregoing document was electronically filed with the Clerk of the Court for U.S. District Court, Northern District of California, through the CM/ECF system.  All parties are registered CM/ECF users and will be served through the CM/ECF system.

By: /s/  Sirena Castillo_____