1

2

3

4

5

6

7

8                      **UNITED STATES DISTRICT COURT**

9              **FOR THE NORTHERN DISTRICT OF CALIFORNIA**

10   | J.L., M.G.S., M.D.G.B., and J.B.A., on behalf | Case No. 5:18-cv-04914-NC |
     | of themselves and all others similarly situated, | |

11

12                  Plaintiffs,                    **JOINT NOTICE OF REMOVALS**

13   v.

14   KENNETH T. CUCCINELLI, II et al.,            Action Filed:  August 14, 2018

15                  Defendants.

16

17

18

19

20

21

22

23

24

25

26

27

28

1    Plaintiffs J.L., M.G.S., M.D.G.B., and J.B.A. and Defendants (collectively, the "Parties"),

2    through their respective attorneys, submit this Joint Notice Regarding Removals of Three Class

3    Members.

4    On November 14, 2019, Plaintiffs notified Defendants that they believed an individual on

5    the Class List,[1] N.P.G., had been removed from the U.S. without 14 days' notice to Plaintiffs'

6    Counsel.[2] In their letter, Plaintiffs stated that they learned of this removal on November 13, 2019,

7    from the Class Member's attorney. Plaintiffs provided Defendants with the individual's name,

8    alien number, I-360 receipt number, I-360 receipt date, date of removal, and country of removal.

9    Defendants immediately began investigating Plaintiffs' allegation and the Parties conducted a

10   brief telephonic meet and confer on November 18, 2019, where Defendants confirmed they were

11   investigating the removal.

12   The Parties met and conferred on November 22, 2019.  During that call, Defendants

13   confirmed that N.P.G. was removed on June 26, 2019, without notice to Plaintiffs' counsel, that

14   ICE would facilitate N.P.G.'s return, and expressed that the process for return could be

15   complicated. In addition, pursuant to Plaintiffs' request, Defendants agreed to ask U.S.

16   Immigration and Customs Enforcement ("ICE") to review the custody information for the

17   approximately 40 individuals on the Class List who have final removal orders.

18   Plaintiffs followed up with a letter on November 26, 2019, and the parties held a

19   telephonic meet and confer. In their letter, Plaintiffs provided further details about N.P.G.

20   (including this contact information in Guatemala), confirmed that N.P.G. wished to be returned to

21

22   [1] In compliance with the Settlement Agreement, Defendants provided Plaintiffs with a Class List
     on November 13, 2019. *See* Settlement Agreement ECF No. 211-2 at Section IV.E. *See also id*. at

23   6 ("'**Class List**' means the system-generated list, dated October 1, 2019, of individuals who were
     between 18- and 21-years old on the date of filing of the I-360 (SIJ petition) and included a

24   California residence on their petition. The list of possible Class Members may be both
     overinclusive and underinclusive. *See* ECF No. 132-2 at ¶¶ 5–8.")

25

26   [2] The Court's October 24, 2018 Preliminary Injunction Order ("PI Order") states, *inter alia*, that
     Defendants must "provide no less than 14 days['] notice to Plaintiffs' counsel before Defendants

27   take any adverse adjudicatory or enforcement action against any of the individual Plaintiffs or
     members of the Proposed Class." PI, ECF No. 49 at 28, ¶ 4.

28

the United States, made requests for specific actions by ICE and U.S. Citizenship and Immigration Services ("USCIS") relating to N.P.G.'s return and his SIJ petition[3], and confirmed that Defendants had agreed (during their telephonic meet and confer) to review the approximately 40 individuals included on the Class List as having final removal orders against them to check if any had been removed.  Finally, although Plaintiffs had stated in their November 14 letter that they wanted to notify the Court on November 29, 2019, Plaintiffs agreed to filing a joint notice with the Court and, given the upcoming Thanksgiving holiday, that they expect to file a notice with the Court by December 6, 2019.

On December 4, 2019, Plaintiffs emailed Defendants asking for an update and reiterating their desire to file a notice with the Court by the end of the week. On December 5, 2019, Defendants responded via email asking for Plaintiffs' agreement to wait until the following week to file notice because Defendants were still working with ICE and USCIS to finalize information regarding both N.P.G. as well as address any other issues related to any other possible removals. Defendants reasoned that it would be best to provide one document with the Court with all of this information.

On December 6, 2019, Plaintiffs responded that they would agree to file a notice with the court no later than December 13, 2019. Plaintiffs expressed their discomfort waiting any longer than that to notify the Court, even if Defendants were still working on the details of N.P.G.'s return. Plaintiffs asked Defendants to please provide a response to their November 26, 2019 letter requests by the end of day December 9, and to provide Defendants' portion of the joint notice by end of the day December 11. Defendants responded via email that day to confirm their intention to meet those deadlines.

On December 9, 2019, Defendants sent a response letter to Plaintiffs, explaining the steps

---

[3] Specifically, Plaintiffs requested that Defendants 1) facilitate N.P.G.'s transportation from Baja Veracruz, the remote town where has been living since removal, to Guatemala City; 2) facilitate N.P.G.'s entry to the United States without a passport or facilitate an expedited request for a passport because he did not have a current passport; 3) adjudicate N.P.G.'s SIJ petition within five (5) business days following his reentry into the U.S.; 4) expedite the adjudication of a U visa application filed by N.P.G.'s mother, for which N.P.G. is a beneficiary; and 5) return N.P.G. to the United States no later than January 6, 2020.

USCIS and ICE had been taking; further explaining the complexities of facilitating return of an individual to the United States, and responding to some of Plaintiffs' specific action requests regarding N.P.G.[4] Defendants were not able to provide answers to the all of specific requests for ICE action at that time. Defendants also reported that ICE was still assessing the other approximately 40 individuals included on the Class List as having final removal orders, and that Defendants would follow up when they had more information. Finally, Defendants expressed their appreciation for Plaintiffs' willingness to file a joint notice to the Court regarding N.P.G.'s removal, and Defendants said they would provide draft of Defendants' portion by Wednesday, December 11, 2019. In an email response on December 9, 2019, Plaintiffs expressed their disappointment with the progress Defendants had made at that point.

On December 11, 2019, via email, Defendants informed Plaintiffs that they would not be able to provide their draft portion of the joint notice that day. Defendants reconfirmed that ICE was willing to facilitate N.P.G.'s return but that Defendants were still waiting on more specific details from ICE on that matter. In an email response, Plaintiffs again expressed their disappointment with Defendant's progress and reiterated their concern that the Parties provide the Court with a notice as soon as possible. Defendants spoke with Plaintiffs telephonically and expressed their intent to provide their draft of the joint notice as well as a supplemental letter to Plaintiffs on December 12, 2019. On December 12, 2019, Plaintiffs emailed Defendants to reiterate that Plaintiffs would be filing a notice with the Court on December 13, 2019, and asking Defendants to send their draft as soon as possible.

On December 12, 2019, Defendants sent Plaintiffs a Supplemental Letter informing Plaintiffs of the results of ICE's review of the approximately 40 individuals listed as in removal

---

[4] Specifically, Defendants informed Plaintiffs, *inter alia*, that: 1) N.P.G. had a pending SIJ petition based on a Probate Code § 1510.1 guardianship; 2) N.P.G.'s removal date of June 26, 2019 was confirmed, and that removal was without notice to Plaintiffs' Counsel; 3) N.P.G. would need an unexpired Guatemalan-issued identification to prove his identity and board a commercial airline; 4) ICE cannot commit to returning N.P.G. by any specific date; 5) USCIS would begin to adjudicate N.P.G.'s SIJ petition within five days of his return but could not guarantee issuing a final decision within five days or by any date certain; 6) USCIS will not agree to expedite adjudication of N.P.G.'s mother's U visa; and 7) upon his return, Defendants' Counsel would immediately provide notice to Plaintiffs' Counsel to remove N.P.G. again after 14 days.

proceedings on the Class List. Specifically, Defendants identified two other individuals on the Class List, E.A. and R.M.N., who were removed after the entry of the PI Order without notice to Plaintiffs' counsel. Also on December 12, 2019, Defendants provided Plaintiffs with a draft of the joint notice for filing on December 13, 2019.

I.     **DEFENDANTS' SUMMARY OF FACTS AND ACTIONS REGARDING REMOVED INDIVIDUALS ON THE CLASS LIST[5,6]**

A.     **N.P.G.**

ICE confirms that N.P.G. was removed from the U.S. to Guatemala, on June 26, 2019, and that Plaintiffs' counsel were not provided notice prior to N.P.G.'s removal.

USCIS confirms that N.P.G.'s  special immigration juvenile ("SIJ") (Form I-360) petition was pending on the date he was removed (*i.e.* USCIS has not issued a NOID, RFE, or denial), and it remains pending to date.

Less than a week after Plaintiffs notified Defendants of N.P.'s removal,[7] ICE began the process of returning N.P.G. to the U.S. Specifically, on November 27, 2019, ICE agents contacted N.P.G. and informed him that he would be detained in ICE custody upon his return to the U.S. N.P.G. confirmed that he understood and that he desired to return to the U.S. Further, since

---

[5] Defendants have provided Plaintiffs with declarations and immigration-court filings supporting the facts referenced here but have not attached them here due, in part, to privacy concerns; Defendants will provide these documents to the Court upon request.

[6] Plaintiffs do not endorse or join Defendants' summary of the facts as they have not been provided with adequate time to confirm any of the facts herein, other than the fact that Plaintiffs' counsel were not provided notice prior to the removal of N.P.G., E.A., or R.M.N.  Plaintiffs were only provided notice of E.A.'s and R.M.N's removal and the declarations referenced above less than 24 hours prior to this filing.

[7] Based on their investigation, Defendants learned that, nine days before his removal, N.P.G. affirmatively requested to be removed as soon as possible and proactively filed a motion through his counsel seeking his removal. N.P.G. motioned the immigration judge ("IJ") to issue a new final order of removal, so that he could waive any appeal and be removed to Guatemala as soon as possible. The waiver motion included a declaration from N.P.G. stating, "[o]n June 17, 2019, my lawyer and I again reviewed this decision and I still want to return and not appeal, although I know that I am at great risk in Guatemala. Please, make my removal order final to be able to leave detention."

1    N.P.G. has a final removal order, ICE may remove him again after providing notice to Plaintiffs'

2    counsel.

3           With regard to N.P.G.'s pending SIJ petition, USCIS has agreed to adjudicate[8] N.P.G.'s

4    SIJ petition within 14 days of his return to the U.S., unless USCIS needs to issue a Request For

5    Evidence ("RFE") or a Notice of Intent to Deny ("NOID"), or needs to resolve concerns arising

6    from background and identity checks.

7           **B.      E.A.**

8           ICE confirms that E.A. was removed from the U.S. to Mexico, on August 22, 2019, and

9    that Plaintiffs' counsel were not provided notice prior to E.A.'s removal.[9]

10          USCIS confirms that E.A.'s SIJ petition was pending on the date he was removed (*i.e.*

11   USCIS has not issued a NOID, RFE, or denial), and it remains pending to date.

12          If E.A. expresses an interest in returning to the U.S., ICE will facilitate his return.

13   However, once E.A. returns to the U.S., ICE intends to detain him, issue 14 days' notice to

14   Plaintiffs' counsel of its intention to remove him, and, may then remove him.

15          With regard to E.A.'s pending SIJ petition, USCIS has agreed to adjudicate his SIJ

16   petition within 14 days of his return to the U.S., unless USCIS needs to issue a RFE or NOID, or

17   needs to resolve concerns arising from background and identity checks.

18          **C.      R.M.N.**

19          ICE confirms that R.M.N. was removed from the U.S. to Guatemala, on September 4,

20   2019, and that Plaintiffs' counsel were not provided notice prior to E.A.'s removal.

21   _____

22   [8] Each SIJ petition is adjudicated on an individual basis and USCIS cannot demand or guarantee a
     specific adjudicator's ultimate determination.

23

24   [9] In July 2018, the Department of Homeland Security ("DHS") initiated removal proceedings
     against E.A. At his August 21, 2019 immigration hearing, E.A. requested that the IJ issue him a
25   final removal order. DHS informed the IJ that USCIS had been contacted to expedite processing
     of E.A.'s SIJ petition, and that DHS agreed to continue E.A.'s immigration proceedings to
26   October 1, 2019. However, E.A. subsequently informed that IJ that he wanted to withdraw all
     applications for immigration relief and be ordered removed to Mexico. Per E.A.'s request to
27   withdraw his applications and be removed, the IJ issued a final order of removal, and ICE-ERO
     removed him to Mexico on August 22, 2019.

28

1    USCIS confirms that E.A.'s SIJ petition was pending on the date he was removed (*i.e.*

2    USCIS has not issued a NOID, RFE, or denial), and it remains pending to date.

3    If R.M.N. expresses an interest in returning to the U.S., ICE will facilitate R.M.N.'s

4    return. However, once R.M.N. returns to the U.S., ICE intends to detain him, issue 14 days'

5    notice to Plaintiffs' counsel of its intention to remove him, and, then may remove him.

6    With regard to R.M.N.'s pending SIJ petition, USCIS has agreed to adjudicate R.M.N.'s

7    SIJ petition within 14 days of his return to the U.S., unless USCIS needs to issue a RFE or NOID,

8    or needs to resolve concerns arising from background and identity checks.

9    **II.      THE PARTIES' POSITIONS**

10   **A.      Plaintiffs' Position**

11   Plaintiffs have only recently been informed of the removal of E.A. and R.M.N., and

12   accordingly have not yet been able to discuss their cases with their attorneys and are not able to

13   extensively comment on their removals. Plaintiffs simply state that these individuals have been

14   removed during the pendency of the PI Order and with no notice to Class Counsel, which

15   Plaintiffs believe constitutes a violation of the PI Order. Plaintiffs intend to meet and confer with

16   Defendants regarding these two individuals and acknowledge Defendants' agreement to facilitate

17   their return.

18   Plaintiffs similarly assert that N.P.G.'s removal violated the PI Order.  While Plaintiffs

19   appreciate that Defendants have agreed to facilitate his return to the U.S, as mentioned above,

20   Plaintiffs have made a series of requests to Defendants with a goal of ensuring Defendants

21   remedy their violation with as little burden to N.P.G. as possible.  Plaintiffs maintain that

22   meaningful return of N.P.G. requires, at a minimum, 1) prompt action, 2) facilitation of obtaining

23   travel documents and travel, and 3) expedited adjudication of his SIJ petition while he is in the

24   U.S.  Plaintiffs continue to meet and confer regarding each of these specific requests and

25   Plaintiffs' broader position that N.P.G. be returned in the manner least burdensome to him and

26   that affords him the best opportunity for fair access SIJ and its protections.

27   *First*, Plaintiffs have requested that Defendants return N.P.G. by a date certain and have

28   proposed January 6, 2020, as such a date.  Defendants have informed Plaintiffs that ICE "cannot

6

1    commit" to returning N.P.G. "by any specific date."  Plaintiffs maintain that return must be

2    effectuated as promptly as possible, believe that a timeline for his return should be agreed upon,

3    and will continue to meet and confer with Defendants regarding this request, acknowledging the

4    issues that Defendants outline below.[10]

5        *Second*, Plaintiffs have requested that Defendants facilitate N.P.G.'s entry to the United

6    States without a passport or facilitate his expedited receipt of a new passport.  Plaintiffs

7    understand and have informed Defendants that N.P.G. did not possess a passport or unexpired

8    Guatemalan identity document when he was removed.  Plaintiffs understand and have informed

9    Defendants that at the time of removal, N.P.G. possessed an expired Guatemalan identity

10   document, which apparently was sufficient documentation for ICE to remove him by aircraft

11   from the U.S. to Guatemala.  Further, Plaintiffs understand and have informed Defendants that

12   securing a new identity document or passport without assistance would be difficult, and will

13   continue to discuss with Defendants the most efficient and least burdensome process to obtain

14   documentation that is adequate for his return.

15       *Third*, Plaintiffs have requested that USCIS adjudicate N.P.G.'s SIJ petition on an

16   expedited basis, within five days of his return, because N.P.G.'s eligibility for SIJ depends on his

17   presence in the U.S., which was disrupted when Defendants removed him.  *See* 8 U.S.C.

18   § 1101(a)(27)(J) (defining a "special immigrant juvenile" as, in part, "present in the United

19   States").  If Defendants do not adjudicate his petition while he is in the U.S., his SIJ petition—

20   even if he otherwise meets all eligibility criteria—will be denied.  While Defendants have today

21   agreed to adjudicate his SIJ petition within 14 days of his return to the U.S., Plaintiffs do not

22   believe this is adequate and will continue to meet and confer with Defendants regarding the

23   timing of this request.

24       **B.    Defendants' Position**

25       Defendants assert that these three removals without notice to Plaintiffs' counsel arguably

26   are not violations of the Court's PI Order. In any event, the Court need not decide this issue

27   _____

28   [10] Plaintiffs reserve the right to seek additional relief from the Court if necessary as to N.P.G. or
     any other removed Class Member.

1    because ICE has agreed to return these individuals to the U.S.

2         ICE is ready and willing to facilitate the return of these three individuals to the U.S.

3    However, Defendants must point out that E.A. and R.M.N. may not want to return to the U.S.,

4    especially when they will likely be detained and quickly removed again. And Defendants cannot

5    force these two individuals to return if they do not want to return and/or cooperate in the return

6    process. Related, N.P.G. and E.A. affirmatively requested to be removed — despite their pending

7    SIJ petitions.[11] Thus, at least for E.A., ICE has not yet confirmed whether he wants to return to

8    the U.S.

9         Additionally, Defendants highlight for the Court the complex and arduous process of

10   returning individuals to the U.S. The process of transporting a foreign national from his own

11   country to the United States is never easy, requiring coordination between two sovereign nations

12   and various components of three departments of the United States government in multiple

13   locations.

14        To assist the Court's understanding of the process, Defendants outline below relevant

15   parts of the process as described in ICE's Policy Directive Number 11061.1, "Facilitating the

16   Return to the United States of Certain Lawfully Removed Aliens," and the "FAQs" (Frequently

17   Asked Questions with Answers) on the implementation of that Policy Directive. *See*

18   https://www.ice.gov/faq/facilitating-return; *see also*,

19   https://www.ice.gov/sites/default/files/documents/Document/2017/facilitatingReturnLawfullyRe

20   movedAliensFAQ.pdf.

21        In order to return to the United States by air or sea, the alien must have with him a valid

22   passport or equivalent documentation and either a valid immigrant/nonimmigrant visa or a

23   transportation/boarding letter. A transportation/boarding letter is a document issued by a U.S.

24   Embassy or Consulate abroad, allowing that alien to board a commercial aircraft or maritime

25   _____

26   [11] Any 'enforcement action' that ICE took in removing these two individuals arguably was not
     "adverse" because these individuals requested to be removed. *See Adverse*, Black's Law
27   Dictionary, (11th ed. 2019) ("*adj.* (15c) 1. Against; opposed (to). 2. Having an opposing or
     contrary interest, concern, or position. 3. Contrary (to) or in opposition (to). 4. hostile.").

28

1    vessel to come to the United States. A transportation/boarding letter cannot be issued without a

2    passport or equivalent travel document.

3         If the alien is returning by air or sea, ICE will work to arrange for him to be issued

4    appropriate transportation documents by the U.S. Embassy or Consulate abroad.  The commercial

5    air or sea carrier will rely upon that documentation to authorize the alien to board the U.S.-bound

6    flight or vessel.  ICE will coordinate with U.S. Customs and Border Protection ("CBP") at the

7    port of entry in advance of the alien's arrival by air or sea. ERO will also provide the alien with a

8    point of contact for this process.

9         Then length of this process varies depending on several factors, including whether the

10   alien returns to the United States by land, sea, or air, as well as whether he possesses a valid

11   passport at the time of the request, how long it takes the U.S. Embassy to prepare a

12   transportation/boarding letter, etc. Absent unusual circumstances, the length of this process

13   generally ranges from a matter of weeks to a few months.

14        In sum, while ICE is ready and willing to facilitate the return of N.P., E.A., and R.M.N., it

15   cannot guarantee the individuals want to return, or that other independent entities will cooperate

16   in that process, or finally, that their return will occur within a certain timeframe. But Defendants

17   are committed to working with Plaintiffs' class counsel, these individuals, and any individual

18   counsel, to return them as expeditiously as possible. The Parties will update the Court if

19   necessary.

20

21

22

23

24

25

26

27

28

1   Respectfully submitted,

2   DATED: December 13, 2019          MANATT, PHELPS & PHILLIPS, LLP
                                      MATTHEW KANNY
3                                     ADRIANNE MARSHACK
                                      SIRENA CASTILLO
4
                                      PUBLIC COUNSEL
5                                     JUDY LONDON
                                      SARA VAN HOFWEGEN
6                                     MARY TANAGHO ROSS

7                                     LAWYERS' COMMITTEE FOR CIVIL RIGHTS OF
                                      THE SAN FRANCISCO BAY AREA
8                                     BREE BERNWANGER

9
                                      By: /s/ *Sirena P. Castillo*
10                                        Sirena Castillo
                                          Attorneys for *Plaintiffs*
11                                        J.L., M.G.S., M.D.G.B., and J.B.A., on behalf
                                          of themselves and all others similarly situated
12

13

14  DATED:  December 13, 2019         OFFICE OF IMMIGRATION LITIGATION
                                      DISTRICT COURT SECTION
15                                    CIVIL DIVISION, U.S. DEP'T OF JUSTICE

16                                    JOSEPH H. HUNT
                                      Assistant Attorney General
17                                    WILLIAM C. PEACHEY
                                      Director, District Court Section
18                                    Office of Immigration Litigation
                                      COLIN A. KISOR
19                                    Deputy Director, District Court Section
                                      Office of Immigration Litigation
20
                                      By: LAUREN E. FASCETT
21                                        Senior Litigation Counsel
                                          United States Department of Justice
22                                        Civil Division
                                          Office of Immigration Litigation
23                                        Ben Franklin Station, P.O. Box 868
                                          Washington, DC  20044
24                                        Telephone No.:  (202) 616-3466
                                          Email: Lauren.Fascett@usdoj.gov
25

26

27

28

1

## **FILER'S ATTESTATION**

2          Pursuant to Civil Local Rule 5-1(i)(3), regarding signatures, Sirena P. Castillo hereby

3    attests that concurrence in the filing of this document has been obtained from all the signatories

4    above.

5

6    Dated: December 13, 2019                                    /s/ ***Sirena P. Castillo***

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

JOINT NOTICE OF REMOVALS CASE NO. 5:18-CV-04914-NC

1

**CERTIFICATE OF SERVICE**

2

3        I hereby certify that on December 13, 2019, the foregoing document was electronically filed

4    with the Clerk of the Court for U.S. District Court, Northern District of California, through the CM/ECF

5    system.  All parties are registered CM/ECF users and will be served through the CM/ECF system.

6                              By:      /s/ *Sirena P. Castillo*

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28