UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| J.L., et al.,<br><br>      Plaintiffs,<br><br>   v.<br><br>KENNETH T. CUCCINELLI, et al.,<br><br>      Defendants. | Case No. 18-cv-04914-NC<br><br>**AMENDED ORDER HOLDING DEFENDANTS IN CIVIL CONTEMPT AND ORDERING SANCTIONS** |

On October 24, 2018, the Court issued a preliminary injunction prohibiting Defendants from initiating removal proceedings or removing potential class members. *See* Dkt. No. 49 at 28. The Court further ordered Defendants to promptly notify Plaintiffs' counsel if any adverse action was taken against potential class members. *Id.* Over a year later, Plaintiffs notified the Court that Defendants may have violated. *See* Dkt. No. 223. Defendants deny that any violation occurred. *See* Dkt. Nos. 230, 247. The Court disagrees and now holds Defendants in civil contempt.

**I.   Background**

In August 2018, Plaintiffs, a class of young immigrants seeking special immigration status filed this lawsuit against the United States Department of Homeland Security ("DHS"), the United States Citizenship and Immigration Services ("USCIS"), and individual officers in charge of those departments. *See* Dkt. No. 1. Plaintiffs sought

"Special Immigrant Juvenile" ("SIJ") status because they were abused, neglected, or abandoned in their countries of origin. *See* Dkt. No. 49 at 4–5. Under the SIJ statute, 8 U.S.C. § 1101(a)(27)(J), SIJ status was available to any unmarried individual under the age of 21 who had obtained a state court guardianship or dependency order making the requisite findings. *Id.* at 2; *see also* 8 U.S.C. § 1101(a)(27)(J). According to Plaintiffs, however, Defendants uniformly rejected California probate court guardianship orders by unlawfully concluding that California probate courts did not have jurisdiction to issue those orders. *Id.* at 5–6.

Plaintiffs concurrently moved for a preliminary injunction. *See* Dkt. No. 6. The Court granted the injunction and enjoined Defendants from:

1. Denying Special Immigrant Juvenile Status pursuant to 8 U.S.C. § 1101(a)(27)(J) on the ground that a California Probate Court does not have jurisdiction or authority to "reunify" an 18- to 20-year-old immigrant with his or her parents; and

2. Initiating removal proceedings against or removing any Special Immigrant Juvenile Status petitioner who was appointed a guardian pursuant to § 1510.1(a) of the California Probate Code and whose Special Immigrant Juvenile Status petition has been denied on the grounds that the California Probate Court did not have jurisdiction or authority to "reunify" an 18- to 20-year-old immigrant with his or her parents.

*See* Dkt. No. 49 at 28. The Court further ordered Defendants "[t]o provide no less than 14 days notice to Plaintiffs' counsel before [they] take any adverse adjudicatory or enforcement action against any of the individual Plaintiffs or members of the Proposed Class." *Id.* A few months later, the Court certified a class of "children who have received or will receive guardianship orders pursuant to California Probate Code § 1510.1(a) and who have received or will receive denials of their SIJ status petitions on the grounds that the state court that issued the SIJ Findings lacked jurisdiction because the court did not have the authority to reunify the children with their parents." Dkt. No. 112 at 20.

2

1    On December 13, 2019, the parties filed a joint notice informing the Court that a
2 class member, N.P.G., had been removed without notice to Plaintiffs' counsel. *See* Dkt.
3 No. 223. Plaintiffs' counsel stated that they learned of N.P.G.'s removal on November 13,
4 2019. *Id.* at 2. An immigration judge, however, ordered N.P.G.'s removal on June 13,
5 2019 (*see* Dkt. No. 230-1 ¶ 12) and N.P.G. was removed to Guatemala on June 26, 2019
6 (*id.* ¶ 14). After a meet and confer with Defendants, the parties discovered that two
7 additional class members, E.A. and R.M.N., had also been removed on August 22, 2019,
8 and September 4, 2019, respectively. *See* Dkt. No. 223 at 4–7.
9    On December 16, 2019, the Court ordered Defendants to show cause why they
10 should not be held in civil contempt for violating the preliminary injunction. *See* Dkt. No.
11 224. The Court noted that it was especially concerned with Defendants' failure to timely
12 notify Plaintiffs' counsel of the three class members' removal. *Id.* at 1–2. At a hearing
13 two days later, the Court ordered the Defendants to provide a further update as to whether
14 any additional class members had been removed. *See* Dkt. No. 227. In their update,
15 Defendants identified two more class members, E.S.L.D.A. and M.W.D.C., who had been
16 removed without notice to Plaintiffs' counsel. *See* Dkt. No. 238 at 2–3.

**II. Discussion**

**A.  Whether Defendants Should Be Held in Contempt**

"Civil contempt . . . consists of a party's disobedience to a specific and definite court order by failure to take all reasonable steps within the party's power to comply." *Go-Video v. Motion Picture Ass'n of Am. (In re Dual-Deck Video Cassette Recorder Antitrust Litig.)*, 10 F.3d 693, 695 (9th Cir. 1993). "The contempt 'need not be willful,' and there is no good faith exception to the requirement of obedience to a court order." *Id.* (quoting *In re Crystal Palace Gambling Hall, Inc.*, 817 F.2d 1361, 1365 (9th Cir. 1987)). But "[a] contemnor in violation of a court order may avoid a finding of civil contempt . . . by showing it took *all* reasonable steps to comply with the order." *Kelly v. Wengler*, 822 F.3d 1085, 1096 (9th Cir. 2016) (emphasis in original) (citing *Inst. of Cetacean Research v. Sea Shepherd Conservation Soc'y*, 774 F.3d 935, 945 (9th Cir. 2014)). Likewise,

3

"[s]ubstantial compliance with the court order is a defense to civil contempt, and is not vitiated by a few technical violations where every reasonable effort has been made to comply." *Dual-Deck*, 10 F.3d at 695 (quotation marks omitted) (quoting *Vertex Distrib., Inc. v. Falcon Foam Plastics, Inc.*, 689 F.2d 885, 891 (9th Cir. 1982)). Civil contempt must be proven by "clear and convincing evidence." *Id.*

The parties agree on the underlying facts. *See* Dkt. Nos. 226, 238, 247. There is no dispute that the United States Immigration and Customs Enforcement ("ICE") deported five individuals on the class list. *See* Dkt. No. 226, 238. There is also no dispute that Defendants failed to notify Plaintiffs' counsel 14 days before ICE took any adverse adjudicatory or enforcement action against them. *Id.* The only dispute is whether Defendants substantially or reasonably complied with the Court's preliminary injunction.

Defendants argue that they did not violate the preliminary injunction because ICE reasonably interpreted the Court's preliminary injunction to not include N.P.G., E.A., R.M.N., E.S.L.D.A., and M.W.D.C. *See* Dkt. No. 226. This is so, Defendants argue, because the Court's order did not reach individuals with pending SIJ petitions.

The Court disagrees. In the preliminary injunction, the Court ordered Defendants to notify Plaintiffs' counsel before any adverse action was taken against members of the proposed class. *See* Dkt. No. 49 at 28. At that time, the proposed class included individuals with guardianship orders issued pursuant to Cal. Prob. Code § 1510.1(a) and "who have or will receive" denials of their SIJ petitions. *See* Dkt. No. 1 ¶ 71. Given that the crux of Plaintiffs' complaint is that Defendants had a blanket policy of denying *all* SIJ petitions based on a § 1510.1(a) guardianship order, the only reasonable interpretation of the Court's order is to cover all individuals with denied or pending SIJ petitions based on a § 1510.1(a) guardianship order. This interpretation is further bolstered by the fact that the five individuals were included on a class list largely prepared by Defendants themselves. *See* Dkt. No. 223.

Defendants also argue that they should not be held in contempt because they took all reasonable steps within their power to comply with the Court's preliminary injunction.

*See* Dkt. No. 226 at 10.  In particular, Defendants "issued instructions for immediate implementation, to all USCIS adjudication regions, and advised operational staff not to issue denial decisions or [NOIDs]."  *Id.*  Defendants also advised ICE not to remove or initiate removals proceedings against class members.  *Id.*

These, however, were not *all* reasonable steps Defendants could have taken to comply with the Court's order.  As an agency within the purview of DHS, Defendants had ample ability to control ICE's actions and ensure full compliance with the Court's orders. Defendants could and should have monitored ICE's enforcement actions against class members.  At a minimum, the fact that Defendants failed to discover the violation after several months (and only after Plaintiffs' counsel notified Defendants) demonstrates an unreasonable lack of diligence.

In short, Defendants failed to take all reasonable steps to comply with the Court's preliminary injunction and civil contempt is appropriate.

### B.     Appropriate Sanctions

Sanctions for civil contempt are limited "to (1) compel or coerce obedience to a court order, and/or (2) compensate the contemnor's adversary for injuries resulting from the contemnor's noncompliance.").  *Ahearn ex rel. N.L.R.B. v. Int'l Longshore & Warehouse Union, Locals 21 & 4*, 721 F.3d 1122, 1131 (9th Cir. 2013); *see also Int'l Union v. Bagwell*, 512 U.S. 821, 827 (1994) ("[t]he paradigmatic coercive, civil contempt sanction . . . involves confining a contemnor indefinitely until he complies with an affirmative command . . . .").

Defendants' violations have caused substantial injury to N.P.G., E.A., R.M.N., E.S.L.D.A., and M.W.D.C. by removing them from the United States without giving them a full opportunity to obtain SIJ status.  Compensatory sanctions are therefore appropriate to remedy Defendants' violation.  Because the ability to remedy the injury is largely in Defendants' hands, coercive sanctions are also appropriate to incentivize Defendants' prompt and full compliance with this order.  Accordingly, the Court ORDERS the following, as amended on February 20, 2020:

1. Defendants must facilitate N.P.G., E.A., R.M.N., E.S.L.D.A., and M.W.D.C.'s return to the United States to the extent they wish to be returned by February 29, 2020.

2. Defendants must immediately review N.P.G., E.A., R.M.N., E.S.L.D.A., and M.W.D.C.'s SIJ petitions to determine whether any Requests for Evidence ("RFE") or Notices of Intent to Deny ("NOID") are appropriate. If so, Defendants must issue the RFE or NOID to Plaintiffs' counsel and the class members' immigration attorneys by February 21, 2020.

3. Defendants must issue a final adjudication as to N.P.G., E.A., R.M.N., E.S.L.D.A., and M.W.D.C.'s SIJ petitions within one week of their return or within one week of receiving the class member's response to a RFE or NOID, whichever is later.

4. Defendants must pay for all costs associated with N.P.G., E.A., R.M.N., E.S.L.D.A., and M.W.D.C.'s travel to the United States or, to the extent necessary, any consulate.

5. Defendants must notify Plaintiffs' counsel if they intend to detain or remove E.A., R.M.N., E.S.L.D.A., or M.W.D.C. at least 14 days before their return to the United States, unless the class member will be returned to the United States before February 28, 2020. If the class member will be returned to the United States before February 28, 2020, Defendants must immediately notify Plaintiffs' counsel if they intend to detain or remove the class member and the class members' date of return. Defendants may not remove N.P.G., E.A., R.M.N., E.S.L.D.A., or M.W.D.C. before issuing a final adjudication of his or her SIJ petition or February 28, 2020, whichever is later.

6. Defendants must pay Plaintiffs' counsel reasonable attorneys' fees incurred to address the removals of N.P.G., E.A., R.M.N., E.S.L.D.A., and M.W.D.C. Plaintiffs' counsel shall provide Defendants with detailed declarations or billing records justifying a specific sanction amount by March 31, 2020. If

6

the parties cannot reach an agreement on fees, Plaintiffs must file a motion for attorneys' fees by April 30, 2020.

7. For each day after February 29, 2020, that N.P.G., E.A., R.M.N., E.S.L.D.A., or M.W.D.C. has not been returned to the United States, Defendants must pay Plaintiffs' counsel $500 per removed class member that wishes to be returned to the United States.

**IT IS SO ORDERED.**

Dated: February 14, 2020

_____
NATHANAEL M. COUSINS
United States Magistrate Judge

Amended: February 20, 2020