JOSEPH H. HUNT
Assistant Attorney General
WILLIAM C. PEACHEY
Director
Office of Immigration Litigation, District Court Section
COLIN A. KISOR
Deputy Director
LAUREN E. FASCETT
Senior Litigation Counsel
CATHERINE M. RENO
JAMES J. WEN
Trial Attorneys
United States Department of Justice
Civil Division
Office of Immigration Litigation, District Court Section
P.O. Box 868, Ben Franklin Station
Washington, D.C. 20044
Tel: (202) 532-4142
Fax: (202) 305-7000
James.J.Wen@usdoj.gov

*Attorneys for Defendants*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| J.L. *et al.*, on behalf of themselves and all others similarly situated,<br><br>    Plaintiffs,<br><br>  v.<br><br>KENNETH T. CUCCINELLI, II, Principal Deputy Director and Senior Official Performing the Duties of Director, United States Citizenship and Immigration Services, CHAD F. WOLF, Acting Secretary, Department of Homeland Security, *et al.*,<br><br>    Defendants. | CASE NO. 5:18-CV-4914 NC (DMR)<br><br>**DEFENDANTS' NOTICE OF MOTION AND MOTION FOR RECONSIDERATION RE: ECF NO. 252**<br><br>Hearing Date:   March 25, 2020<br>Time:  1:00 pm<br><br>Hon. Nathanael M. Cousins |

### NOTICE OF MOTION

PLEASE TAKE NOTICE that on March 25, 2020 at 1:00 pm, pursuant to the Court's

minute order, on March 5, 2020 (ECF No. 263), granting leave to file a motion for

reconsideration, Defendants Kenneth T. Cuccinelli, II, Principal Deputy Director and Senior Official Performing the Duties of Director of the United States Citizenship and Immigration Services ("USCIS"), Robert Cowan, Director of the National Benefits Center, Chad F. Wolf, Acting Secretary of the Department of Homeland Security ("DHS"), as well as USCIS and DHS (collectively "Defendants") hereby move the Court for a Motion for Reconsideration, under Civil L.R. 7-9, to modify the Court's Amended Contempt Order (ECF No. 252).

Defendants principally seek to be relieved of the coercive sanction because, despite reasonable efforts to purge the contempt, factors outside their control prevented them from complying with Court's February 29, 2020 deadline to return the individuals to the United States. Alternatively, Defendants seek to toll the effective date of the coercive sanctions to take into account delays that were not attributable to Defendants. This Motion for Reconsideration is supported by the Memorandum of Points and Authorities attached hereto, all pleadings, papers, and files in this action, and such oral argument as may be presented on the Motion. A proposed order is also attached.

Respectfully submitted,

JOSEPH H. HUNT
Assistant Attorney General
Civil Division

WILLIAM C. PEACHEY
Director
Office of Immigration Litigation
District Court Section

COLIN A. KISOR
Deputy Director

LAUREN E. FASCETT
Senior Litigation Counsel

/s/ James J. Wen
JAMES J. WEN
Trial Attorney
Office of Immigration Litigation

District Court Section
P.O. Box 868, Ben Franklin Station
Washington, DC  20044
Tel: (202) 532-4142
Fax: (202) 305-7000
Email: James.J.Wen@usdoj.gov

CATHERINE M. RENO
Trial Attorney

Dated: March 13, 2020          *Attorneys for Defendants*

# TABLE OF CONTENTS

MEMORANDUM IN SUPPORT OF MOTION FOR RECONSIDERATION.. .................. 1

SCOPE AND STANDARD OF REVIEW ................................................................ 2

ARGUMENT ..................................................................................................... 2

I.   THE COURT SHOULD MODIFY THE CONTEMPT ORDER BECAUSE
     THE PER DIEM COERCIVE SANCTIONS ARE PUNITIVE WHERE
     DEFENDANTS LACKED THE ABILITY TO COMPLY WITH THE COURT'S
     CONTEMPT ORDER FOR REASONS BEYOND THEIR CONTROL .................. 2

     A.   E.A. ............................................................................................... 7

     B.   R.M.N. ........................................................................................... 9

     C.   M.W.D.C. ..................................................................................... 11

II.  THE COERCIVE SANCTIONS ARE PUNITIVE BECAUSE THEY ARE NOT
     NEEDED TO OBTAIN DEFENDANTS' COMPLIANCE ..................................... 12

III. ANY COERCIVE SANCTIONS MUST BE PAYABLE TO THE COURT ........... 13

CONCLUSION ................................................................................................. 14

CERTIFICATE OF SERVICE ............................................................................. 15

**TABLE OF AUTHORITIES**

**CASE LAW**

*Arabian Gas & Oil Dev. Co. v. Wisdom Marines Lines, S.A.*,
   No. 16-CV-03801-DMR, 2017 WL 4390184 (N.D. Cal. Oct. 3, 2017) ................................6, 13

*Elmas Trading Corp.*,
   824 F.2d 732 (9th Cir. 1987) ........................................................................................6

*Falstaff Brewing Corp. v. Miller Brewing Co.*,
   702 F.2d 770 (9th Cir. 1983) ................................................................. *passim*

*General Signal Corp. v. Donallco, Inc.*,
   787 F.2d 1376 (9th Cir. 1986) ....................................................................................13

*Int'l Union, United Mine Workers v. Bagwell*,
   512 U.S. 821 (1994).........................................................................................3, 6, 7

*Kelly v. Wengler*,
   822 F.3d 1085 (9th Cir. 2016) ......................................................................................6

*Lasar v. Ford Motor Co.*,
   399 F.3d 1101 (9th Cir. 2005) ....................................................................................13

*Maggio v. Zeitz*,
   333 U.S. 56 (1948)..................................................................................................3, 5

*Reed v. Fed. Nat'l Mortg. Ass'n*, No.
   5:13-CV-00940-VAP-SPX, 2019 WL 7166975 (C.D. Cal. Dec. 4, 2019)............................13

*Richmark Corp. v. Timber Falling Consultants*,
   959 F.2d 1468 (9th Cir. 1992) ....................................................................................13

*Shillitani v. United States*,
   384 U.S. 364 (1966)......................................................................................................3

*United States v. Ayres*,
   166 F.3d 991 (9th Cir. 1999) ..........................................................................3, 7, 9, 11

*United States v. Flores*,
   628 F.2d 521 (9th Cir. 1980) ......................................................................................12

*United States v. Hernandez*,
   No. 17-CV-00040-BLF, 2018 WL 1684336 (N.D. Cal. Apr. 5, 2018) ........................9

*United States v. United Mine Workers*,
  330 U.S. 258 (1947).............................................................................................13, 14

*Whittaker Corp. v. Execuair Corp.*,
  953 F.2d 510 (9th Cir. 1992) ......................................................................................12

## RULES

Northern District Civil Local Rule 7-9 ...........................................................................2

**MEMORANDUM IN SUPPORT OF MOTION FOR RECONSIDERATION**

On February 14, 2020, the Court held Defendants in civil contempt after determining that they had violated the October 24, 2018 preliminary injunction ("PI") by removing N.P.G., E.A., R.M.N., E.S.L.D.A., and M.W.D.C. without providing 14 days' notice to Class Counsel. ECF No. 249; *see also* ECF No. 252 (amending ECF No. 249) ("Contempt Order"). The Court ordered that "Defendants must facilitate N.P.G., E.A., R.M.N., E.S.L.D.A., and M.W.D.C.'s return to the United States to the extent they wish to be returned by February 29, 2020." ECF No. 252 at 6, ¶ 1. Further, it ordered "[f]or each day after February 29, 2020, that N.P.G., E.A., R.M.N., E.S.L.D.A., and M.W.D.C. has not been returned to the United States, Defendants must pay Plaintiffs' counsel $500 per removed class member that wishes to be returned to the United States." *Id*. at 7, ¶ 7.

On February 28, 2020, Defendants filed a Notice of Inability to Comply, informing the Court they were unable to return E.A., R.M.N., E.S.L.D.A., and M.W.D.C., by the Court's February 29, 2020 deadline[1] due to reasons outside of Defendants' control and requested relief from the coercive sanctions. *See* ECF No. 257. The Court held a hearing on March 5, 2020, and heard from the parties, including Plaintiffs' position regarding Defendants' request for relief. Defendants informed the Court that ICE returned N.P.G. on February 12, 2020, E.S.L.D.A. on March 2, 2020, and M.W.D.C. on March 5, 2020. Defendants stated that they further hoped to return R.M.N. on March 12, but whether they would be able to do so depended on whether he had a valid passport and whether he was physically able to travel. The Court granted Defendants leave to file a motion for reconsideration to raise the points made in their Notice of Inability to Comply. *See* ECF. No. 263.

---

[1] Defendants returned N.P.G. to the United States, on February 12, 2020, before the Court's deadline.

## SCOPE AND STANDARD OF REVIEW

The Northern District Civil Local Rules state that a party may, with leave of the Court, file a motion for reconsideration of any interlocutory order. Civil L.R. 7-9 (a). The moving party must show (1) "[t]hat at the time of the motion for leave, a material difference in fact or law exists," about which the party applying for reconsideration did not know at the time of the order, and which warrants reconsideration; (2) "[t]he emergence of new material facts or a change of law occurring after the time of such order; or (3) [a] manifest failure by the Court to consider material facts or dispositive legal arguments." Civil L.R. 7-9 (b).

## ARGUMENT

### I. THE COURT SHOULD MODIFY THE CONTEMPT ORDER BECAUSE THE PER DIEM COERCIVE SANCTIONS ARE PUNITIVE WHERE DEFENDANTS LACKED THE ABILITY TO COMPLY WITH THE COURT'S CONTEMPT ORDER FOR REASONS BEYOND THEIR CONTROL.

Defendants request that the Court relieve them of the $500 per diem coercive sanctions for not returning four individuals to the United States by February 29, 2020, because, despite their best efforts, Defendants were unable to comply by that Court imposed deadline due to circumstances beyond Defendants' control. Even prior to the Contempt Order, Defendants already had voluntarily agreed to return the individuals and were actively working to do so. Further, Defendants were unable to meet the February 29th deadline due to delays on the part of the individuals themselves and, thus, Defendants' "ability to remedy the injury [was not] largely in Defendants' hands" (ECF. No. 249 at 7). Thus, the per diem coercive sanctions serve only to punish Defendants, rather than incentivize or motivate compliance with the Contempt Order.

The $500 per diem coercive sanction is punitive, rather than coercive or compensatory, because Defendants were unable to return four of the five individuals by the Court's deadline for reasons beyond their control. *Cf. Falstaff Brewing Corp. v. Miller Brewing Co.*, 702 F.2d 770, 781 (9th Cir. 1983) ("every precaution should be taken that [civil contempt] orders issue … only after legal grounds are shown and only when it appears that obedience is within the power of the party being coerced by the order") (internal citations omitted). Importantly, however, to date,

Defendants have successfully returned three of the individuals (N.P.G., E.S.L.D.A., and M.W.D.C.), are in the process of returning R.M.N. They have also made extensive efforts to contact E.A. to determine whether he wants to return — and recently learned from E.A.'s family friend that E.A. does not wish to return to the United States. Thus, Defendants respectfully request the Court relieve them of the per diem coercive sanctions because they have and continue to have a punitive, rather than a coercive effect.

It is well established that "[a] contempt fine … is considered civil and remedial if it either coerces the defendant into compliance with the court's order, or compensates the complainant for losses sustained. Where a fine is not compensatory, *it is civil only if the contemnor is afforded an opportunity to purge*." *Int'l Union, United Mine Workers v. Bagwell*, 512 U.S. 821, 829 (1994) (emphasis added). Accordingly, while "[o]ne of the paradigmatic civil contempt sanctions is a per diem fine imposed for each day a contemnor fails to comply with an affirmative court order[,]" *United States v. Ayres*, 166 F.3d 991, 995 (9th Cir. 1999), such sanctions "are only appropriate where the contemnor is able to purge the contempt by his *own* affirmative act and 'carries the keys of his prison in his own pocket.'" *Id*. at 996–97 (citing *Bagwell*, 512 U.S. at 828) (emphasis added). In other words, a court's power to impose coercive civil contempt depends upon the ability of the contemnor to comply with the court's coercive order. *Falstaff*, 702 F.2d at 778 (citing *Shillitani v. United States*, 384 U.S. 364, 371 (1966) and *Maggio v. Zeitz*, 333 U.S. 56, 76 (1948)).

The Ninth Circuit Court of Appeals has found contemnors' inability to purge contempt by their own affirmative acts rendered civil contempt to be *criminal* because the coercive sanctions became *punitive*. *See Ayres*, 166 F.3d at 996–97 ("A contemnor's ability to purge civil contempt … cannot be contingent upon the acquiescence of an opposing party because such an arrangement effectively renders the contempt punitive, rather than civil."); *Falstaff*, 702 F.2d at 772, 780 (holding that the civil contempt order was invalid because the record showed that compliance with the court's order to return the missing documents was impossible).

In *Ayres*, the district court had entered a civil contempt order against the contemnor, a target of an Internal Revenue Service ("IRS") investigation, because of the contemnor's refusal to comply with a summons enforcement order to appear before the IRS. *Ayres*, 166 F.3d at 994. The district court ordered the contemnor to comply with the summons enforcement order within a 10-day grace period or face a $500 fine for each day that he failed to comply thereafter. *Id.* When the contemnor attempted to schedule an appearance before the IRS within the requisite time period in order to comply with the contempt order, the IRS stated that relevant officers were unavailable on short notice and scheduled the contemnor's appearance for a later date outside the grace period. *Id.* Consequently, the contemnor was unable to comply with the contempt order until four days after the expiration of the grace period, thus incurring $1,500 in fines. *Id.*

On appeal, the Ninth Circuit held that the district court erred in imposing the coercive $500 per day sanction because the contemnor had attempted to comply with the contempt order within the 10-day grace period but was unable to do so because of reasons beyond his control, namely, "the IRS's asserted scheduling problems" (*id.*):

> By ignoring the IRS's intransigence and by imposing sanctions despite [the contemnor's] inability to purge the contempt by his *own* affirmative act, the district court effectively imposed punitive, rather than coercive, contempt sanctions without following the heightened procedural requirements for such sanctions. Put most simply, the district court abused its discretion because it fined [the contemnor] for the IRS's delay. We therefore reverse the order assessing the $1,500 fine.

*Id.* at 996–97 (internal citations omitted) (emphasis added).

Similarly, in *Falstaff*, the district court ordered the contemnor to return missing documents, imposing a non-refundable fine if the documents were not returned within ninety days. *Falstaff*, 702 F.2d at 777. A previous investigation of the lost files, however, had determined that after a "thorough search[,]" "further efforts to search for the missing documents would be *futile*" and that it was "*impossible* to ascertain their present whereabouts." *Id.* at 775 (emphasis in original). On appeal, the Ninth Circuit found that "the [contempt] cannot be construed as coercive civil contempt because the uncontradicted evidence before the court …

established that, despite an exhaustive search, it was 'impossible' and 'futile' to find the missing documents." *Id*. at 780. The Ninth Circuit panel emphasized that "[c]onditioning an order of contempt on the performance of an impossible act, for the purpose of punishing a contemnor for its incapacity to perform the act, does not square with the Supreme Court's admonishment that '[e]very precaution should be taken that orders issue …, only after legal grounds are shown and only when it appears that obedience is within the power of the party being coerced by the order.'" *Id.*, 702 F.2d at 781 (citing *Maggio*, 333 U.S. at 72–73, n.6) (alterations in original). Thus, the Court held "it was impossible for [the contemnor] to purge itself of contempt…" *Falstaff*, 702 F.2d at 782.

Here, facilitating the return of removed individuals is highly involved, complex and delicate process involving foreign governments and a number of U.S. agencies. The United States Immigration and Customs Enforcement ("ICE") is at the center of this complicated interagency process. *See* ECF No. 257-1, ¶¶ 6–7. The facilitation of an individual's return to the United States, and the time required to facilitate the return, turns on many factors, particularly, whether the individual has a passport, whether he can be reliably contacted and located, and whether the individual cooperates with the travel coordination efforts. *See id.*, ¶¶ 5, 7. Another key factor is whether the individual is working with an attorney. The individual's attorney often plays a critical role in facilitating an individual's return. Not only does the attorney likely have more accurate contact and location information, he can serve as a liaison and point of contact between ICE and the individual. *See id.*, ¶ 7.

For almost all of the five individuals here, ICE has encountered challenges affecting its ability to facilitate their returns, such as locating and contacting the individual or his attorney. *See id*. Indeed, ICE returned N.P.G. to the United States before the Court entered its Contempt Order because ICE was able to establish and maintain reliable contact with him since November 27, 2019. *See* ECF No. 226-1, ¶ 16; *see generally* ECF No. 238-4; ECF No. 256-1.

Moreover, the five individuals in this case are located in either Guatemala or Mexico,

which both have their own travel-document requirements that ICE must comply with. *See* ECF No. 257-1, ¶¶ 8–9. By setting February 29 as the deadline for Defendants to purge the contempt, the Court essentially turned the sanction's conditional nature into a virtual certainty. While the civil contemnor is said to "carr[y] the keys of his prison in his own pocket," *Int'l Union, United Mine Workers v. Bagwell*, 512 U.S. 821, 828 (1994), here, as explained for each individual below, others "carr[y] the keys" in many crucial respects. Thus, the Contempt Order's requirement that Defendants pay $500 per day for each removed individual does not have its intended coercive effect, but instead is mostly punitive.[2] *See Kelly v. Wengler*, 822 F.3d 1085, 1097 (9th Cir. 2016) ("A criminal sanction … generally seeks to punish a completed act of disobedience.") (Internal citations and quotation marks omitted); *S.E.C. v. Elmas Trading Corp.*, 824 F.2d 732, 732 (9th Cir. 1987) ("Regardless of the purpose of the order, if … [the contemnor] lacks the ability to comply with it, or it has lost all coercive effect, the contempt becomes criminal …").

Thus, Defendants request the Court to relieve them of the coercive per diem sanction because "[a]bility to comply is a crucial inquiry for the court's decision concerning coercive civil contempt orders, and 'a court should weigh all the evidence properly before it determines whether or not there is actually a present ability to obey and whether failure to do so constitutes deliberate defiance or willful disobedience which a coercive sanction will break.'" *Falstaff*, 702 F.2d at 781 n. 6.

---

[2] Contrary to Plaintiffs' arguments at the hearing, Defendants do not dispute that the Court has the authority to impose "a per diem fine … for each day [Defendants] fail[] to comply with an affirmative court order." *Bagwell*, 512 U.S. at 828. Moreover, Defendants do not challenge that "[a] daily fine of $500.00 is … within the range of coercive per diem fines issued by courts in this district for civil contempt." *Arabian Gas & Oil Dev. Co. v. Wisdom Marines Lines, S.A.*, No. 16-CV-03801-DMR, 2017 WL 4390184, at *7 (N.D. Cal. Oct. 3, 2017) (collecting cases). Rather, Defendants contend that they attempted — but were unable to — purge the contempt by returning the removed individuals by February 29, 2020, for reasons beyond their control, and, therefore request appropriate relief to allow Defendants to return the removed individuals without incurring the coercive per diem sanction.

Alternatively, Defendants request the Court to stay the coercive per diem sanction until "the ability to remedy the injury is largely in Defendants' hands" (ECF No. 252), or to toll the effective date of the coercive sanction to take into account delays that were outside of Defendants' control based on an individualized determination, or to grant a reasonable extension to return the remaining removed individuals.

## A.  E.A.

First and foremost, Defendants recently learned that E.A. does not wish to return to the United States. Ex. 1, ¶ 9. Previously, in December 2019, Ms. Behr, E.A.'s attorney, indicated that he wished to return to the United States, but that he "might back out". ECF No. 256-4, ¶ 5. At that time, ICE made exhaustive efforts to speak to E.A., but was unable to contact him and ascertain if he desired to return to the United States and, thus, could not begin the facilitation process. Moreover, as detailed below, his attorney, Ms. Behr, stated that she would not provide E.A.'s contact information to ICE and would not offer any further assistance because she also has lost contact with E.A. Further, even Class Counsel has been unable to provide information regarding E.A.'s whereabouts,[3] and at the March 5 hearing, Plaintiffs excluded E.A. from their Plaintiffs' discussion of the remaining aliens that still needed to be returned. See ECF No. 262 at 4:24-4:36. Defendants, despite substantial efforts, have been unable to purge the contempt by their own affirmative acts. *See Ayres*, 166 F.3d at 995 (citing *Bagwell*, 512 U.S. at 828); *Falstaff*, 702 F.2d at 782.

This week, ICE Enforcement and Removal Operations ("ERO") finally learned, via communication with a family friend, that, according to E.A.'s mother, E.A. does not wish to return to the United States. *See* Ex. 1, ¶ 9.

Thus, at a minimum, this Court should not impose any coercive sanction for E.A. because Defendants, despite substantial efforts, have been unable to purge the contempt by their own

---

[3] Defendants requested Class Counsel's assistance in locating E.A. Specifically, Defendants sought Class Counsel's assistance in letters dated February 7, and February 18, 2020. Although Class counsel has expressed willingness to assist, they have not provided any information.

affirmative acts. And coercive sanctions for E.A. are further inappropriate because the lack of assistance or cooperation from E.A.'s attorney further frustrated ERO's efforts to facilitate his return. As *Ayres* makes clear, Defendants' "ability to purge civil contempt … cannot be contingent upon the acquiescence of" Ms. Behr. *See Ayres*, 166 F.3d at 997. E.A.'s attorney has not provided assistance to ICE, despite its extensive efforts to seek her help. Although ERO has been in contact with Ms. Behr since December 2019, communication with her has been unreliable due to her being largely non-responsive to ERO's phone calls and messages.[4] ECF No. 256-4, ¶¶ 4, 9, 10, 11.

Additionally, ERO continued to seek out E.A. independently. ERO reviewed E.A.'s alien file and found contact information for a family friend, Ana, as well as his previous attorney (Wendy Ramirez), and previous bond obligor (Yolanda). ECF No. 256-4, ¶ 14. On February 19, 2020, ERO contacted Ana, who said that she would contact E.A.'s parents to see if he wished to return to the United States. *Id.*, ¶ 15. On February 21, 2020, Ana told ERO that she had not heard back from E.A.'s parents. *Id.*, ¶ 16. On February 27, 2020, ERO tried calling Ana and Wendy, in an attempt to procure contact information for E.A. *Id.*, ¶ 18. But both calls went to voicemail, and, although ERO left voice messages. *Id.*, ¶ 19. Finally, on March 12, 2020, ERO reached Ana, who explained that E.A.'s mother told her that he did not wish to return to the United States. Ex. 1, ¶ 7. Although Ana stated she provided E.A.'s mother with ERO's contact information, neither E.A. nor his mother ever directly contacted ERO. *Id.*, ¶ 8. With this new development, it is even more evident that Defendants should not incur any coercive sanctions for its inability to return

---

[4] On January 29, 2020, ERO made multiple attempts to contact Ms. Behr by phone and email, but was unsuccessful. *Id.*, ¶ 9. Moreover, Ms. Behr did not respond to any of ERO's messages. *Id.* On February 3, 2020, ERO emailed Ms. Behr, and she indicated that she had not had any further contact with E.A. *Id.*, ¶ 10. On February 7, 2020, ERO called Ms. Behr to request an update on E.A.'s desire to return to the U.S., but she did not answer the phone. *Id.*, ¶ 11. On February 7, 2020, ERO requested Ms. Behr to provide E.A.'s contact information in Mexico so that ERO could try to communicate with him directly. *Id.*, ¶ 12. Ms. Behr did not respond until February 11, 2020, when she stated that she was no longer in contact with E.A. and that she could not release his contact information to ERO without E.A.'s consent to do so. *Id.*, ¶ 13.

E.A. because the sanction ¶ 7 applies only to "class member[s] [who] wish[] to be returned to the United States." ECF No. 252, ¶ 7.

Thus, based on the circumstances — especially given that E.A. does not seem to want to return to the United States — any coercive sanctions regarding E.A. are not appropriate. *United States v. Hernandez*, No. 17-CV-00040-BLF, 2018 WL 1684336, at *2 (N.D. Cal. Apr. 5, 2018) ("[C]oercive imprisonment must eventually end, even if the respondent does not comply. Coercive confinement must end once the court determines confinement achieved any possible coercive effect and additional confinement would be punitive.") (internal citations omitted). In sum, this Court should modify the contempt order to exclude E.A. and more importantly, to waive any coercive sanctions against Defendants with respect to E.A. entirely.[5]

## B.    R.M.N.

Because factors outside Defendants' control rendered them unable to facilitate R.M.N.'s return by February 29, 2020, the Court should suspend and or toll the per diem coercive sanction as applied to R.M.N. Despite extensive efforts to do so, neither ERO nor R.M.N.'s attorney were able to establish reliable contact with R.M.N. until recently. ERO has been in contact with Mr. Imbriano, R.M.N.'s attorney, since January. ECF No. 256-2, ¶ 3. Despite this, neither ERO nor Mr. Imbriano made any reliable contact with R.M.N. until recently. *See id.*, ¶ 7. On February 13, 2020, the day before the Contempt Order, ERO was working with Mr. Imbriano to find alternative means to reach R.M.N. because his phone appeared to be disconnected. *Id.*, ¶ 5. Finally, on February 20, 2020, ERO and Mr. Imbriano, established reliable contact with R.M.N., and ERO was able to proceed with the facilitation process. *See id.*, ¶ 7. ERO made flight arrangements to transport R.M.N. back to the United States on February 27, 2020, in time for the

---

[5] Although ICE nonetheless remains willing to facilitate E.A.'s return, should he wish to return, Defendants request that he communicates his intent to ICE by May 15, 2020, one month before Defendants must adjudicate all SIJ petitions under the settlement agreement. Defendants note that, if ICE does not hear from E.A. by May 15, 2020, then USCIS will adjudicate E.A.'s Special Immigration Juvenile ("SIJ") petition, regardless of his presence in the United States, on or before the final date for adjudicating all of the SIJ petitions under the Settlement Agreement.

Court's deadline. *See id.*, ¶ 10. But on February 25, 2020, R.M.N.'s attorney told ERO that R.M.N. had an injury, which he did not elaborate on, that rendered R.M.N. unable to travel until the following week. *See id.* R.M.N.'s injury further delayed his ability to travel to Guatemala City to obtain his passport, which Guatemala requires for departure. *Id.*, ¶ 8.

ERO and Mr. Imbriano are working together to coordinate R.M.N.'s travel plans to depart Guatemala to the United States. ERO had planned for R.M.N.'s return on March 12, 2020, provided that R.M.N. had obtained a valid passport as required by the Guatemalan government in order for him to depart the country. *Id.*, ¶¶ 8, 11. But since R.M.N. had not provided a valid passport by March 12th, R.M.N. was unable to leave the country that day Guatemala will not permit R.M.N. to depart Guatemala without a passport. *See* Ex 2, ¶ 3.

Mr. Imbriano recently obtained and mailed R.M.N.'s passport to the ICE Attaché to enable R.M.N. to depart Guatemala. Ex. 2, ¶ 4. On March 13, 2020, Mr. Imbriano stated that the tracking number for the passport indicated that it was delivered to a military base in Guatemala on March 9, 2020. *Id.*, ¶ 5. Although, the ICE Attaché's office has not received the passport to date, it is working on retrieving it. *See id.*, ¶ 5.

Thus, ERO intends to schedule a flight for R.M.N. to return the following week, on March 19, 2020, assuming the ICE Attaché receives R.M.N.'s passport and verifies that it is valid. *See id.*, ¶¶ 4, 7. Given the circumstances, Defendants should not be liable for the per diem coercive sanctions accruing since March 1, 2020 because reasons beyond ERO's control caused the delay in R.M.N.'s return, including R.M.N.'s physical inability to travel and R.M.N.'s and his attorney's delay in sending R.M.N.'s passport to ERO. Similar to the contemnor's posture in *Ayres*, Defendants should not be fined for failing to timely purge the sanctions due to the R.M.N. and his counsel's delay. *See Ayres*, 166 F.3d at 996–97. Thus, this Court should grant relief regarding the coercive sanctions attached to Defendants' inability to facilitate R.M.N.'s return by February 29, 2020, or else it would render the sanction punitive, since much of the delay is not attributable to Defendants. *See Ayres*, 166 F.3d at 996–97.

Therefore, Defendants, request the Court suspend or the per diem coercive sanctions, or toll the time until ICE receives R.M.N.'s passport, R.M.N. confirms that he is physically able and willing to travel, and ICE has a reasonable period of time to schedule R.M.N. on the next available flight from Guatemala to the United States. Defendants request that the per diem coercive sanctions only restart if further delay, if any, is solely attributed to Defendants.

### C.    M.W.D.C.

ICE returned M.W.D.C. to the United States on March 5, 2020. Ex. 3, ¶ 5. Although his return occurred after the Court's February 29 deadline, the Court should relieve Defendants of the per diem coercive sanctions for that four-day delay because Defendants were unable to facilitate his return for reasons beyond their control. In other words, Defendants were unable to purge the contempt with their own acts before the coercive sanctions started to accrue.

ERO first contacted M.W.D.C.'s attorney, Mr. Mikrut, on January 17, 2020. ECF No. 238-3, ¶ 9. Mr. Mikrut did not respond to ERO's many messages regarding facilitating M.W.D.C.'s return. ECF No. 256-3, ¶¶ 5–7. ERO resorted to finding means of contacting M.W.D.C. directly, but was unsuccessful. *Id.*, ¶¶ 8–9, 11. On February 18, 2020, after the Court had entered its Contempt Order, Ms. Blumenau, Mr. Mikrut's colleague, finally contacted ERO to coordinate the facilitation of M.W.D.C.'s return. *Id.*, ¶¶ 12–13. The delay in returning M.W.D.C. was further attributable to the fact that it took about a week for Mr. Blumenau to obtain and provide M.W.D.C.'s passport information to ERO. *Id.*, ¶¶ 15–17. The delay was beyond ERO's control, since Guatemala requires M.W.D.C. to have a passport to leave the country. *Id.*, ¶ 18.

Thus, Defendants, request to be relieved of the per diem coercive sanctions, since ICE was unable to facilitate M.W.D.C.'s return by February 29 due to M.W.D.C.'s delay in providing his passport. Defendants request that the Court relieve them of the coercive per diem sanctions for the four days between March 1 and March 5, 2020 (*see* ECF No. 252, ¶ 7). Alternatively, the

Court should not charge Defendants for the approximately thirteen-day period of delay on the part of M.W.D.C.'s attorney.

## II. THE COERCIVE SANCTIONS ARE PUNITIVE BECAUSE THEY ARE NOT NEEDED TO OBTAIN DEFENDANTS' COMPLIANCE

The $500-per-day sanction was not and is not needed to obtain Defendants' compliance with returning the removed individuals. *See Whittaker Corp. v. Execuair Corp.*, 953 F.2d 510, 517 (9th Cir. 1992) ("Generally, the minimum sanction necessary to obtain compliance is to be imposed"); *United States v. Flores*, 628 F.2d 521, 527 (9th Cir. 1980) ("[T]he Ninth Circuit has held that a district court should apply the least coercive sanction (*e.g.*, a monetary penalty) reasonably calculated to win compliance with its orders.") (Internal quotation marks omitted).

The Court should, therefore, relieve Defendants of the coercive per diem sanctions. Indeed, before the Court entered its Contempt Order, Defendants voluntarily had agreed to facilitate the returns of all five removed individuals, and had begun the process to do so. Additionally, before the Court entered the Contempt Order, Defendants returned N.P.G. to the United States. *See* ECF Nos. 248, 250, 251. Defendants also returned E.S.L.D.A. and M.W.D.C. within a week of the Court's deadline. *See* ECF Nos. 258, 261. And, as documented *supra* and in Defendants' updates (ECF Nos. 256, 266), Defendants continue their diligent efforts to return R.M.N., who has expressed a desire to return to the U.S. and is waiting to obtain his passport from his attorney, as quickly as possible.

If the goal of the civil contempt order was to effectuate the return of the removed individuals as quickly as possible, then this has been largely accomplished regardless of the per diem coercive fine. Accordingly, the Court should allow Defendants the opportunity to purge the contempt without incurring the financial penalty. *See General Signal Corp. v. Donallco, Inc.*, 787 F.2d 1376, 1380 (9th Cir. 1986) ("in determining how large a coercive sanction should be the court should consider the character and magnitude of the harm threatened by continued contumacy, and the probable effectiveness of any suggested sanction.").

## III. ANY COERCIVE SANCTIONS MUST BE PAYABLE TO THE COURT.

The Ninth Circuit case law makes clear that per diem coercive sanctions are payable to the Court, not to Plaintiffs' counsel. *See Gen. Signal Corp. v. Donallco*, Inc., 787 F.2d 1376, 1380 (9th Cir. 1986) ("If the fine, or any portion of the fine, is coercive, it should be payable to the court…"); *Richmark Corp. v. Timber Falling Consultants*, 959 F.2d 1468, 1482 (9th Cir. 1992) (holding that the district court erred in making the contempt sanction payable to a party rather than the court); *see also Arabian Gas & Oil Dev. Co. v. Wisdom Marines Lines, S.A.*, No. 16-CV-03801-DMR, 2017 WL 4390184, at *7 (N.D. Cal. Oct. 3, 2017) ("The court finds that a fine of $500.00 a day *payable to the court* is appropriate under the circumstances.") (Emphasis added); *Reed v. Fed. Nat'l Mortg. Ass'n*, No. 5:13-CV-00940-VAP-SPX, 2019 WL 7166975, at *3 (C.D. Cal. Dec. 4, 2019) ("The fine shall be payable to the Court.").

Making the fine payable to Plaintiffs' counsel renders the sanction punitive. *See Lasar v. Ford Motor Co.*, 399 F.3d 1101, 1111 (9th Cir. 2005) ("We have held that a fine payable to an opposing party was punitive because it was not designed to compensate [the opposing party] for any actual or estimated harm.") (Internal citation and quotations omitted). That is because where compensation is intended, such a fine must be based upon evidence of actual loss. *See United States v. United Mine Workers*, 330 U.S. 258, 304 (1947).

Here, the Court already remedied any monetary injuries incurred in litigating the removals when it ordered Defendants to pay attorneys' fees, as well as for the individuals' travel costs. *See* ECF No. 252, ¶¶ 4, 6. That sanction is compensatory, especially since the Court ordered Plaintiffs to provide evidence of actual loss by providing "detailed declarations or billing records justifying a specific sanction amount..." *Id*. The per diem coercive sanctions here, however, are not compensatory because it is not supported by any evidence of actual loss, and, therefore, should not be payable to Plaintiffs' counsel. *See United Mine Workers*, 330 U.S. at 304.

Thus, to the extent the Court finds that the coercive sanction remains necessary, this Court should modify its contempt order to make the sanction payable to the Court.

**CONCLUSION**

**For the above-stated reasons,** Defendants request the Court grant the motion for reconsideration.


Dated: March 13, 2020                         Respectfully submitted,

JOSEPH H. HUNT
Assistant Attorney General

WILLIAM C. PEACHEY
Director

COLIN A. KISOR
Deputy Director

LAUREN E. FASCETT
Senior Litigation Counsel

*/s/ James J. Wen*
JAMES J. WEN
Trial Attorney
U.S. Department of Justice
Civil Division
Office of Immigration Litigation
District Court Section
P.O. Box 868, Ben Franklin Station
Washington, DC 20044
Tel: (202) 532-4142
Fax: (202) 305-7000
Email: James.J.Wen@usdoj.gov

CATHERINE M. RENO
Trial Attorney


*Attorneys for Defendants*

# CERTIFICATE OF SERVICE

I, James J. Wen, hereby certify that on this 13th day of March, 2020, I electronically filed the foregoing document with the Clerk of the Court by using the CM/ECF system, which will provide electronic notice and an electronic link to this document to all attorneys of record.

/s/ James J. Wen
JAMES J. WEN
Trial Attorney
U.S. Department of Justice
Civil Division
Office of Immigration Litigation
District Court Section